**Nos. 25-5122, 25-5123**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLIMATE UNITED FUND, ET AL.,

*Plaintiffs-Appellees,*

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Defendants-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DEFENDANT-APPELLANT CITIBANK, N.A.'S STATEMENT
REGARDING STAY**

K. Winn Allen, P.C.
 *Counsel of Record*
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

April 19, 2025

## INTRODUCTION

Citibank N.A. ("Citibank") respectfully submits this statement regarding the EPA Defendants' motion to stay the district court's preliminary injunction order. Citibank has a narrow and limited role in connection with the National Clean Investment Fund ("NCIF") and Clean Communities Investment Accelerator ("CCIA"), the two programs through which the plaintiffs in these consolidated cases received grants. Citibank does not select grant recipients. Citibank does not determine whether funds should be disbursed. Citibank is, instead, only a financial agent of the United States. CUF ECF 15-1 (Financial Agency Agreement). In that role, Citibank is required to "act at all times in the best interests of the United States" and "comply with all lawful instructions or directions received from Treasury." CUF ECF 15-1 §§ 5.A, 5.B.iv.

Citibank submits this statement to explain Citibank's role, to clarify Citibank's position regarding any stay pending appeal, and to request guidance on how Citibank should proceed pending the Court's decision on the EPA Defendants' motion to stay. Citibank has at all times followed what it understands as its contractual and fiduciary obligations. Citibank will continue those efforts and, of course, will comply with all court orders.

While Citibank takes no position on whether a stay pending appeal should be granted, if the Court grants a stay pending appeal, then Citibank should be

included in that stay. There can be no circumstances in which a stay would appropriately provide relief to the government without including Citibank in that stay. As the government's agent, Citibank should logically be subject to the same stay relief that applies to the government. Notably, the Court has already correctly included Citibank alongside the government in the temporary administrative stay the Court issued on April 16, 2025, pending prompt briefing on a full stay pending appeal. *See* 4/16/2025 Order.

Citibank is, as the district court put it, "in the middle of all of this," and "between a rock and a hard place." 3/12/2025 Hr'g Tr. at 7:12-17, 28:14-15. Even plaintiffs have expressed similar sentiments regarding Citibank's position. On the one hand, Citibank's principal (the government) has sought a stay of the district court's ruling. On the other hand, plaintiffs seek immediate disbursement of hundreds of millions of dollars. Citibank therefore asks that it be included in any stay order if a stay order is issued, so that Citibank can receive clarity on its obligations. Citibank will follow whatever direction the Court provides.

## STATEMENT

These cases arise out of the Inflation Reduction Act, a statute passed in 2022 that provided "$27 billion to invest in clean energy in communities across the

count[r]y." CUF ECF 1 § 22.[1] Congress did not appropriate these funds in favor of any specific private recipient. Congress instead provided that the Administrator of the EPA would select "eligible recipients for the purposes of providing grants, loans, or other forms of financial assistance, as well as technical assistance, to enable" various communities "to deploy or benefit from zero-emission technologies," including "distributed technologies on residential rooftops, and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the Administrator." 42 U.S.C. § 7434(a)(1). The Greenhouse Gas Reduction Fund ("GGRF") includes the National Clean Investment Fund, which is established pursuant to 42 U.S.C. § 7434(a)(2), as well as the Clean Communities Investment Accelerator, which is established pursuant to 42 U.S.C. § 7434(a)(3).

Plaintiffs are grantees receiving funds under the NCIF and CCIA programs. Most plaintiffs are "Prime Recipients," meaning they received their grants from EPA. Additional plaintiffs are "subrecipients," meaning they have received sub-awards from the Prime Recipients. The subrecipient's funds are, like the Prime Recipient's funds, held in accounts at Citibank.

---

[1] "CUF ECF" refers to the docket in *Climate United Fund v. Citibank, N.A., et al.*, No. 1:25-cv-698 (D.D.C.). The district court has consolidated cases relating to the GGRF and EPA grant funding onto this docket. Because the same Financial Agency Agreement applies to all of Citibank's obligations in these cases, and because each specific plaintiff in these cases signed materially identical account control agreements, Citibank cites to the Financial Agency Agreement and the account control agreements as they appear on the *Climate United Fund* docket, for simplicity.

The Inflation Reduction Act does not mention Citibank, let alone provide Citibank with policymaking authority with respect to the GGRF. Citibank plays no role in deciding who receives GGRF funds, the amount of funds those entities should receive, or whether grant recipients are in compliance with their grant agreements. Citibank also has no oversight responsibilities in connection with the GGRF. Those responsibilities are exclusively handled by EPA.

### A. Citibank's Role As A Financial Agent of the United States

Citibank instead functions only as a "Financial Agent" of the United States in connection with these programs, and so owes the United States fiduciary duties, including a fiduciary duty of loyalty. On September 18, 2024, Citibank and the Department of Treasury entered into a Financial Agency Agreement ("FAA"), pursuant to which Citibank would "provide services related to programs under the Inflation Reduction Act of 2022 . . . including the grant programs." CUF ECF 15-1 (Recitals). The FAA provides that Citibank "acknowledges and agrees that it owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." *Id.* § 5.A. The FAA further provides that as a financial agent, Citibank will "act at all times in the best interests of the United States when carrying out its responsibilities under this FAA and in all matters connected with this agency relationship." *Id.*

These fiduciary obligations include duties to "construe the terms of this FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States," *id.* § 5.B.ii, as well as "to act only within the scope of its actual authority and to comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv. Citibank's activities under the FAA are also subject to an additional provision providing that, "[n]otwithstanding any other provision of this FAA, when Treasury in its sole discretion determines that such actions are necessary to protect the interests of the United States, Treasury may reduce the authorized scope of work under this FAA, terminate this FAA, or revoke the Financial Agent's status as a financial agent of the United States." *Id.* § 23. The FAA also provides that "Treasury may periodically issue instructions through bulletins, letters, or other communications, consistent with this FAA," to "further . . . clarify the scope of the duties and services of the Financial Agent under this FAA." *Id.* § 3.D.

Although plaintiffs focus on different contracts—the "account control agreements" or "ACAs" governing their respective accounts—those agreements are established pursuant to the FAA. The FAA describes the work Citibank must perform in Exhibit A to the FAA. The Exhibit provides that Citibank "shall establish controlled accounts in the names of the [NCIF and CCIA] … grant recipients," who are defined as "Prime Recipients," and shall "be party to account

5

control agreements with each of the[se] Prime Recipients." *Id.* at Ex. A § I.A.1.i. The Exhibit also provides that the FAA—and not just the account control agreements—governs Citibank's conduct with respect to grantees: "Each Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts ***in accordance with, and subject to***, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement and ***the conditions and restrictions detailed in this Exhibit A [to the FAA]***." *Id.* at Ex. A § I.A.1.iv. (emphasis added). The FAA further requires that Citibank "implement account controls, including as instructed by EPA," and "freeze accounts, and transfer funds in frozen accounts, at the direction of the relevant secured party [the EPA, with respect to Prime Recipients], in accordance with the account control agreements." *Id.* at Ex. A §§ I.B., I.B.4.

The account control agreements, meanwhile, also recognize that "[Citibank] has been designated and authorized to act as a financial agent of the United States pursuant to the authority of the U.S. Department of Treasury under 12 U.S.C. §§ 90 and 265." CUF ECF 14-4 at 1. And the account control agreements provide that Citibank cannot be held liable for following instructions from the government: "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including,

without limitation, any provision of any present or future law or regulation ***or any act of any governmental authority***." *Id.* § 6.b (emphasis added).[2]

The Financial Agency Agreement and the account control agreements must therefore be read consistently with one another: they are "interrelated agreements" that must be "read together . . . 'in harmony.'" *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023). "Under New York . . . law documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek Inc. v. Int'l Bus. Machines Corp.*, 2024 WL 663340, at *3 n.3 (D.D.C. Feb. 16, 2024); *see Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278 (D.D.C. 2021) (reading contract "together with . . . record of decision and . . . mining plan"); *Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 134 (D.D.C. 2018) (contract provisions must be interpreted "not in isolation but in the light of the obligation as a whole" (quotations omitted)); *see* CUF ECF 14-4 § 11 (account control agreements are governed by federal and New York law).

---

[2] Additional provisions in the Prime Recipient's account control agreements also note that EPA is entitled to act as a "Secured Party" with respect to the Prime Recipient's accounts. These account control agreements provide that the "Secured Party" (EPA, as relevant here) may also "submit instructions to the Bank." CUF ECF 14-4 § 13.b.

## B. Citibank's Compliance With The Government's Instructions

Plaintiffs' lawsuits arise out of Citibank's attempts to fulfill its fiduciary duties and comply with instructions from the United States government. On February 17, 2025, Citibank received written correspondence from the Federal Bureau of Investigation, requesting that Citibank "[p]lease accept this letter as a recommendation to place an administrative freeze on the account(s) associated with" certain ACAs, "for 30 days." CUF ECF 14-5 at 1 (2/17/2025 FBI Ltrs.). The letters stated that this recommendation was made "following credible information received by the Federal Bureau of Investigation that the … account(s) ha[d] been involved in possible criminal violations," including "[c]onspiracy to defraud the United States," and "[w]ire fraud." *Id.* Pursuant to its fiduciary obligation to act in the interests of the United States government, Citibank temporarily paused disbursements while seeking more information.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any GGRF accounts until the end of the day on March 9, 2025. CUF ECF 14-7 (3/4/2025 Treasury Email). Early in the morning of March 10, 2025, EPA and the Department of Treasury then each directed Citibank to continue to refrain from processing disbursement requests, again invoking Citibank's fiduciary duties. EPA wrote: "To prevent the misuse of funds . . . ***EPA instructs the Bank***, pursuant to this Treasury directive, the grant agreements, and

Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury … ***to pause the processing of payment instructions for the GGRF accounts until further notice***." CUF ECF 14-2 (emphasis added). The Department of Treasury similarly stated that, "[i]n accordance with Treasury's authorities under the FAA, ***Treasury is instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions to Citibank pursuant to the FAA***." CUF ECF 14-3 (emphasis added). On March 11, 2025, Citibank learned that EPA terminated plaintiffs' grants. CUF ECF 13-1 at 1.

### C. Procedural History

Plaintiffs began filing complaints naming EPA, the EPA Administrator, and Citibank as defendants beginning on March 9, 2025.

The district court held a hearing on March 12, 2025, and there considered plaintiffs' request for a temporary restraining order. The first plaintiff (Climate United Fund) had requested that Citibank "be restrained from refusing to comply with Climate United's disbursement requests under the ACA," including with respect to both "already-submitted requests" and "future requests." CUF ECF 2-1 at 35. On March 18, 2025, the court granted in part and denied in part Plaintiffs' TRO motions. *See* CUF ECF 29 (Order); CUF ECF 28 (Memorandum Opinion). The court enjoined Citibank "from moving or transferring Plaintiffs' grant funds to any party other than the accountholders" and enjoined the EPA Defendants from

implementing or giving effect to the Notices of Termination they had issued to the plaintiffs. CUF ECF 29 at 2. The court's order, however, was "more limited in scope than Plaintiffs' proposed orders." CUF ECF 28 at 3. Although Climate United Fund and other plaintiffs had sought to require Citibank to disburse funds during the litigation, *see* CUF ECF 2, the Court denied their TRO motions in part, and instead "merely order[ed] the parties to preserve the status quo—that is, for Citibank to maintain the grant funds in Plaintiffs' respective accounts." CUF ECF 28 at 22.

The district court also recognized Citibank's limited role in these cases, noting that "Citibank . . . is in the middle of all this," and that "you see the position this puts Citibank in, which has the money, but has been told by EPA not -- that it would be impermissible to distribute the funds." 3/12/2025 Hr'g Tr. at 7:12-17, 28:14-15; *id.* at 7:12-17 ("[T]hey are between a rock and a hard place here.").

On April 2, 2025, the district court held a hearing on motions for preliminary injunctive relief. At the hearing, counsel for plaintiffs admitted that "Citibank is in a tough spot," and stated that "[w]e're not impugning the motives of Citibank at all." 4/2/2025 Hr'g Tr. at 77:2-5. Plaintiffs nevertheless asked that the court include Citibank in a preliminary injunction order and require that Citibank comply with plaintiffs' disbursal requests for the remainder of the litigation. *Id.*

10

On April 15, 2025, the district court issued a preliminary injunction order enjoining the government "from unlawfully suspending or terminating Plaintiffs' grant awards, including by issuing a Notice of Exclusive Control, effectuating a Notice of Termination, or limiting access to funds in accounts established in connection with Plaintiffs' grants," except as permitted by the account control agreements and applicable law. CUF ECF 80 at 2. The district court further enjoined the government "from directly or indirectly impeding Defendant Citibank or from causing Defendant Citibank to deny, obstruct, delay, or otherwise limit access to funds in accounts established in connection with Plaintiffs' grants." *Id.*

As to Citibank, the district court ordered that Citibank refrain "from transferring or otherwise moving funds out of accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees, except as permitted by the applicable ACA," and that Citibank "disburse any funds properly incurred before the mid-February suspension of Plaintiffs' funds." *Id.* The district court also ordered, however, that Citibank "refrain from releasing any funding disbursements until Thursday, April 17, 2025, at 2:00PM EST," pending any motion to stay from the government. *Id.* at 1 n.1.[3]

---

[3] In a status report submitted to the district court on April 16, 2025, Citibank clarified that GGRF funds are held in money market fund investments, and that because money market funds would close early on Thursday April 17, 2025 and remain closed on Friday, April 18, 2025, for the Good Friday holiday, consistent

11

In an opinion issued April 16, 2025, the district court only briefly discussed plaintiffs' claims against Citibank and recognized that "Citibank performed its obligations under the FAA in accordance with its responsibilities as a financial agent of the United States." CUF ECF 89 at 31. But the district court reasoned that "the instructions [Citibank] received were not lawful, as the record shows there was no legal basis for the government to order that the funds be frozen." *Id.* The district court therefore extended the preliminary injunction to cover Citibank in addition to the government, stating that it would enjoin Citibank from transferring funds, "subgrantees, except as permitted by the applicable ACA, the grant award, the relevant regulations, and applicable law." *Id.* at 32.

This Court entered an administrative stay of the district court's order on April 16, 2025 (the same day the district court issued its opinion). *See* 4/16/2025 Order. The Court ordered that "no party take any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." *Id.* Citibank is complying with that order.

D.      **Statement Regarding Stay**

While Citibank takes no position as to whether the district court's decision should be fully stayed pending appeal, Citibank emphasizes that if a stay is issued,

---

with Citibank's ordinary processes, Citibank could not begin to process disbursement requests until Monday, April 21, 2025. *See* CUF ECF 88.

Citibank must be treated similarly to the government and should be included in any such stay.

Citibank is the government's fiduciary and agent: Citibank owes "duties loyalty and fair dealing to the United States," CUF ECF 15-1 § 5.A, and is obligated by the FAA to implement account controls and follow directions from the government. *See* Part A, *supra*. Citibank therefore desires clarity regarding its obligations if a stay issues. Citibank further states that there would be little utility to staying the district court's order as to the government but not as to Citibank— such an order would provide the government little if any relief as a practical matter. Citibank should therefore be included in any stay decision, both to provide Citibank the benefit of clarity regarding its obligations, and to ensure that any stay decision in favor of the government provides the government complete relief. There is no circumstance in which a stay could be properly issued with respect to the government yet denied with respect to Citibank.

Indeed, the Court has already included Citibank in the temporary administrative stay that the Court appropriately entered on April 16, 2025. The Court's temporary administrative stay preserves the status quo pending briefing on the government's motion by requiring that Citibank not "release, disburse, transfer, or otherwise move" funds. *See* 4/16/2025 Order. Continuing to include Citibank in any full stay pending appeal is similarly appropriate, especially where Citibank

will otherwise be faced with pressing payment obligations in the event Citibank is not included in a stay. Citibank's best estimates are that the currently-pending payment instructions Citibank has received relating to the GGRF program request that Citibank disburse over $600 million to non-GGRF accounts. Additional payment instructions request that Citibank transfer $400 million within GGRF accounts at Citibank. Certain plaintiffs have even communicated with Citibank in advance of the district court's preliminary injunction order, asking that "Citibank take all necessary steps *now* to prepare for" that order, and to prepare to more rapidly disburse funds and "*immediately* process all pending transactions that have been submitted." *See, e.g.*, 4/3/2025 Climate United Ltr.

Thus, if the Court were to fully stay the district court's order as to the government but not as to Citibank, then Citibank would face significant payment obligations as soon as the existing temporary administrative stay lifts. This would not only compromise the utility of any stay as to the government, but would also add to the "rock and a hard place" problem the district court identified. Staying the district court's order only as to the government (but not as to Citibank) would mean the government would be free to continue issuing directions to freeze funds to Citibank, even if Citibank could not follow those directions. Citibank could be pitted between following the government's directions, on the one hand, or

14

following the district court's non-stayed order and plaintiffs' existing payment instructions, on the other.

There is no need to put Citibank in that inequitable position: the best way to provide complete relief to the government (if a stay issues) and to fairly treat all parties is to ensure that Citibank is treated the same as the government regardless of how the Court decides the government's stay motion.

Citibank appreciates the Court's guidance on its obligations in the coming days. Citibank is committed to fulfilling those obligations and will act as the Court directs.

Dated: April 19, 2025                                            Respectfully submitted,

*/s/ K. Winn Allen*
K. Winn Allen, P.C.
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

***Attorney For Defendant Citibank, N.A.***

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 27(a)(4), counsel for Citibank, N.A. certifies as follows:

**A.   Parties**

All parties, intervenors, and *amici* appearing before the district court and in this court are listed in the Motion of Defendant-Appellant.

**B.   Rulings Under Review**

References to the rulings at issue appear in the Motion of Defendant-Appellant.

April 19, 2025                                         */s/ K. Winn Allen*
                                                                  K. Winn Allen

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Citibank, N.A. makes the following disclosure:

Citibank, N.A. is a wholly-owned subsidiary of Citicorp LLC, which in turn is a wholly-owned subsidiary of Citigroup Inc., a publicly traded corporation. No publicly-held company owns 10% or more of Citigroup Inc.'s stock.

April 19, 2025  */s/ K. Winn Allen*
K. Winn Allen

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 3,412 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as counted using the word-count function on Microsoft Word software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

April 19, 2025 */s/ K. Winn Allen*
K. Winn Allen