[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLIMATE UNITED FUND, et al.,

   Plaintiffs-Appellees,

v.

CITIBANK, NC, et al.,

   Defendants-Appellants.

No. 25-5122

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR STAY PENDING APPEAL**

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

GERARD SINZDAK
SOPHIA SHAMS
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2495*
   *sophia.shams@usdoj.gov*

## GLOSSARY

| | |
|---|---|
| Administrative Procedure Act | APA |
| Clean Communities Investment Accelerator | CCIA |
| Environmental Protection Agency | EPA |
| Greenhouse Gas Reduction Fund | GGRF |
| National Clean Investment Fund | NCIF |

## INTRODUCTION

The district court's order below contravenes clear Supreme Court guidance and threatens immediate and irreparable harm to the public fisc by ordering the immediate disbursement of billions of dollars in grant funds under grant agreements the EPA has determined no longer effectuate public policy. Plaintiffs brought this suit challenging EPA's contractual basis for terminating their award agreements. These claims, as the Supreme Court recently recognized, sound in contract and thus lie exclusively in the Court of Federal Claims. Accordingly, a stay is warranted.

Plaintiffs' opposition fails to show otherwise. The equities weigh strongly in the government's favor, as it is undisputed that the preliminary injunction would allow plaintiffs to immediately withdraw hundreds of millions of dollars in grant funding, which the government would be unlikely to recover even if it ultimately prevails. And plaintiffs fail to explain why pursuing their contract claims in the Court of Federal Claims would offer inadequate relief. As to the merits, the Supreme Court's recent decision in *Department of Education v. California*, 145 S. Ct. 966 (2025), demonstrates that the government is likely to prevail in its contention that the district court lacked jurisdiction over plaintiffs' claims. Given that all the stay factors overwhelmingly fall in the government's favor, this Court should grant a stay pending appeal and prevent these billions of dollars from being disbursed until this appeal is resolved. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

# ARGUMENT

**I.     The Equities Overwhelmingly Warrant a Stay of the Injunction.**

Plaintiffs' contention (NCIF Resp. 10-13; CCIA Resp. 14-16) that the government will not be harmed in the absence of a stay is plainly erroneous. Tellingly, plaintiffs do not dispute that, in the absence of a stay, they expect Citibank to immediately distribute hundreds of millions of dollars in grant funds to them. Indeed, plaintiffs have *demanded* that. Plaintiffs likewise do not dispute that EPA has no realistic way to recover those massive sums after they are disbursed. That irremediable loss of substantial taxpayer funds plainly constitutes irreparable harm and provides reason alone to grant a stay. *See Dep't of Educ.*, 145 S. Ct. at 968-69 (granting a stay pending appeal where "respondents have not refuted the government's representation that it is unlikely to recover the grant funds once they are disbursed," and the "District Court declined to impose bond").

Plaintiffs' contrary arguments only further illustrate that this case belongs in the Court of Federal Claims. Plaintiffs contend that the distribution of funds to them will not harm the government because EPA has no right under the parties' agreements "to take Plaintiffs' money back"; the grant agreements require EPA to redistribute any withheld funds to plaintiffs; and plaintiffs would prevail on a breach-of-contract claim in the Court of Federal Claims. NCIF Resp. 10-11. To the extent plaintiffs suggest that a valid termination would leave them with billions of dollars

and no contractual obligations to fulfill, that is absurd. Plaintiffs' argument thus hinges on the premise that the termination was invalid. Indeed, each of their arguments turns on the parties' putative rights under the grant contracts and related agreements, and involve questions regarding the proper interpretation of the parties' contracts and available remedies thereunder. They thus must be decided by the Court of Federal Claims. *See* Stay Mot. 13-19.

Plaintiffs urge this Court, in the alternative, to limit the scope of any stay in various ways. This Court should reject that invitation. First, plaintiffs argue (CCIA Resp. 22; NCIF Resp. 21) that a stay should not include Citibank because Citibank did not itself move for a stay. But Citibank expressly requested that it be included in any stay, and a stay would be meaningless absent the inclusion of Citibank. This Court should thus stay the entirety of the district court's preliminary injunction.

Second, plaintiffs argue that the stay be limited such that the funds remain frozen in the Citibank accounts. But that makes little sense. Plaintiffs allege only financial and reputational harm, neither of which would be redressed if the funds remain frozen. And plaintiffs' assertion (CCIA Resp. 22) that they will be unable to secure future relief if EPA re-obligates the funds in the interim is incorrect. Plaintiffs may still seek damages in the Court of Federal Claims, and if they prevail, would be entitled to damages through the government's judgment fund. 31 U.S.C. § 1304.

Meanwhile, preventing EPA from moving forward to re-obligate the grant funds in a responsible manner would impair the public's interests. Stay Mot. 10-11, 20.

Third, plaintiffs' suggestion that the Court order the disbursement of funds to satisfy their asserted financial needs while litigation is pending is equally wrong. To start, plaintiffs' claim (NCIF Resp. 13-14; CCIA Resp. 17) that they will be unable to operate absent any funding is belied by the record below. Plaintiffs consented to extending the district court's temporary restraining order freezing the grant funds, and their alleged parade of harms never showed up. Further, plaintiffs' suggestion (NCIF Resp. 3) that EPA provide funds so they may continue to litigate their claims is akin to asking for attorneys' fees in advance of any judgment.

More fundamentally, given that the district court lacked jurisdiction to entertain plaintiffs' claims, it lacked authority to order distribution of *any* amount of funds. What's more, the district court erroneously declined to enter a bond to protect the government's interests, and, as discussed above, plaintiffs do not contest that EPA is unlikely to recover any funds distributed should it later prevail.

Ultimately, plaintiffs' asserted interest in receiving grant funds is outweighed by EPA's interest in protecting the public fisc. Because the injunction subjects EPA to irreparable harm, a stay is warranted.[1]

---

[1] Plaintiffs also assert (NCIF Resp. 9; CCIA Resp. 8) that the government failed to first seek a stay before the district court. But as the government explained

*Continued on next page.*

## II.   The Government is Likely to Succeed on the Merits.

**A.**  This Court's two-factor inquiry for identifying Tucker Act claims looks to "the source of the rights upon which the plaintiff bases its claims and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).  Here, both factors confirm that this is a contract case that belongs in the Court of Federal Claims.

*First*, the source of plaintiffs' asserted right to grant funds comes from the award agreements, not any statute or regulation.  The NCIF and CCIA programs were created by EPA, and EPA has sole discretion in choosing which entities may receive funding through these programs.  As plaintiffs themselves recognize, they were only awarded grant funds after applying to EPA, meeting various conditions imposed by EPA, and being awarded funding by EPA.  Indeed, plaintiffs do not contend that they would have any right to funding had EPA declined to select them as awardees.  The source of their rights thus stem from the grant agreements.

---

(Stay Mot. 9), it did file an anticipatory stay motion below on April 15.  Later that day, the court issued a preliminary injunction, and denied the government's motion as premature until it issued its memorandum opinion.  Meanwhile, the court's order required Citibank to disburse funds on April 17, at 2pm, and provided no indication as to when the opinion would be issued.  Doc, 80 at 1 n.1.  Faced with that imminent deadline, EPA took the only action available to it and sought immediate relief from this Court, which this Court granted.  Under these circumstances, the government's actions satisfied its obligations under Federal Rule of Appellate Procedure 8.

Plaintiffs' attempts to point to various statutes and regulations as the source of their rights are unavailing. (NCIF Resp. 17, CCIA Resp. 11-12). Nothing plaintiffs point to confers any right to grant funds. The Greenhouse Gas Reduction Fund (GGRF) enables EPA to choose which groups may receive appropriated grant funds, and memorialize agreements to that effect; it does not vest in plaintiffs a right to receive funding. 42 U.S.C. § 7434(a). Regulations likewise do not provide plaintiffs any right to payment. Instead, they reinforce that termination is governed by the terms and conditions of the federal award (2 C.F.R. §200.340(a)), supporting the government's argument that plaintiffs' claims sound in contract.

*Second*, plaintiffs seek inherently contractual relief. By requesting that EPA be barred from effectuating its termination of the grant agreements, plaintiffs effectively seek a court order requiring EPA to continue allowing the disbursement of grant funds under contracts that the agency has determined are deeply flawed and no longer serves the public interest. This is underscored by the fact that the district court also enjoined the Department of the Treasury, a nonparty, from directing Citibank not to disburse any funds under the financial account agreements. Doc. 80 at 2; Citibank Statement 2. Plaintiffs' suggestion that they seek nothing more than equitable relief is also belied by their asserted injuries, which rely primarily on financial harm allegedly due to their inability to receive grant funds.

Plaintiffs attempt to distinguish this case from other familiar government contract disputes by claiming that "EPA has already disbursed the funds" to plaintiffs. Subgrantees Resp. 21; *see also* NCIF Resp. 17; CCIA Resp. 13. In doing so, plaintiffs misrepresent the relevant agreements. The grant agreements define plaintiffs' entitlement to any funds, including the disbursement of those funds by Citibank. The Citibank accounts are the "operating account for the award." Doc. 49-2 at 118. Plaintiffs were not given a blank check with respect to these accounts; they "agree[d] to only use the award to support [certain] allowable activities." *Id.* at 58, 118. Indeed, a disbursement request must be for a "Qualified Project as defined in the grant Grant Agreement," and plaintiffs must certify to EPA that the amount requested is "necessary to execute against the EPA-approved workplan." *Id.* at 141. Again, it is nonsensical to think that even if EPA terminated the agreements based on credible evidence of criminal activity—as plaintiffs admit EPA is entitled to do—that plaintiffs would nonetheless be entitled to the billions of dollars in the Citibank accounts.

Additionally, the financial agreements make clear that Citibank is effectively acting as an arm of Treasury. Under the agreements, Citibank "has been designated and authorized [by Treasury] to act as a financial agent of the United States," Doc. 49-2 at 131, and Citibank must "act at all times in the best interests of the United States," Citibank Statement 4. Treasury may remove Citibank as a financial agent

7

if it so chooses. Doc. 49-2 at 135. And the agreements further require Citibank to comply with directions from both EPA and Treasury. Citibank Statement 4-6.

For these reasons, plaintiffs' attempts (NCIF Resp. 19; Subgrantees Resp. 19; CCIA Resp. 20-21) to distance this case from the Supreme Court's recent decision in *Department of Education v. California* are vacuous. *Department of Education* involved a statute similar to the GGRF that generally appropriated program funds and authorized the Department of Education to "award grants, on a competitive basis to eligible partnerships" to carry out the program's purposes. Application to Vacate at 5, No. 24910 (U.S. March 26, 2025) (quoting 20 U.S.C. 1022a). And like here, the district court in *Department of Education* purported to "enjoin the Government from terminating" these grants, and ordered payment of "past-due grant obligations" as well as continuing obligations. 145 S. Ct. at 968. That the funds there were held *directly* by Treasury rather than by a financial agent *under the direction* of Treasury makes no difference. As discussed, plaintiffs' asserted right to the funds is premised entirely on the grant agreements and related contracts, and thus are contractual in nature. Here, as there, "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money." *Id.*

**B.** Plaintiffs respond that, even if the Tucker Act bars their APA claims, it does not bar their constitutional claim that EPA is "dismantling" the GGRF program. Subgrantees Resp. 16-17; NCIF Resp. 16-17. Perhaps not, but that claim cannot

8

support this injunction. Again, the GGRF merely appropriates funds for particular policy aims; it confers no specific rights on plaintiffs. Thus, even if their separation-of-powers claim had merit (which it does not), the only proper remedy would be an injunction requiring EPA to *re-obligate* the grant funds, not to *re-institute* plaintiffs' grants. *See, e.g., In re Aiken County*, 725 F.3d 255, 267 (D.C. Cir. 2013).

In any event, plaintiffs' constitutional claims are unfounded. EPA has stated publicly—and represented both before this Court and the district court below—that it intends to re-obligate the funds appropriated by Congress. Doc. 49 at 21; Doc. 49-2 at 192; Stay Mot. 3. There is no basis to question that commitment. EPA's decision to terminate the NCIF and CCIA grants was based on EPA's concerns regarding each program's implementation through these particular agreements, not with the GGRF itself. And EPA's termination of all the grants merely reflects the fact that each of the grants and related agreements were effectively identical and thus included identical flaws.

Perhaps recognizing that they lack any real evidence of a constitutional violation, plaintiffs point to various statements made by the President and EPA's Administrator as a basis for questioning EPA's decision to terminate the agreements. Subgrantees Mot. 13-14. In doing so, plaintiffs invite this Court to look behind the facially reasonable bases for EPA's termination and probe the subjective motives of

9

the President. This Court should reject any such invitation to unduly infringe Article II authority. *Cf. Trump v. United States*, 603 U.S. 593, 618 (2024).

## III. An Extraordinarily Expedited Appeal is Not Warranted Here.

In the event a stay is granted, plaintiffs ask this Court to set an extremely expedited briefing schedule on the merits of the government's appeal. Subgrantees Resp. 23-24. Specifically, plaintiffs ask this Court to order the government to file its opening brief within 5 days of the stay, with plaintiffs' responses due 5 days later, and the government's reply due 3 days after that. *Id.* The government has no objection to an expedited briefing schedule in light of a stay, but plaintiffs' extreme proposal would effectively entail a merits decision based on the stay papers. That is neither necessary nor beneficial.

The government instead proposes a briefing schedule under which the government's brief is due in 21 days, plaintiffs' responses due 21 days after that date, and the government's reply brief due 7 days later. Although the government does not believe it is necessary here, this Court could schedule a special argument session over the summer if it so chooses.

## CONCLUSION

This Court should stay the district court's injunction pending appeal.

10

Respectfully submitted,

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

GERARD SINZDAK

*/s/ Sophia Shams*
SOPHIA SHAMS
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2495*
   *sophia.shams@usdoj.gov*

April 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 2,557 words. This motion also complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

                                                */s/ Sophia Shams*
                                                SOPHIA SHAMS

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                                 */s/ Sophia Shams*
                                                 SOPHIA SHAMS