**Nos. 25-5122, 25-5123**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

CLIMATE UNITED FUND, ET AL.,

*Plaintiffs-Appellees,*

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Defendants-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**BRIEF OF DEFENDANT-APPELLANT CITIBANK, N.A.**

K. Winn Allen, P.C.
 *Counsel of Record*
Joseph C. Schroeder
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

May 5, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiffs-appellees are Climate United Fund; Coalition for Green Capital; Power Forward Communities, Inc.; California Infrastructure and Economic Development Bank; Minnesota Climate Innovation Finance Authority; Efficiency Maine Trust; Illinois Finance Authority; Justice Climate Fund; and Inclusiv, Inc. Defendants-appellants are the Environmental Protection Agency; Lee Zeldin, in his official capacity as Administrator of the EPA; W.C. McIntosh, in his official capacity as acting Deputy Administrator of the EPA; and Citibank, N.A.

Pursuant to Circuit Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Citibank, N.A. makes the following disclosure:

Citibank, N.A. is a wholly-owned subsidiary of Citicorp LLC, which in turn is a wholly-owned subsidiary of Citigroup Inc., a publicly traded corporation. No publicly-held company owns 10% or more of Citigroup Inc.'s stock.

### B.    Rulings Under Review

The ruling under review (issued by Judge Tanya S. Chutkan) is an order filed April 15, 2025, granting plaintiffs' motion for preliminary injunction.

### C.    Related Cases

 Defendant-appellant Citibank, N.A. is not aware of any related cases.

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT .......................................................2

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE.................................................................3

    A.    Citibank's Role as a Financial Agent of the United States..................3

    B.    Citibank's Compliance with the Government's Instructions...............4

    C.    Procedural History...............................................................5

ARGUMENT ..........................................................................................7

I.    Plaintiffs Are Not Likely to Succeed on the Merits Against Citibank, Because Citibank has Complied With its Contractual Obligations................7

    A.    The FAA and Account Control Agreements Must Be Read Consistently With One Another. ..........................................8

    B.    Citibank Complied With Its Contractual Obligations.........................10

II.    If the Court Determines that It Lacks Jurisdiction Over Claims Against the Government, then Claims Against Citibank Should Be Dismissed or Stayed. ........................................................................12

CONCLUSION .....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cemex Inc. v. Dep't of the Interior*,
  560 F. Supp. 3d 268 (D.D.C. 2021)................................................................9

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)......................................................................7

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
  888 F.3d 640 (4th Cir. 2018).......................................................................12

*Entines v. United States*,
  495 F. Supp. 2d 84 (D.D.C. 2007)...............................................................14

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015)......................................................................7

*Friedman v. Manfuso*,
  620 F. Supp. 109 (D.D.C. 1985)...................................................................9

*Goodrich v. Bank of Am., N.A.*,
  2024 WL 341064 (D.D.C. Jan. 30, 2024).....................................................11

*Hanson v. District of Columbia*,
  120 F.4th 223 (D.C. Cir. 2024).....................................................................7

*Hulley Enters. Ltd. v. Russian Fed'n*,
  211 F. Supp. 3d 269 (D.D.C. 2016)..............................................................15

*Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*,
  315 F. Supp. 3d 129 (D.D.C. 2018)...............................................................9

*Matek Inc. v. Int'l Bus. Machs. Corp.*,
  2024 WL 663340 (D.D.C. Feb. 16, 2024)......................................................9

*Munaf v. Geren*,
  553 U.S. 674 (2008)......................................................................................7

*In re O.P.M. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019)........................................................................13

*Ritch v. N.Y. Eye & Ear Infirmary*,
  2023 WL 6393970 (S.D.N.Y. Sept. 29, 2023) ....................................9

*Sepehry-Fard v. United States*,
  2022 WL 17335931 (Fed. Cl. Nov. 30, 2022)...................................14

*Taylor Energy Co. v. Luttrell*,
  3 F.4th 172 (5th Cir. 2021) ....................................................14

*United States v. Sherwood*,
  312 U.S. 584 (1941).............................................................14

*Wis. Voters All. v. Pence*,
  514 F. Supp. 3d 117 (D.D.C. 2021)..............................................8

**Statutes**

28 U.S.C. § 1292(a)(1)...............................................................2

28 U.S.C. § 1332(a)(2)...............................................................2

42 U.S.C. § 7434(a)(2)...............................................................3

42 U.S.C. § 7434(a)(3)...............................................................3

**Other Authorities**

Restatement (Second) of Contracts § 202(2) (1981) ..............................9

# INTRODUCTION

Citibank N.A. ("Citibank") respectfully submits this brief regarding the district court's preliminary injunction order. Citibank has a limited role in connection with the grant programs in this case. Citibank does not select grant recipients. Citibank does not determine whether funds should be disbursed. Citibank is, instead, a financial agent of the United States and is obligated to "act at all times in the best interests of the United States" and to "comply with all lawful instructions or directions received from Treasury." ECF 21 §§ 5.A, 5.B.iv.

Citibank submits this brief to explain its role and to make clear that plaintiffs have not established any likelihood of success on the merits of their contractual claims against Citibank. Citibank has complied with its contractual obligations to plaintiffs, as well as its contractual and fiduciary obligations to the government. Citibank will continue those efforts and will comply with any order this court issues.

Citibank also addresses what should occur if the Court finds that there is no jurisdiction over plaintiffs' claims against the government. If the government has sovereign immunity against claims for specific performance, then the Court should recognize and apply derivative sovereign immunity to plaintiffs' claims as to Citibank. *See* Part II, *infra*. And, if plaintiffs' claims against the government must be heard only in the Court of Claims, then this Court should refrain from permitting litigation against Citibank to continue in a different forum. If claims against the

government are dismissed, for lack of jurisdiction or otherwise, then claims against Citibank should be dismissed or stayed as well.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction because this appeal arises from an interlocutory order "granting … [an] injunction." 28 U.S.C. § 1292(a)(1). The district court issued its preliminary injunction order on April 15, 2025. *See* JA961. Appellants timely appealed. *See* ECF 82 (filed Apr. 16, 2025); ECF 90 (filed Apr. 17, 2025).

Citibank takes no position on whether the district court had subject-matter jurisdiction over plaintiffs' claims against the government. The district court had subject-matter jurisdiction over plaintiffs' claims against Citibank under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and no plaintiff is a citizen of South Dakota, where Citibank maintains its Head office and where Citibank is a citizen for purposes of diversity jurisdiction.

## STATEMENT OF THE ISSUES

1.    Whether plaintiffs have established a likelihood of success on their claims against Citibank for purported breaches of their account control agreements.

2.    Whether plaintiffs' claims against Citibank should be dismissed or stayed in the event the district court lacked subject-matter jurisdiction over plaintiffs' claims against the government.

## STATEMENT OF THE CASE

### D.    Citibank's Role as a Financial Agent of the United States

This case arises out of the Inflation Reduction Act and the Greenhouse Gas Reduction Fund established under that statute.  That fund includes the National Clean Investment Fund, established pursuant to 42 U.S.C. § 7434(a)(2), as well as the Clean Communities Investment Accelerator, which is established pursuant to 42 U.S.C. § 7434(a)(3).  Congress did not appropriate grant funds under these programs in favor of any specific private recipient.  Congress instead delegated responsibility for selecting "eligible recipients" to EPA.  42 U.S.C. § 7434(a)(3).

The Inflation Reduction Act does not mention Citibank, let alone provide Citibank with policymaking authority with respect to the Greenhouse Gas Reduction Fund.  Citibank plays no role in deciding who receives grant funds, the amount of funds those entities should receive, or whether those entities are in compliance with their grant agreements.

Citibank is instead party to a "Financial Agency Agreement" ("FAA") with the Department of the Treasury, which provides that Citibank will "provide services" related to the grant programs.  ECF 21 (Recitals).  The FAA states that Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." *Id.* § 5.A.  Citibank must "act at all times in the best interests of the United States when carrying out its responsibilities under

[the] FAA and in all matters connected with [the] agency relationship." *Id.* Citibank must follow lawful instructions from the Department of the Treasury and "implement account controls" as directed by EPA. *Id.* at Ex. A § I.B.

Plaintiffs are grantees receiving funds under the National Clean Investment Fund and Clean Communities Investment Accelerator programs. Most are "Prime Recipients," meaning they received their grants from EPA. Additional plaintiffs are "subrecipients," meaning they have received sub-awards from the Prime Recipients. All plaintiffs' grants are held in accounts at Citibank, pursuant to "account control agreements." *E.g.*, JA69. Importantly, each account control agreement is established pursuant to the FAA. *See* Part I.A, *infra*. Just as importantly, each account control agreement also provides that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including … any act of any governmental authority." JA74 § 6.b.

### E. Citibank's Compliance with the Government's Instructions.

On February 17, 2025, the Federal Bureau of Investigation requested that Citibank "place an administrative freeze on the account(s) associated with" certain ACAs, "for 30 days." JA99. The agency stated that this recommendation was made "following credible information received by the Federal Bureau of Investigation that the … account(s) ha[d] been involved in possible criminal violations," including

"[c]onspiracy to defraud the United States," and "[w]ire fraud." *Id.* Pursuant to its fiduciary obligation to act in the interests of the United States, Citibank paused disbursements while seeking more information.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any GGRF accounts until the end of the day on March 9, 2025. *See* JA110. During the morning of March 10, 2025, EPA and the Department of Treasury then each directed Citibank to continue to refrain from processing disbursement requests, again invoking Citibank's fiduciary duties. EPA wrote: "To prevent the misuse of funds . . . ***EPA instructs the Bank***, pursuant to this Treasury directive, the grant agreements, and Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury … ***to pause the processing of payment instructions for the GGRF accounts until further notice***." JA65 (emphasis added). The Department of Treasury similarly stated that, "[i]n accordance with Treasury's authorities under the FAA, ***Treasury is instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions to Citibank pursuant to the FAA***." JA68 (emphasis added). On March 11, 2025, Citibank learned that EPA terminated plaintiffs' grants. *See* ECF 13-1 at 1.

## F. Procedural History

Plaintiffs began filing complaints naming EPA, the EPA Administrator, and Citibank as defendants on March 9, 2025. Plaintiffs also sought temporary

restraining orders and preliminary injunctive relief, arguing, as to Citibank, that Citibank had breached its account control agreements with plaintiffs. On March 18, 2025, the district court issued a temporary restraining order enjoining Citibank from moving or transferring grant funds, and enjoining EPA from giving effect to the Notices of Termination it had issued to plaintiffs. *See* JA287. In a hearing, the district court recognized Citibank's limited role in these cases, noting that "Citibank … is in the middle of all this," and that "you see the position this puts Citibank in, which has the money, but has been told by EPA not -- that it would be impermissible to distribute the funds." JA180:12-17, JA201:7-15; *see also* JA180:12-17 ("[T]hey are between a rock and a hard place here.").

The district court subsequently issued a preliminary injunction order, as well as an accompanying opinion and then an order "clarify[ing]" the preliminary injunction, over several days in mid-April. *See* JA961, JA966, JA1011. As clarified by the district court, the injunction requires that Citibank "disburse any funds properly incurred since the mid-February suspension of Plaintiffs' funds." JA1014. The district court's opinion did not focus on plaintiffs' claims against Citibank; the opinion discussed those claims in only approximately one of the opinion's 38 pages. *See* JA996. It reasoned that while Citibank "performed its obligations under the FAA in accordance with its responsibilities as a financial agent of the United States,"

Citibank could nevertheless be enjoined because "the instructions it received were not lawful." *Id.*

## ARGUMENT

Although Citibank defers to the government with respect to most factors relating to a preliminary injunction, Citibank notes that preliminary injunctive relief is "an 'extraordinary and drastic remedy'" that is "never [] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). "To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Courts must also be "wary" when preliminary injunctive relief (like requiring Citibank to disburse funds here) would "disrupt[], rather than preserve[] the status quo." *Hanson v. District of Columbia*, 120 F.4th 223, 247 (D.C. Cir. 2024).

## I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS AGAINST CITIBANK, BECAUSE CITIBANK HAS COMPLIED WITH ITS CONTRACTUAL OBLIGATIONS.

"In order to obtain a preliminary injunction, a party must show … a substantial likelihood of success on the merits," *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015), with the result that "failure to show a likelihood of success

on the merits alone is sufficient to defeat the motion," *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021).  Plaintiffs do not show a likelihood of success on the merits with respect to their breach-of-contract claims against Citibank.

### A.    The FAA and Account Control Agreements Must Be Read Consistently With One Another.

Plaintiffs' contractual claims allege that Citibank breached the account control agreements that Citibank maintains with each Plaintiff. *See, e.g.*, JA354-357.  Those claims will not succeed because plaintiffs fail to read their account control agreements in conjunction with the terms of the FAA.   The account control agreements acknowledge that Citibank's role is to "act as a financial agent of the United States."  JA71.  The FAA is the basis for the account control agreements: the FAA directs Citibank to "establish controlled accounts" for each plaintiff and enter into "account control agreements with each of the Prime Recipients."  ECF 21 at Ex. A § I.A.1.i.

The FAA also makes clear that Citibank must follow the FAA—and not just the account control agreements—when taking actions relating to grantees' accounts. In a section titled "Relationship with Account Holder," the FAA provides that "Each Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and *subject to*, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant

agreement *and the conditions and restrictions detailed in this Exhibit A* [to the FAA]." *Id.* at Ex. A I.A.1.iv. (emphasis added).

Thus, the FAA and the account control agreements are "interrelated agreements" that must be "read together … 'in harmony.'" *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023). The account control agreements are governed by either federal or New York law, as well as New York's version of the Uniform Commercial Code. *See* JA71 § 1(c), JA75 § 11. Federal contract cases hold that "[w]here several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together." *Friedman v. Manfuso*, 620 F. Supp. 109, 117 (D.D.C. 1985); *see also* Restatement (Second) of Contracts § 202(2) (1981) ("[A]ll writings that are part of the same transaction are interpreted together."). Similarly, "[u]nder New York … law documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek Inc. v. Int'l Bus. Machs. Corp.*, 2024 WL 663340, at *3 n.3 (D.D.C. Feb. 16, 2024); *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278 (D.D.C. 2021) (reading contract "together with … record of decision and … mining plan"); *Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 134 (D.D.C. 2018) (contract

provisions must be interpreted "not in isolation but in the light of the obligation as a whole" (quotations omitted)).

### B. Citibank Complied With Its Contractual Obligations.

Citibank's conduct accorded with the FAA and the account control agreements, as those agreements must be understood under the FAA. The FAA requires that Citibank "implement account controls … as instructed by EPA." ECF 21 at Ex. A § I.B. The FAA also provides that Citibank must "comply with all lawful instructions or directions received from Treasury," *id.* § 5.B.iv, which may be issued "through bulletins, letters, or other communications," *id.* at § 3.D. And the FAA also provides that Citibank "owes a fiduciary duty of loyalty … to the United States," and must "act at all times in the best interests of the United States." *Id.* at § 5.A.

Citibank complied with its obligations: Citibank implemented account controls in compliance with the Department of Treasury's instructions on March 4, 2025 as well as the Department of Treasury's and EPA's instructions on March 10, 2025. *See* Background at B, *supra*. Even plaintiffs assert only that Citibank acted due to the government's "efforts to freeze Plaintiff's funds," "Treasury['s] direct[ing] Citibank to continue to refrain from processing payments," and EPA and Treasury's "direct[ing] Citibank to freeze Plaintiff's assets." *See* JA313, JA317, JA333. Yet Citibank cannot have breached its contractual obligations by following these instructions: Citibank was ***required*** to follow the Government's instructions

by the plain terms of the FAA, which mandates that Citibank "act at all times in the best interests of" the government, and "comply with all lawful instructions or directions received from Treasury." ECF 21 §§ 5.A, 5.B.iv.

Nor is there merit to the theory that Citibank should have ignored the government's instructions because those instructions "were not lawful." JA996. Neither the FAA nor the account control agreements vests Citibank with authority to second-guess the lawfulness of the government's instructions. Rather, the FAA requires that Citibank "construe the terms of th[e] FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States." ECF 21 § 5.B.ii.

The account control agreements similarly provide that Citibank "shall be entitled to rely upon any instruction, notice, [or] request … delivered to it without being required to determine the authenticity or validity thereof," and "shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation … any act of any governmental authority …)." JA73 § 6.b. Such language is powerful reason for holding that plaintiffs do not establish any likelihood of success on the merits of their contractual claims against Citibank. *See, e.g.*, *Goodrich v. Bank of Am., N.A.*, 2024 WL 341064, at *7 (D.D.C. Jan. 30, 2024) ("[T]he language here sufficiently

forecloses claims for liability—whether of a fiduciary nature or otherwise—if the Bank followed Goodrich's instructions.").

## II.   IF THE COURT DETERMINES THAT IT LACKS JURISDICTION OVER CLAIMS AGAINST THE GOVERNMENT, THEN CLAIMS AGAINST CITIBANK SHOULD BE DISMISSED OR STAYED.

Separately, if the Court holds that it lacks jurisdiction over plaintiffs' claims against the government, then that holding would supply an additional reason to hold that plaintiffs lack a likelihood of success on the merits against Citibank.  The government defendants maintain that there is no "waiver of sovereign immunity by the United States as to specific performance for breach of contract."  ECF 16 at 19 (EPA TRO Opp).  The government defendants have thus asserted that claims against them must proceed only in "[t]he United States Court of Federal Claims."  *Id.* at 15. Yet if the government has sovereign immunity against claims requiring the government to perform a contract, then Citibank will be entitled to derivative sovereign immunity as well.

The doctrine of derivative sovereign immunity protects "agents of the sovereign … from liability for carrying out the sovereign's will."  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) (CMS contractor protected by derivative sovereign immunity).  The doctrine "applies … when a contractor takes actions that are authorized and directed by the Government of the United States, and performed pursuant to the Act of Congress authorizing the

agency's activity." *In re O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 69, 442 (D.C. Cir. 2019) (quotations omitted).  The critical inquiry is whether the defendant acted at the government's direction: "derivative sovereign immunity ensures that there is no liability on the part of the contractor who simply performed as the Government directed."  *Id.* (quotations omitted).

That is the case here:  Citibank has done nothing more than act at the behest and direction of its principal, the United States government.  Plaintiffs concede as much.   JA300 (arguing Citibank acted at the government's "behest" and "direc[tion]").   Having done nothing more than comply with governmental directives, derivative sovereign immunity will apply to plaintiffs' contract claims against Citibank.

The Court should therefore remand with instructions that Citibank be dismissed to the extent jurisdiction over plaintiffs' claims against the government lies in the Court of Claims.  Citibank will be immune to claims for specific performance or damages in federal district courts to the same extent the government is immune.  Plaintiffs' contract claims also independently fail under the account control agreement's express carve-out for liability arising from "act[s] of any governmental authority."   JA73 § 6.b.[1]   And Citibank cannot be sued (for any

---

[1] Certain plaintiffs have also brought tort claims (for replevin and conversion) against Citibank (but have not argued that these claims support preliminary injunctive relief).  These claims also fail as a matter of law on derivative sovereign

remedy) in the Court of Claims. "[I]t has been uniformly held, upon a review of the statutes creating the court [of Claims] and defining its authority, that its jurisdiction is confined to … suits brought … against the United States … and if the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the court. … [T]he Court of Claims … is without jurisdiction of any suit brought against private parties." *United States v. Sherwood*, 312 U.S. 584, 588 (1941); *see, e.g.*, *Sepehry-Fard v. United States*, 2022 WL 17335931, at *1 (Fed. Cl. Nov. 30, 2022) (similar).

Additionally, and even if Citibank is not dismissed, at a minimum litigation in the district court should not continue against Citibank alone. Citibank is not the focus of plaintiffs' claims. *Compare* JA320-353 (claims against the government), *with* JA354-JA357 (claims against Citibank); *see also* JA201:7-15 ("Citibank, obviously, is in the middle of all of this."). Dismissing parties like Citibank is appropriate where "[t]he Court of Federal Claims is actively wresting with the issues presented by this Plaintiff and others." *Entines v. United States*, 495 F. Supp. 2d 84, 86 (D.D.C. 2007). At minimum, the Court should instruct the district court to stay litigation against Citibank while claims against the government are decided. Practical and judicial economy reasons "apply forcefully" when parties seek stays

---

immunity grounds. *See, e.g.*, *Taylor Energy Co. v. Luttrell*, 3 F.4th 172, 175-178 (5th Cir. 2021) (applying derivative sovereign immunity to tort claims).

pending the results of parallel litigation, *see Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 287 (D.D.C. 2016) (granting stay), particularly where the parallel litigation here would be against the government, whose directives are the cause of the conduct on which plaintiffs' claims are based.

## CONCLUSION

The Court should refrain from holding that plaintiffs have a likelihood of success on the merits of their contract claims against Citibank. If the Court determines that claims against the government must be heard in the Court of Claims, then claims against Citibank should be dismissed or stayed.

Dated: May 5, 2025

Respectfully submitted,

*/s/ K. Winn Allen*

K. Winn Allen, P.C.
  *Counsel of Record*
Joseph C. Schroeder
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

**Attorney For Defendant-Appellant Citibank, N.A.**

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and this Court's April 28, 2025 order because it contains 3,338 words, excluding the parts of the brief exempted by Fed. R. App. P 32(f), as counted using the word-count function on Microsoft Word software. When combined with the brief of the government appellants, this totals to less than the 13,000 words permitted by the April 28, 2025 order.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

May 5, 2025                         */s/ K. Winn Allen*
                                       K. Winn Allen