**ORAL ARGUMENT SCHEDULED MAY 19, 2025**
**No. 25-5122**

IN THE
# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

CLIMATE UNITED FUND, *et al.*,

*Plaintiffs-Appellees,*

v.

CITIBANK, N.A., *et al.*,

*Defendants-Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

**BRIEF OF SAMUEL R. BAGENSTOS AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES**

———————————————

Samuel R. Bagenstos
625 S. State St.
Ann Arbor, MI 48109
(857)231-1663
sbagen@gmail.com
*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Except for *amicus curiae* Samuel R. Bagenstos, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellant.

References to the ruling at issue appear in the Brief for Appellant.

*Amicus* is unaware of any related cases pending before this Court or any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES................................................................................i

TABLE OF AUTHORITIES ..................................................... iii

GLOSSARY OF ABBREVIATIONS............................................. v

INTEREST OF THE *AMICUS CURIAE* ..................................... 1

SUMMARY OF ARGUMENT ................................................... 2

ARGUMENT ....................................................................... 3

THE GOVERNMENT'S DEFENSE AGAINST THE IMPOUNDMENT CLAIM RESTS ON A FUNDAMENTAL MISUNDERSTANDING OF APPROPRIATIONS LAW ................. 3

A. Because the GGRF Appropriation Has Expired, EPA Cannot Reobligate the Funds at Issue in This Litigation......3

B. The Courts Cannot Issue an Injunction Requiring EPA to Reobligate the GGRF Funds ................................... 11

CONCLUSION..................................................................... 14

CERTIFICATE OF COMPLIANCE ............................................ 15

CERTIFICATE OF SERVICE .................................................. 16

# TABLE OF AUTHORITIES

*Cases*

*City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421 (D.C. Cir. 1994) ........................................................................................ 4, 13

*Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020) ........ 7

\*National Association of Regional Councils v. Costle*, 564 F.2d 583 (D.C. Cir. 1977) ............................................................................. 3, 11, 12, 13

*Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) ................... 5, 12

S*titzel-Weller Distillery v. Wickard*, 118 F.2d 19, 24 (D.C. Cir. 1941) ... 12

\*West Virginia Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570 (D.C. Cir. 1984) ................................................................. 2, 4, 13


*Constitutional Provisions*

U.S. Const., Art. I, § 9, cl. 7 ................................................................ 5, 12


*Statutes*

31 U.S.C. § 1552 ...................................................................................... 6

31 U.S.C. § 1553 ...................................................................................... 6

42 U.S.C. § 7434 ...................................................................................... 6


*Rules*

Fed. R. App. P. 29 .................................................................................... 2


*Administrative Decisions*

*Continued Availability of Expired Appropriation for Additional Project Phases*, B-286929 (GAO, Apr. 25, 2001) ..................................... 8, 9, 10

*Expired Funds & Interagency Agreements Between GovWorks & the Dep't of Def.*, B-308944 (GAO, July 17, 2007) ....................................10

*Magnavox—Use of Contract Underrun Funds*, B-207433 (GAO, Sept. 16, 1983)........................................................................................10

*Nat'l Mediation Bd. Compensating Neutral Arbs. Appointed to Grievance Adjustment Boards Under the Ry. Lab. Act*, B-305484 (GAO, June 2, 2006) ............................................................................7

*Off. of Nat. Res. Revenue-Coop. Agreements*, B-321297 (GAO, Aug. 2, 2011)........................................................................................5

*The Anti-Deficiency Act Implications of Consent by Gov't Emps. to Online Terms of Serv. Agreements Containing Open-Ended Indemnification Clauses*, 2012 WL 5885535 (O.L.C. Mar. 27, 2012) ..7

*U.S. Dep't of Agric.—Application of Recording Statute, Bona Fide Needs Statute, & Antideficiency Act to Supplemental Nutrition Assistance Program Benefits*, B-336036 (GAO, Feb. 12, 2025) ............................8

*Other Authorities*

GAO, A GLOSSARY OF TERMS USED IN THE FEDERAL BUDGET PROCESS (2005)....................................................................................7, 10

*GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW (3d ed. 2004)..............................................................................5, 6, 8, 13

* Authorities upon which we chiefly rely are marked with asterisks.

iv

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| EPA | Environmental Protection Agency |
| GAO | Government Accountability Office |
| GGRF | Greenhouse Gas Reduction Fund |

## INTEREST OF THE *AMICUS CURIAE*

Samuel R. Bagenstos is the Frank G. Millard Professor of Law at the University of Michigan Law School and the Arlene Susan Kohn Professor of Social Policy at the University of Michigan Gerald R. Ford School of Public Policy.[1]  *Amicus* is an expert in budget and appropriations law and served from 2021 to 2022 as the General Counsel to the federal Office of Management and Budget.  He also served from 2022 to 2024 as the General Counsel to the United States Department of Health and Human Services.  He files this brief to address a key aspect of the plaintiffs' claim that the Environmental Protection Agency has unlawfully impounded funds Congress appropriated to the Greenhouse Gas Reduction Fund.

In particular, the Government argues that EPA has not impounded the money appropriated to the GGRF because the agency intends to reobligate that money to other grantees.  This brief shows that EPA cannot lawfully reobligate GGRF money to other grantees:  Because the GGRF appropriations have now expired, foundational principles of

---

[1] *Amicus* files this brief in his individual capacity.  Institutional affiliations are provided for identification purposes only.

appropriations law allow those funds to be used only to satisfy existing obligations and not to make new obligations.[2]

## SUMMARY OF ARGUMENT

The Government's substantive defense against the plaintiffs' impoundment claim rests on a basic misunderstanding of appropriations law. The EPA says that it has not impounded the money Congress appropriated to the Greenhouse Gas Reduction Fund because, once the agency succeeds in taking back the plaintiffs' grants, it intends to reobligate the money to new grantees.

But whether or not the EPA truly intends to reobligate the money to new grantees, it cannot lawfully do so. Congress specifically made the GGRF appropriations available for obligation only until September 30, 2024. It is an "elementary principle" of appropriations law that an agency may not make new obligations of funds from an appropriation after its expiration date. *West Virginia Ass'n of Cmty. Health Centers,*

---

[2] Pursuant to Fed. R. App. P. 29(a)(4)(E), *Amicus* states: No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. And no person, other than the *Amicus* (who is filing the brief *pro se*) contributed money that was intended to fund preparing or submitting the brief.

*Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984). That is true even if the agency deobligates funds after the end of its period of availability.

The Government hints that an injunction could require it to reobligate GGRF money to new grantees. But this Court has specifically held that an injunction in a suit brought after an appropriation expires cannot revive that appropriation. *National Association of Regional Councils v. Costle*, 564 F.2d 583, 588–89 (D.C. Cir. 1977). And no party before this Court would have standing to seek such an injunction in any event.

## ARGUMENT

### THE GOVERNMENT'S DEFENSE AGAINST THE IMPOUNDMENT CLAIM RESTS ON A FUNDAMENTAL MISUNDERSTANDING OF APPROPRIATIONS LAW

#### A. Because the GGRF Appropriation Has Expired, EPA Cannot Reobligate the Funds at Issue in This Litigation

The Government contends that it has not unconstitutionally impounded money Congress appropriated to the Greenhouse Gas Reduction Fund. Once EPA succeeds in taking back the money it previously granted, the Government asserts, the agency "intends to act expeditiously to re-obligate the grant funds under new agreements." Gov't Opening Br. 2.

3

EPA's expressed intention to reobligate the grant funds forms the centerpiece of its argument that it has complied with the Constitution. The Government's brief sneaks the point into its formulation of the question presented. See *id.* at 4 (third Question Presented asking whether "EPA's decision to terminate the grant agreements and re-obligate the funds violates the Constitution"). And it refers to this expressed intention no less than 11 times. See *id.* at 2, 4, 12, 16, 36, 37 (three times), 38, 39, 41. It is fair to say that the expressed intention to reobligate the money constitutes the Government's only substantive argument against the claim that it has unconstitutionally impounded funds appropriated to the GGRF.

But that argument contravenes what this Court has called an "elementary principle" of appropriations law—that "a federal agency's budget authority lapses on the last day of the period" for which Congress made an appropriation available. *West Virginia Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984). Accord *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994). "If an agency fails to obligate its annual funds by the end of the fiscal year for which they were appropriated, ***they cease to be***

4

***available for incurring and recording new obligations*** and are said to have 'expired.'" 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 5-6 (3d ed. 2004) (emphasis added). See also *Off. of Nat. Res. Revenue-Coop. Agreements*, B-321297 at 3 (GAO, Aug. 2, 2011) (noting that "an appropriation available for a fixed period of time … expires at midnight on the last day of its period of availability and is no longer available for incurring new obligations"); 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-71 (A "1-year or multiple year appropriation expires on the last day of its period of availability and is no longer available to incur and record new obligations.").

That rule is hardly obscure. To the contrary, it directly flows from the Constitution's command that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., Art. I, § 9, cl. 7. As the Supreme Court has explained, that text prohibits the Executive Branch from spending money in a way that conflicts with the terms of a statute adopted by Congress. See *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990).

In making its appropriations to the Greenhouse Gas Reduction Fund, Congress stated that the money would "remain available until

September 30, 2024." 42 U.S.C. § 7434(a)(1), (2), (3). The appropriation thus expired on September 30 of last year. That was the last date on which EPA could make new obligations from the GGRF. EPA is thus now legally barred from making new obligations from the account.

After an appropriation expires, the account remains open for five years. 31 U.S.C. § 1552(a). At that point, however, the appropriation can no longer be used to make new obligations; it can be used only "to adjust and make payments to liquidate liabilities arising from obligations ***made within the fiscal year for which the funds were appropriated***." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-6 (emphasis added). See 31 U.S.C. § 1553(a) (allowing an open but expired appropriations account to be used only "for recording, adjusting, and liquidating obligations properly chargeable to that account").

So, if an agency has made an obligation before the appropriation expires, it has five years to actually disburse the money that would satisfy ("liquidate") the obligation. See 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-72. An obligation need not be paid out immediately. Rather, the obligation is simply "a 'definite commitment that creates a legal liability of the government for the payment of goods

and services ordered or received, or a legal duty … that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States.'" *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 307–08 (2020) (quoting GAO, A GLOSSARY OF TERMS USED IN THE FEDERAL BUDGET PROCESS 70 (2005)).[3]  The grant award itself constitutes the obligation, and "[p]ayment may be made immediately or in the future."  GAO, GLOSSARY, *supra*, at 70.  See also *Nat'l Mediation Bd. Compensating Neutral Arbs. Appointed to Grievance Adjustment Boards Under the Ry. Lab. Act*, B-305484 at 4 (GAO, June 2, 2006) ("When an agency takes some action that creates a legal liability, the agency obligates the United States government to make a payment. The actual disbursement of money typically follows at some later time."). "Incurring an obligation, of course, is different from paying one." *Maine Cmty. Health Options*, 590 U.S. at 308.

During the five-year period, the agency may also use the expired account "to make legitimate obligation adjustments, that is, to record

---

[3] The Executive Branch itself has endorsed this formulation of the "well-understood meaning" of an obligation "in fiscal law." *The Anti-Deficiency Act Implications of Consent by Gov't Emps. to Online Terms of Serv. Agreements Containing Open-Ended Indemnification Clauses*, 2012 WL 5885535, at *5 (O.L.C. Mar. 27, 2012).

previously unrecorded obligations and to make upward adjustments in previously under recorded obligations." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-72. What it may not do, however, is make new obligations from the account. That is because "[o]bligated budget authority is available only to liquidate liabilities (*i.e.*, obligations) legally incurred during the period for which the appropriation is available." *Continued Availability of Expired Appropriation for Additional Project Phases*, B-286929 at 3 (GAO, Apr. 25, 2001). "Unless otherwise provided, an agency may not use an appropriation to pay for obligations that are properly incurred after the appropriation expires." *U.S. Dep't of Agric.—Application of Recording Statute, Bona Fide Needs Statute, & Antideficiency Act to Supplemental Nutrition Assistance Program Benefits*, B-336036 at 8 (GAO, Feb. 12, 2025).

If an agency deobligates funds *after* the period of availability ends, the same rules apply: The money goes into the expired account and may be used to satisfy or adjust obligations that were made before the appropriation expired. But it may not be used to make new obligations. See 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-80 ("If an agency deobligates the appropriation after the expiration of the

period of availability, the deobligated amount is not available to incur a new obligation, but is available to cover appropriate adjustments to obligations in the expired account.").

The Government Accountability Office has enforced this rule on numerous occasions. In *Continued Availability of Expired Appropriation for Additional Project Phases*, *supra*, for example, a unit of the Department of the Army obligated $17.5 million of its Fiscal Year 1997 appropriation for the first phase of a three-phase project to create a classified information management system. See *id.* at 2. In the event, however, the first phase cost only $8.5 million. See *id.* During the next fiscal year, the Department sought to deobligate the $9 million unspent balance from Fiscal Year 1997 and reobligate it to the second and third phases of the project. See *id.*

GAO concluded that the Department "cannot charge payments for additional phases of the project to the balance of the expired, unliquidated fiscal year 1997 appropriation." *Id.* at 4. GAO acknowledged that the Department could have used its 1997 appropriation to pay for all three phases of the project if it had obligated the money for those phases during the fiscal year. But the Department

"did not take appropriate action to satisfy that need during the fiscal year by contracting (*i.e.*, incurring valid obligations) for additional phases during the period of availability of the appropriation." *Id.* Even though the five-year period for liquidating obligations on the Fiscal Year 1997 account had not yet elapsed, the Department could not make a new obligation on that account after the end of that fiscal year. See *id.*[4]

If the EPA were to deobligate money from the GGRF and then seek to reobligate it, the agency would stand in exactly the same position as the Department of the Army did in the *Continued Availability* case: Having deobligated funds after their appropriation expired, it could not use those funds for new obligations (which is what a "reobligation" is, see GAO, GLOSSARY, *supra* at 85). It could use those deobligated funds only to liquidate and adjust existing obligations entered into before the

---

[4] See also *Expired Funds & Interagency Agreements Between GovWorks & the Dep't of Def.*, B-308944 at 8 (GAO, July 17, 2007) (agency "improperly used the expired funds to enter into" contracts when it incurred obligations for those contracts in Fiscal Year 2006 but used funds appropriated for previous fiscal years to pay for the obligations); *Magnavox—Use of Contract Underrun Funds*, B-207433 at 3 (GAO, Sept. 16, 1983) (noting that "[c]ertainly the Army could have used underrun funds to procure additional viewers at any time during the period those funds remained available for obligation" but concluding that it could not use "expired appropriations" for "an item for which a valid obligation was not incurred" during the period of availability).

appropriations expired. Thus, even if EPA *wanted* to reobligate the GGRF money should it prevail in this litigation, the agency would not be legally able to take that step.

## B. The Courts Cannot Issue an Injunction Requiring EPA to Reobligate the GGRF Funds

Although EPA does not acknowledge the basic legal flaw in its position, it does half-heartedly suggest (at 39) that the district court could issue "an injunction requiring EPA to re-obligate the grant funds and thereby continue the grantmaking process." But EPA does not cite any authority allowing such an injunction. And there are two basic errors in the suggestion that an injunction allowing reobligation would be available here.

First, this Court has long held to the contrary. The decision in *National Association of Regional Councils v. Costle*, 564 F.2d 583, 588–89 (D.C. Cir. 1977), held that a court has the power to issue an injunction permitting new obligations only if the suit was brought before the relevant appropriation expired. If a court could not enjoin the expiration of the appropriation in such a case, *Costle* explained, the Executive Branch could unlawfully impound funds and then avoid any effective judicial review simply by running out the clock until the end of the fiscal

11

year: The proposition "that a court may act to prevent the expiration of budget authority which has not terminated at the time suit is filed," *Costle* said, is "completely consistent with the accepted principle that the equity powers of the courts allow them to take action to preserve the status quo of a dispute and to protect their ability to decide a case properly before them." *Id.* at 588.

But things are very different when litigation is not filed until after an appropriation expires. In such circumstances—which is the case here—"there is no underlying congressional authorization for the court to preserve. It has vanished, and any order of the court to obligate public money conflicts with the constitutional provision vesting sole power to make such authorizations in the Congress." *Id.* at 589. The Supreme Court has specifically held that "[a]ny exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *Richmond*, 496 U.S. at 425. See also S*titzel-Weller Distillery v. Wickard*, 118 F.2d 19, 24 (D.C. Cir. 1941) (Article I, Section 9, Clause 7 overrides any right to "judicial enforcement of whatever equities may exist").

As GAO notes, "[t]he principles set forth in *Costle* have been followed and applied in several later cases."  1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, *supra*, at 5-85 (collecting cases).  For example, this Court's decisions in *West Virginia Community Health Centers*, 734 F.2d at 1576–77, and *City of Houston*, 24 F.3d at 1426, specifically reaffirmed *Costle*.  Because this lawsuit was not filed until after the relevant appropriation expired, the court lacks power to issue an injunction allowing new obligations.

Second, there is no party before the Court who would have standing to seek such an injunction even if the Court had the power to issue it.  The plaintiffs brought this suit to redress the injury that occurred when the EPA sought to pull back grant funds that had already been obligated to them.  An order "requiring EPA to re-obligate the grant funds," Opening Br. 39, would exacerbate rather than redress their injury.[5]  And the defendants obviously lack standing to seek an injunction against themselves.  If it were otherwise, agencies could evade the fundamental rule against new obligations after the expiration of an appropriation by

---

[5] By contrast, the relief the plaintiffs *actually* requested poses no redressability problem.  That relief would prevent EPA from interfering with plaintiffs' receipt of the money that EPA already obligated to them.

simply going into court and seeking permission to ignore that rule. That is not how our federal court system—which can issue relief against a party only if doing so will redress an injury of an adverse party—works.

***

In short, if it succeeds in taking back the GGRF grant funds it has already obligated to plaintiffs, EPA cannot legally reobligate those funds. Its efforts to block the GGRF grants thus constitute a refusal to spend congressionally appropriated funds.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos
625 S. State St.
Ann Arbor, MI 48109
(857)231-1663
sbagen@gmail.com
Counsel for *Amicus Curiae*

14

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the D.C. Circuit Rules. The document contains 2,819 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

<u>/s/ Samuel R. Bagenstos</u>
Counsel for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, the foregoing was filed and served upon all counsel of record electronically by filing a copy of the document with the Clerk through the Court's ECF system.

/s/ Samuel R. Bagenstos
Counsel for *Amici Curiae*
