**[ORAL ARGUMENT SCHEDULED MAY 19, 2025]**

Nos. 25-5122, 25-5123

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

---

CLIMATE UNITED FUND, *ET AL.*,

*Plaintiffs-Appellees*,

v.

CITIBANK, N.A., *ET AL.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia

---

**BRIEF OF *AMICUS CURIAE*
PROFESSOR TOBIAS BARRINGTON WOLFF
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

---

ADRIANA S. KOSOVYCH
MARGUERITE MCGOWAN STRINGER
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York  10022
Tel:  212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com
MStringer@ebglaw.com

PAUL DECAMP
  *Counsel of Record*
KATHLEEN BARRETT
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com
KBarrett@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *Amicus Curiae* Professor Tobias Barrington Wolff certifies as follows:

### A.    Parties and *Amici*

Except for the *amicus* filing this brief; Michael Swack, Paul Yoo, Ellen Lurie Hoffman, and Eric Hangen, who are participating as *amici curiae* with the consent of all parties; and Samuel R. Bagenstos, who has moved for leave to participate as an *amicus curiae*, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Briefs for Defendants-Appellants.

### B.    Rulings Under Review

References to the rulings at issue appear in the Briefs for Defendants-Appellants.

### C.    Related Cases

*Amicus* is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Paul DeCamp*
Paul DeCamp
*Counsel for* Amicus Curiae
*Tobias Barrington Wolff*

## DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, *Amicus Curiae* Professor Tobias Barrington Wolff certifies that *amicus* is a natural person and as such no further Rule 26.1 disclosure statement is required.

*/s/ Paul DeCamp*
Paul DeCamp
*Counsel for* Amicus Curiae
*Tobias Barrington Wolff*

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

All parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), *amicus* certifies that a separate brief is necessary to present the important issues covered by this brief. *Amicus* is not aware of any other *amicus* brief addressing these issues—which do not duplicate the legal arguments presented by the parties—and certifies pursuant to D.C. Circuit Rule 29(d) that joinder in a single brief with other *amici* would be impracticable.

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS

No party's counsel authored any part of this brief, nor did any party or party's counsel contribute any money used or intended to fund the preparation or submission of this brief.  No person other than *amicus curiae* and his counsel contributed any money that was used or intended to fund the preparation or submission of this brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ...................................................................................... i

DISCLOSURE STATEMENT ................................................... ii

STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING ............................................................. iii

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ................................................................. iv

TABLE OF CONTENTS ........................................................ v

TABLE OF AUTHORITIES .................................................. vii

GLOSSARY ........................................................................ x

STATUTES AND REGULATIONS ......................................... xi

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................................................. 1

SUMMARY OF ARGUMENT ................................................. 2

ARGUMENT ...................................................................... 5

I.  THE SUPREME COURT AND THIS COURT HAVE REJECTED THE GOVERNMENT'S BUT-FOR TEST FOR THE TUCKER ACT IN DISPUTES OVER THE OWNERSHIP AND DISPOSITION OF PROPERTY. ....................................................................... 5

II. THE SUPREME COURT HAS REJECTED BUT-FOR TESTS WHEN ANALYZING FEDERAL SUBJECT-MATTER JURISDICTION. ..................... 14

III.  THE GOVERNMENT'S BUT-FOR APPROACH TO TUCKER ACT
      JURISDICTION IS OUT OF STEP WITH CLAIM PRECLUSION AND
      THE BAR ON PARALLEL ACTIONS IN THE COURT OF FEDERAL
      CLAIMS...............................................................................25

CONCLUSION ..............................................................................28

CERTIFICATE OF COMPLIANCE.........................................30

CERTIFICATE OF SERVICE....................................................31

ADDENDUM ..................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Abare v. United States,*
    167 Fed. Cl. 478 (2023) ....................................................... 27

*Bailey v. United States,*
    54 Fed. Cl. 459 (2002) ......................................................... 27

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) .............................................................. 23

*Cunningham v. United States,*
    48 F.3d 1172 (Fed. Cir. 2014) ............................................. 27

*Department of Education v. California,*
    145 S. Ct. 966 (2025) (per curiam) ............................... 13, 14

*Department of Homeland Security v. Regents of the
    University of California,*
    591 U.S. 1 (2020)................................................................. 21

*Grable & Sons Metal Products v. Darue Engineering &
    Manufacturing,*
    545 U.S. 308 (2005)............................................................. 19

*Gully v. First National Bank,*
    299 U.S. 109 (1936)..................................... 15, 16, 17, 23

*Gunn v. Minton,*
    568 U.S. 251 (2013)............................. 17, 18, 19, 20, 23

*Horne v. Department of Agriculture,*
    569 U.S. 513 (2013).............................................................. 23

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018)........................................................ 21, 22

*Kong v. United States,*
    62 F.4th 608 (1st Cir. 2023) ............................................................. 22

*Land v. Dollar,*
    330 U.S. 731 (1947) .............................................. 5, 6, 7, 10, 12, 13, 14

*Martin v. United States,*
    30 Fed. Cl. 542 (1994) ...................................................................... 26

*Megapulse v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ................5, 7, 8, 9, 10, 11, 12, 14, 23, 25

*Mosely v. United States,*
    15 Cl. Ct. 193 (1988) ........................................................................ 26

*Normandy Apartments v. U.S. Department of Housing & Urban*
    *Development,*
    554 F.3d 1290 (10th Cir. 2009) .............................................. 11, 13, 25

*Öztürk v. Hyde,*
    ___ F.4th ___, No. 25-1019, 2025 WL 1318154 (2d Cir. May 7,
    2025) ................................................................................................ 22

*Reno v. American-Arab Anti-Discrimination Committee,*
    525 U.S. 471 (1999) .......................................................................... 21

*Robbins v. U.S. Bureau of Land Management,*
    438 F.3d 1074 (10th Cir. 2006) ......................................................... 12

*Slattery v. United States,*
    635 F.3d 1298 (Fed. Cir. 2011) ......................................................... 24

*U.S. v. Tohono O'Odham Nation,*
    563 U.S. 307 (2011) .......................................................................... 28

## STATUTES

5 U.S.C. § 704 ...................................................................................... 23

8 U.S.C. § 1252(g) .................................................................... 20, 21, 22

28 U.S.C. § 1338(a) ........................................................... 17, 19

28 U.S.C. § 1500 ..................................................................... 28

**OTHER AUTHORITIES**

Restatement (2d) of Judgments § 26(c)(1) .............................. 26

EPA, About the Greenhouse Gas Reduction Fund,
   https://www.epa.gov/greenhouse-gas-reduction-fund/about-
   greenhouse-gas-reduction-fund (website noted as "Last up-
   dated on February 13, 2025") (last visited May 10, 2025)................... 2

# GLOSSARY

| APA | Administrative Procedure Act |
|-----|------------------------------|
| CFC | Court of Federal Claims |
| EEOC | Equal Employment Opportunity Commission |
| EPA | Environmental Protection Agency |
| GGRF or Fund | Greenhouse Gas Reduction Fund |
| HUD | Department of Housing and Urban Development |
| INA | Immigration and Nationality Act |
| IRA | Inflation Reduction Act |
| MSPB | Merit Systems Protection Board |
| OPM | Office of Personnel Management |

## STATUTES AND REGULATIONS

Except for the following, which are set forth in the accompanying addendum to this brief, all applicable statutes, etc. are contained in the Briefs for Defendants-Appellants: 8 U.S.C. § 1252(g); 28 U.S.C. § 1338(a); 28 U.S.C. § 1500.

## STATEMENT OF IDENTITY AND
## INTEREST OF *AMICUS CURIAE*

Tobias Barrington Wolff is the Jefferson Barnes Fordham Professor at the University of Pennsylvania Law School.[1]  Professor Wolff is a scholar in the fields of Civil Procedure, Complex Litigation and the Conflict of Laws.  His work has focused particular attention on the doctrines of federal subject-matter jurisdiction, federal common law, the law of preclusion, and the overlapping analytical foundations of those doctrines. Professor Wolff is committed to the correct application of the law of federal jurisdiction across all different types of disputes.  He respectfully submits this brief in hopes of assisting this Court with its review of these issues.

---

[1]  *Amicus* files this brief in his individual capacity.  Institutional affiliations are provided for identification purposes only.

## SUMMARY OF ARGUMENT

This is a case about property rights and the Government's threat to seize the contents of a bank account.  In 2022, Congress enacted the Inflation Reduction Act ("IRA") and authorized the Environmental Protection Agency to create the Greenhouse Gas Reduction Fund ("Fund").  As EPA's website explains, the Fund establishes a "$27 billion investment to combat the climate crisis by mobilizing financing and private capital for greenhouse gas- and air pollution-reducing projects in communities around the country."[2]  In order to achieve the goal of mobilizing financing and private capital, the Fund structures grant awards so that the full amount of funding is disbursed up front to recipients and deposited in their accounts at Citibank, which serves as the Government's agent in holding the funds for withdrawal by awardees.  This funding structure allows recipients to book grant funds as assets so as to attract investment partners in the commercial market.  Grant recipients must satisfy extensive ongoing contractual and regulatory obligations concerning the manner in which they use those funds and the Government retains a security

---

[2] https://www.epa.gov/greenhouse-gas-reduction-fund/about-greenhouse-gas-reduction-fund (website noted as "Last updated on February 13, 2025") (last visited May 10, 2025).

interest that allows it to guard against misconduct and reclaim the funds in the event of malfeasance.  Subject to those constraints, the money becomes the property of grant recipients as soon as the awards issue.  *See* Memorandum of Law in Support of Plaintiffs' Consolidated Motion for Preliminary Injunction at 4–12 and sources cited therein; Memorandum Opinion at 11–12.[3]

The Government is now threatening to seize and claw back plaintiffs' property because the current administration disagrees with the policies underlying the IRA and the Fund.  Plaintiffs brought this lawsuit to enjoin the Government from carrying out that seizure.  It is not specific performance of the grant contracts that plaintiffs seek; it is protection from the forcible appropriation of their property, which they allege would violate the Administrative Procedure Act, the Appropriations Clause of Article I of the Constitution, the Due Process Clause of the Fifth Amendment and other statutory and regulatory provisions.  These claims belong in a federal district court.  The Tucker Act has no impact on the jurisdiction of district courts to hear plaintiffs' challenge to the threatened

---

[3]  *Amicus curiae* relies for this account of the funding structure on the Statement of Facts contained in plaintiffs' briefing and adopted in the factual findings of the District Court.

seizure of their property and the Court of Federal Claims would have neither jurisdiction to hear those challenges nor power to grant injunctive relief.

The Government attempts to circumvent these propositions by arguing that the Tucker Act prohibits district courts from exercising jurisdiction whenever the ownership or disposition of property is placed in dispute as a result of a contract with the Government. If this property dispute would not exist but for such a contract, the Government says, then the Court of Federal Claims is the only tribunal with power to adjudicate. The Supreme Court and this Court have squarely rejected that kind of categorical interpretation of the Tucker Act in cases involving disputes over the ownership and disposition of property and they have cautioned against but-for reasoning in the analysis of subject-matter jurisdiction across many different settings. The Court of Federal Claims operates on the presumption that Tucker Act jurisdiction will be analyzed in a more judicious and precise fashion.

# ARGUMENT

## I. THE SUPREME COURT AND THIS COURT HAVE REJECTED THE GOVERNMENT'S BUT-FOR TEST FOR THE TUCKER ACT IN DISPUTES OVER THE OWNERSHIP AND DISPOSITION OF PROPERTY.

This Court and the Supreme Court have long made clear that the kind of dispute over ownership and control of property involved in this case does not fall within the exclusive jurisdiction of the Court of Federal Claims merely because a contract was involved in the disbursement or transfer of that property. The ruling of the Supreme Court in *Land v. Dollar*, 330 U.S. 731 (1947), and the decision of this Court in *Megapulse v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), should put that question to rest in this case.

*Dollar* involved a dispute over ownership of shares of common stock that Dollar Steamship and its owners had transferred to the U.S. Maritime Commission pursuant to a 1938 contract with the Government for the resolution of certain debts the company owed and the extension of a loan to the company for operating expenses. Within a few years of entering into this set of agreements Dollar had satisfied all its debts and repaid the loan, leading it to request the return of the stock which it believed the Commission was holding as security. The members of the

5

Commission refused, arguing that Dollar had transferred ownership of the stock outright and the Commissioners had a right to sell it on the market. Dollar brought suit in a U.S. District Court to enjoin the sale of its property and seek its return, claiming that the Commissioners "were unlawfully in possession of respondents' stock and illegally withholding it." *Dollar*, 330 U.S. at 734.

The Commissioners argued in response that because they had come into possession of the stock pursuant to a contract with the U.S. Government the claim for alleged conversion of Dollar's property could only be heard in the Court of Claims. The Supreme Court rejected that argument, holding that Dollar was asserting a claim for ownership of disputed property, not performance or breach of a contract, and hence could not be forced into the Court of Claims and deprived of access to injunctive relief.

> The allegations of the complaint, if proved, would establish that petitioners are unlawfully withholding respondents' property under the claim that it belongs to the United States. That conclusion would follow if either of respondents' contentions was established: (1) that the Commission had no authority to purchase the shares or acquire them outright; or (2) that, even though such authority existed, the 1938 contract resulted not in an outright transfer, but in a pledge of the shares. If respondents are right in these contentions, their claim rests on their right under general law to

> recover possession of specific property wrongfully withheld. At common law, their suit as pledgors to recover the pledged property on payment of the debt would sound in tort.
>
> . . .
>
> [P]ublic officials may become tortfeasors by exceeding the limits of their authority. And where they unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment. The dominant interest of the sovereign is then on the side of the victim, who may bring his possessory action to reclaim that which is wrongfully withheld.

*Dollar*, 330 U.S. at 735–736; 738. Dollar's argument that the Commission was illegally retaining and threatening to sell its property depended on its assertion that "the 1938 contract" under which the company had turned over its stock "resulted not in an outright transfer, but in a pledge of the shares." *Id*. at 735–736. That central element of the plaintiff's proof did not change the fact that its claim was a "possessory action" for restoration of property rights and hence could not be "relegated to the Court of Claims." *Id*. at 738.

In *Megapulse* this Court applied the holding in *Dollar* to another dispute over control and disposition of property, this time involving the Government's threatened release of trade secrets owned by Megapulse

7

that had come into the Government's possession in conjunction with a series of contracts for the development of the company's long-range navigation technology.  When Megapulse sued to enjoin the release of its secrets, the government argued that only the Court of Claims could entertain such an action because the company's property was in the Government's possession as the result of contracts between the parties and, according to the Government, those contracts gave it the right to reveal the technical data to commercial competitors.  This Court disagreed, explaining that it was not the sequence of events that controlled the jurisdictional analysis nor even the likelihood that a court might have to address the terms of the contract in resolving the dispute.  Rather it was the nature of the claim plaintiff framed in its complaint that determined the jurisdiction of the district court.

> Megapulse has gone to great lengths to demonstrate that it is not relying on the contract at all. It does not claim a breach of contract, it has limited its request for relief to only [certain key] documents, it seeks no monetary damages against the United States, and its claim is not properly characterized as one for specific performance.  Appellant's position is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act.  It is actually the Government, and not Megapulse, which is relying on the contract,

8

> attempting to show that the Coast Guard lawfully came into possession of the property and is empowered by the contract to put the entrusted information out for commercial use. As indicated above, we do not accept the Government's argument that the mere existence of such contract-related issues must convert this action to one based on the contract.

*Megapulse*, 672 F.2d at 969.

In the present case, there appears to be no dispute that plaintiffs own the funds currently deposited in their Citibank accounts. *See* Brief of Appellant at 7–8 (describing the structure by which grant funds were awarded up front and deposited into plaintiffs' accounts and describing the arrangement as "the first of its kind"). Plaintiffs are subject to constraints on how they may use those funds and the Government retains a security interest to guard against malfeasance by awardees but the Government makes no argument that plaintiffs have violated the terms of their grants or engaged in malfeasance. As the district court explained, the Government has conceded that its demand to claw back the funds already disbursed to plaintiffs "had nothing to do with Plaintiffs' performance under the grant," Dist. Ct. Opinion at 17, and plaintiffs do "not claim breach of contract." *Megapulse*, 672 F.2d at 969. This is a dispute over the threatened seizure of property, not performance or non-

performance of a contract. The Government claims the prerogative to appropriate plaintiffs' funds because of a policy disagreement with the statute that authorized the grants in the first place and plaintiffs seek an injunction prohibiting the Government from seizing their property. *See also* Brief for Appellant at 6 (pointing to political associations of plaintiffs as apparent justification for the administration's attempt to claw back their awards). When agencies of the U.S. government "unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment," *Dollar*, 330 U.S. at 738, and when it "is actually the Government . . . which is relying on the contract, attempting to show that [it] is empowered by the contract to" seize the plaintiff's property, "the mere existence of such contract-related issues [do not] convert this action to one based on the contract." *Megapulse*, 672 F.2d at 969.

Other federal courts have come to the same conclusion, some of them taking guidance from this Court's decision in *Megapulse*. For example, the Tenth Circuit cited this Court in a dispute between a commercial apartment complex and the Department of Housing and Urban

Development over HUD's termination of a contract that obligated the agency to pay Section 8 subsidies for low-income tenants. *See Normandy Apartments v. U.S. Dep't of Housing & Urb. Dev.*, 554 F.3d 1290 (10th Cir. 2009). The apartment complex (Normandy) alleged that HUD violated its own regulations when it terminated the subsidies and brought suit in a federal district court requesting an injunction to prevent the agency from abating future payments. The Government argued any payment obligations depended on the existence of the contract and could only be enforced in the Court of Federal Claims but the Tenth Circuit rejected that but-for reasoning. Even though "the regulatory violations that Normandy asserts implicate its contractual relationship with HUD" and "plaintiff could not even assert its claim if it did not have a contract with HUD," the court explained, "this does not convert a claim asserting rights based on federal regulations into one which is, 'at its essence,' a contract claim." *Id.* at 1298 (cleaned up). Rather, when "the source of rights asserted is constitutional, statutory, or regulatory in nature, the fact that resolution of the claim requires some reference to contract does not magically 'transform [the] action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have.'" *Id.* (citing *Megapulse*, 672

F.2d at 968).  As another court of the Tenth Circuit had earlier held, "lit-
igants may bring statutory and constitutional claims in federal district
court even when the claims depend on the existence and terms of a con-
tract with the government."  *Robbins v. U.S. Bureau of Land Mgmt.*, 438
F.3d 1074, 1083–84 (10th Cir. 2006).

The Government's attempts to circumvent these precedents rely on
this same disfavored but-for reasoning.  Throughout their brief the Gov-
ernment insists that the present dispute would not exist were it not for
the contracts authorized by the Inflation Reduction Act that awarded
grants to the plaintiffs and provided the funding the Government now
wishes to claw back.  *See, e.g.*, Brief of Appellant at 29 ("Because plaintiffs
would have no claim to the funds absent EPA's award, their claims arise
solely from the agreements."); *id.* at 25 (arguing that plaintiffs' right of
possession to the funds deposited in their accounts "is defined solely by
the grant agreements and related contracts").  The Government insists
this fact alone is sufficient to establish that plaintiffs' claims "sound en-
tirely in contract" and hence can only be heard in the Court of Federal
Claims.  Brief of Appellant at 28.  The District Court was correct to reject
this argument, which runs directly contrary to *Dollar*, *Megapulse* and

12

*Normandy Apartments.* In all three of those cases the disputed property was in the possession of the Government solely as a result of the contracts between those parties when the plaintiffs sought injunctive relief. In *Dollar* the government claimed an ownership right in the common stock that it traced back to its contract with the company. In *Normandy Apartments* the allegation that HUD had violated its own regulations when it cancelled the subsidy contracts involved a request for future payments from the U.S. Treasury. Yet in all three cases jurisdiction was proper in the federal district courts.

There may be cases in which it is difficult to draw the line between a property dispute and an attempt to secure specific performance of a contract. This is not one of them. The Government does not have possession of the disputed funds in this case, the governing statutes and regulations make clear that plaintiffs own that property subject to certain obligations and security interests, and the Government disclaims any argument that plaintiffs stand in breach of their contractual obligations. There is certainly no part of the district court's injunction that requires the U.S. Treasury to "pay out past-due grant obligations" or "continue paying obligations as they accrue." *Department of Educ. v. California*,

13

145 S. Ct. 966, 968 (2025) (per curiam). The Government has already transferred all the grant funds to plaintiffs' accounts. When Congress structured the IRA and the Fund with this kind of up-front payment in order to leverage private capital and EPA then awarded grants under that structure, they committed the Government to a deployment of funds that could not be contained within the narrow parameters of Court of Federal Claims jurisdiction if a subsequent administration abruptly sought to reverse course, as this administration has.

This is a case about the Government's threat to seize the plaintiffs' property and plaintiffs' request for an injunction under the Administrative Procedure Act to prevent that allegedly unlawful and unconstitutional seizure. The Court of Federal Claims has no jurisdiction to hear this matter. *Land v. Dollar* and *Megapulse* flatly reject the Government's attempt to use but-for reasoning to turn this property seizure dispute into a contract disagreement. This case belongs in federal district court.

## II.    THE SUPREME COURT HAS REJECTED BUT-FOR TESTS WHEN ANALYZING FEDERAL SUBJECT-MATTER JURISDICTION.

The but-for style of reasoning the Government urges upon this Court when assessing the scope of the Tucker Act stands at odds with subject-matter jurisdiction precedents from across the doctrinal

14

landscape in which the Supreme Court has rejected this kind of analytical approach. In cases that define the affirmative scope of federal jurisdictional statutes, cases that specify the boundaries of the exclusive jurisdiction that Congress sometimes confers on federal courts, and cases interpreting federal statutes that constrain the power of district courts to hear certain disputes by channeling them into specialized tribunals, the Supreme Court has rejected the kind of but-for analysis the Government attempts here and has expressed skepticism about categorical interpretations of open-ended jurisdictional language.

The Court confronted this methodological question in one of its foundational rulings on federal subject-matter jurisdiction, *Gully v. First National Bank*, 299 U.S. 109 (1936). Plaintiff in that case, the collector of taxes for the State of Mississippi, filed suit in a state court to recover tax liabilities the defendant bank had assumed when it acquired another institution. The bank sought to remove the case to federal court based on the presence of a federal question. The amenability of any national bank to state taxation depended on federal statutory authorization. That being so, the bank argued, "by necessary implication, a plaintiff counts upon the [federal] statute in suing for the tax." *Id.* at 112. The bank

asked the Court to hold that this but-for relationship between the federal statutory authorization and the state's collection of taxes from the bank should suffice to mark the action as one that "arises under" federal law.

The Court rejected this formalistic mode of reasoning, instead adopting a more functional test that asked whether the federal issue would be a substantial and dispositive part of adjudicating the merits of the dispute.  "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.  The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."  *Id*. at 112–113 (citations omitted).  The but-for argument offered by the defendant did not satisfy this requirement.  The federal statute that authorized taxation of national banks was not the subject of the lawsuit and the validity of the state taxes under that statute was not contested.  Although the federal statute was a but-for condition of the state's ability to collect those taxes and authorization under the statute might even have to be recited in the complaint to establish that the tax was valid, the lawsuit did not involve claims under

16

or concerning the federal statute so the suit did not arise under federal law.

> True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. . . . If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense. That there is a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

*Id.* at 116 (citations omitted).

Since its decision in *Gully* the Court has often rejected this kind of formalistic but-for reasoning in disputes over subject-matter jurisdiction. Consider the recent case of *Gunn v. Minton*, 568 U.S. 251 (2013), which involved the grant of exclusive federal jurisdiction in cases relating to patents. The plaintiff in *Gunn* sued his former attorney in state court for malpractice over the attorney's alleged incompetence when representing him in an earlier patent dispute. Congress has conferred exclusive jurisdiction on the federal courts in all cases "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Although the plaintiff

17

was asserting state-law malpractice claims, he argued on appeal that the state courts lacked jurisdiction and should dismiss the suit as one that "related to" federal patent law since resolution of his claims would necessarily involve consideration of the merits of the earlier patent lawsuit and the competence of the arguments his attorney made.[4]  The malpractice claim would not exist but for that patent dispute, of course, and the court would have to adjudicate substantial questions on the content of patent law to determine whether the attorney's actions in the prior litigation had been incompetent.  *Gunn* thus presented a particularly powerful but-for jurisdictional argument.

The Supreme Court acknowledged all these features of the dispute but held that they were insufficient to confer exclusive jurisdiction on the federal courts.  Although the suit "necessarily" involved the existence of the prior patent action and would require the court hearing the

---

[4] The procedural posture in *Gunn* was unusual.  The plaintiff asserted his malpractice claim in a Texas state court.  When he lost at trial, he then argued on appeal that the state forum he had selected never had jurisdiction because his claim "related to" patent law and could be heard exclusively in federal court.  While this was an obvious effort at jurisdictional manipulation, the non-waivable quality of constraints involving federal subject-matter jurisdiction led both the Texas courts and the Supreme Court of the United States to entertain his argument.

18

malpractice claim to refer to and consider substantive federal patent law,

the suit still arose under state law in the only ways that mattered for the

jurisdictional analysis.  Invoking its decision in *Grable & Sons Metal*

*Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005),

the Court explained that the grant of exclusive jurisdiction in § 1338 was

only satisfied in cases where the federal purposes underlying that provi-

sion were implicated as a systemic matter.

> To begin, we acknowledge that resolution of a fed-
> eral patent question is "necessary" to Minton's
> case. . . .  In cases like this one, in which the attor-
> ney's alleged error came in failing to make a par-
> ticular argument, the causation element requires
> a "case within a case" analysis of whether, had the
> argument been made, the outcome of the earlier
> litigation would have been different. . . . That will
> necessarily require application of patent law to the
> facts of Minton's case.
>
>   . . .
>
> As our past cases show, however, it is not enough
> that the federal issue be significant to the particu-
> lar parties in the immediate suit; that will always
> be true when the state claim "necessarily raise[s]"
> a disputed federal issue, as *Grable* separately re-
> quires.  The substantiality inquiry under *Grable*
> looks instead to the importance of the issue to the
> federal system as a whole.

*Gunn*, 568 U.S. at 259–260 (citations omitted).  That systemic impact was

lacking in plaintiff's malpractice action, the Court found, because the

19

backward-looking examination of the earlier patent dispute would "not change the real-world result" of that litigation, would not "undermine the development of a uniform body of patent law" and posed little risk of introducing confusion on any "novel questions of patent law that may arise for the first time" in such a proceeding. *Id.* at 262–263 (citations omitted).

The Court has also rejected this kind of formalistic but-for reasoning when analyzing federal statutes that prohibit or limit review by federal district courts. In the Immigration and Nationality Act, for example, Congress has placed constraints on the original jurisdiction of federal courts to hear cases involving certain discrete steps in the process of deportation. Under 8 U.S.C. § 1252(g) no court can exercise jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The use of the expansive phrase "arising under" has sometimes led the Government to argue that this language prohibits federal court jurisdiction over a broader range of claims by noncitizens who are subject to deportation or in the process of being deported regardless of whether

20

their claims directly challenge the three actions specified in the text.  Because commencement, adjudication and execution are all steps along the way to deportation, the Government has asserted, a claim involving any aspect of deportation is one that "arises from" these but-for elements of a removal proceeding and is likewise jurisdictionally barred.

The Supreme Court has repeatedly rejected this kind of formalistic treatment of the spare jurisdictional language contained in the INA.  In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999), the Court held it "implausible that the mention of three discrete events along the way to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  The Court reiterated this rebuff of but-for jurisdictional reasoning in *Department of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020), explaining that it has "rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation."  (quoting *Reno*).  As Justice Alito observed when discussing § 1252 in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), speaking for a plurality in this passage, "when confronted with capacious phrases like 'arising from,' we have eschewed

uncritical literalism leading to results that no sensible person could have intended." *Id.* at 294 (cleaned up). Justice Alito went on to cite examples of this more judicious interpretive method in a wide range of federal statutes—the Federal Power Act, the Driver's Privacy Protection Act, the Federal Aviation Administration Authorization Act, the Bankruptcy Act—and explained that "we took this approach in construing" the jurisdictional provisions of the INA as well. *Id.* The First Circuit put the matter concisely when it explained that "claims challenging administrative actions do not 'arise from' the government's decision to 'execute removal orders' within the meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial decision in the 'but for' causal sense." *Kong v. United States*, 62 F.4th 608, 613 (1st Cir. 2023). *See also Öztürk v. Hyde*, ___ F.4th ___, No. 25-1019, 2025 WL 1318154, at *9 & *12 (2d Cir. May 7, 2025) (rejecting "but-for" jurisdictional reasoning under § 1252(g) and explaining that "overlap, even substantial substantive overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other").

Under the INA, as in analysis of the federal question statute and the exclusive grant of jurisdiction over patent claims, it is not enough for

the subject of a jurisdictional statute to be a but-for step in the sequence of events giving rise to a dispute. The analysis instead depends on the substance of the claims, the relief plaintiff seeks and the policies underlying the jurisdictional statute. *See Gunn*, 568 U.S. at 260; *Gully*, 299 U.S. at 116; *see also Megapulse*, 672 F.2d at 968 ("The classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).") These principles are particularly salient in cases involving § 704 of the APA, "the central purpose" of which was to provide "a broad spectrum of judicial review of agency action" where federal courts should never "assume, categorically, that a naked money judgment against the United States [in the Court of Federal Claims] will always be an adequate substitute for prospective relief fashioned in the light of . . . complex ongoing relationships between the parties." *Bowen v. Massachusetts*, 487 U.S. 879, 904–905 (1988). *See also Horne v. Department of Agric.*, 569 U.S. 513, 527 (2013) ("To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must examine the purpose of the statute, the

entirety of its text, and the structure of review that it establishes.") (citations and alterations omitted).

The but-for approach to Tucker Act jurisdiction that the Government urges in this case exhibits the same fallacy that the Court rejected in all these settings. The Government's broad, categorical account of the jurisdiction of the Court of Federal Claims would have the effect of preventing contracting parties from seeking judicial protection when the Government violates their statutory and constitutional rights. As the District Court correctly observed, "[i]t cannot be that the contract's authority trumps the agency's formal regulations and a federal statute." Dist. Ct. Op. at 18. *Cf. Slattery v. United States*, 635 F.3d 1298, 1311–1312 (Fed. Cir. 2011) (holding that Tucker Act jurisdiction includes damages actions against nonappropriated fund instrumentalities because it would violate the purpose of that statute to permit a "loophole" to foreclose recovery). The purpose of the Tucker Act is to provide an appropriate forum for adjudicating monetary damage claims brought against the national sovereign, not to empower the Government to act with impunity toward any person or institution with which it has entered into a contract.

### III. THE GOVERNMENT'S BUT-FOR APPROACH TO TUCKER ACT JURISDICTION IS OUT OF STEP WITH CLAIM PRECLUSION AND THE BAR ON PARALLEL ACTIONS IN THE COURT OF FEDERAL CLAIMS.

A categorical but-for approach to jurisdiction under the Tucker Act is also out of step with doctrines that aim to calibrate litigation fairness between parties in the Court of Federal Claims. Across a broad range of disputes, the CFC employs a more permissive approach to claim preclusion (which favors plaintiffs) alongside a statutory prohibition on most parallel actions (which favors the Government). Together these doctrines accommodate the more judicious and precise jurisdictional analysis reflected in cases like *Megapulse* and *Normandy Apartments*.

Claim preclusion in the Court of Federal Claims both expects and accommodates an approach to Tucker Act jurisdiction that will frequently see the same set of facts involving a contract with the Government giving rise to some claims that can only be heard in a federal district court and other claims that can only be heard in the Court of Federal Claims. The Federal Circuit and the CFC have put particular weight on the provision in the Second Restatement of Judgments that recognizes an exception to claim preclusion for plaintiffs who are unable "to seek a certain remedy or form of relief in the first action because of the

25

limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain . . . demands for multiple remedies or forms of relief in a single action."  Rest. (2d) of Judgments § 26(c)(1).

This issue arises when the same facts result in injuries requiring a plaintiff to explore both non-contractual injunctive relief and a contractual damages claim, *see, e.g.*, *Mosely v. United States*, 15 Cl. Ct. 193, 194 (1988) (declining to apply claim preclusion even though the "facts alleged in support of the claim [in the CFC] are fundamentally the same as those that formed the basis for the district court action" because the district court action "attempted to get review under the APA" and "sought equitable rather than monetary relief"); when the United States is drawn into a multi-party dispute in a district court where the plaintiff can only assert some of the claims they may have against the Government, *see, e.g.*, *Martin v. United States*, 30 Fed. Cl. 542, 546 (1994) (holding that plaintiff "seeks a Tucker Act remedy which was unavailable to him in the earlier district court lawsuit; consequently, the cause of action presently in this court is dissimilar and *res judicata* cannot apply"), *aff'd*, 41 F.3d 1519 (Fed. Cir. 1994); and when a claimant files suit in a federal district court, learns that court cannot grant adequate relief, and agrees to a voluntary

dismissal with prejudice before refiling in the CFC, *see, e.g.*, *Bailey v. United States*, 54 Fed. Cl. 459, 479–480 (2002) (finding that "*res judicata* effect should not be given to plaintiff's withdrawal, with prejudice" of a petition filed in a district court under the claims procedure of a forfeiture statute and deciding on the merits "whether the government entered into a separate contractual arrangement with the plaintiff" for the same disputed funds), *aff'd*, 94 F. App'x 828 (Fed. Cir. 2004).  The same holds true in cases involving prior adjudicatory proceedings in administrative agencies.  *See e.g.*, *Cunningham v. United States*, 748 F.3d 1172, 1174 (Fed. Cir. 2014) (declining to apply claim preclusion to a plaintiff suing for breach of a settlement agreement in the Court of Federal Claims for which he had earlier sought relief before the Merit Systems Protection Board because "jurisdictional limits on the MSPB's remedial authority did not permit Mr. Cunningham to seek monetary damages for OPM's breach of contract"); *Abare v. United States*, 167 Fed. Cl. 478 (2023) (similar scenario involving prior EEOC determination).  The but-for approach to jurisdictional analysis under the Tucker Act that the Government urges would render much of this doctrine otiose.

At the same time, the United States enjoys broad protection in the Court of Federal Claims from the burdens associated with having to litigate multiple parallel actions with a given plaintiff. A federal statute, 28 U.S.C. § 1500, prohibits the Court of Federal Claims from exercising jurisdiction over any claim that shares a "substantial factual overlap" with a claim that is already pending in any other court, *U.S. v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011), even if the relief sought in the two actions does not overlap and jurisdictional limitations would prevent the two lawsuits from being consolidated in a single forum. What a permissive approach to claim preclusion makes possible in the Court of Federal Claims, 28 U.S.C. § 1500 constrains. There is thus no need for a categorical but-for rule of jurisdiction under the Tucker Act to protect the Government from the litigation burdens that might result from plaintiffs rushing to pursue different forms of relief for the same claims in parallel actions. The Government already enjoys that protection by statute.

## CONCLUSION

A person does not lose the right to go to a federal district court and seek equity's protection from violations of their constitutional and statutory rights when they enter into a contract with the United States

Government.  The but-for approach to Tucker Act jurisdiction that the Government urges in this case would have exactly that effect.  It would also stand at odds with the Supreme Court's rejection of that analytical approach in subject-matter jurisdiction cases in many settings and operate at cross-purposes with doctrines in the Court of Federal Claims designed to calibrate litigation fairness between claimants and the Government against the assumption of a more judicious and precise approach to Tucker Act jurisdiction.  This Court should affirm the holding of the District Court that the Tucker Act poses no obstacle to adjudication of the merits of this dispute or to the relief plaintiffs are seeking.

Respectfully submitted,

*/s/ Paul DeCamp*

ADRIANA S. KOSOVYCH
MARGUERITE MCGOWAN STRINGER
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York  10022
Tel:  212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com
MStringer@ebglaw.com

PAUL DECAMP
  *Counsel of Record*
KATHLEEN BARRETT
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com
KBarrett@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

May 14, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 6,028 words, excluding the exempted portions under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1). This brief complies with the typeface and type style requirements of the Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Paul DeCamp*
Paul DeCamp

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing document was elec-

tronically filed in this matter with the Clerk of Court, using the ECF sys-

tem, which sent notification of such filing to all counsel of record.

*/s/ Paul DeCamp*
Paul DeCamp

May 14, 2025

**ADDENDUM**

# TABLE OF CONTENTS

8 U.S.C. § 1252(g) ................................................................. A1

28 U.S.C. §1338(a) ................................................................ A2

28 U.S.C. § 1500 .................................................................... A3

**8 U.S.C. § 1252(g)**

(g) Exclusive jurisdiction
Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

**28 U.S.C. § 1338(a)**

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.

**28 U.S.C. § 1500**

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.