No. 25-5122

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CLIMATE UNITED FUND, *et al.*,

*Plaintiffs-Appellees*,

*v.*

CITIBANK, N.A., *et al.*,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**BRIEF OF *AMICUS CURIAE* NATURAL RESOURCES DEFENSE
COUNCIL IN SUPPORT OF APPELLEES AND AFFIRMANCE**

_____

THOMAS ZIMPLEMAN
NATURAL RESOURCES DEFENSE
COUNCIL
*1152 15th St. NW, Suite 300*
*Washington, DC 20005*
*(202) 289-6868*

NANDING CHEN
NATURAL RESOURCES DEFENSE
COUNCIL
*111 Sutter St., 21st Floor*
*San Francisco, CA 94104*
*(415) 875-6100*

DANIEL F. JACOBSON
KYLA M. SNOW*
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

\* Not admitted in the District of
Columbia. Practice limited to
matters before U.S. courts.

*Counsel for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iv

INTERESTS OF AMICUS CURIAE ....................................................................1

SUMMARY OF THE ARGUMENT .....................................................................1

ARGUMENT ...........................................................................................................3

   I.  *Webster* Supplies An Additional Reason Why There Must Be Jurisdiction Over Appellees' Constitutional Claims............................................................3

   II.  The Appropriations Will Disappear If EPA De-Obligates the Funds..............9

CONCLUSION ......................................................................................................13

CERTIFICATE OF COMPLIANCE ....................................................................14

CERTIFICATE OF SERVICE..............................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Am. Forest Res. Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023)...............7

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).............................4

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)......................7, 8

*Dalton v. Specter*, 511 U.S. 462 (1994) ..............................................................2, 7

*Doe v. United States*, 463 F.3d 1314 (Fed. Cir. 2006) ..............................................6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ................4

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).......................4

*In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) ..................................................8

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995). ........................................6

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52 (D.C. Cir. 2001) .....................................................................7

*Mountain States Legal Found. v. Bush*, 306 F.3d 1132 (D.C. Cir. 2002). ...............7

*Tootle v. Sec'y of the Navy*, 446 F.3d 167 (D.C. Cir. 2006)......................................5

*Webster v. Doe*, 486 U.S. 592 (1988)...................................................................2, 5

**Statutes**

5 U.S.C. § 702 .......................................................................................................4, 5

28 U.S.C. § 1331 .......................................................................................................5

28 U.S.C. § 1346 .......................................................................................................6

28 U.S.C. § 1491 ....................................................................................................5, 6

31 U.S.C. § 1341 .....................................................................................................10

31 U.S.C. § 1501 .....................................................................................................10

31 U.S.C. § 1502 .....................................................................................................10

31 U.S.C. § 6303 .......................................................................................................6

31 U.S.C. § 6304 .......................................................................................................6

41 U.S.C. § 7102. ......................................................................................................6

42 U.S.C. § 7434 ..................................................................................................8, 10

**Other Authorities**

*Continued Availability of Expired Appropriation for Additional Project Phases*,
    B-286929, 2001 WL 717355 (Apr. 25, 2001) .......................................................10

*In the Matter of Substitute Grant Projects*,
    57 Comp. Gen. 459, B-190847, 1978 WL 13417 (May 12, 1978).....................12

*In the Matter of the Cancer Research Institute, Los Angeles*,
    57 Comp. Gen. 205, B-189712, 1978 WL 13358 (Jan. 5, 1978)........................13

*Matter of Economic Development Administration*,
    B-211323, 1984 WL 43695 (Jan. 3, 1984) ........................................................11

*Matter of Funding of Replacement Contracts*,
    60 Comp. Gen. 591, B-198074, 1981 WL 22547 (July 15, 1981)......................11

*The Honorable Lawton Chiles United States Senate*,
    B-164031, 1976 WL 10353 (June 25, 1976) .......................................................12

2 GAO, Principles of Federal Appropriations Law (3d ed. 2004) ..........................11

## INTERESTS OF AMICUS CURIAE[1]

Since its founding in 1970, Natural Resources Defense Council (NRDC), a non-profit environmental organization, has litigated hundreds of cases that concern the legality of actions taken by the Executive Branch. The defendants in this case argue for interpretations of federal statutes that would prohibit the plaintiffs from pursuing statutory and constitutional claims in district court, and that could result in the permanent loss of funding that Congress appropriated to address environmental harms. NRDC submits this brief as amicus curiae to discuss why the district court has jurisdiction over those claims and why it is essential for Appellees to obtain relief on those claims now.

## SUMMARY OF THE ARGUMENT

This Court may affirm the preliminary injunction based on Appellees' constitutional claims. Binding Supreme Court and D.C. Circuit precedent dictate the district court had jurisdiction to hear Appellees' constitutional claims, and the only defense that the Environment Protection Agency (EPA) presents on the merits of these claims ignores long-settled principles of appropriations law.[2]

---

[1] All parties consented to the filing of this brief. NRDC affirms that no counsel for a party authored this brief in whole or in part, no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than the NRDC or its counsel made such a monetary contribution.

[2] Appellees' APA claims also are correct on the merits and the district court had jurisdiction over them, given that the sources of Appellees' rights and of the legal

1

Regarding jurisdiction, in addition to Appellees' correct contention that sovereign immunity is not at issue for any claims in this case because Appellees do not seek the payment of funds, the clear statement rule set forth in *Webster v. Doe*, 486 U.S. 592 (1988) independently dictates that there must be jurisdiction over Appellees' constitutional claims. Under *Webster*, district court jurisdiction must lie for the constitutional claims because the Court of Federal Claims does not have jurisdiction over them, and because Congress has given no indication that it intended to deny grantees any forum to challenge constitutional violations in the handling of their grants. Appellees' suggestion that separation-of-powers claims are not legitimate constitutional claims where they derive from statutory violations is contrary to circuit precedent, including cases finding separation-of-powers violations where, as here, an agency seeks to nullify a statute.

On the merits, EPA's defense of the constitutional claims rests on the erroneous premise that EPA can re-obligate the relevant appropriations after terminating Appellees' grants. It is hornbook appropriations law, anchored in the Appropriations Clause and the Anti-Deficiency Act, that agencies may not obligate appropriations after the congressionally prescribed period of availability for the funds has passed. The Government Accountability Office (GAO) has confirmed

---

violations are applicable statutory and constitutional provisions. However, the APA claims are not the focus of this brief.

many times over that this principle applies to agency efforts to terminate and re-issue grants after the grant funds have expired. GAO has held that an agency may issue a "replacement grant" with expired funds only in the narrowest of circumstances, none of which is present here. Moreover, even where an agency can cite a permissible reason for replacing a grant, the grant must have exactly the same "purpose," "scope," and "material features" as the original grant. EPA definitively cannot meet those requirements here because it is terminating Appellees' grants to pursue different "program goals and agency priorities."

Respectfully, under existing precedent and settled principles of law, Appellees' right to relief on their constitutional claims is clear. No matter the policy and the political party that supports or opposes it, the Executive Branch cannot be immune from constitutional challenge when it aims to nullify duly enacted statutes.

## ARGUMENT

### I. *Webster* Supplies An Additional Reason Why There Must Be Jurisdiction Over Appellees' Constitutional Claims

Appellees explain in their brief that sovereign immunity simply is not an issue in this case because Appellees do not seek payments of funds held by the federal government. That must be correct because federal courts possess inherent equitable authority to prohibitively enjoin federal officials from violating the law, and sovereign immunity only becomes an issue when injunctive relief against a

federal official would require the affirmative expenditure of funds from the Treasury. As Justice Scalia explained: "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). But, "[a]lmost invariably," "suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,'" which typically reflect legal and not equitable relief. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (Scalia, J.).

With sovereign immunity not at issue, EPA provides no legal basis for concluding that the district court lacked jurisdiction over Appellees' constitutional claims. EPA points to no legal doctrine or precedent for finding that Congress's grant of jurisdiction to an Article I court to hear certain other types of claims—namely, breach-of-contract claims—deprives Article III courts of their historic jurisdiction under 28 U.S.C. § 1331 to hear claims against federal officials for violating the Constitution, including the "separation of powers." *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).[3]

---

[3] EPA appears to recognize that is no tenable basis for disputing jurisdiction over the constitutional claims. EPA's sole mention of jurisdiction with respect to the constitutional claims is a single sentence that is devoid of analysis and contains the caveat that EPA's jurisdictional objection to the constitutional claims applies only "[t]o the extent these claims seek reinstatement of the specific grant agreements on the ground that EPA exceeded its authority in terminating them." EPA Br. at 35-36. EPA otherwise appears to concede that the district court has jurisdiction over

While the Court need go no further in its jurisdictional analysis than to recognize the lack of any sovereign immunity obstacle given the unique facts of this case, there is an additional reason why the district court necessarily has jurisdiction over Appellees' constitutional claims: the clear statement rule set forth in *Webster v. Doe*. There, the Supreme Court held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 486 U.S. at 603. The Court "require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotations omitted); *see also McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 58 (D.C. Cir. 2001).[4]

*Webster* squarely applies here because if the district court lacks jurisdiction over Appellees' constitutional claims, Appellees would have *no judicial forum* to assert these claims. Appellees could not bring their constitutional claims in the Court of Federal Claims. Under 28 U.S.C. § 1491(a)(1), federal contractors may bring constitutional claims in the Court of Federal Claims only if the relevant

---

the constitutional claims. Indeed, almost the entirety of EPA's defense of these claims is on the merits. *See id.* at 16, 35-39.

[4] Independent of *Webster*, and not limited to constitutional claims, this Court has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). That holding also controls here with respect to Appellees' constitutional claims.

constitutional provision is "money-mandating." *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006). The Federal Circuit has held that separation-of-powers claims may not be brought under § 1491(a)(1), because the relevant constitutional provisions do not mandate the payment of money to specific entities in specific amounts. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Therefore, if the district court lacked jurisdiction over Appellees' constitutional claims, there would be no court with jurisdiction to hear these claims.

The Tucker Act provides no clear statement that Congress intended to deny any judicial forum for bringing a constitutional challenge in the context of a grant termination. EPA agrees as much—it characterizes the Tucker Act as only an "implicit limitation" on the district court's jurisdiction to review certain APA claims. EPA Br. at 19. Congress, moreover, has shown that it knows how to strip district courts of jurisdiction over claims relating to government funding instruments where Congress intends to do so. For instance, through the Contract Disputes Act, Congress has divested district courts of jurisdiction over "any civil action or claim against the United States founded upon . . . [a procurement contract]." 28 U.S.C. § 1346(a)(2); *see* 41 U.S.C. § 7102(a). Federal law distinguishes "procurement contracts" from "grants" such as those here. *See* 31 U.S.C. §§ 6303, 6304. There is no similar statutory provision stripping district

courts of jurisdiction over constitutional claims founded upon a grant, and EPA does not contend otherwise.

EPA's only argument regarding jurisdiction for the constitutional claims is that Appellees' constitutional claims do not trigger *Webster*'s presumption of judicial review because they flow from statutory violations. EPA Br. at 35-36. That proposition conflicts with this Circuit's precedents broadly permitting judicial review of actions by the Executive Branch that exceed its statutory authority. In *Chamber of Commerce of United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), this Court held that courts could review whether an executive order conflicted with federal law. Notably, the opinion in *Chamber of Commerce* rejected the government's argument that such review was foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994). The Court explained that "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." 74 F.3d at 1331. "*Dalton* is inapposite," the court added, "where the claim instead is that the presidential action—not one, it should be added, even contemplated by Congress—independently violates [the statute at issue]." *Id.* at 1332. This Court has reaffirmed *Reich*'s interpretation of *Dalton* multiple times since. *Am. Forest Res. Council v.*

*United States*, 77 F.4th 787, 797 (D.C. Cir. 2023); *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002).

Applying *Reich*'s holding here, the relevant statutes are not without "limitations on the President's" discretion; the relevant Inflation Reduction Act provisions require EPA to award grants by a specific date to serve specific purposes. 42 U.S.C. § 7434. Appellees' constitutional claim is that EPA "independently violates" those provisions by terminating grants after September 30, 2024, thereby nullifying the statutory program. *Reich*, 74 F.3d at 1331-32.

EPA's suggestion that separation-of-powers claims that derive from statutory violations are not legitimate or viable constitutional claims is also contrary to how this Court has adjudicated such claims in the past. In *In re Aiken County*, then-Judge Kavanaugh issued a writ of mandamus where an agency refused to "comply with the law as it has been set by Congress." 725 F.3d 255, 257 (D.C. Cir. 2013). The Nuclear Regulatory Commission there had "declined to continue the statutorily mandated Yucca Mountain licensing process." *Id.* at 259. Although the agency action violated a statutory provision, the Court's holding was that the agency violated the constitutional separation of powers. The Court emphasized that its "decision … rest[ed] on the constitutional authority of Congress, and the respect that the Executive and the Judiciary properly owe to Congress," reasoning that "our constitutional system of separation of powers

would be significantly altered if [the Court] were to allow executive … agencies to disregard federal law." *Id.* at 267; *see also* EPA Br. at 38 (acknowledging that *Aiken* rested on constitutional separation-of-powers violations). There is no way to reconcile *Aiken* with any suggestion that an agency's attempt to nullify a federal statute cannot given rise to an independently actionable separation-of-powers claim.

We are not aware of any published decision that has ever held that *Webster*'s clear statement rule does not apply where a plaintiff asserts constitutional claims, and it is undisputed that the plaintiff could not bring those constitutional claims in another forum. Respectfully, this Court should not break new ground and create a novel exception to *Webster* here. *Webster* applies to *all* constitutional claims for which there is no alternative judicial forum, including Appellees' claims.

## II.    The Appropriations Will Disappear If EPA De-Obligates the Funds

On the merits of Appellees' constitution claims, EPA's defense hinges on the proposition that, if the grant terminations go forward, EPA will "de-obligate" the funds awarded to Appellees and "re-obligate" them to other grantees. EPA Br. at 37-38. EPA insists that "it has committed to re-obligating the funds appropriated under the [Greenhouse Gas Reduction Fund]," and there is no "reason to doubt that commitment." *Id.*

But there is every reason to doubt that commitment—because re-obligating the funds to other grantees at this point would almost surely be illegal given that the period in which the funds could be obligated has long passed.

Congress, in exercising its powers under the Appropriations Clause, may restrict the time-period in which appropriations may be obligated. Congress prescribes that appropriations are "available until" a particular date, and the window in which agencies may then lawfully obligate funds is known as the "period of availability." 31 U.S.C. § 1502(a). The Appropriations Clause and myriad federal statutes prohibit agencies from obligating funds beyond their period of availability. *Id.*; *see also id.* §§ 1341(a)(1), 1501(a)(1)(B).

In the Inflation Reduction Act (IRA), Congress provided that the appropriations for Greenhouse Gas Reduction Fund grants were "to remain available until September 30, 2024." 42 U.S.C. §§ 7434(a)(1)-(3). That means the period of availability of the appropriations ended on September 30, 2024. The grants to Appellees were properly obligated within the period of availability. But the period of availability has now ended, and there would be no lawful mechanism for EPA to de-obligate and then re-obligate the funds given the reasons for the terminations.

Government Accountability Office (GAO) precedents and basic principles of appropriations law make this clear. As GAO has explained, "[i]f an agency

deobligates funds after the expiration of the period of availability, the funds are not available for new obligations." *Continued Availability of Expired Appropriation for Additional Project Phases*, B-286929, 2001 WL 717355, at *3 (Apr. 25, 2001). Rather, "[f]unds deobligated after the expiration of the period of availability revert to the Treasury." *Matter of Economic Development Administration*, B-211323, 1984 WL 43695, at *1 (Jan. 3, 1984).

These principles have been consistently applied to grants. "As a general rule, when a recipient of a grant is unable to implement the grant as originally contemplated, and an alternative grantee is designated subsequent to the expiration of the period of availability for obligation of the grant funds, the award to the alternative grantee must be treated as a new obligation and is not properly chargeable to the appropriation current at the time the original grant was made." 2 GAO, Principles of Federal Appropriations Law 10-108 (3d ed. 2004).

Only in very limited circumstances may an agency issue a "replacement grant" with funds that have expired, and those circumstances are even more limited when the replacement grant is "to an entirely different grantee" rather than "a successor of the original grantee." *Id.* In the context of contracts, such replacements awards have been permitted where the original awardee defaults and a new contractor is needed to carry out the exact same work specified under the original award. *See Matter of Funding of Replacement Contracts*, 60 Comp. Gen.

11

591, B-198074, 1981 WL 22547 (July 15, 1981). Similarly, GAO has permitted a replacement grant where a county and a university jointly submitted a grant application, the grant was made only to the county for accounting purposes, and the agency subsequently sought to amend the grant to be to the university to carry out the same purpose in "precisely the same area" as the original award. *In the Matter of the Cancer Research Institute, Los Angeles*, 57 Comp. Gen. 205, 209, B-189712, 1978 WL 13358 (Jan. 5, 1978). In contrast, an agency could not re-obligate expired funds where the new grant would go to a hospital "125 miles" away from the original grantee, because the new grant would not be "a continuation of the original [award]." *The Honorable Lawton Chiles United States Senate*, B-164031, 1976 WL 10353, at *4 (June 25, 1976); *see also In the Matter of Substitute Grant Projects*, 57 Comp. Gen. 459, 461, B-190847, 1978 WL 13417 (May 12, 1978).

There is no plausible basis on which EPA could issue "replacement grants" using the expired IRA appropriations. In EPA's own telling, the legal basis for terminating Appellees' grants is that the grants "no longer effectuate[] the program goals or agency priorities" of the new Administration. EPA Br. at 32. There is no authority that permits an agency to de-obligate grant funds and then re-obligate them, post-expiration, to serve different goals and priorities. A grant intended to further different goals and policies cannot possibly be "a continuation of the

original" grant. 1976 WL 10353, at *4. By definition, such a grant does not have the exact same "purpose," "scope," and "materials features" as the terminated grant, as is required to permissibly issue a replacement grant using expired funds. Principles of Federal Appropriations Law, *supra*, at 10-107.

It does not matter for purposes of Appellees' claims whether EPA is sincere in its commitment to re-obligate the funds. EPA's actions are unconstitutional because they will cause the appropriations and statutory programs to become legally defunct, and those actions do not become lawful because EPA intends to take a different, almost certainly unlawful action. Moreover, if EPA does attempt to re-obligate the funds, there will be nothing stopping members of competitor industries from suing EPA for violating the Appropriations Clause and the Anti-Deficiency Act. If EPA is allowed to move forward here, $20 billion that Congress lawfully appropriated to achieve its policy objectives could be lost forever.

## CONCLUSION

For the reasons stated above, the Court should affirm.

Respectfully submitted.

*/s/ Daniel F. Jacobson*
DANIEL F. JACOBSON
KYLA M. SNOW*
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*

*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

\* Not admitted in the District of
Columbia. Practice limited to matters
before U.S. courts.

THOMAS ZIMPLEMAN
NATURAL RESOURCES DEFENSE
COUNCIL
*1152 15th St. NW, Suite 300*
*Washington, DC 20005*
*(202) 289-6868*

NANDING CHEN
NATURAL RESOURCES DEFENSE
COUNCIL
*111 Sutter St., 21st Floor*
*San Francisco, CA 94104*
*(415) 875-6100*

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing *amicus* brief complies with the word limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 3,035 words. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Word in proportionally spaced 14-point Times New Roman font.

*/s/Daniel F. Jacobson*
Daniel F. Jacobson

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2025, I electronically filed the foregoing

motion with the Clerk of the Court for the United States Court of Appeals for the

District of Columbia Circuit by using the appellate CM/ECF system. Participants

in the case are registered CM/ECF users, and service will be accomplished by the

appellate CM/ECF system.


*/s/Daniel F. Jacobson*
Daniel F. Jacobson