Nos. 25-5122, 25-5123

# United States Court of Appeals
## for the
# District of Columbia Circuit

_____

CLIMATE UNITED FUND,
COALITION FOR GREEN CAPITAL,
POWER FORWARD COMMUNITIES, INC.,
CALIFORNIA INFRASTRUCTURE AND
ECONOMIC DEVELOPMENT BANK, EFFICIENCY MAINE TRUST,
ILLINOIS FINANCE AUTHORITY, MINNESOTA CLIMATE INNOVATION
FINANCE AUTHORITY, JUSTICE CLIMATE FUND, and INCLUSIV, INC.,
*Plaintiffs-Appellees*

v.

CITIBANK, N.A.,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
LEE ZELDIN, in his official capacity as ADMINISTRATOR, and UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY,
*Defendants-Appellants*

_____

From the United States District Court for the District of Columbia
Case Nos. 1:25-cv-00698-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00735-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00762-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00820-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00938-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00948-TSC (Hon. Tanya S. Chutkan)

_____

**PETITION FOR REHEARING EN BANC**

_____

Vincent Levy
  *Counsel of Record*
Kevin D. Benish
Daniel Fahrenthold
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee Coalition for Green Capital*

Beth C. Neitzel
  *Counsel of Record*
Jack C. Smith
Kevin Y. Chen
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel.: (617) 832-1000
bneitzel@foleyhoag.com
jcsmith@foleyhoag.com
kchen@foleyhoag.com

Noah C. Shaw
James M. Gross
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff-Appellee Power Forward Communities*

Adam G. Unikowsky
  *Counsel of Record*
Kathryn L. Wynbrandt
David B. Robbins
Tanner J. Lockhead
JENNER & BLOCK LLP
1099 New York Avenue, Suite 900
Washington, D.C. 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
aunikowsky@jenner.com

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com

Allison N. Douglis
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff-Appellee Climate United Fund*

Jay C. Johnson
  *Counsel of Record*
VENABLE LLP
600 Massachusetts Ave. NW
Washington, DC 2001
Tel: (202) 344-4000
jcjohnson@venable.com

*Attorney for Plaintiff-Appellee Inclusiv, Inc.*

`

David J. Zimmer
  *Counsel of Record*
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, MA 02139
Tel.: (617) 676-9421
dzimmer@zimmercitronclarke.com

Eric F. Citron
Kathleen Foley
ZIMMER, CITRON & CLARKE LLP
1629 K. St. NW, Suite 300
Washington, D.C. 20006
Tel.: (202) 796-4540
ecitron@zimmercitronclarke.com
kfoley@zimmercitronclarke.com

*Attorneys for Plaintiff-Appellee Justice Climate Fund*

`

## TABLE OF CONTENTS

INTRODUCTION AND RULE 40(b)(2) STATEMENT ........................................1

BACKGROUND .........................................................................................3

    A. The Greenhouse Gas Reduction Fund.........................................................3

    B. The Administration Freezes Plaintiffs' Funds. ...........................................5

    C. Procedural Background. .............................................................................5

ARGUMENT .............................................................................................6

    I. The Panel's Opinion Contradicts Settled Jurisprudence. ...............................6

    A. The District Court Had Jurisdiction Over All Claims................................6

    B. The Panel Misconstrued Plaintiffs' Constitutional Claim and
       Contravened Black-Letter Appropriation Law. ......................................12

    C. The Panel's Analysis Of The Equities Also Warrants Review................14

    II. This Case Warrants Rehearing En Banc. ......................................................15

CONCLUSION ........................................................................................17

i

# TABLE OF AUTHORITIES[*]

**Cases**                                           **Page(s)**

*Chamber of Com. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996)...........................................................................11

*Cincinnati Soap Co. v. U.S.*,
   301 U.S. 308 (1937) ........................................................................................13

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ........................................................................................12

*Crowley Gov't Servs. v. GSA*,
   38 F.4th 1099 (D.C. Cir. 2022) ......................................................................8, 9

*Dalton v. Specter*,
   511 U.S. 462 (1994) ................................................................................... 12, 13

*Dep't of State v. AIDS Vaccine Advoc. Coal.*,
   145 S. Ct. 753 (2025)........................................................................................11

*Dugan v. Rank*,
   372 U.S. 609 (1963) ........................................................................................12

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989)........................................................................9, 10

*Glob. Health Council v. Trump*,
   2025 WL 2491211 (D.C. Cir. Aug. 28, 2025)..................................................3, 13

*Ickes v. Fox*,
   300 U.S. 82 (1937) ..........................................................................................12

*In re Aiken Cnty.*,
   725 F.3d 255 (D.C. Cir. 2013)............................................................... 12, 13, 14

*Ingersoll-Rand Co. v. U.S.*,
   780 F.2d 74 (D.C. Cir. 1985)...............................................................................8

*Kansas City v. HUD*,
   923 F.2d 188 (D.C. Cir. 1991)...........................................................................10

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

ii

*Kendall v. U.S. ex rel. Stokes*,
    37 U.S. 524 (1838) ................................................................12

*\*Land v. Dollar*,
    330 U.S. 731 (1947) ..............................................................11

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)...................................................15

*LeBlanc v. U.S.*,
    50 F.3d 1025 (Fed. Cir. 1995) ................................................7

*Lummi Tribe of the Lummi Rsrv. v. U.S.*,
    870 F.3d 1313 (Fed. Cir. 2017) ..............................................7

*\*Md. Dep't of Hum. Res. v. HHS*,
    763 F.2d 1441 (D.C. Cir. 1985)........................................7, 10

*\*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982)......................................... 6, 8, 9

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986).............................................6, 9

*\*Tootle v. Sec'y of Navy*,
    446 F.3d 167 (D.C. Cir. 2006)........................................7, 11

*\*Train v. City of New York*,
    420 U.S. 35 (1975) ........................................................ 13, 14

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992)................................................9

*Widakuswara v. Lake*,
    2025 WL 1521355 (D.C. Cir. May 28, 2025) .........................2

**Statutes**

42 U.S.C. §7434 .....................................................................3, 4

**Other Authorities**

168 Cong. Rec. H7702 .............................................................4

iii

## GLOSSARY OF TERMS

| Term or Abbreviation | Definition |
|---|---|
| APA | Administrative Procedure Act |
| CCIA | Clean Communities Investment Accelerator |
| Dissent | *Climate United Fund v. Citibank, N.A.*, 2025 WL 2502881 (D.C. Cir. May 19, 2025) (Pillard, J., dissenting) |
| DOJ | Department of Justice |
| EPA | Environmental Protection Agency |
| FBI | Federal Bureau of Investigation |
| GGRF | Greenhouse Gas Reduction Fund |
| HHS | Department of Health and Human Services |
| HUD | Department of Housing and Urban Development |
| IRA | Inflation Reduction Act |
| NCIF | National Clean Investment Fund |
| Op. | *Climate United Fund v. Citibank, N.A.*, 2025 WL 2502881 (D.C. Cir. May 19, 2025) |

iv

## INTRODUCTION AND RULE 40(b)(2) STATEMENT

Last year, EPA obligated and disbursed to Plaintiffs nearly $20 billion in grant funds for investment in communities nationwide under the Inflation Reduction Act's Greenhouse Gas Reduction Fund (GGRF). After the new Administration made clear its policy disagreement with the GGRF, however, EPA froze Plaintiff's funds— which Plaintiffs hold in Citibank accounts in their own names—sought to dismantle the congressionally mandated program, and attempted to seize the money from Plaintiffs' accounts, all on wholly pretextual grounds. EPA does not accuse Plaintiffs of any wrongdoing and hardly disputes that its policy-based deconstruction of the GGRF is illegal. Yet a panel of this Court swept away Plaintiffs' challenges to EPA's lawless conduct. It held Plaintiffs have no constitutional claim; EPA can dismantle the GGRF despite the complete absence of statutory authority; and the district court lacks jurisdiction over Plaintiffs' remaining claims.

The *en banc* Court should grant rehearing. As Judge Pillard explains, the panel endorsed an "unlawful nullification of Congress's duly enacted policy," and relied on "a misguided and breathtakingly expansive conception of the Tucker Act." Dissent 62. The result is that Plaintiffs must wait and watch as the government illegally eliminates the program and seizes their money—and *then* sue in an Article I court that is powerless to hear Plaintiffs' claims or award the relief sought.

The implications of the panel's erroneous decision are massive. Even in isolation, EPA's attempt to claw back $19.97 billion in grants from Plaintiffs' accounts represents a uniquely extreme example of this Administration's efforts to unlawfully shutter federal programs for policy reasons. The panel's decision leaves the Administration's conduct effectively unreviewable, subject only to potential damages years later for distinct (breach-of-contract) claims.

But the panel's decision cannot be viewed in isolation. In effectively depriving Plaintiffs of a judicial forum to stop EPA's unlawful conduct, the decision will undermine the rule of law and erode public trust in federal grant programs. And it will dramatically distort this Court's jurisprudence, likely requiring dismissal of meritorious claims in numerous other cases challenging grant-program terminations or unconstitutional conduct.

This Court granted rehearing *en banc* of the stay order in *Widakuswara v. Lake*, noting the importance of the Tucker Act question and its "recurrence in a number of recent cases." 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025). Rehearing is warranted *a fortiori* here: Plaintiffs' argument for federal jurisdiction—where Plaintiffs seek to keep their own money—is stronger. Dissent 50-52. And the panel's opinion, a merits decision, will bind panels in pending cases. *E.g.*, *Widakuswara v. Lake*, No. 25-5144; *Vera Inst. of Just. v. DOJ*, No. 25-5248; *Amica Ctr. for Immigrant Rts. v. DOJ*, No. 25-5254.

2

The panel's summary rejection of Plaintiffs' constitutional and statutory claims also warrants review, including the panel's mistaken holding that Plaintiffs, under *Dalton*, cannot raise constitutional claims based on the Executive's refusal to spend congressionally appropriated funds. *Glob. Health Council v. Trump*, 2025 WL 2491211, at *7 (D.C. Cir. Aug. 28, 2025) (Pan, J., dissenting) ("Should the *Dalton* issue come before us again, we should take the first opportunity to revisit and correct the mistake that the court has made."); *id.* at *8 (Garcia, J., joined by Millett, J.) (*Dalton*'s meaning raises "not only an important question but also a complex one" that "in a future case may warrant the Court's en banc review"). Similarly, the panel's statutory ruling that EPA was free to disregard Congress's mandate "squarely conflicts with *Aiken*," Dissent 38, and has drastic implications for grant-termination cases.

## BACKGROUND

### A.    The Greenhouse Gas Reduction Fund.

The background of this case is detailed in Judge Pillard's dissent. Dissent 4-21. It arises from Congress's appropriation of $19.97 billion for grants to finance "the rapid deployment of low- and zero-emission products, technologies, and services." 42 U.S.C. §7434(c)(1)(A).[1] Congress directed EPA to run a competitive process to select grantees. *Id.* §7434(a). EPA selected the prime-grantee Plaintiffs.

---

[1] All citations are cleaned up and emphases are added.

The specific programs at issue—the National Clean Investment Fund (NCIF) and Clean Communities Investment Accelerator (CCIA)—aim to "create centralized, long-term financing institutions" to "catalyze deployment of [clean-energy] projects in communities all across the country." JA1735-36. Consistent with that purpose, Congress required grantees to "retain, manage, recycle, and monetize all repayments and other revenue received from … using grant funds." 42 U.S.C §7434(b)(1)(C). And to enable grantees to deploy capital effectively and "leverage more private financing," the program necessitated a "disbursement of the maximum funding amount" at the outset. 168 Cong. Rec. H7702; Dissent 30.

EPA structured the programs accordingly, disbursing all funds into Citibank accounts in Plaintiffs' names. JA1136-37. There is no question that, following disbursement, the funds became Plaintiffs'. The disbursement was "Capitalization by Nonexchange Capital Contribution," a type of "Program Income," JA1134, that Plaintiffs could "keep and use" to advance program goals, JA1122, and that Plaintiffs were "entitled to transfer" to "a financial institution of [Plaintiffs'] choosing" after the period of performance, JA1136. EPA obtained a security interest in the funds, JA1144-45, 2147-48—showing that Plaintiffs (not EPA) hold title.

4

**B.    The Administration Freezes Plaintiffs' Funds.**

On January 20, 2025, President Trump purported to "[t]erminat[e] the Green New Deal" and directed "[a]ll agencies [to] immediately pause the disbursement of funds appropriated through the Inflation Reduction Act." Dissent 9.

On February 12, EPA Administrator Zeldin announced EPA's goal to claw back NCIF and CCIA funds. JA973-74. Plaintiffs lost access to their Citibank funds without explanation. JA972. As Plaintiffs later learned, despite trying and failing to obtain orders seizing Plaintiffs' funds, FBI sent Citibank a letter "recommend[ing]" a freeze. JA99-103. The letter referenced "credible information" that Plaintiffs' accounts were "involved in possible criminal violations," JA100, an assertion DOJ and EPA later disavowed, Dissent 11-15, 23-26. Citibank complied. JA972.

**C.    Procedural Background.**

NCIF Plaintiffs sued, with Climate United seeking a TRO. On March 11, with a TRO application pending, EPA sent materially identical "Notices of Termination" to all NCIF and CCIA grantees with no individualized findings or allegations. JA390; JA398; JA1197; JA1949.

On April 15, the District Court preliminarily enjoined EPA from "causing Defendant Citibank to deny, obstruct, delay, or otherwise limit" Plaintiffs' access to their funds, and from terminating the grant programs. JA962.

On September 2, a split panel of this Court vacated the injunction.

5

## ARGUMENT

### I.     The Panel's Opinion Contradicts Settled Jurisprudence.

As Judge Pillard details, the panel badly erred in concluding that the Tucker Act impliedly precludes jurisdiction and that Plaintiffs' constitutional and statutory claims fail, and the panel's rulings conflict with Circuit and Supreme Court law.

#### A.     The District Court Had Jurisdiction Over All Claims.

1. Under *Megapulse*, the sovereign-immunity question turns on whether a claim is "at [its] essence" contractual, based "on the source of the rights upon which the plaintiff bases its claim[], and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986).

Plaintiffs passed the *Megapulse* test for all claims. Dissent 54-56. Plaintiffs allege that EPA lacks statutory and constitutional authority to undo an appropriation or re-do a grant program for policy reasons after a statutory deadline. Plaintiffs also allege that, if EPA had statutory authority, then EPA exercised it arbitrarily when it froze plaintiffs' funds, purportedly to re-do the GGRF program, and violated various regulations. The panel held there was jurisdiction over statutory and constitutional claims but not arbitrary-and-capricious claims, even though all arose from public law and sought the same remedy. That unprincipled result contravenes settled law.

To begin, this Court has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction

6

lies in the Court of Federal Claims," *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006), and none of Plaintiffs' claims are cognizable there. That court is limited to considering claims implicating a "money-mandating" obligation. *Lummi Tribe of the Lummi Rsrv. v. U.S.*, 870 F.3d 1313, 1318-19 (Fed. Cir. 2017). Plaintiffs seek a prohibitory injunction *barring* EPA from interfering with their funds and dismantling grant programs in violation of public law. The Court of Federal Claims cannot consider those claims. *LeBlanc v. U.S.*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). That "suffices to resolve the Tucker Act question against the government." Dissent 49-50; *Tootle*, 446 F.3d at 177; *Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (Tucker Act preemption "only arises when a plaintiff's substantive claim … is a claim over which Tucker Act jurisdiction could be invoked.").

That aside, the panel's *Megapulse* analysis fails. The panel held that the District Court lacked jurisdiction over half of Plaintiffs' claims because the funds at issue derive from grant agreements, and the effect of the District Court's injunction is to require EPA to comply with (non-monetary) contractual obligations. Op.11-18. Each ruling conflicts with Circuit precedent.

Dispositively, Plaintiffs now own the funds. JA986. This is clear from the fact that EPA merely holds a limited security interest; a bank also does not own mortgaged property, despite having more secured-party rights than EPA. JA1144-45. The relief Plaintiffs therefore seek—noninterference with their property—is

7

unavailable in the Court of Federal Claims. The majority did not discard the finding that Plaintiffs own the funds, Op.4, but held that Plaintiffs' ownership—because reflected in "grant agreements"—"reinforces that this dispute is contractual." Op.14 n.6.

As this Court observed in *Megapulse*, however, the Supreme Court has long recognized "a private party's cause of action outside the Tucker Act to challenge the statutory authority of federal officials to claim ownership rights in property allegedly transferred during the course of a [government] contract." 672 F.2d at 968-69. Nor is it relevant, as the panel held, Op.20, that Plaintiffs would have no claims absent a government contract. A "'but-for' test for identifying the source of the right .… contravenes *Megapulse*'s express rejection of the argument that the mere existence of such contract-related issues converts the action to one based on the contract." *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1110 (D.C. Cir. 2022); Dissent 56.

The panel's analysis of "the type of relief *sought*" and "the type of relief … *appropriate*" is also wrong. *Megapulse*, 672 F.2d at 968. Plaintiffs do not seek "specific performance" or money from Treasury. And the District Court's order does not require EPA to fulfill any contractual obligation; it *prohibits* EPA from unlawfully undoing a grant program or interfering with Plaintiffs' funds. Moreover, whereas money damages are "appropriate" in some cases, *id.*; *see Ingersoll-Rand Co. v. U.S.*, 780 F.2d 74, 79 (D.C. Cir. 1985), here, as noted, injunctive relief is

8

necessary to halt public-law violations, *Esch v. Yeutter*, 876 F.2d 976, 984-85 (D.C. Cir. 1989) (district court had jurisdiction in part because "the Claims Court lacks equitable jurisdiction to award injunctive relief of the type appellees need"); *Megapulse*, 672 F.2d at 970 (holding that money damages were inadequate).

2. The effect of the majority's ruling is to "establish[] a rule that any claim that could be reconceptualized as a contractual violation that overlaps even in part with the claim Plaintiffs actually bring is necessarily a disguised contract claim." Dissent 57. But this Court has repeatedly rejected the argument "that an agency action may not be enjoined, even if in clear violation of a specific statute, simply because that same action might also amount to a breach of contract." *Megapulse*, 672 F.2d at 971; *see also Crowley*, 38 F.4th at 1107; *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992) (rejecting view that just because a plaintiff "*could* reframe its claim as one for damages and bring it in the Claims Court," it must do so).

In *Sharp*, the plaintiff sought an injunction based on violations of the Constitution, statutes, and a contract; the Court held there was no jurisdiction over the contract claim, but retained jurisdiction over the others, although they sought *the same relief*. 798 F.2d at 1522-23; Dissent 59-60. In holding that a district court may not issue an injunction that *even approximates* a hypothetical specific-performance injunction, the panel badly strayed from established circuit precedent.

9

The same is true of the panel's treatment of *Maryland Department of Human Resources* and *Kansas City v. HUD*. As to *Maryland*, even though the state sought an injunction barring HHS from withholding funds that was "analogous to a request for specific performance," Judge Bork's opinion for the Court recognized that the grant agreement at issue was not "a contract within the meaning of the Tucker Act." 763 F.2d at 1449. Why? Because—the next sentence makes crystal clear—"[u]nlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Id.*; *accord Esch*, 876 F.2d at 984-85. Maryland's claims "ar[o]se under a federal grant program and turn[ed] on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties," 763 F.2d at 1449. So too here.

And in *Kansas City v. HUD*, the Court held that "[e]ven if HUD [could] permissibly read [a statute] as allowing termination of [a grant] agreement without notice and hearing, the agency termination action remain[ed] subject to the independent arbitrary and capricious standard of review." 923 F.2d 188, 193 (D.C. Cir. 1991). The majority dismisses this as a "drive-by jurisdictional holding," Op.19, but Article III jurisdiction over this claim follows necessarily from this Court's repeated recognition that "[i]f the Court of Federal Claims lacks jurisdiction, the only question is whether there is an affirmative congressional grant of jurisdiction

10

to the federal district courts," *Tootle*, 446 F.3d at 177. (An arbitrary-and-capricious claim may fail on the merits if a contract, unlike here, could be terminated for convenience, but that merits defense would be jurisdictionally irrelevant under *Megapulse*.)

Finally, recent Supreme Court stay decisions do not resolve the Tucker Act preclusion question because "Plaintiffs' money was already paid." Dissent 51-52. If anything, *NIH* "*supports* the district court's jurisdiction over the policy-based interference with Plaintiffs' funds." *Id.*

3. Beyond all this, the district court also had jurisdiction because there is no sovereign immunity, so the APA waiver was unnecessary. "Sovereign immunity bars a suit by private parties seeking to impose a liability which must be paid from public funds in the … treasury." *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 755 (2025) (Alito, J. dissenting). Plaintiffs seek to enjoin *ultra vires* acts of federal officers, so "there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Com. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996).

The panel brushed this aside for the same reason that it rejected jurisdiction under the APA, i.e., because *ultra vires* review "does not apply to contract claims." Op.21-22. But, again, Plaintiffs *did not bring* contract claims. Moreover, as Judge Pillard explains (Dissent 49-50), the panel's terse analysis contravenes longstanding Supreme Court precedent, including *Land v. Dollar*, 330 U.S. 731, 735-38 (1947),

11

which held that a plaintiff alleging claims regarding property arising from a government contract is "not relegated to the Court of Claims to recover a money judgment." *See also Dugan v. Rank*, 372 U.S. 609, 621-23 (1963) (citing *Land v. Dollar* favorably); *Ickes v. Fox*, 300 U.S. 82, 96-97 (1937).

### B.   The Panel Misconstrued Plaintiffs' Constitutional Claim and Contravened Black-Letter Appropriation Law.

The panel found jurisdiction over Plaintiffs' constitutional and statutory claims but summarily—and erroneously—rejected them.

The panel's constitutional ruling cannot be squared with existing law; Plaintiffs' claim that EPA seeks to dismantle the GGRF, flout the IRA, and override Congress's power of the purse is plainly a constitutional claim. *See In re Aiken Cnty.*, 725 F.3d 255, 260-61 (D.C. Cir. 2013) ("[T]he President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress."); *Clinton v. City of New York*, 524 U.S. 417, 439-41 (1998); *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 613 (1838).

The panel dismissed this claim out of hand because it read *Dalton v. Specter*, 511 U.S. 462 (1994), as rejecting any constitutional claim that may also be articulated as one that "agency officials acted in excess of their statutory authority." Op.22. But *Dalton* is not so crude. It involved an elaborate statutory scheme that *authorized* the challenged conduct—the President's closure of a shipyard—*under certain circumstances*. *Dalton* held that where the executive wields statutory

12

authority, but arguably acts in excess of it, the violation is not "*ipso facto*" a constitutional violation. 511 U.S. at 472-74. *Dalton* has no application where, as here, there is *no* statutory authority, *id.* at 473—not to mention claims of affirmative constitutional violations (of the Appropriations Clause and, through EPA's usurpation of Congress's power of the purse, the separation of powers). *Cf. Glob. Health Council*, 2025 WL 2491211, at *5 (Pan, J, dissenting) ("The *Dalton* Court would have been astonished at the panel's application of that case to preclude the grantees' separation-of-powers claim.").

Moreover, the panel also contravened Circuit precedent in dismissing Plaintiffs' statutory claim. Per the panel, the IRA required EPA to obligate the $20 billion, but "d[id] not limit the Administrator's discretion to withhold or terminate grants." Op.23. As Judge Pillard explains, "[o]nly Congress may authorize 'money to be paid out of the Treasury.' And when it does so, the executive 'may not ignore' those funding directives 'merely because of policy disagreement with Congress.'" Dissent 37 (citing *Cincinnati Soap Co. v. U.S.*, 301 U.S. 308, 321 (1937), then *Aiken*, 725 F.3d at 260). The panel's holding that an agency can simply ignore congressional spending directives "squarely conflicts with *Aiken*." Dissent 38.

*Train v. City of New York* is also clear. 420 U.S. 35 (1975). There, an appropriation statute "ma[de] available federal financial assistance" to the States by "authoriz[ing] to be appropriated" sums "not to exceed" set limits, and "authorize[d]

13

the [EPA] Administrator 'to make grants'" out of appropriated funds. *Id.* at 37-39. The Supreme Court rejected EPA's effort "to imply a power of some sort in the Executive to control outlays under the Act" at the allotment stage: at most, "the power to control [disbursements], such as it was, was to be exercised at the point where funds were obligated." *Id.* at 48; *see also Aiken*, 725 F.3d at 261 n.1. Similarly, here, there is no basis to "imply a power of some sort" on the part of EPA to tear down or re-do the program, after the statutory deadline. *Train*, 420 U.S. at 48.

All that remains, as the panel admits, is the authority to recommit funds through replacement grants. Op.23-25. The panel's reliance on this authority misses the mark given the factual finding, well supported by the record, that EPA does not intend to re-obligate funds. Dissent 39-41. Regardless, the panel simply ignores that, in order to qualify as a replacement grant, the re-obligation must be "'substantially identical in scope and purpose to the original grant.'" Dissent 42. In other words, "EPA would have to retain the very features it claims prompted the agency to interfere with Plaintiffs' grants." *Id*. That confirms EPA's statutory violation.

### C.    The Panel's Analysis Of The Equities Also Warrants Review.

The panel also held that the district court abused its discretion in evaluating the equities. Here again the panel strayed from Circuit precedent.

*First*, in finding no irreparable harm, the panel ignored that multiple Circuit decisions hold that reputational harm suffices, and here it was well supported.

14

Dissent 45-46. The panel also brushed aside the financially devastating consequences for some of Plaintiffs because they were created to participate in the grant program. Op.28. But that is exactly as EPA intended, Dissent 28-29, and the panel cited no authority—because there is none—for its asserted exception to the rule that government action threatening the existence of a private entity constitutes irreparable harm. And as Judge Pillard details (Dissent 44-45), EPA's actions have "unquestionably ma[d]e it more difficult for [Plaintiffs] to accomplish their primary mission[s]," which itself establishes irreparable harm, *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

*Second*, the panel's balancing of the equities was not only tainted by its erroneous Tucker Act ruling, but also skewed by its constitutional and statutory rulings. Op.29. It thought the government's interest in "protecting the public fisc" paramount, *id.*, but Congress, not the Executive, has the power of the purse. And EPA's efforts to freeze and claw back Plaintiffs' funds violate Congress's directives.

## II.    This Case Warrants Rehearing En Banc.

This case meets this Court's criteria for rehearing *en banc*.

First, this case has great practical importance. The Greenhouse Gas Reduction Fund was a cornerstone of the Inflation Reduction Act. The amount of money at stake—$19.97 billion—alone is massive. Defendants' conduct is already harming communities across the country, and this case will have a profound impact on clean-

15

energy investment in the United States for decades to come—as well as on private parties' willingness to contract and partner with the federal government.

Second, this case is important to the rule of law. The government scarcely disputes that it is acting arbitrarily to advance its policy preferences—it *admitted* it has no evidence supporting its allegations against Plaintiffs, Dissent 27-29. EPA locates no statutory authority to end the grants or re-do the programs. And its only defense to the glaring separation-of-powers violation is to assert there is no constitutional claim and to pledge to re-obligate the funds. But any such re-obligation, after the statutory deadline and to further the agency's new priorities, would be blatantly illegal. EPA barely disputes that its conduct—its seizure of Plaintiffs' funds, termination decisions, and purported plan to re-do the program—was pretextual and arbitrary.

Yet, the panel held, the Constitution does not apply, the Executive can act without express authority from Congress, and any remaining claim must fail for lack of jurisdiction. The sole possible remedy is a potential money judgment years down the road from a different (Article I) court, based on completely different claims. This Court has never before sanctioned such a result; it should not do so now.

Finally, the Court's decision will distort Circuit law. This is the first merits case during this Administration addressing Tucker Act preclusion, but there will be many more. Thus, on September 22, 2025, a panel of this Court will hear argument

16

in *Widakuswara* and related cases. The Court granted rehearing en banc of a stay in *Widakuswara*, but the panel's misguided *Climate United* decision will bind the *Widakuswara* panel. Moreover, on October 14, a panel will hear argument in *Vera Institute of Justice v. DOJ*, No. 25-5248, and *Amica Center for Immigrant Rights v. DOJ*, No. 25-5254, which raise similar Tucker Act issues. Indeed, the government's *Vera Institute* brief (at 22, 26, 31, 47) relies heavily on the panel decision here.

If the Court leaves the panel's erroneous decision intact, those cases—and many others waiting in the wings—may similarly come out the wrong way, compounding the panel's error. And decisions against those grantees will prompt fresh rehearing petitions and stay applications, imposing additional and unnecessary burdens on the Court. The *en banc* Court should right the ship now.

## CONCLUSION

The Court should grant rehearing *en banc*.

Dated: September 10, 2025

Respectfully submitted,

/s/ *Vincent Levy*
  Vincent Levy
    *Counsel of Record*
  Kevin D. Benish
  Daniel Fahrenthold
  HOLWELL SHUSTER &
  GOLDBERG LLP
  425 Lexington Avenue, 14th Floor
  New York, NY 10017
  Tel.: (646) 837-5151

/s/ *Adam G. Unikowsky*
  Adam G. Unikowsky
    *Counsel of Record*
  Kathryn L. Wynbrand
  David B. Robbins
  Tanner J. Lockhead
  JENNER & BLOCK LLP
  1099 New York Avenue, Suite 900
  Washington, D.C. 20001
  Tel.: (202) 639-6000

17

vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Coalition for Green Capital*

/s/ *Beth C. Neitzel*
Beth C. Neitzel
   *Counsel of Record*
Jack C. Smith
Kevin Y. Chen
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com
jcsmith@foleyhoag.com
kchen@foleyhoag.com

Noah C. Shaw
James M. Gross
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff-Appellee Power*
*Forward Communities*

/s/ *David J. Zimmer*
David J. Zimmer
   *Counsel of Record*
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, MA 02139
Tel.: (617) 676-9421
dzimmer@zimmercitronclarke.com

Eric F. Citron

Fax: (202) 639-6066
aunikowsky@jenner.com

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com

Allison N. Douglis
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff-Appellee Climate*
*United Fund*

/s/ *Jay C. Johnson*
Jay C. Johnson
   *Counsel of Record*
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Tel.: (202) 344-4000
jcjohnson@venable.com

*Attorney for Plaintiff-Appellee Inclusiv,*
*Inc.*

18

Kathleen Foley
ZIMMER, CITRON & CLARKE LLP
1629 K. St. NW, Suite 300
Washington, D.C. 20006
Tel.: (202) 796-4540
ecitron@zimmercitronclarke.com
kfoley@zimmercitronclarke.com

*Attorneys for Plaintiff-Appellee*
*Justice Climate Fund*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 40(d)(3)(A), I hereby certify that the preceding motion complies with the type-volume limitation of the rules, containing 3,888 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). I further certify that the document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Vincent Levy*

20

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Vincent Levy*

21