Nos. 25-5122, 25-5123

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

---

CLIMATE UNITED FUND, et al.

*Plaintiffs-Appellees,*

v.

CITIBANK, N.A., et al.

*Defendants-Appellants.*

---

*On Appeal from the United States District Court
for the District of Columbia*

---

**MOTION OF U.S. SENATORS CHRIS VAN HOLLEN, SHELDON WHITEHOUSE, EDWARD MARKEY, BRIAN SCHATZ, RICHARD BLUMENTHAL, BERNIE SANDERS, MAZIE K. HIRONO, JEFF MERKLEY, AND TINA SMITH AND U.S. REPRESENTATIVES DEBBIE DINGELL, PAUL TONKO, SHRI THANEDAR, GREG LANDSMAN, NANETTE BARRAGAN, LLOYD DOGGETT, JULIA BROWNLEY, BONNIE WATSON COLEMAN, MIKE QUIGLEY, JARED HUFFMAN, JAN SCHAKOWSKY, MARY GAY SCANLON, ALEXANDRIA OCASIO-CORTEZ, SARAH ELFRETH, FRANK PALLONE, KEVIN MULLIN, JAMIE RASKIN, SEAN CASTEN, SUZANNE BONAMICI, MIKE LEVIN, TROY CARTER, YVETTE CLARKE, JENNIFER MCCLELLAN, DARREN SOTO, DIANA DEGETTE, ROBERT MENENDEZ, KATHY CASTOR, MARK TAKANO, BOBBY SCOTT, GEORGE LATIMER, AND DORIS MATSUI TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION FOR REHEARING EN BANC**

Gary DiBianco
LAWYERS FOR GOOD
GOVERNMENT
319 F St NW Ste 301, PMB 181
Washington, DC 20004
Tel. (404) 913-5529
[gary@lawyersforgoodgovernment.org](mailto:gary@lawyersforgoodgovernment.org)

*Counsel for Amici Curiae*

Movants Members of Congress respectfully request an invitation from this Court, under Circuit Rule 40(f), to submit a brief as *amici curiae* in support of Plaintiffs-Appellees' petition for rehearing en banc. *See, e.g., Campaign Legal Ctr. v. Fed. Election Comm'n*, No. 22-5339 (D.C. Cir. Mar. 11, 2024) (granting request for an invitation to file an *amicus* brief in support of a petition for rehearing en banc). Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amici curiae* represents that Plaintiffs-Appellees and the U.S. Government Defendants consent to the filing of this brief, and Defendant Citibank takes no position on the filing.

## I. Interest of *Amici Curiae* and Rule 29(a)(4)(E) Statement

*Amici curiae* include the original champions of Green Bank legislation and its passage as the GGRF; the Ranking Members of the Senate and House committees with jurisdiction over the GGRF (U.S. Senate Committee on Environment and Public Works, U.S. House Committee on Energy and Commerce); the Ranking Member of the Senate Appropriations Committee subcommittee with jurisdiction over GGRF funding; and other Members of Congress with a particularized interest in preserving the separation of powers and ensuring that Congress's plenary power over appropriations and spending is protected.

**CONCLUSION**

For the foregoing reasons, Movants Members of Congress respectfully request that the Court invite them to file the accompanying *amicus curiae* brief.

Respectfully submitted,
/s/Gary DiBianco
Gary DiBianco
LAWYERS FOR GOOD GOVERNMENT
319 F St NW Ste 301, PMB 181
Washington, DC 20004
Tel. (404) 913-5529
gary@lawyersforgoodgovernment.org

*Counsel for Amici Curiae*

Dated: September 17, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(w) because it contains 219 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1):

I further certify that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 17th day of September, 2025.

<u>/s/ Gary DiBianco</u>
Gary DiBianco

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on September 17, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 17th day of September, 2025.

/s/ Gary DiBianco
Gary DiBianco

*Counsel for Amici Curiae*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

CLIMATE UNITED FUND, et al.

*Plaintiffs-Appellees,*

v.

CITIBANK, N.A., et al.

*Defendants-Appellants.*

*On Appeal from the United States District Court
for the District of Columbia*

# BRIEF OF *AMICUS CURIAE* U.S. SENATORS CHRIS VAN HOLLEN, SHELDON WHITEHOUSE, EDWARD MARKEY, BRIAN SCHATZ, RICHARD BLUMENTHAL, BERNIE SANDERS, MAZIE K. HIRONO, JEFF MERKLEY, AND TINA SMITH AND U.S. REPRESENTATIVES DEBBIE DINGELL, PAUL TONKO, SHRI THANEDAR, GREG LANDSMAN, NANETTE BARRAGAN, LLOYD DOGGETT, JULIA BROWNLEY, BONNIE WATSON COLEMAN, MIKE QUIGLEY, JARED HUFFMAN, JAN SCHAKOWSKY, MARY GAY SCANLON, ALEXANDRIA OCASIO-CORTEZ, SARAH ELFRETH, FRANK PALLONE, KEVIN MULLIN, JAMIE RASKIN, SEAN CASTEN, SUZANNE BONAMICI, MIKE LEVIN, TROY CARTER, YVETTE CLARKE, JENNIFER MCCLELLAN, DARREN SOTO, DIANA DEGETTE, ROBERT MENENDEZ, KATHY CASTOR, MARK TAKANO, BOBBY SCOTT, GEORGE LATIMER, AND DORIS MATSUI IN SUPPORT OF PLAINTIFFS-APPELLEES

Gary DiBianco
LAWYERS FOR GOOD
GOVERNMENT
319 F St NW Ste 301, PMB 181
Washington, DC 20004
Tel. (404) 913-5529
gary@lawyersforgoodgovernment.org

*Counsel for Amicus Curiae*

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amici curiae* Lawyers for Good Government (L4GG) represents that Plaintiffs-Appellees and the U.S. Government Defendants consent to the filing of this brief, and Defendant Citibank takes no position on the filing.[1]

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amici curiae* certifies that a separate brief is necessary. *Amici* Members of Congress seek to protect Congress's plenary power over appropriations and spending. This brief provides a specific analysis of the interplay between *Clinton v. New York,* 524 U.S. 417 (1998), *In re Aiken County*, 725 F.3d 255 (D.C. 2013), and *Dalton v. Specter*, 511 U.S. 462 (1994), and explains why *Dalton* does not foreclose judicial review of the separation-of-powers claim in this case.

---

[1] No party's counsel authored the brief in whole or in part, and no money has been contributed to L4GG by any party or other person to fund preparing or submitting the brief.

## CORPORATE DISCLOSURE STATEMENT

*Amici* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

I.    PARTIES AND *AMICI*

Except for any *amici* who had not yet entered an appearance in this case as of the filing of the Petition for Rehearing En Banc, all parties, intervenors, and *amici* appearing in this Court are listed in the Petition for Rehearing En Banc.

II.   RULINGS UNDER REVIEW

Reference to the ruling under review appears in the Petition for Rehearing En Banc.

III.  RELATED CASES

Reference to any related cases pending before this Court appears in the Petition for Rehearing En Banc.


Dated: September 17, 2025

/s/ Gary DiBianco
Gary DiBianco

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................................... v-vi

GLOSSARY.............................................................................................. vii

INTEREST OF *AMICI*............................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT...................... 1

ARGUMENT............................................................................................ 3

    EPA's Actions Violate Congress's Appropriations Power............ 3

        A. The Panel Erred in Rejecting the Constitutional
           Claim................................................................................. 3

        A. The Panel Wrongly Substituted Its Own Inferences and
           Factfinding for That of District Court............................... 7

CONCLUSION......................................................................................... 11

# TABLE OF AUTHORITIES

CASES                                                                  Page(s)

*Anderson v. City of Bessemer*
        *470 U.S. 564, 574* (1985).............................................................. 8

*Clinton v. City of New York,*
        524 U.S. 417, 438 (1998)........................................................... 3, 5-7

*Climate United Fund v. Citibank, N.A,*
        778 F.Supp.3d 90 (D.D.C. 2025)................................................. 8-11

*Climate United Fund v. Citibank, N.A.,*
        2025 WL 2502881 (D.C. Cir. Sept 2, 2025)............................. 1-4, 6-11

*Dalton v. Specter,*
        511 U.S. 462 (1994)...................................................................... 2-6

*In re Aiken County,*
        725 F.3d 255 (D.C. Cir. 2013)...................................................... 2, 6-7

*Latif v. Obama,*
        677 F.3d 1175, 1178 (D.C. Cir. 2011)............................................ 10

*South Dakota v. Dole,*
        483 U.S. 203, 206-07 (1987)......................................................... 4

*Train v. New York,*
        420 U.S. 35, 42-47 (1975)............................................................. 6

CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 7.............................................................................. 5

U.S. Const. art. I, § 8, cl. 1..................................................................... 4

U.S. Const. art. I, § 9, cl. 7..................................................................... 4

## STATUTES

42 U.S.C. § 7434.....................................................................................    5

## OTHER AUTHORITIES

Inflation Reduction Act § 60103, Pub. L. 117-169 (2022)..................    1

# GLOSSARY

| | |
|---|---|
| CCIA | Clean Communities Investment Accelerator |
| EPA | United States Environmental Protection Agency |
| GGRF | Greenhouse Gas Reduction Fund |
| IRA | Inflation Reduction Act |
| NCIF | National Clean Investment Fund |

## INTEREST OF *AMICI CURIAE* AND RULE 29(a)(4)(E) STATEMENT

*Amici curiae* include the original champions of Green Bank legislation and its passage as the GGRF; the Ranking Members of the Senate and House committees with jurisdiction over the GGRF (U.S. Senate Committee on Environment and Public Works, U.S. House Committee on Energy and Commerce); the Ranking Member of the Senate Appropriations Committee subcommittee with jurisdiction over GGRF funding; and other Members of Congress with a particularized interest in preserving the separation of powers and ensuring that Congress's plenary power over appropriations and spending is protected.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Congress passed the IRA in 2022, which authorized and appropriated nearly $20 billion for the GGRF programs at issue here: the National Clean Investment Fund (NCIF) and the Clean Communities Investment Accelerator (CCIA). Congress directed that these funds must be granted to specialized nonprofit financial organizations for projects that "reduce or avoid greenhouse gas emissions and other forms of air pollution."[2] Congress required that the EPA obligate GGRF funds by September 30, 2024. EPA met the deadline and entered into Financial

---

[2] *Inflation Reduction Act*, Pub. L. 117-169, 136 Stat. 2065, Sec. 60103 "Greenhouse Gas Reduction Fund."

Agent Agreements to "[convey] to the grantees legal title to the award funds" while "affording EPA greater oversight of the grantees' use of the funds than it would have had under the default disbursement system." *Climate United Fund v. Citibank*, 2025 WL 2502881 at *16 (D.C. Cir. Sept 2, 2025) (Pillard, J. dissenting) (citing Bafford Decl. 33 (J.A. 372)).

After President Trump took office, the new EPA Administrator and other officials began to make outrageous attacks on grantees – including attempts to fabricate criminal fraud allegations. EPA's subsequent blanket termination of the NCIF and the CCIA programs willfully ignores Congressional spending power and puts $20 billion of community and clean energy investments at risk. This is not a prosaic contract dispute; this is a constitutional power grab.

The panel errs in finding that Plaintiffs' appropriations claims are prohibited by *Dalton v. Specter,* 511 U.S. 462 (1994). An agency's failure to spend congressionally appropriated funds is illegal under *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013). Yet the panel wrongly allows EPA to seize GGRF funds that were appropriated by Congress and fully disbursed into private bank accounts. Unlike in *Dalton*, which was not an appropriations case, here Congress mandated how, by when, and to whom appropriated funds should be granted. It is black letter law that Congress enjoys plenary appropriations power. As held by the Supreme Court in *Clinton v. City of New York*, 524 U.S. 417, 464 (1998), the executive

3

branch does not have the power to repeal a statute by withholding its funding.  To hold otherwise would give the executive branch free rein to ignore Congressional appropriations decisions.  This Court should grant rehearing, to consider the constitutional issues raised by EPA's misdeeds.

## ARGUMENT

### EPA's Actions
### Violate Congress's Appropriations Power.

The panel decision acknowledges that EPA terminated the full amount of all grants made under two GGRF grant programs, but discards the district court record and precedential case law to conclude that the grantees' challenge "is not a constitutional claim at all" and is only a challenge to the IRA.  *Climate United*, 2025 WL 2502881 at *10.  This is exactly backwards: the existence of a potential statutory violation does not displace a constitutional claim, and the dispositive question is whether the Administration has exceeded its constitutional powers. Here, it has: Congress required EPA to spend the GGRF funds before September 30, 2024, and EPA would have been prohibited from refusing to do so.  EPA's efforts to terminate funding after disbursement are equally impermissible.  Nor was there any basis to overturn the district court's thorough analysis concluding that EPA terminated the grant programs wholesale.

## A. The Panel Erred in Rejecting the Constitutional Claim.

The Court should grant en banc review and not allow an overly expansive interpretation of *Dalton* to nullify Congressional spending power. By stretching *Dalton* to reject Plaintiffs' separation of powers claims, and shoehorning Plaintiffs' remaining claims into contractual disputes under the ill-fitting Tucker Act, the panel swept constitutional questions under the rug.

This case concerns EPA's unilateral termination of all grants under two GGRF programs (in addition to at least eight other programs beyond this case, see *infra* note 4), after all the funds had been dispersed to private bank accounts. These brazen actions usurped power assigned to Congress by the Constitution. Under our Constitution, the power of the purse belongs to Congress, not the President or his agents. U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause). Congress may employ that power "to further broad policy objectives"[3] and as the dissent points out, "neither the President nor his subordinate executive agencies may decline to follow a statutory mandate or prohibit spending because of policy objections." *Climate United*, 2025 WL 2502881 at *14 (Pillard, J., dissenting).

*Dalton* simply does not apply here. That case stands for the limited proposition that "[w]here a statute . . . commits decision-making to the discretion

---

[3] *South Dakota v. Dole,* 483 U.S. 203, 206-07 (1987).

of the President, judicial review of the President's decision is not available." 511 U.S. at 477. But no statute gave the President, let alone EPA, discretion to terminate all previously obligated and disbursed funds allocated by Congress for two GGRF programs. Plaintiffs' claims here do not depend on termination of a single contract, withholding of a disputed grant amount, or even administrative interpretation of a statutory provision. Finally, in sharp contrast with the discretion afforded to the President under the military base closure statute at issue in *Dalton*, Congress could not have been clearer that the GGRF was enacted to "enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies," and that EPA had to obligate all grant funding by September 30, 2024. 42 U.S.C. § 7434. *Dalton* cannot sanction EPA nullifying clear statutory directives by terminating these programs.

Nor can the panel's expansion of *Dalton* be reconciled with Supreme Court precedent that prohibits the executive from unilaterally refusing to spend appropriated funds – let alone claw back actually disbursed funds. In *Clinton*, the Supreme Court struck down the line item veto as unconstitutional, because Article I, § 7 of the Constitution makes clear that the President cannot cancel a law without Congress's express authorization. *Clinton,* 524 U.S. at 446. Decided after *Dalton*, the Court's opinion in *Clinton* specifically rejected the argument that cancellations of Congressionally appropriated programs were "merely exercises of discretionary

authority granted to the President." *Id.* at 442. Instead, the Supreme Court reaffirmed the bedrock principle that the Constitution does not permit "the President to enact, to amend, or to repeal statutes." *Id.* at 438. The panel's broad recharacterization of *Dalton* into the appropriations context effectively gives an unconstitutional line item veto to this Administration.

It is similarly not possible to square the panel's reading of *Dalton* with the Supreme Court's ruling in *Train v. New York,* 420 U.S. 35, 42-47 (1975). There, the Supreme Court held that language in the Federal Water Pollution Control Act that the EPA "shall" allot funds by a date certain meant what it said. *Train*, 420 U.S. at 42-47. At the direction of President Nixon, the EPA Administrator allotted less than what the Act specified. *Id.* at 40. The Supreme Court ruled that the Administrator could not do so. Inclusion of the phrase "not to exceed" did not provide discretion to the EPA to refuse to spend the funds; it only preserved the possibility that approved applications for funds already allotted "would not total the maximum amount authorized to be appropriated." *Id.* at 44. Here, the statutory directive is even clearer: Congress appropriated specific sums to carry out the GGRF programs, to be spent by a specific date, and to be provided to specified eligible entities.

Meanwhile, on the correct factual record, *Aiken County* is indistinguishable. *See Climate United*, 2025 WL 2502881 at *29 ("[A]bsent congressional

authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals.") (Pillard, J., dissenting, quotation and citation omitted). Under *Aiken County*, an agency may not refuse to spend appropriated funds in violation of a statutory obligation. *Aiken Cnty.*, 725 F.3d at 257-69. As then-Judge Kavanaugh wrote: "where previously appropriated money is available for an agency to perform a statutorily mandated activity, we see no basis for a court to excuse the agency from that statutory mandate." *Aiken Cnty.*, 725 F.3d at 260. The panel tries to avoid this precedent by discarding the district court's well-supported findings and lending undue credibility to EPA's inconsistent justifications for terminating the grants. *Climate United,* 2025 WL 2502881 at *11. As set out below, the district court's factual conclusion that EPA had no intention of re-awarding the GGRF money was amply supported; thus, *Aiken County* should control. The district court correctly found that the Plaintiffs demonstrated a likelihood of success on this claim.

### B. The Panel Wrongly Substituted Its Own Inferences and Factfinding for That of District Court

The panel avoids the clear dictates of *Clinton* and *Aiken County* only by rewriting the factual record in the case and overturning the district court's factual findings. *Climate United*, 2025 WL 2502881 at *11. But this turns logic upside down, dispensing with the district court's detailed factfinding while affording the

government a presumption of regularity that strains credulity.[4]  Where "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer,* 470 U.S. 564, 573-74 (1985).

The district court did not, as the panel writes, "simply declare" that EPA was shutting down the GGRF program.  *Climate United*, 2025 WL 2502881 at *11. Rather, the district court made well-supported findings of fact that EPA's out-of-court words and actions contradicted the Agency's representations in the litigation that the GGRF program would continue following termination of Plaintiffs' grants.  Specifically:

- The district court found that EPA initially claimed fraud and conflicts of interest in grant awards and enlisted the FBI to pressure Citibank to freeze funds, but then admitted the terminations were "based on reasons of policy" when it could produce no evidence of fraud.  *Climate United,* 778 F.Supp.3d at 114-115.

---

[4]  See infra, at 10.  As set forth in the sworn declaration of Daniel Coogan, EPA Deputy Assistant Administrator, filed on April 23, 2025 in *Woonasquatucket River Watershed Council v. Department of Agriculture*, 25-cv-00097-MSM-PAS (D.R.I), EPA has terminated (and notably, not reawarded) eight Congressionally-authorized environmental justice grant programs, implicating 781 grants.  In addition, on August 7, 2025 EPA announced the termination of $7 billion in Solar for All Grants, the third of the three programs in GGRF. https://x.com/epaleezeldin/status/1953518426602803684

- The district court found that EPA served Plaintiffs with identical information requests on the GGRF program's oversight controls then terminated *all* the grants prior to receiving responses. *Id.* at 114. From this action, the district court reasonably inferred that the government's reference to lack of oversight was a pretext.

- The district court found that EPA refused to provide any rationale for why it terminated the grants, why cancellation was necessary when EPA had begun to examine the grant programs to add oversight mechanisms, or "why it needed to cancel every single grant to review some aspects of the GGRF program . . . ." *Id.*

- The district court found that "[t]hroughout February and March 2025, Administrator Zeldin began to publicly express his desire to take control of the funds disbursed under the Inflation Reduction Act (IRA) and to terminate the GGRF grants . . . and that EPA is 'not going to rest' until it recovered the grant funds." *Id.* at 102. The district court was not "clearly erroneous" in concluding that these public statements by the EPA Administrator, alongside an executive order directing agencies to halt all IRA disbursements to "terminate the Green New Deal," betrayed the actual, unlawful reason for the grant terminations and the intent to end the program.

The panel erred further by faulting the district court for "ignor[ing]" the "gold bars" video. *Climate United*, 2025 WL 2502881 at *11 n.12. But of course the district court gave no evidentiary value to that video: it is patently irrelevant to the GGRF. The video concerns efforts to award different grant money *after* the November 2024 election. All the GGRF grants were awarded by September – months *before*.

The panel also erred in holding that the district court should have afforded EPA's unsupported and inconsistent representations a presumption of regularity. *Climate United*, 2025 WL 2502881 at *11. The "presumption of regularity" is a limited, rebuttable presumption that applies to authenticity of government documents and official acts. *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011). The district court did not refuse to consider EPA's evidence or account of its actions but rather determined – after significant factual analysis – that EPA's representations were unsupported by the broader factual record. The district court found that EPA first sought to terminate grant funding through a criminal

investigation,[5] and when that failed, shifted its position to claim that the terminations were based on changed agency priorities. *Climate United*, 778 F.Supp.3d at 115. Although EPA claimed it conducted an "individualized assessment" of the grants, the district court found that EPA had not provided any rationale for the terminations. *Id*. at 115-116. The district court, as the finder of fact, concluded that EPA's "public statements contradict its representations here regarding the future of the program." *Id*. at 116. These factual conclusions were firmly grounded in the record and should not have been disturbed by the panel.

## CONCLUSION

The stakes presented by this power grab are high. In the NCIF and CCIA programs under the GGRF, Congress directed EPA to grant nearly $20 billion to nonprofit financial organizations for the purpose of reducing pollution and energy costs for low-income and disadvantaged communities. There is considerable

---

[5] It appears, from the record and public reporting, that the following events transpired: (1) an acting U.S. Attorney asked his criminal division to prepare to seize those funds based on a criminal investigation into supposed fraud; (2) he was told by his staff that without any factual predication that would not be appropriate; so (3) he forced the resignation of the criminal chief and (4) proceeded without any career prosecutor willing to sign his pleading; and then (5) failed to convince the magistrate judge and failed to get the requested court order. Simultaneously, in a parallel court proceeding, DOJ denied that it was accusing anyone of fraud, and conceded there was no evidence of fraud. Its client, EPA Administrator Zeldin, was making constant public accusations of fraud, contrary to historic DOJ practice of eschewing public statements about subjects of investigation. *Climate United*, 2025 WL 2502881 *10-19 (Pillard, J. dissenting). It is hard to see how any presumption of regularity can be attached to this sordid series of directly related events.

reliance on those grants, which were disbursed to private accounts nearly a year ago.

      If the panel decision stands, it would set precedent that any agency can simply unwind any Congressionally-mandated program, unilaterally ending contracts without process, seizing money in private bank accounts, and clawing back already-disbursed funds. Congress's exclusive power of the purse would be in name only. This Court should grant rehearing en banc.

DATE: September 17, 2025

Respectfully submitted,
/s/ Gary DiBianco
Gary DiBianco
Counsel of Record
LAWYERS FOR GOOD
GOVERNMENT
319 F St NW Ste 301, PMB 181
Washington, DC 20004
Tel. (404) 913-5529
gary@lawyersforgoodgovernment.org

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(w) because it contains 2,590 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1):

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 17th Day of September, 2025.

<u>/s/ Gary DiBianco</u>
Gary DiBianco

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on September 17, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 17th day of September, 2025.

/s/ Gary DiBianco
Gary DiBianco

*Counsel for Amicus Curiae*