**Nos. 25-5122, 25-5123**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLIMATE UNITED FUND, ET AL.,

*Plaintiffs-Appellees,*

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CITIBANK N.A.'S RESPONSE TO APPELLEES' PETITIONS FOR REHEARING EN BANC**

K. Winn Allen, P.C.
*Counsel of Record*
Aaron L. Nielson
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

September 30, 2025

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE..........................................................................2

       A.    Citibank's Role as a Financial Agent of the United States ...................2

       B.    Citibank's Compliance with the Government's Instructions................3

       C.    Procedural History..................................................................................5

ARGUMENT .........................................................................................................7

I.     No Petitioner Challenges the Panel Holding that Claims Against Citibank are wholly "Derivative." ..................................................................7

II.    Citibank Fully Complied With its Contractual Obligations.........................9

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cemex Inc. v. Dep't of Interior*,
 560 F. Supp. 3d 268 (D.D.C. 2021)...................................................................11

*Church of Scientology of Cal. v. I.R.S.*,
 792 F.2d 153 (D.C. Cir. 1986) (en banc), *aff'd*, 484 U.S. 9 (1987) .....................7

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
 888 F.3d 640 (4th Cir. 2018) ................................................................................8

*Food & Water Watch, Inc. v. Vilsack*,
 808 F.3d 905 (D.C. Cir. 2015)...............................................................................9

*Friedman v. Manfuso*,
 620 F. Supp. 109 (D.D.C. 1985)..........................................................................11

*Goodrich v. Bank of Am., N.A.*,
 2024 WL 341064 (D.D.C. Jan. 30, 2024), *aff'd*, 136 F.4th 347
 (D.C. Cir. 2025) ...................................................................................................13

*Kolstad v. Am. Dental Ass'n*,
 108 F.3d 1431 (D.C. Cir. 1997), *reh'g en banc granted in part,
 judgment vacated in part* (May 28, 1997) (en banc) (per curiam),
 *rev'd on other grounds*, 139 F.3d 958 (D.C. Cir. 1998) (en banc),
 *vacated on other grounds*, 527 U.S. 526 (1999) ................................................7

*Ledoux v. District of Columbia*,
 833 F.2d 368 (D.C. Cir. 1987) (en banc) (per curiam).........................................7

*Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*,
 315 F. Supp. 3d 129 (D.D.C. 2018).....................................................................11

*Matek Inc. v. Int'l Bus. Machs. Corp.*,
 2024 WL 663340 (D.D.C. Feb. 16, 2024)...........................................................11

*In re O.P.M. Data Sec. Breach Litig.*,
 928 F.3d 42 (D.C. Cir. 2019).................................................................................8

*Payne v. Travenol Lab'ys, Inc.*,
    673 F.2d 798 (5th Cir. 1982) ..............................................................................7

*Ritch v. N.Y. Eye & Ear Infirmary*,
    2023 WL 6393970 (S.D.N.Y. Sept. 29, 2023) ...................................................10

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024).............................................................................................9

*Vidimos, Inc. v. Wysong Laser Co.*,
    179 F.3d 1063 (7th Cir. 1999) .............................................................................7

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................................................9

*Wis. Voters All. v. Pence*,
    514 F. Supp. 3d 117 (D.D.C. 2021).....................................................................9

**Statutes**

42 U.S.C. § 7434(a)(2) (repealed 2025) ...................................................................2

42 U.S.C. § 7434(a)(3) (repealed 2025) ...................................................................2

**Other Authorities**

Restatement (Second) of Contracts § 202(2) (Am. L. Inst. 1981)...........................11

# GLOSSARY

| Abbreviation/Acronym | Definition |
|---|---|
| ACA | Account Control Agreement |
| EPA | Environmental Protection Agency |
| FAA | Financial Agency Agreement |
| FBI | Federal Bureau of Investigation |
| GGRF | Greenhouse Gas Reduction Fund |
| Op. | *Climate United Fund et al. v. Citibank, N.A. et al.*, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025) |

# INTRODUCTION

As the panel decision explains—and no party disputes—Citibank N.A. ("Citibank") has a very limited role in connection with the grant programs here. Citibank does not select grant recipients or determine whether funds should be disbursed. Instead, Citibank merely acts as a financial agent of the United States, in which capacity it must "act at all times in the best interests of the United States" and "comply with all lawful instructions or directions received from Treasury." JA2129 (§ 5.A, § 5.B.iv); *see also* JA2147 (§ I.B).

Citibank submits this opposition to set forth its limited role and to explain why neither set of Plaintiffs has established a likelihood of success on the merits with respect to claims against Citibank. As the panel decision recognizes, to the extent claims against the federal government jurisdictionally can only be heard in the U.S. Court of Federal Claims or fail on the merits, Citibank is entitled to "derivative" protection. Op.30. Neither of the petitions offers *any* argument to the contrary; that portion of the panel decision (which is plainly correct) accordingly is law of the case whether or not the Court grants rehearing. Regardless, the Court should not grant rehearing with respect to Citibank because Citibank has complied with all its contractual obligations to Plaintiffs and the United States.

# STATEMENT OF THE CASE

## A. Citibank's Role as a Financial Agent of the United States

This case arises out of the Inflation Reduction Act and the Greenhouse Gas Reduction Fund established under that statute. That fund includes the National Clean Investment Fund, established pursuant to 42 U.S.C. § 7434(a)(2) (repealed 2025), as well as the Clean Communities Investment Accelerator, which is established pursuant to 42 U.S.C. § 7434(a)(3) (repealed 2025). Congress did not appropriate grant funds under these programs in favor of any specific private recipient. Congress instead delegated responsibility for selecting "eligible recipients" to EPA. *Id.* § 7434(a)(3) (repealed 2025).

The Inflation Reduction Act does not mention Citibank, let alone provide Citibank with policymaking authority with respect to the Greenhouse Gas Reduction Fund. Citibank plays no role in deciding who receives grant funds, the amount of funds those entities should receive, or whether those entities are in compliance with their grant agreements.

Citibank is instead party to a "Financial Agency Agreement" (FAA) with the Department of the Treasury, which provides that Citibank will "provide services" related to the grant programs. JA2127 (Recitals). The FAA states that Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." JA2129 (§ 5.A). Citibank must "act at all

times in the best interests of the United States when carrying out its responsibilities under [the] FAA and in all matters connected with [the] agency relationship." *Id*. Citibank must follow lawful instructions from the Department of the Treasury and "implement account controls" as directed by EPA. JA2147 (Ex. A § I.B).

Plaintiffs are grantees receiving funds under the National Clean Investment Fund and Clean Communities Investment Accelerator programs. Most are "Prime Recipients," meaning they received their grants from EPA. Others are "Subrecipients," meaning they have received sub-awards from the Prime Recipients. All plaintiffs' grants are held in accounts at Citibank, pursuant to "account control agreements." JA69. Importantly, each account control agreement (ACA) is established pursuant to the FAA and "[t]he ACAs expressly acknowledge that Citibank 'act[s] as a financial agent of the United States pursuant to the authority of the U.S. Department of the Treasury.'" Op.5 (quoting JA71). Just as importantly, each ACA also provides that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including . . . any act of any governmental authority." JA74 (§ 6.b).

### B. Citibank's Compliance with the Government's Instructions.

On February 17, 2025, the Federal Bureau of Investigation (FBI) requested that Citibank "place an administrative freeze on the account(s) associated with"

3

certain ACAs, "for 30 days." JA99. The FBI stated that this recommendation was made "following credible information received by the Federal Bureau of Investigation that the . . . account(s) ha[d] been involved in possible criminal violations," including "[c]onspiracy to defraud the United States," and "[w]ire fraud." JA100. Pursuant to its fiduciary obligation to act in the interests of the United States, Citibank paused disbursements while seeking more information.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any GGRF accounts until the end of the day on March 9, 2025. *See* JA110. During the morning of March 10, 2025, EPA and the Department of Treasury then each directed Citibank to continue to refrain from processing disbursement requests, again invoking Citibank's fiduciary duties. EPA wrote: "To prevent the misuse of funds . . . *EPA instructs the Bank*, pursuant to this Treasury directive, the grant agreements, and Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury . . . *to pause the processing of payment instructions for the GGRF accounts until further notice*." JA65 (emphasis added). The Department of Treasury similarly stated that "[i]n accordance with Treasury's authorities under the FAA, *Treasury is instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions to Citibank pursuant to the FAA*." JA68 (emphasis added). On March 11, 2025, Citibank learned that EPA had terminated Plaintiffs' grants.

4

## C. Procedural History

Plaintiffs began filing complaints naming EPA, the EPA Administrator, and Citibank as defendants on March 9, 2025. Plaintiffs also sought temporary restraining orders and preliminary injunctive relief, arguing, as to Citibank, that Citibank had breached its ACAs with Plaintiffs. On March 18, 2025, the district court issued a temporary restraining order enjoining Citibank from moving or transferring grant funds and enjoining EPA from giving effect to the Notices of Termination it had issued to plaintiffs. JA287. In a hearing, the district court recognized Citibank's limited role, explaining that "Citibank . . . is in the middle of all of this," and that "you see the position that this puts Citibank in, which has the money, but has been told by EPA not—that it would be impermissible to distribute the funds." JA180:12-17, JA201:7-15. In short, as the district court recognized, Citibank is stuck "between a rock and a hard place here." JA180:12-17.

The district court subsequently issued a preliminary injunction order, as well as an accompanying opinion and then an order "clarify[ing]" the preliminary injunction, over several days in mid-April. JA961, JA966, JA1011. The injunction requires that Citibank "disburse any funds properly incurred since the mid-February suspension of Plaintiffs' funds." JA1014. Notably, the district court's opinion did not focus on claims against Citibank; in fact, the district court only devoted a single page to those claims. *See* JA996. It reasoned that while Citibank "performed its

obligations under the FAA in accordance with its responsibilities as a financial agent of the United States," Citibank could nevertheless be enjoined because "the instructions it received were not lawful." *Id.*

On September 2, 2025, a panel of this Court vacated the district court's injunction in full and disposed of the injunction against Citibank in a single paragraph. As relevant here, the panel recognized that "[t]he district court did not find that the grantees were likely to succeed on any of their independent claims against Citibank," Op.30—a prerequisite for injunctive relief. The panel therefore recognized that the injunction against Citibank was "derivative" of the injunction against the government. *Id.* Because the panel vacated the injunction against the government, it therefore necessarily concluded the "derivative injunction against Citibank" could not stand. *Id.* And although Judge Pillard dissented with respect to the claims against the government, her dissent nowhere mentioned the claims against Citibank, much less disputed the panel's decision to vacate the injunction against Citibank on the basis that the injunction against Citibank is wholly derivative.

The Prime-Grantee Plaintiffs and Sub-Grantee Plaintiffs filed separate petitions for rehearing *en banc*. Like Judge Pillard's dissent, both petitions are silent with respect to the panel's decision to vacate the injunction against Citibank. Tellingly, neither petition even mentions the word "derivative," let alone addresses it.

# ARGUMENT

## I. NO PETITIONER CHALLENGES THE PANEL HOLDING THAT CLAIMS AGAINST CITIBANK ARE WHOLLY "DERIVATIVE."

Neither petition challenges the panel's conclusion that any injunction against Citibank is wholly "derivative." Op.30. Accordingly, even if the Court were to grant rehearing *en banc*, it should limit review to the issues Plaintiffs raise—none of which involve Citibank. *See, e.g.*, *Ledoux v. District of Columbia*, 833 F.2d 368, 368-69 (D.C. Cir. 1987) (en banc) (per curiam) (limiting rehearing to certain "issues" but "no others"); *Kolstad v. Am. Dental Ass'n*, 108 F.3d 1431, 1446 (D.C. Cir. 1997), *reh'g en banc granted in part*, *judgment vacated in part* (May 28, 1997) (en banc) (per curiam) (similar), *rev'd on other grounds*, 139 F.3d 958 (D.C. Cir. 1998) (en banc), *vacated on other grounds*, 527 U.S. 526 (1999); *Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 153, 155 & n.1 (D.C. Cir. 1986) (en banc) (similar), *aff'd*, 484 U.S. 9 (1987). Because both petitions make no argument about Citibank's derivative status, the panel's holding that Citibank cannot be enjoined apart from the government is law of the case. *See, e.g.*, *Payne v. Travenol Lab'ys, Inc.*, 673 F.2d 798, 816 n.24 (5th Cir. 1982) (explaining that resolution of a "specific issue" becomes "law of the case" if the issue is not challenged in "a motion for rehearing"); *Vidimos, Inc. v. Wysong Laser Co.*, 179 F.3d 1063, 1065 (7th Cir. 1999) (similar).

Regardless, even if Plaintiffs' petitions had challenged Citibank's derivative status, the panel was plainly correct with respect to this issue. The Federal

Defendants maintain that claims against them must proceed in the Court of Federal Claims because that is only court in which Congress has waived sovereign immunity. Yet if the United States has sovereign immunity, Citibank does too.

The doctrine of derivative sovereign immunity protects "agents of the sovereign . . . from liability for carrying out the sovereign's will." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018). The doctrine "applies . . . when a contractor takes actions that are authorized and directed by the Government of the United States, and performed pursuant to the Act of Congress authorizing the agency's activity." *In re O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 69, 442 (D.C. Cir. 2019) (quotations omitted). The critical inquiry is whether the defendant acted at the government's direction. As the Court has stated, "derivative sovereign immunity ensures that there is no liability on the part of the contractor who simply performed as the Government directed." *Id.* (quotations omitted).

That is the case here in spades. Citibank has done nothing more than act at the behest and direction of its principal, the United States. In fact, Plaintiffs concede as much. *E.g.*, JA300 (explaining Citibank acted at the government's "behest" and "direc[tion]"). Having done nothing more than comply with directives from the United States, derivative immunity applies. And if there were any doubt, Plaintiffs' contract claims run headlong into the ACAs' express carve-out for liability arising from "act[s] of any governmental authority." JA74 (§ 6.b).

## II. CITIBANK FULLY COMPLIED WITH ITS CONTRACTUAL OBLIGATIONS.

Putting aside Citibank's (now unchallenged) entitlement to derivative immunity, the Court should deny rehearing *en banc* with respect to Citibank because Citibank has complied with its contractual obligations.[1]

Because "a party must show . . . a substantial likelihood of success on the merits" to secure "a preliminary injunction," *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quotations omitted), "failure to show a likelihood of success on the merits alone is sufficient to defeat the motion," *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 349 (2024) (stressing that there must be a "clear showing" of likelihood of success) (following *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Here, Plaintiffs have not remotely shown a likelihood of success on the merits with respect to any breach-of-contract claims against Citibank. Given its conclusion about Citibank's derivative status, the panel had no occasion to reach this additional point but it independently dooms any injunction with respect to Citibank.

---

[1] Certain plaintiffs also brought tort claims for replevin and conversion against Citibank but have not argued those claims support preliminary injunctive relief. Such claims therefore are irrelevant for purposes of this appealed injunction.

9

Plaintiffs' contractual claims allege that Citibank breached the account control agreements that Citibank maintains with each Plaintiff. *See, e.g.*, JA354-57. Yet Plaintiffs fail to read the ACAs in conjunction with the FAA. Those agreements acknowledge that Citibank's role is to "act as a financial agent of the United States." JA71. The FAA—the basis for the ACAs—in turn directs Citibank to "establish controlled accounts" for each Plaintiff and enter into "account control agreements with each of the Prime Recipients." JA2145 (Ex. A § I.A.1.i).

The FAA also makes clear that Citibank must follow the FAA—and not just the ACAs—when taking actions relating to grantees' accounts. In a section titled "Relationship with Account Holder," the FAA provides that "[e]ach Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and *subject to*, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement *and the conditions and restrictions detailed in this Exhibit A* [to the FAA]." JA2145 (Ex. A I.A.1.iv) (emphasis added).

The upshot is that the FAA and the ACAs are "interrelated agreements" that must be "read together . . . 'in harmony.'" *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023). The ACAs are governed by federal or New York law. *See* JA71-72 (§ 1(c)), JA75 (§ 11). Federal law provides that "[w]here several instruments, executed contemporaneously or at different times,

10

pertain to the same transaction, they will be read together." *Friedman v. Manfuso*, 620 F. Supp. 109, 117 (D.D.C. 1985); *see also* Restatement (Second) of Contracts § 202(2) (Am. L. Inst. 1981) ("[A]ll writings that are part of the same transaction are interpreted together."). Similarly, "[u]nder New York law documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek Inc. v. Int'l Bus. Machs. Corp.*, 2024 WL 663340, at *3 n.3 (D.D.C. Feb. 16, 2024) (alterations adopted); *Cemex Inc. v. Dep't of Interior*, 560 F. Supp. 3d 268, 278 (D.D.C. 2021) (reading contract "together with . . . record of decision and . . . mining plan"); *Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 134 (D.D.C. 2018) (contract provisions must be interpreted "not in isolation but in the light of the obligation as a whole" (quotations omitted)).

Citibank's conduct accorded with the FAA and the ACAs. The FAA requires that Citibank "implement account controls . . . as instructed by EPA." JA2147 (Ex. A § I.B). The FAA further states that Citibank must "comply with all lawful instructions or directions received from Treasury," JA2129 (§ 5.B.iv), which may be issued "through bulletins, letters, or other communications," JA2128 (§ 3.D). And the FAA also provides that Citibank "owes a fiduciary duty of loyalty . . . to the

United States," and must "act at all times in the best interests of the United States." JA2129 (§ 5.A).

Citibank obeyed these obligations. It implemented account controls in compliance with the Department of Treasury's instructions on March 4, 2025, as well as the Department of Treasury's and EPA's instructions on March 10, 2025. Even Plaintiffs assert only that Citibank acted due to the government's "efforts to freeze Plaintiff's funds," "Treasury['s] direct[ing] Citibank to continue to refrain from processing payments," and EPA and Treasury's "direct[ing] Citibank to freeze Plaintiff's assets." JA313, JA317, JA333. Yet Citibank cannot have breached its duties by following instructions it was *required* to obey. After all, Citibank must "act at all times in the best interests of" the government, and "comply with all lawful instructions or directions received from Treasury." JA2129 (§§ 5.A, 5.B.iv).

Nor is there merit to the theory that Citibank should have ignored the government's instructions because those instructions "were not lawful." JA996. Neither the FAA nor the ACAs allow Citibank to second-guess the government's instructions. Rather, the FAA requires that Citibank "construe the terms of th[e] FAA and any related instructions from Treasury in a reasonable manner to serve the purposes and interests of the United States." JA2129 (§ 5.B.ii).

The ACAs similarly provide that Citibank "shall be entitled to rely upon any instruction, notice, [or] request . . . delivered to it without being required to determine

12

the authenticity or validity thereof," and "shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation … any act of any governmental authority . . .)." JA74 (§ 6.b). That language dooms any attempt by Plaintiffs to show a likelihood of success with respect to Citibank. *See, e.g.*, *Goodrich v. Bank of Am., N.A.*, 2024 WL 341064, at *7 (D.D.C. Jan. 30, 2024), *aff'd*, 136 F.4th 347 (D.C. Cir. 2025) (footnote omitted) (rejecting liability "if the Bank followed Goodrich's instructions"). Accordingly, no injunction against Citibank can stand and the Court should not grant rehearing regarding Citibank.

## CONCLUSION

The Court should deny rehearing with respect to Citibank.

Dated: September 30, 2025

Respectfully submitted,

*/s/ K. Winn Allen*
K. Winn Allen, P.C.
*Counsel of Record*
Aaron L. Nielson
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

*Attorney For Defendant-Appellant Citibank, N.A.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) and this Court's September 15, 2025 order because it contains 2,941 words, excluding the parts of the brief exempted by Fed. R. App. P 32(f), as counted using the word-count function on Microsoft Word software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

September 30, 2025                           */s/ K. Winn Allen*
                                                                     K. Winn Allen

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

September 30, 2025 */s/ K. Winn Allen*
K. Winn Allen