**[ORAL ARGUMENT SCHEDULED FOR FEBRUARY 24, 2026]**

---

**Nos. 25-5122, 25-5123**

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

CLIMATE UNITED FUND, ET AL.,

*Plaintiffs-Appellees,*

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**EN BANC BRIEF OF DEFENDANT-APPELLANT CITIBANK, N.A.**

_____

K. Winn Allen, P.C.
  *Counsel of Record*
Aaron L. Nielson
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

January 9, 2026

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.      Parties and Amici

Plaintiffs-appellees are Climate United Fund; Coalition for Green Capital; Power Forward Communities, Inc.; California Infrastructure and Economic Development Bank; Minnesota Climate Innovation Finance Authority; Efficiency Maine Trust; Illinois Finance Authority; Justice Climate Fund; and Inclusiv, Inc. Defendants-appellants are the Environmental Protection Agency; Lee Zeldin, in his official capacity as Administrator of the EPA; W.C. McIntosh, in his official capacity as acting Deputy Administrator of the EPA[1]; and Citibank, N.A.

Amici are Samuel R. Bagenstos, Michael Swack, Paul Yoo, Ellen Lurie Hoffman, Eric Hangen, Tobias Barrington Wolff, the Natural Resources Defense Council, and a group of Democrat Congress Members.

## B.      Rulings Under Review

The ruling under review (issued by Judge Tanya S. Chutkan) is an order filed April 15, 2025, granting plaintiffs' motion for preliminary injunction. On September 2, 2025, a panel of this Court issued a judgment and accompanying opinion vacating that preliminary injunction. On December 17, 2025, the *en banc* Court vacated the panel's judgment but retained a partial administrative stay.

---

[1] As of June 16, 2025, David Fotouhi serves as Deputy Administrator of the EPA.

## C.    Related Cases

Defendant-appellant Citibank, N.A. is not aware of any related cases.

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Citibank, N.A. makes the following disclosure:

Citibank, N.A. is a wholly-owned subsidiary of Citicorp LLC, which in turn is a wholly-owned subsidiary of Citigroup Inc., a publicly traded corporation. No publicly-held company owns 10% or more of Citigroup Inc.'s stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ......................................................2

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE................................................................3

    A.    Citibank's Role as a Financial Agent of the United States ..................3

    B.    Citibank's Compliance with Federal Government Instructions............6

    C.    Procedural History................................................................8

SUMMARY OF ARGUMENT .............................................................11

STANDARD OF REVIEW ...................................................................12

ARGUMENT .........................................................................................13

I.    CITIBANK IS ENTITLED TO DERIVATIVE RELIEF IF THE FEDERAL GOVERNMENT CANNOT BE ENJOINED...........................13

II.    CITIBANK HAS MET ITS CONTRACTUAL OBLIGATIONS................17

    A.    Read Together, the FAA and ACAs Confirm Citibank Did Not Breach Any Contract...........................................................18

    B.    Citibank Also Fully Satisfied the ACAs. ...........................................23

III.    THE REMAINING FACTORS SUPPORT CITIBANK............................25

CONCLUSION .....................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters*,
  928 F.3d 1102 (D.C. Cir. 2019)........................................................................12

*Baldwin Hackett & Meeks, Inc. v. Early Warning Servs., LLC*,
  153 F.4th 656 (8th Cir. 2025) ...........................................................................24

*Cemex Inc. v. Dep't of the Interior*,
  560 F. Supp. 3d 268 (D.D.C. 2021)...................................................................19

*CFS Int'l Cap. Corp. v. United States*,
  126 Fed. Cl. 512 (2016) ..............................................................................20, 22

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)..........................................................................13

*Crowell v. Gould*,
  96 F.2d 569 (D.C. Cir. 1938) ............................................................................19

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
  888 F.3d 640 (4th Cir. 2018) ............................................................................15

*Entines v. United States*,
  495 F. Supp. 2d 84 (D.D.C. 2007).....................................................................17

*Fed. Crop Ins. Corp. v. Merrill*,
  332 U.S. 380 (1947)......................................................................................22, 24

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015)..........................................................................17

*Friedman v. Manfuso*,
  620 F. Supp. 109 (D.D.C. 1985)........................................................................19

*Goodrich v. Bank of Am., N.A.*,
  2024 WL 341064 (D.D.C. Jan. 30, 2024), *aff'd*,
  136 F.4th 347 (D.C. Cir. 2025).........................................................................24

*Hanson v. District of Columbia*,
 120 F.4th 223 (D.C. Cir. 2024) (per curiam) ....................................................13

*Hulley Enters. Ltd. v. Russian Fed'n*,
 211 F. Supp. 3d 269 (D.D.C. 2016)....................................................................17

*In re Lipper Holdings, LLC*,
 1 A.D.3d 170 (N.Y. App. Div. 2003) .................................................................24

*Koon v. United States*,
 518 U.S. 81 (1996) .............................................................................................13

*Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*,
 315 F. Supp. 3d 129 (D.D.C. 2018)....................................................................20

*Matek Inc. v. IBM Corp.*,
 2024 WL 663340 (D.D.C. Feb. 16, 2024) ..........................................................20

*Miller v. Gruenberg*,
 2023 WL 6206247 (D.C. Cir. Sept. 25, 2023).....................................................26

*Munaf v. Geren*,
 553 U.S. 674 (2008).............................................................................................13

*In re O.P.M. Data Sec. Breach Litig.*,
 928 F.3d 42 (D.C. Cir. 2019).............................................................................15

*Payne v. Travenol Lab'ys, Inc.*,
 673 F.2d 798 (5th Cir. 1982) ..............................................................................14

*Ritch v. N.Y. Eye & Ear Infirmary*,
 2023 WL 6393970 (S.D.N.Y. Sept. 29, 2023) ...................................................19

*Sepehry-Fard v. United States*,
 2022 WL 17335931 (Fed. Cl. Nov. 30, 2022).....................................................17

*Taylor Energy Co. v. Luttrell*,
 3 F.4th 172 (5th Cir. 2021) .................................................................................18

*United States v. Sherwood*,
 312 U.S. 584 (1941).............................................................................................17

*Wis. Voters All. v. Pence*,
    514 F. Supp. 3d 117 (D.D.C. 2021) ................................................................18

**Statutes**

28 U.S.C. § 1292(a)(1) ..............................................................................................2

28 U.S.C. § 1332(a)(2) ..............................................................................................2

28 U.S.C. § 1491(a) ................................................................................................15

42 U.S.C. § 7434(a)(2) (repealed 2025) ..................................................................3

42 U.S.C. § 7434(a)(3) (repealed 2025) ..................................................................3

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 18B Fed. Prac. & Proc.
    Juris. § 4478 (3d ed.) ........................................................................................14

Restatement (Second) of Contracts § 202(2) (1981) ..............................................19

# GLOSSARY

| Abbreviation/Acronym | Definition |
| --- | --- |
| ACA | Account Control Agreement |
| EPA | Environmental Protection Agency |
| FAA | Financial Agency Agreement |
| FBI | Federal Bureau of Investigation |
| GGRF | Greenhouse Gas Reduction Fund |
| Op. | Panel Decision, *Climate United Fund et al. v. Citibank, N.A. et al.*, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025) |

## INTRODUCTION

As the panel decision explains—and no party disputes—Citibank, N.A. (Citibank) has a very limited role in connection with the grant programs here. Citibank does not select grant recipients, determine whether recipients have complied with the terms of the programs, or decide whether funds should be disbursed. Instead, Citibank operates solely as a financial agent of the United States. JA2127. In that role, Citibank is charged with receiving funds from the United States and establishing accounts for grant recipients to hold those funds. *See* JA2145-JA2146 Ex. A §I.A. Citibank must "act at all times in the best interests of the United States" and "comply with all lawful instructions or directions received from Treasury." JA2129 §§ 5.A, 5.B.iv.

The panel concluded that Citibank is entitled to "derivative" relief from the district court's preliminary injunction because Citibank acts at the government's direction. The dissent did not disagree with that aspect of the panel decision, nor did either *en banc* petition ask the Court to revisit it. Accordingly, if plaintiffs' claims against the government are barred by sovereign immunity, can only be heard in the Court of Federal Claims, or otherwise fail, no claim can be pursued against Citibank, either. Under no scenario can litigation proceed against Citibank alone.

Even if the Court disagrees with the panel regarding the merits of plaintiffs' claims against the *government*, plaintiffs still would not be entitled to a preliminary

injunction against *Citibank*. As the district court recognized, Citibank is caught in the middle of the other parties' fight. *See* JA201:7-15. But Citibank has fully complied with its contractual obligations to plaintiffs, as well as its contractual and fiduciary obligations to the federal government. Citibank, moreover, will obey any order of the Court. The law thus does not allow an injunction against Citibank regardless of how this Court rules on the other parties' jurisdictional fight.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction because this rehearing proceeding arises from an appeal of an interlocutory order "granting ... [an] injunction." 28 U.S.C. § 1292(a)(1). The district court issued a preliminary injunction on April 15, 2025. JA961. Appellants timely appealed that order, and the panel vacated the preliminary injunction on September 2, 2025. Plaintiffs timely filed petitions for rehearing *en banc* on September 10, 2025, and defendants timely responded on September 30, 2025. This Court granted rehearing *en banc* on December 17, 2025.

The district court had subject-matter jurisdiction over plaintiffs' claims against Citibank under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and no plaintiff is a citizen of South Dakota, where Citibank maintains its head office and where Citibank is a citizen for purposes of diversity jurisdiction. Citibank takes no position on whether the district court had subject-matter jurisdiction over plaintiffs' claims against the federal government.

## STATEMENT OF THE ISSUES

1.      Whether, as the panel decision concluded, injunctive relief against Citibank—the federal government's agent—must be vacated if the district court erroneously ordered injunctive relief against the federal government.

2.      If the Court affirms injunctive relief against the federal government, whether injunctive relief against Citibank is also warranted.

## STATEMENT OF THE CASE

### A.      Citibank's Role as a Financial Agent of the United States

This case arises out of the Inflation Reduction Act and the Greenhouse Gas Reduction Fund (GGRF) established under that statute. That fund includes two grant programs: the National Clean Investment Fund, established pursuant to 42 U.S.C. § 7434(a)(2) (repealed 2025), as well as the Clean Communities Investment Accelerator, established pursuant to 42 U.S.C. § 7434(a)(3) (repealed 2025). Congress did not appropriate grant funds under these programs in favor of any specific private recipient. Congress instead delegated responsibility for selecting "eligible recipients" to EPA. 42 U.S.C. § 7434(a)(3) (repealed 2025).

The Inflation Reduction Act does not mention Citibank, let alone provide Citibank with policymaking authority respecting the GGRF. Citibank plays no role in deciding who receives grant funds, the amount of funds entities should receive, or whether those entities are in compliance with their grant agreements.

3

Citibank instead is party to a "Financial Agency Agreement" (FAA) with the Department of Treasury, which provides that Citibank will "provide commercial banking and finance services" related to the grant programs. JA2127 (Recitals); JA2145 Ex. A § I.

The FAA describes the scope of Citibank's services with respect to the GGRF in Exhibit A. *See* JA2145-JA2150. Exhibit A provides that Citibank "shall establish controlled depository and investment accounts" in the names of each "Prime Recipient" (i.e., an entity awarded grants from EPA) and each "Subrecipient" (i.e., an entity receiving a "subaward" from a Prime Recipient or from another Subrecipient). JA2145 Ex. A § I.A. Citibank holds the awarded grant funds in these accounts. *Id.* Each grantee account "shall be subject to account control agreements whose terms would permit the secured party"—EPA, in the case of Prime Recipient accounts, or the Prime Recipient, in the case of Subrecipient accounts—"to exercise exclusive control over the account." *Id.* § I.A.1.iii. Exhibit A also provides that the FAA governs Citibank's conduct with respect to grantees: "Each Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and subject to, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement and the conditions and restrictions detailed in this Exhibit A [to the FAA]." *Id.* § I.A.1.iv.

The FAA also contains provisions establishing EPA's role in overseeing the accounts. It provides that "[t]he Financial Agent shall freeze accounts, and transfer funds in frozen accounts, at the direction of the relevant secured party [the EPA, with respect to Prime Recipients], in accordance with the account control agreements," JA2148 Ex. A § I.B.4, that EPA shall be notified in advance of withdrawals above certain limits, *see* JA2147 Ex. A § I.B.1, and that EPA must be permitted "full account visibility" into each account via a secure online platform, JA2149 Ex. A § I.D.1.

In providing these services, the FAA requires Citibank to comply with the duties and obligations it owes to its principal, the United States. The FAA states that Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States when acting as a financial agent of the United States." JA2129 § 5.A. Citibank thus must "act at all times in the best interests of the United States when carrying out its responsibilities under [the] FAA and in all matters connected with [the] agency relationship." *Id*. Citibank also must follow lawful instructions from the Department of Treasury and "implement account controls" as directed by EPA. JA2147-JA2148 Ex. A § I.B.

Plaintiffs are grantees receiving funds under the National Clean Investment Fund and Clean Communities Investment Accelerator programs. The EPA selected the plaintiffs as grant recipients in 2024, through a process that did not involve

Citibank. Most of the plaintiffs are "Prime Recipients," meaning they received their grants from EPA. Additional plaintiffs are "Subrecipients," meaning they have received subawards from the Prime Recipients.

As it was required to do under the FAA, Citibank established bank accounts in the names of each of the grant recipients. To establish those accounts, each grant recipient entered into an account control agreement (ACA) with Citibank. *E.g.*, JA69. The ACAs, like the FAA, make clear that Citibank's duties with respect to the funding are exclusively "administrative or ministerial." JA73 § 6.a. Importantly, each ACA provides that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including ... any act of any governmental authority." JA74 § 6.b.

After Citibank established the grant accounts, EPA disbursed the balance of the grantees' grant funds into their designated Citibank accounts, where Citibank has held the funds in accordance with the FAA and ACAs. *See* JA136-JA137. For several months, Citibank processed payment instructions from grant recipients and distributed requested grant funds to them on a regular basis in accordance with the terms of the FAA and ACAs. *Id.*

**B.    Citibank's Compliance with Federal Government Instructions**

On February 17, 2025, the Federal Bureau of Investigation (FBI) requested that Citibank "place an administrative freeze on the account(s) associated with"

certain ACAs, "for 30 days." JA99. The FBI stated that this recommendation was made "following credible information received by the Federal Bureau of Investigation that the … account(s) ha[d] been involved in possible criminal violations," including "[c]onspiracy to defraud the United States" and "[w]ire fraud." JA100. Pursuant to its fiduciary obligation to act in the interests of the United States, Citibank paused disbursements while seeking more information.

On March 4, 2025, the Department of Treasury directed Citibank not to disburse funds from any GGRF accounts until the end of the day on March 9, 2025. JA110. During the morning of March 10, 2025, the Department of Treasury and EPA each directed Citibank to continue to refrain from processing disbursement requests, again invoking Citibank's fiduciary duties. The Department of Treasury wrote: "In accordance with Treasury's authorities under the FAA, *Treasury is instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions to Citibank pursuant to the FAA*." JA68 (emphasis added). EPA too instructed Citibank: "To prevent the misuse of funds … *EPA instructs the Bank*, pursuant to this Treasury directive, the grant agreements, and Section I.B of Exhibit A to the Financial Agency Agreement (FAA) between the Bank and Treasury … *to pause the processing of payment instructions for the GGRF accounts until further notice*." JA65 (emphasis added).

7

On March 11, 2025, Citibank learned that EPA terminated plaintiffs' grants. *See* JA390. The Notice and its attached exhibit (a letter from EPA to Climate United Fund, one of the consolidated plaintiffs here) explained that "[f]ollowing a comprehensive review and consistent with multiple ongoing independent federal investigations into programmatic fraud, waste, abuse, and conflicts of interest … EPA has determined that these deficiencies pose an unacceptable risk to the efficient and lawful execution of this grant," and that EPA "is terminating Grant Agreement No. 84094001 … effective immediately." *Id.*

### C.  Procedural History

Plaintiffs began filing complaints naming EPA, EPA leadership, and Citibank as defendants on March 8, 2025. JA6. Plaintiffs also sought temporary restraining orders and preliminary injunctive relief, arguing, as to Citibank, that Citibank had breached its ACAs with plaintiffs. *E.g.*, JA49-JA50; JA354-JA358.

On March 18, 2025, the district court issued a temporary restraining order enjoining Citibank from moving or transferring grant funds, and enjoining EPA from giving effect to the Notices of Termination it had issued to plaintiffs. JA287. In a hearing, the court recognized Citibank's limited role, noting that "Citibank … is in the middle of all this," and that "you see the position that this puts Citibank in, which has the money, but has been told by EPA not—that it would be impermissible to

distribute the funds." JA180:12-17; JA201:7-15. In short, Citibank is "between a rock and a hard place here." JA180:12-17.

The district court subsequently issued a preliminary injunction order, as well as an accompanying opinion and then an order "clarify[ing]" the preliminary injunction, over several days in mid-April. *See* JA961; JA966; JA1011. As clarified, the injunction requires Citibank to "disburse any funds properly incurred since the mid-February suspension of Plaintiffs' funds." JA1014. The district court's opinion did not focus on plaintiffs' claims against Citibank; of its 39-page opinion, the court devoted roughly a single page to Citibank. JA996. The court reasoned that although Citibank "performed its obligations under the FAA in accordance with its responsibilities as a financial agent of the United States," Citibank nevertheless could be enjoined because "the instructions it received were not lawful." *Id.*

On April 16, 2025, this Court issued a partial administrative stay barring enforcement of the injunction "insofar as it (1) enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds and (2) requires defendants to file a status report with the district court within 24 hours of the entry of the preliminary injunction." *Climate United Fund, et al., v. Citibank, N.A., et al.*, Case No. 25-5122 (D.C. Cir., Apr.16, 2025), Doc. #2111459. The Court also precluded the parties from taking "any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." *Id.*

9

On September 2, 2025, a panel of this Court vacated the injunction in full. As to Citibank, the panel reasoned that "[t]he district court did not find that the grantees were likely to succeed on any of their independent claims against Citibank," Op. 30—a prerequisite for injunctive relief. Instead, the injunction against Citibank was "derivative" of the injunction against the federal government. *Id.* Because the panel vacated the injunction against the federal government, it concluded the "derivative injunction against Citibank" also could not stand. *Id.*

Judge Pillard dissented with respect to the claims against the federal government. Her dissent, however, did not address the panel's decision to vacate the injunction against Citibank as wholly derivative. Judge Pillard, moreover, correctly observed that "EPA sent a letter to Citibank … *instructing* it to 'pause the processing of payment instructions for the GGRF accounts until further notice.'" Op. 45 (emphasis added); *see also, e.g.*, *id.* at 54 (observing that the federal government "instructed Citibank to keep the accounts frozen until EPA was able to establish sufficient account controls").

The Prime-Grantee Plaintiffs and Sub-Grantee Plaintiffs filed separate petitions for rehearing *en banc*. Like Judge Pillard's dissent, both petitions are silent about the panel's decision to vacate the injunction against Citibank. Indeed, neither even mentions the word "derivative," let alone addresses it. Rather, both petitions focus on plaintiffs' claims against the federal government. On December 17, 2025,

10

the Court granted the petitions and vacated the panel's decision. The Court retained in effect the partial administrative stay granted on April 16, 2025.

## SUMMARY OF ARGUMENT

Citibank finds itself in the middle of a dispute between plaintiffs and the government. Citibank, however, met its obligations to both sides and will continue to do so. Citibank also will comply with any order the Court issues. There simply is no basis for the Court to affirm a preliminary injunction against Citibank.

I.    Citibank takes no position on plaintiffs' claims against the federal government. What is plain, though, is that if the Court sides with the government, Citibank is entitled to derivative relief—precisely as the panel recognized. As the panel explained (and neither *en banc* petition disputed), if there are no grounds for a preliminary injunction against the federal government, there also are no grounds for an injunction against Citibank, the government's financial agent.

II.    Even if the Court sides against the federal government, however, there still would be no basis for an injunction against Citibank. Plaintiffs have sued Citibank for breach of contract. Citibank, however, has not breached any contract, and plaintiffs certainly have not shown a substantial likelihood of success on their claims against Citibank. As a matter of law, the FAA must be read alongside the ACAs as interrelated agreements, and the FAA provides that Citibank "owes a fiduciary duty of loyalty and fair dealing to the United States," and is *obligated* to

11

follow the government's instructions. JA2129 §§ 5.A, 5.B.iv. Under basic principles of agency law, an agent like Citibank is constrained by the authority delegated by its principal.

If that were not sufficient, the ACAs themselves provide—in no uncertain terms—that Citibank cannot be "liab[le] for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control," "including … any act of any governmental authority." JA74 § 6.b. The upshot is that whatever the Court decides with respect to claims against the federal government, injunctive relief against Citibank is inappropriate. Citibank has complied, and will continue to comply, with all applicable contracts and court orders.

**III.**     As for the other preliminary-injunction factors, plaintiffs have not come close to meeting their burden with regard to Citibank. The public interest does not support subjecting financial agents like Citibank to injunctions, especially because Citibank will do what the Court orders without being subject to an injunction. Neither equity nor commonsense supports *unnecessary* injunctive relief.

## STANDARD OF REVIEW

Although the Court ordinarily reviews a district court's grant of injunctive relief for abuse of discretion, the Court resolves jurisdictional questions *de novo*. *See, e.g.*, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 928 F.3d 1102, 1108, 1112 (D.C.

Cir. 2019). Furthermore, a court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

Preliminary injunctive relief is "an 'extraordinary and drastic remedy'" that is "never … awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). "[T]he moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Courts must be especially "wary" when injunctive relief would "disrupt[], rather than preserve[] the status quo." *Hanson v. District of Columbia*, 120 F.4th 223, 247 (D.C. Cir. 2024) (per curiam).

## ARGUMENT

## I. CITIBANK IS ENTITLED TO DERIVATIVE RELIEF IF THE FEDERAL GOVERNMENT CANNOT BE ENJOINED.

The panel recognized that Citibank—acting as the government's agent—should benefit from any decision holding that plaintiffs are not entitled to injunctive relief against the federal government. Judge Pillard did not disagree, nor did either *en banc* petition. This aspect of the panel decision should be treated as law of the case. Although vacatur ordinarily defeats the law-of-the-case doctrine, a different analysis may apply where, as here, "multiparty and multiclaim litigation" is at issue.

13

Charles Alan Wright & Arthur R. Miller, 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.). That describes this case, because Citibank is (at best) a peripheral player in plaintiffs' dispute with the government. The Court thus should follow the rule that a panel's resolution of a "specific issue" is "law of the case" if not challenged in "a motion for rehearing." *Payne v. Travenol Lab'ys, Inc.*, 673 F.2d 798, 816 n.24 (5th Cir. 1982).

In any event, the panel's reasoning plainly is correct. As the panel explained, "[t]he district court did not find that the grantees were likely to succeed on any of their independent claims against Citibank," and "found that 'Citibank performed its obligations under the FAA in accordance with its responsibilities as a financial agent of the United States.'" Op. 30 (quoting JA996). Rather than being rooted in an independent finding of liability against Citibank, the district court's "injunction against Citibank merely serves to stop Citibank from following the government's instructions" to the extent those instructions are "unlawful." *Id.* Accordingly, if the government's instructions *are* lawful, or if the Court lacks jurisdiction because any action must be brought in the Court of Federal Claims, there is no basis for an injunction against Citibank—full stop. *See id.*

The panel's reasoning is unassailable. If plaintiffs' claims cannot support injunctive relief against the government, then *ipso facto* they likewise cannot support an injunction against Citibank, which merely operates in this context as the

14

government's agent. The government, for example, maintains that the United States has not waived sovereign immunity as to "specific performance of … alleged contractual commitments," and that claims against it must proceed (if at all) in "the 'United States Court of Federal Claims.'" JA487 (quoting 28 U.S.C. § 1491(a)). Yet if the government has sovereign immunity, Citibank is entitled to derivative sovereign immunity. To hold otherwise would allow plaintiffs to subvert sovereign immunity by pursuing claims against an agent that they could not pursue against the government itself.

Derivative sovereign immunity protects "agents of the sovereign … from liability for carrying out the sovereign's will." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018). Such immunity "applies … when a contractor takes actions that are authorized and directed by the Government of the United States, and performed pursuant to the Act of Congress authorizing the agency's activity." *In re O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (quotations omitted). The question is whether the defendant acted at the government's direction: "derivative sovereign immunity ensures that there is no liability on the part of the contractor who simply performed as the Government directed." *Id.* (quotations omitted).

That is precisely the case here: Citibank has done nothing more than act at the behest and direction of its principal, the United States. The district court recognized

as much, *see* JA996, and plaintiffs have conceded the point, *see* JA300 (Citibank acted at the government's "direc[tion]"). And neither *en banc* petition challenged the panel decision on this issue. Because Citibank is the government's agent and has obeyed the government's orders, derivative sovereign immunity applies.

The Court therefore should remand with instructions that Citibank be dismissed to the extent plaintiffs' claims cannot support relief against the federal government. Citibank enjoys derivative immunity for claims for specific performance or damages in district court to the same extent the government enjoys such immunity. That is the nature of derivate sovereign immunity.

Finally, if the Court rules that the claims against the government must proceed in the Court of Federal Claims, but somehow disagrees that Citibank is entitled to derivative sovereign immunity from suit in the district court, this Court should instruct the district court to dismiss or, at minimum, stay proceedings against Citibank. Under no scenario can litigation continue in the district court against Citibank alone. Citibank is not the focus of plaintiffs' claims. *Compare, e.g.*, JA320-353 (claims against government), *with, e.g.*, JA354-JA357 (claims against Citibank); JA181:15-21 (Plaintiff Climate United Fund acknowledging "that it's difficult for Citibank to say no to the FBI when the FBI recommends to freeze someone's funds"). Thus, if litigation must proceed in the Court of Federal Claims against the government, the Court should instruct the district court to dismiss or stay

16

proceedings against Citibank while claims against the government are litigated there. Dismissing parties like Citibank is appropriate where "[t]he Court of Federal Claims is actively wrestling with the issues." *Entines v. United States*, 495 F. Supp. 2d 84, 86 (D.D.C. 2007).[2] At minimum, the Court should instruct the district court to stay litigation against Citibank while claims against the government are decided. Even in ordinary cases, the reasons for a stay "apply forcefully" to prevent parallel litigation. *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 287 (D.D.C. 2016) (granting stay). Such reasons for a stay therefore necessarily apply even more forcefully where, as here, the parallel litigation would be against the federal government, whose directives form the gravamen of plaintiffs' claims.

## II.    CITIBANK HAS MET ITS CONTRACTUAL OBLIGATIONS.

Even if the Court disagrees with the panel regarding plaintiffs' likelihood of success on their claims against the government, there still should not be an injunction against Citibank. "[T]o obtain a preliminary injunction, a party must show … 'a substantial likelihood of success on the merits.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted). This means that

---

[2] Citibank cannot be sued for any remedy in the Court of Federal Claims: "[T]he Court of Claims … is without jurisdiction of any suit brought against private parties." *United States v. Sherwood*, 312 U.S. 584, 588 (1941); *see, e.g.*, *Sepehry-Fard v. United States*, 2022 WL 17335931, at *1 (Fed. Cl. Nov. 30, 2022) (similar). Regardless, even if there could be jurisdiction over Citibank in the Court of Federal Claims, it would not support the district court's injunction here.

"failure to show a likelihood of success on the merits alone is sufficient to defeat the motion." *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021). Here, plaintiffs cannot show that they are likely to succeed on their contract claims against Citibank for a simple reason: Citibank has not breached any contract. The panel had no reason to reach this separate issue, but it independently precludes an injunction against Citibank.

### A. Read Together, the FAA and ACAs Confirm Citibank Did Not Breach Any Contract.

Plaintiffs allege that Citibank breached the ACAs.[3] This allegation fails out of the gate because the Court must read the ACAs in conjunction with the terms of the FAA, and the FAA makes it abundantly clear that Citibank has acted properly.

The FAA is the basis for the ACAs. On its face, the FAA directs Citibank to "establish controlled accounts" for each plaintiff and enter "account control agreements with each of the Prime Recipients." JA2145 Ex. A § I.A.1.i-ii. Confirming the FAA's primacy, the ACAs with plaintiffs each acknowledge that Citibank "act[s] as a financial agent of the United States." JA71.

---

[3] Certain plaintiffs have also brought tort claims (for replevin and conversion) against Citibank, but those plaintiffs have not argued that those tort claims support a preliminary injunction. In all events, derivative sovereign immunity defeats such claims. *See, e.g.*, *Taylor Energy Co. v. Luttrell*, 3 F.4th 172, 175-78 (5th Cir. 2021) (barring tort claims).

The FAA also makes clear that the ACAs—and plaintiffs' entitlement to funds under the ACAs—remain subject to the terms of the FAA. In a section titled "Relationship with Account Holder," the FAA provides that "[e]ach Prime Recipient and Subrecipient account holder will have the ability to access and use funds in their respective accounts in accordance with, and *subject to*, the terms and conditions of each Prime Recipient's or Subrecipient's Grant Program grant agreement *and the conditions and restrictions detailed in this Exhibit A* [to the FAA]." JA2145 Ex. A I.A.1.iv (emphasis added).

Because the FAA and the ACAs are "interrelated agreements," they must be "read together … 'in harmony.'" *Ritch v. N.Y. Eye & Ear Infirmary*, 2023 WL 6393970, at *7 (S.D.N.Y. Sept. 29, 2023) (citations omitted); *accord Crowell v. Gould*, 96 F.2d 569, 570 (D.C. Cir. 1938) ("writings must be read together, and in relation to each other, in order to discover the terms of the contract"). The ACAs are governed by federal or New York law, as well as New York's version of the Uniform Commercial Code. *See* JA71 § 1(c); JA75 § 11. Federal contract law requires that "[w]here several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together." *Friedman v. Manfuso*, 620 F. Supp. 109, 117 (D.D.C. 1985). This is hornbook law: "[A]ll writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2) (1981); *see also Cemex Inc. v. Dep't of the Interior*, 560 F. Supp.

19

3d 268, 278 (D.D.C. 2021) (reading contract "with … record of decision and … mining plan").

Similarly, "[u]nder New York law … documents must be read together, even though they were executed on different dates and were not all between the same parties, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek Inc. v. IBM Corp.*, 2024 WL 663340, at *3 n.3 (D.D.C. Feb. 16, 2024); *see also Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 134 (D.D.C. 2018) (contract provisions must be interpreted "not in isolation but in the light of the obligation as a whole" (quotations omitted)); *CFS Int'l Cap. Corp. v. United States*, 126 Fed. Cl. 512, 519 (2016) ("[U]nder New York law, the Assignment and the Policy must be read together and to avoid any inconsistency." (collecting cases)).

Citibank satisfied the FAA and the ACAs. The FAA provides that Citibank must "comply with all lawful instructions or directions received from Treasury," JA2129 §5.B.iv, which may be issued "through bulletins, letters, or other communications," JA2128 § 3.D. The FAA also requires that Citibank "implement account controls … *as instructed by EPA*." JA2147 Ex. A § I.B (emphasis added). The FAA further dictates that Citibank "owes a fiduciary duty of loyalty … to the United States," and must "act at all times in the best interests of the United States." JA2129 § 5.A.

20

Citibank complied with its obligations: Citibank implemented account controls in compliance with the Department of Treasury's instructions on March 4, 2025, as well as the Department of Treasury's and EPA's instructions on March 10, 2025. *See* Background at B, *supra*. Even plaintiffs assert that Citibank acted due to the federal government's "efforts to freeze Plaintiffs' funds," "Treasury['s] direct[ing] Citibank to continue to refrain from processing payments," and EPA and Treasury's "direct[ing] Citibank to freeze Plaintiffs' assets." JA313; JA317; JA333. Yet Citibank cannot have breached its contractual obligations by following federal instructions. Just the opposite: Citibank was *required* to follow those instructions by the FAA's straightforward terms, which mandate that Citibank shall "act at all times in the best interests of" the government, and "comply with all lawful instructions or directions received from Treasury." JA2129 §§ 5.A, 5.B.iv. Citibank's compliance with governmental instructions could not have been a surprise to Plaintiffs, who knew by virtue of their ACAs that Citibank "act[s] as a financial agent of the United States" for purposes of the GGRF. JA71.

Nor is there merit to the theory that Citibank should have ignored the federal government's instructions because those instructions "were not lawful." JA996. Neither the FAA nor the ACAs vests Citibank with authority to second-guess the lawfulness of the federal government's instructions. Rather, the FAA requires that Citibank "construe the terms of th[e] FAA and any related instructions from

21

Treasury in a reasonable manner to serve the purposes and interests of the United States." JA2129 § 5.B.ii. Reading the FAA as implicitly empowering a financial agent to override explicit instructions from its principal—not just in this case, but in *any* dispute involving financial agents—is the antithesis of construing the FAA's terms "to serve the purposes and interests of the United States." *Id.*

As a matter of agency law, moreover, it blinks reality for plaintiffs to contend they had no idea Citibank would be constrained by its agency agreement with the federal government. Plaintiffs were aware of the existence of the FAA, and "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Plaintiffs also cannot dispute that the FAA speaks to the withdrawal of funds. Once more, the FAA says each recipient can access funds *only* "subject to … the conditions and restrictions detailed in this Exhibit A." JA2145 Ex. A § I.A.1.iv.

In sum, when the FBI requested that Citibank freeze funds following "credible information" of possible crimes, JA100, Citibank temporarily did so consistent with its fiduciary obligations to "act at all times in the best interests of the United States." JA2129 § 5.A. And when the Department of Treasury and EPA directed Citibank to pause disbursements, Citibank complied, consistent with its duty to "comply with all lawful instructions or directions received from Treasury" and "implement

22

account controls" imposed by EPA. *Id.* § 5.B.iv; JA2147 Ex. A § I.B. By contrast, plaintiffs' theory would have Citibank ignore its obligations under the FAA, ignore its status as an agent and fiduciary of the United States, and instead comply with disbursement requests under the ACAs despite clear instructions from its principal that it not do so. That makes no sense either as a matter of contract or agency law.

### B.    Citibank Also Fully Satisfied the ACAs.

Even putting the FAA aside, plaintiffs still are not likely to succeed on their claim that Citibank somehow violated the ACAs. Plaintiffs cannot meet their burden of showing a substantial likelihood of success when their argument disregards clear contractual language.

As relevant here, the ACAs provide that Citibank "shall be entitled to rely upon any instruction, notice, [or] request … delivered to it without being required to determine the authenticity or validity thereof" and "shall not incur *any* liability for not performing *any* act or fulfilling *any* obligation hereunder by reason of *any* occurrence beyond its control (including, without limitation … *any* act of *any* governmental authority ….)." JA74 § 6.b (emphases added). From the start, Citibank's pause in processing disbursement requests has been the direct result of an "occurrence beyond its control"—namely, an "act of" various "governmental authority," including the FBI, the Department of Treasury, and EPA. Those agencies' instructions that Citibank cease disbursements were "act[s]" outside

Citibank's "control" that, as such, preclude liability for Citibank under Section 6 of the ACAs. *Id.*

Here, given that the federal government's instructions that Citibank cease disbursements were "act[s]" outside Citibank's "control," the ACAs themselves bar "any liability" against Citibank in cases like this one—as confirmed by a *half dozen* relevant uses of the word "any" in a single sentence. *Id.* Such capacious language confirms that plaintiffs have not established any likelihood of success against Citibank, let alone a substantial likelihood. *See, e.g.*, *Goodrich v. Bank of Am., N.A.*, 2024 WL 341064, at *7 (D.D.C. Jan. 30, 2024) ("[T]he language here sufficiently forecloses claims for liability ...."), *aff'd*, 136 F.4th 347 (D.C. Cir. 2025).

Reading "any" to mean what it says also makes commercial sense. The ACAs exist because the United States, through the FAA, requires Citibank to establish them. Citibank—like any agent—thus is shielded from liability for actions by the federal government. No "financial agent" (which the ACAs define Citibank to be, JA71) would subject itself to liability based on its *principal's* decisions. Suffice it to say, "[a] contract should not be interpreted to produce a result that is absurd, *commercially unreasonable*, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (N.Y. App. Div. 2003) (emphasis added) (internal citations omitted); *accord Baldwin Hackett & Meeks, Inc. v. Early Warning Servs., LLC*, 153 F.4th 656, 661 (8th Cir. 2025) (similar). The

Court should not adopt a commercially unreasonable reading that flouts what the ACAs say.

## III.     THE REMAINING FACTORS SUPPORT CITIBANK.

As explained, plaintiffs have not shown a substantial likelihood of success on the merits of their contract claims against Citibank; the Court should vacate the preliminary injunction against Citibank on that basis alone. If the Court were to consider the remaining preliminary-injunction factors, however, they too confirm that whatever the Court holds with respect to plaintiffs' claims against the federal government, there is no lawful basis to affirm a preliminary injunction against Citibank.

Citibank defers to the federal government with respect to these factors but wishes to stress just how contrary to the public interest a preliminary injunction against Citibank would be. If financial agents were required to second guess the federal government's instructions or else be subjected to litigation and injunctions, not only would the government's ability to efficiently transfer funds be hindered, but private companies would be disincentivized from serving as the government's financial agents and fiduciaries. Depriving the government of efficient financial services does not benefit the public.

That point has special force here because this dispute at bottom is between plaintiffs and the federal government. Because Citibank has made clear throughout

this litigation that it will do whatever the Court orders, no injunction against Citibank is necessary for plaintiffs to receive the relief they seek—they simply must prevail against the federal government. If they cannot do that, they have no basis to obtain injunctive relief against Citibank. Neither the public interest nor equity supports an "unnecessary" injunction. *Miller v. Gruenberg*, 2023 WL 6206247, at *1 (D.C. Cir. Sept. 25, 2023).

## CONCLUSION

The Court should vacate the preliminary injunction with respect to Citibank.

Dated: January 9, 2026                  Respectfully submitted,


                                         */s/ K. Winn Allen*
                                         K. Winn Allen, P.C.
                                           *Counsel of Record*
                                         Aaron L. Nielson
                                         Kirkland & Ellis LLP
                                         1301 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20004
                                         Tel: 202.389.5078
                                         winn.allen@kirkland.com

                                         *Attorney For Defendant-Appellant
                                         Citibank, N.A.*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,947 words, excluding the parts of the brief exempted by Fed. R. App. P 32(f), as counted using the word-count function on Microsoft Word software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

January 9, 2026                        */s/ K. Winn Allen*
                                        K. Winn Allen

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

January 9, 2026                                         */s/ K. Winn Allen*
                                                        K. Winn Allen