EN BANC ARGUMENT SCHEDULED FOR FEBRARY 24, 2026

———————————

**No. 25-5122**

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

CLIMATE UNITED FUND, *et al.*,

Plaintiffs-Appellees,

v.

CITIBANK, N.A., *et al.*,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR AMICUS CURIAE PUBLIC CITIZEN
SUPPORTING APPELLEES AND AFFIRMANCE**

———————————

Nandan M. Joshi
Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amicus Curiae
Public Citizen*

February 9, 2026

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus curiae Public Citizen states it is not a publicly held corporation, issues no stock, and has no parent corporation.

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEF

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for amicus curiae represents that counsel for all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amicus curiae certifies that a separate brief is necessary. This case presents an important and recurring question about the availability of judicial redress for those that suffer harm due to Executive Branch actions that violate the separation of powers if an express cause of action is lacking. Because of the need to address a range of legal issues presented in this case, the parties have been able to devote only a few pages of briefing to this constitutional question. This amicus brief provides the Court with additional argument explaining why the well-established implied cause of action to seek injunctive relief for constitutional violations applies with full force to Appellees' claims that the Executive Branch has unconstitutionally encroached on Congress's lawmaking authority by taking actions that substitute the executive's policy preferences for the policy choices that Congress has enacted into

law. Amicus briefs on behalf of Appellees did not address this issue at the panel stage.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### 1. Parties and Amici

Other than amicus Public Citizen and any other amici who had not entered an appearance in this case at the time this brief is filed, all parties, intervenors, and amici appearing in the lower court and this Court are listed in the Brief of Appellant Citibank, N.A., Brief of the United States, Brief of Appellees State Banks, and/or Brief of Appellees Climate United Fund *et al*.

### 2. Rulings Under Review

References to the district court decision under review appear in the Brief of Appellant Citibank, N.A.

### 3. Related Cases

Reference to any related cases pending before this Court appears in the Brief of Appellant Citibank, N.A.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................i

STATEMENT REGARDING CONSENT TO FILE AND
    SEPARATE BRIEF ........................................................... ii

CERTIFICATE AS TO PARTIES, RULINGS, AND
    RELATED CASES............................................................iv

TABLE OF AUTHORITIES.......................................................vi

INTEREST OF AMICUS CURIAE ...........................................1

SUMMARY OF ARGUMENT .................................................2

ARGUMENT ...........................................................................5

I.   The Executive Branch violates the separation of powers
    whenever it exercises Congress's lawmaking powers. ......................5

II.  Plaintiffs may bring a nonstatutory cause of action to
    enjoin actions that transgress the separation of powers................11

CONCLUSION ........................................................................23

CERTIFICATE OF COMPLIANCE........................................25

CERTIFICATE OF SERVICE................................................26

# TABLE OF AUTHORITIES*

## Cases

*American School of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902) .................................................................. 15

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ................................................................ 11

*Bell v. Hood*,
  327 U.S. 678 (1946) ................................................................ 11

*Bowen v. Michigan Academy of Family Physicians*,
  476 U.S. 667 (1986) ............................................................ 12, 15

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ..................................................................... 5

*Chamber of Commerce of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ............................................... 15

*Climate United Fund v. Citibank, N.A.*,
  154 F.4th 809 (D.C. Cir. 2025),
  *vacated*, 2025 WL 3663661 (D.C. Cir. 2025) ......2, 3, 11, 13, 14, 18, 23

*Climate United Fund v. Citibank, N.A.*,
  778 F. Supp. 3d 90 (D.D.C. 2025) ......................................... 17

* *Clinton v. City of New York*,
  524 U.S. 417 (1998) .................................... 9, 10, 17, 19, 22

*Collins v. Yellen*,
  594 U.S. 220 (2021) ................................................................. 2

*Correctional Services Corporation v. Malesko*,
  534 U.S. 61 (2001) ................................................................. 11

---

* Cases on which we chiefly rely are marked with asterisks.

vi

\* *Dalton v. Specter*,
    511 U.S. 462 (1994) .............................. 3, 14, 15, 16, 17, 18, 19, 21, 23

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) ................................................................. 10, 22

*Davis v. Passman*,
    442 U.S. 228 (1979) ......................................................................... 12

*Ex parte Milligan*,
    71 U.S. (4 Wall.) 2 (1866) ................................................................ 6

*Federal Bureau of Investigation v. Fikre*,
    601 U.S. 234 (2024) ........................................................................ 23

*Federal Express Corp. v. U.S. Department of Commerce*,
    39 F.4th 756 (D.C. Cir. 2022) ...................................................... 20

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ..................................................... 12, 14, 15, 19

*Free Enterprise Fund v. Public Company Accounting
Oversight Board*,
    561 U.S. 477 (2010) ..................................................................... 2, 12

*Global Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) .............................. 3, 6, 13, 18, 19, 20, 22

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) ......................................................................... 6

*Hubbard v. Environmental Protection Agency*,
    809 F.2d 1 (D.C. Cir. 1986) .......................................................... 12

*Immigration and Naturalization Service v. Chadha*,
    462 U.S. 919 (1983) ......................................................................... 6

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) .................................................. 18, 19

*Kendall v. United States ex rel. Stokes*,
    37 U.S. (12 Pet.) 524 (1838) ...................................................... 7, 17

*Medellin v. Texas*,
   552 U.S. 491 (2008) ................................................................ 8

*National Treasury Employees Union v. Vought*,
   149 F.4th 762 (D.C. Cir. 2025),
   *vacated*, 2025 WL 3659406 (D.C. Cir. 2025) ..................... 3, 13, 14, 18

*Nuclear Regulatory Commission v. Texas*,
   605 U.S. 665 (2025) .......................................................... 15, 20

*Panama Refining Company v. Ryan*,
   293 U.S. 388 (1935) ............................................................ 2, 11

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) ................................................................ 20

*Trudeau v. Federal Trade Commission*,
   456 F.3d 178 (D.C. Cir. 2006) ......................................... 11, 12

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................ 6, 7

*Utility Air Regulatory Group v. Environmental Protection
   Agency*,
   573 U.S. 302 (2014) ................................................................ 7

*Webster v. Doe*,
   486 U.S. 592 (1988) .............................................................. 20

\* *Youngstown Sheet and Tube Company v. Sawyer*,
   343 U.S. 579 (1952) ............................... 2, 4, 6, 7, 8, 9, 13, 17, 22, 23

*Zivotofsky v. Kerry*,
   576 U.S. 1 (2015) .................................................................... 9

**Constitution and statutes**

U.S. Const., art. II, § 3 ........................................................ 7

Defense Base Closure and Realignment Act of 1990,
   Pub. L. No. 101-510, 104 Stat. 1808 ................................ 14

## INTEREST OF AMICUS CURIAE[*]

Amicus curiae Public Citizen is a nonprofit advocacy organization that appears on behalf of its nationwide membership before Congress, administrative agencies, and courts on a wide range of issues. Public Citizen has long sought to preserve access to courts for individuals harmed by government wrongdoing, and to maintain the federal courts' authority to provide appropriate redress efficiently and effectively, including redress against executive actions that transgress the separation of powers.

Public Citizen is concerned that recent decisions by panels of this Court will have the effect of insulating executive action that violates the separation of powers from judicial review in some cases. Public Citizen submits this brief to encourage this Court to clarify the ongoing vitality of the longstanding right to seek judicial relief for unconstitutional executive action.

---

[*] All parties have consented to the filing of this brief. The brief was not authored in whole or part by counsel for a party. No party or counsel for a party, and no person other than the amicus curiae or its counsel, contributed money intended to fund the brief's preparation or submission.

1

## SUMMARY OF ARGUMENT

"[T]he separation of powers is designed to preserve the liberty of all the people." *Collins v. Yellen*, 594 U.S. 220, 245 (2021). "So," as the Supreme Court has held, "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Id.* Such a party is entitled to seek equitable relief through "an implied right of action directly under the Constitution." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 583 (1952) (affirming district court order enjoining "orders of the President and the Secretary [of Commerce]" that unconstitutionally directed the seizure of steel mills); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 414 (1935) (holding that a plaintiff is "entitled to invoke the equitable jurisdiction [of a federal court] to restrain enforcement" of an unconstitutional act).

In this and other recent cases in this circuit, however, panels of this Court have recharacterized *constitutional* claims brought by plaintiffs seeking equitable relief with respect to governmental action that allegedly violates the separation of powers as claims that the executive acted *ultra vires* by exceeding *statutory* authority. *See Climate United*

2

*Fund v. Citibank, N.A.*, 154 F.4th 809, 826–27, *vacated*, 2025 WL 3663661 (D.C. Cir. 2025); *Global Health Council v. Trump*, 153 F.4th 1, 14–17 (D.C. Cir. 2025); *Nat'l Treas. Emps. Union v. Vought*, 149 F.4th 762, 791–94, *vacated*, 2025 WL 3659406 (D.C. Cir. 2025). Citing *Dalton v. Specter*, 511 U.S. 462 (1994), these decisions seem to conclude that a plaintiff may challenge Executive Branch actions as violating the separation of powers only if the President purports to act pursuant to his inherent constitutional authority or pursuant to a federal statute that the plaintiff contends is an unconstitutional delegation of legislative authority, but not if the executive claims that its action is authorized by a federal statute whose constitutionality is not contested. These decisions effectively appear to allow the government, simply by claiming that it has statutory authority for its actions, to transform a plaintiff's cognizable constitutional claim into an *ultra vires* claim that may be subject to limits on judicial review that would not otherwise apply. As a result, plaintiffs in some cases may have no avenue at all for challenging the separation-of-powers violation.

These decisions misread *Dalton*. Far from conflating *ultra vires* claims and constitutional claims, *Dalton* reinforces that they are distinct.

3

While the decision in *Dalton* rejects the argument that every *ultra vires* action *necessarily* violates the separation of powers, it does not foreclose the possibility that executive action can be inconsistent with both federal statute and the Constitution—a possibility that the Supreme Court's landmark decision in *Youngstown* expressly contemplates. *See Youngstown*, 343 U.S. at 587–89; *id.* at 637–38 (Jackson, J., concurring) (explaining that executive action that is "incompatible with the expressed or implied will of Congress" must be "scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system"). *Dalton* therefore does not deny plaintiffs the ability to raise both statutory claims and separation-of-powers claims to challenge such actions.

In this case, as well as in *Global Health Council* and *National Treasury Employees Union*, plaintiffs filed suit alleging that unilateral executive actions to shutter a congressionally established program or agency violated the separation of powers. That the challenged actions may also violate federal statutes indicates only that the aggrieved plaintiffs potentially have two claims—one based in statute and the other in the Constitution—that they may invoke to support injunctive relief.

Although a court need not necessarily resolve both claims if deciding the statutory claim offers a plaintiff complete relief, it was wrong for the panel in this case (as in *Global Health Council* and *National Treasury Employees Union*) to deny the plaintiffs relief altogether without evaluating the merits of their distinct separation-of-powers claim. The Court should clarify that *Dalton* does not countenance this outcome and should reaffirm the principle that unilateral executive action that bypasses the lawmaking process set out in the Constitution violates the separation of powers.

## ARGUMENT

### I.    The Executive Branch violates the separation of powers whenever it exercises Congress's lawmaking powers.

"The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787." *Buckley v. Valeo*, 424 U.S. 1, 124 (1976). "The Constitution sought to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive and Judicial, to assure, as nearly as possible, that each branch of government would confine itself to its assigned responsibility." *INS v. Chadha*, 462 U.S. 919, 951 (1983).

5

Under the constitutional assignment of responsibilities, "[t]he power to make the necessary laws is in Congress; the power to execute in the President." *Hamdan v. Rumsfeld*, 548 U.S. 557, 591 (2006) (quoting *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 139 (1866) (op. of Chase, C.J.)). The President may not "intrude upon the proper authority of Congress" by acting as a lawmaker. *Id.* at 592 (quoting *Ex parte Milligan*, 71 U.S. (4 Wall.) at 139). "And the Constitution is neither silent nor equivocal about who shall make laws which the President is to execute." *Youngstown*, 343 U.S. at 587.

This distribution of powers reflects the judgment made during the early American republic that it was essential to deprive the executive of the so-called "dispensing power"—a historical prerogative of English kings that enabled them "to ignore or suspend the law." *Global Health Council*, 153 F.4th at 25 (Pan, J., dissenting); *see United States v. Texas*, 599 U.S. 670, 732–34 (2023) (Alito, J., dissenting) (reviewing historical assertions of the dispensing power). As the Supreme Court observed in 1838, "[t]o contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible"

6

because it would grant the President the "power entirely to control the legislation of congress." *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 613 (1838). Rather than granting the President a dispensing power, "[i]n the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown*, 343 U.S. at 587; *see also Texas*, 599 U.S. at 733 (Alito, J., dissenting) (explaining that the President's constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., art. II, § 3, reflects an express textual repudiation of the dispensing power); *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014) ("The power of executing the laws … does not include a power to revise clear statutory terms that turn out not to work in practice.").

The Supreme Court's seminal decision in *Youngstown* encapsulates these constitutional limits on the President's authority vis-à-vis Congress's exercise of lawmaking power. In *Youngstown*, the Court held that President Truman violated the separation of powers by seizing steel mills to resolve a labor dispute. 343 U.S. at 588–89. The Court recognized that presidential actions "must stem either from an act of Congress or from the Constitution itself," *id.* at 585, and it took account of previously

7

enacted laws that authorized the President to "take both personal and real property under certain conditions" and of Congress's rejection of the use of seizures to resolve labor disputes, *id.* at 586. "The President's order," however, "[did] not direct that a congressional policy be executed in a manner prescribed by Congress—it direct[ed] that a presidential policy be executed in a manner prescribed by the President." *Id.* at 588. Because the "Founders of the Nation entrusted the lawmaking power to the Congress alone," the Court held that President Truman's "seizure order cannot stand." *Id.* at 589.

In the *Youngstown* concurrence that "provides the accepted framework for evaluating executive action," *Medellin v. Texas*, 552 U.S. 491, 524 (2008), Justice Jackson explicitly recognized that the constitutionality of certain executive actions "depend[s] upon their disjunction or conjunction with [the powers] of Congress." *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring). Specifically, courts evaluating whether presidential action comports with the separation of powers should consider (1) whether "the President [has acted] pursuant to an express or implied authorization of Congress," (2) "in absence of either a congressional grant or denial of authority," whether "congressional

inertia, indifference or quiescence may" invite the exercise of executive power, and (3) whether "the President [has taken] measures incompatible with the expressed or implied will of Congress" and must "rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (quoting *Youngstown*, 343 U.S. at 635–38 (Jackson, J., concurring)). Under this framework, the question whether presidential action violates the separation of powers requires evaluating whether the President has impermissibly attempted to usurp Congress's policy choices by exercising a lawmaking power that the Constitution withholds from him.

Even when Congress has expressly authorized the President's actions—and "his authority is at its maximum" under Justice Jackson's framework, *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring)—the Constitution forbids the President from "rejecting the policy judgment made by Congress and relying on his own policy judgment" instead. *Clinton v. City of New York*, 524 U.S. 417, 444 (1998). Thus, in *Clinton*, the Supreme Court held that a statute creating the so-called "line-item veto" was unconstitutional because, "[i]n both legal and practical effect,"

9

it permitted the President to "amend[] two Acts of Congress by repealing a portion of each." *Id.* at 438. Although the President had followed the procedures set forth in the statute, *id.* at 436, the Court held that the separation of powers prohibits "unilateral Presidential action that either repeals or amends parts of duly enacted statutes," *id.* at 439, or "functional[ly] equivalent" action that renders a statute "entirely inoperative," *id.* at 441.

*Clinton* thus holds that a President violates the separation of powers when he acts to repeal or amend a statute, even when authorized by Congress to do so. But *Clinton* by no means suggests that the President violates separation of powers only when he acts pursuant to an unconstitutional delegation of authority, or, as in *Youngstown*, when he concedes that he has no statutory authority and wrongly claims some inherent constitutional power to act. Rather, when executive action is not authorized by statute, federal statutes remain relevant to an assessment of the executive's *constitutional* authority to act. *See, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 677 (1981) (holding, as to an order suspending certain claims against Iran, that although the order was not authorized by statute, the statutes that the President invoked remained "highly

relevant" to "the question of the validity of the President's actions"). Recent panels of this Court have erred to the extent that they held that a separation-of-powers claim that requires consideration of the scope of executive statutory authority is not cognizable. *But see Climate United Fund*, 154 F.4th at 827.

## II. Plaintiffs may bring a nonstatutory cause of action to enjoin actions that transgress the separation of powers.

**A.** Because the exercise of lawmaking power by the Executive Branch violates the separation of powers, a plaintiff is "entitled to invoke the equitable jurisdiction [of a federal court] to restrain [its] enforcement." *Panama Refining Co.*, 293 U.S. at 414. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *see Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."). And "it is established practice" that the federal courts have jurisdiction "to issue injunctions to protect rights safeguarded by the Constitution." *Bell v. Hood*, 327 U.S. 678, 684 (1946).

11

This equitable power "is inherent in the Constitution itself," *Trudeau v. FTC*, 456 F.3d 178, 190 n.22 (D.C. Cir. 2006) (quoting *Hubbard v. EPA*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986)).

A plaintiff's ability to seek judicial enforcement of constitutional safeguards, moreover, does not depend on Congress's enactment of an express cause of action, such as the one found in the Administrative Procedure Act (APA). *See Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670, 681 (1986). Instead, a plaintiff may pursue equitable relief through "an implied private right of action directly under the Constitution." *Free Enter. Fund*, 561 U.S. at 491 n.2; *see Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (holding that, although "the APA does not expressly allow review of the President's actions, … [his] actions may still be reviewed for constitutionality"). Through this nonstatutory right of action, a plaintiff may obtain judicial review of governmental actions that violate, for example, the First Amendment, *Trudeau*, 456 F.3d at 190, the equal protection component of the Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 242–43 (1979), and "every other constitutional claim," including claims arising under the separation of powers, *Free Enter. Fund*, 561 U.S. at 491–92 n.2 (addressing

Appointments Clause and separation of powers); *see Youngstown*, 343 U.S. at 583.

**B.** The panels in this case, in *Global Health Council*, and in *National Treasury Employees Union* acknowledged the existence of an implied cause of action for injunctive relief to enforce the separation of powers. Those decisions, however, confined that cause of action to claims that the executive action was taken pursuant to an unconstitutional statute or to claims challenging actions that the President purports to take pursuant to his inherent authority under the Constitution. *See Global Health Council*, 153 F.4th at 15; *Nat'l Treas. Emps. Union*, 149 F.4th at 793–94; *Climate United Fund*, 154 F.4th at 827 (citing *Global Health Council* and *National Treasury Employees Union*). Where a plaintiff has neither "challenged the constitutionality of the statute" allegedly authorizing a presidential action, *Global Health Council*, 153 F.4th at 14, nor challenged the President's invocation of a "freestanding Article II power," *Nat'l Treas. Emps. Union*, 149 F.4th at 794, these decisions hold that the plaintiff cannot state a claim that the challenged executive action constitutes an unconstitutional exercise of lawmaking power and further hold that a court faced with such a claim should

13

"analyze the claim as an *ultra vires* one," *Climate United Fund*, 154 F.4th at 827 (quoting *Nat'l Treas. Emps. Union*, 149 F.4th at 793).

The authority cited for this limitation on constitutional review is the Supreme Court's decision in *Dalton*. *Dalton*, however, did not authorize courts to transform a separation-of-powers claim into an *ultra vires* one. In *Dalton*, the Supreme Court considered whether courts could review the President's decision to close a shipyard pursuant to the Defense Base Closure and Realignment Act of 1990, Pub. L. No. 101-510, 104 Stat. 1808. The 1990 law had delegated to the President the authority to approve or disapprove base-closure recommendations prepared by the Secretary of Defense and a specially created commission. *Dalton*, 511 U.S. at 465. The plaintiffs brought suit under the APA, alleging that agency officials and the commission violated the procedural and substantive requirements of the 1990 law in formulating their recommendations. *Id.* at 466. The court of appeals initially held that the plaintiffs' APA claims could proceed even though they were effectively seeking review of the President's decision. *Id.* at 467. The Supreme Court vacated that decision and remanded for further consideration in light of *Franklin*, which had held that presidential actions are not subject to the

14

APA, but may be reviewed for constitutionality. *Id.* at 468; *see Franklin*, 505 U.S. at 796. On remand, the court of appeals held that it could review "the President's actions for compliance with the 1990 Act" as a "form of constitutional review," *Dalton*, 511 U.S. at 468, because "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine," *id.* at 471.

*Dalton* rejected that holding, which improperly had conflated the "separate categories" of "unconstitutional and ultra vires conduct." *Id.* at 472. Whereas both unconstitutional actions and *ultra vires* action may involve the executive's failure "to obey [Congress's] statutory commands," *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting *Bowen*, 476 U.S. at 681), a claim that the President has acted *ultra vires* does not necessarily imply that the President has stepped into a legislative policymaking role that is inconsistent with the scope of his constitutional power. Instead, *ultra vires* conduct occurs when the executive acts in a manner that is "unauthorized by any law and … in violation of the rights of the individual." *Nuclear Reg. Comm'n v. Texas*, 605 U.S. 665, 680 (2025) (quoting *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)).

15

In preserving the distinction "between claims of constitutional violations and claims that an official has acted in excess of his statutory authority," *Dalton* did not call into question the Court's longstanding recognition that "Presidential decisions are reviewable for constitutionality." *Dalton*, 511 U.S. at 471–72. Rather, *Dalton* simply rejected the sweeping proposition that "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Thus, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims," *id.* at 473, even though unconstitutional executive actions may—and in many cases do—exceed the President's statutory authority.

*Dalton* also does not suggest that executive action can constitute impermissible lawmaking only when the government acts pursuant to an unconstitutional statute or invokes freestanding Article II authority. The plaintiffs in *Dalton* did not allege that President Bush had exercised lawmaking power by substituting his own policy judgment for Congress's when he exercised the closure authority expressly delegated to him under the base-closure law. Rather, the dispute in *Dalton* centered on the

16

statutory question whether the President's authority to act was "contingent on … fulfillment of all the procedural requirements" of the 1990 law. *Id.* at 476. If President Bush had instead acted in the "*absence of any* statutory authority," as President Truman had in *Youngstown*, *Dalton* recognized that President Bush's action could have been subject to constitutional review. *Id.* at 473 (citing *Youngstown*, 343 U.S. at 585).

In contrast to the claim in *Dalton*, the plaintiffs here assert that the Trump administration violated the separation of powers by "seek[ing] to dismantle [statutory] grant programs in their entirety as a policy matter" and to "shut down these programs completely," in contravention of Congress's direction. *Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 115 (D.D.C. 2025). These allegations state a claim of unconstitutional executive lawmaking. Just as the Constitution bars the President from engaging in "the functional equivalent of partial repeals" of federal statutes even when acting pursuant to Congress's express authorization, *Clinton*, 524 U.S. at 444, it denies the President the "power entirely to control the legislation of Congress" by "forbid[ding] their execution," *Kendall*, 37 U.S. (12 Pet.) at 613. As then-Judge Kavanaugh explained, "our constitutional system of separation of powers

would be significantly altered if [courts] were to allow [the] executive …
to disregard federal law." *In re Aiken Cty.*, 725 F.3d 255, 267 (D.C. Cir.
2013).

**C.** Whereas *Dalton* expressly recognized that "unconstitutional and
ultra vires conduct" are "separate categories" that should not be
conflated, *Dalton*, 511 U.S. at 472, the panel decisions in this case, *Global
Health Council*, and *National Treasury Employees Union* did exactly that
when they recast the plaintiffs' separation-of-powers claims as *ultra vires*
ones. *See Climate United Fund*, 154 F.4th at 827 ("[G]rantees here allege
violations of the statute, not the Constitution."); *Global Health Council*,
153 F.4th at 15 n.11 ("[T]his dispute is fundamentally statutory because
the alleged constitutional violation is predicated on the underlying
alleged statutory violations."); *Nat'l Treas. Emps. Union*, 149 F.4th at 793
("[I]mplied equitable review for constitutional claims is unavailable
where the plaintiff argues that statutory violations by executive officials
implicate the separation of powers.").

The justification for recasting separation-of-powers claims as *ultra
vires* claims appears to be to prevent plaintiffs from "avoid[ing] statutory
limits on review by reframing *any* alleged statutory violation by the

President as a constitutional one." *Global Health Council*, 153 F.3d at 14 (emphasis added) (citing *Dalton*, 511 U.S. at 474). But *Dalton* says "every," not "any": "[I]f *every* claim alleging that the President exceeded his statutory authority were considered a constitutional claim, the exception identified in *Franklin* [allowing judicial review of constitutional claims] would be broadened beyond recognition." 511 U.S. at 474 (emphasis added). *Dalton* thus forecloses a plaintiff from asserting that the government's violation of a statute "*necessarily* violates the Constitution." *Id.* at 473 (emphasis added).

What *Dalton* does not do, however, is adopt a blanket prohibition on a plaintiff's ability to bring both an *ultra vires* claim and a separation-of-powers claim when the government has engaged in a course of action that makes both claims cognizable. Here, the Executive Branch's alleged dismantling of the funding program for greenhouse-gas reduction may have been implemented through *ultra vires* actions, but the separation of powers independently denies the executive "unilateral authority to refuse to spend [appropriated] funds" in contravention of Congress's policy choices. *Aiken Cty.*, 725 F.3d at 261 n.1 (Kavanaugh, J.); *cf. Clinton*, 524 U.S. at 444 (when "the President cancels an item of new direct spending

or a limited tax benefit he is rejecting the policy judgment made by Congress and relying on his own policy judgment"). Plaintiffs with multiple cognizable claims have the right to "determin[e] which substantive claims to bring against which defendants." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).

Moreover, the Supreme Court has "strictly limited nonstatutory ultra vires review" by applying "delineated procedural boundaries" to ensure that "the limitations of judicial review statutes" are properly enforced. *Global Health Council*, 153 F.4th at 20 (ellipses removed; quoting *Nuclear Regulatory Comm'n*, 605 U.S. at 681). Thus, an *ultra vires* claim is limited to situations where "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (cleaned up). But even where the requirements for an *ultra vires* claim are not satisfied, a constitutional claim remains available to seek review of actions in violation of the Constitution. *Cf. Webster v. Doe*, 486 U.S. 592, 601–03 (1988) (holding

20

that Congress's decision to commit employee termination decisions to the agency's unreviewable discretion did not preclude employee from raising a constitutional challenge to his termination). So, for example, President Truman could not have insulated the seizure of steel mills from review in *Youngstown* by asserting statutory authority for his actions, thus transforming the constitutional claim into an *ultra vires* claim, which in turn would have been rejected unless his assertion of statutory authority were "utterly unreasonable." *Fed. Express Corp.*, 39 F.4th at 766 (internal quotation marks omitted). Rather, the central teaching of *Dalton* is that *ultra vires* and unconstitutional conduct remain "separate categories," subject to distinct standards. *Dalton*, 511 U.S. at 472.

Of course, to resolve a separation-of-powers claim, a court may— and generally must—examine the statutes that define the scope of the executive's authority to determine whether the executive is implementing "a congressional policy … in a manner prescribed by Congress" or "a presidential policy … in a manner prescribed by the President." *Youngstown*, 343 U.S. at 588; *see supra* pp. 10–11. Indeed, courts reviewing executive action for consistency with the separation of powers routinely ask whether the Executive Branch "acts in absence of

21

either a congressional grant or denial of authority" or has "take[n] measures incompatible with the expressed or implied will of Congress," *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)—inquiries that require an examination of the federal statutes that relate to the executive action under review. *See Dames & Moore*, 453 U.S. at 667, 674–75; *cf. Clinton*, 524 U.S. at 436–38, 441 (interpreting statute to assess legal effect of a line-item veto). For instance, a statute that authorized the executive to cancel a grant under certain conditions would not authorize the executive to unilaterally terminate a congressionally enacted funding program, even though terminating the program would be accomplished by canceling grants.

Raising a constitutional claim, then, is not an attempt to evade "statutory limits on review." *Global Health Council*, 153 F.3d at 14. Rather, the Executive Branch's stratagem of pretextually invoking a federal statute as authority for a challenged action, and contending that the plaintiffs' separation-of-powers claim is therefore statutory, is an attempt to impose on constitutional claims the statutory limits to which they are not properly subject. Neither *Dalton* nor any other Supreme Court precedent contemplates this sort of runaround, and this Court

22

should thus reject the new rule, adopted by recent panels, that permits it.

When, as here, a court has "jurisdiction over [the constitutional] claim," *Climate United Fund*, 154 F.4th at 826, it has a "virtually unflagging obligation" to adjudicate it. *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (internal quotation marks omitted). A court cannot avoid that responsibility by recasting a plaintiff's constitutional claim into an *ultra vires* one based on the government's litigation strategy. "The distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established to permit this sort of evisceration." *Dalton*, 511 U.S. at 474.

## CONCLUSION

The Court should affirm the preliminary injunction issued by the district court.

23

February 9, 2026

Respectfully submitted,
/s/ Nandan M. Joshi
Nandan M. Joshi
Nicolas A. Sansone
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Amicus Curiae*
*Public Citizen*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief for Amicus Curiae Public Citizen in Support of Appellees complies with the type-volume limitations of FRAP 32(a)(7)(B) and 29(d). The brief is composed in a 14-point proportional typeface, Century Schoolbook. As calculated by my word processing software (Microsoft Word 365), the brief (excluding those parts permitted to be excluded under the Federal Rules of Appellate Procedure and this Court's rules) contains 4523 words.

/s/ Nandan M. Joshi
Nandan M. Joshi

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 9, 2026, this Brief for Amicus Curiae Public Citizen in Support of Appellees was served through the Court's ECF system on counsel for all parties.

/s/ Nandan M. Joshi
Nandan M. Joshi