**[EN BANC ORAL ARGUMENT SCHEDULED FEBRUARY 24, 2026]**

Nos. 25-5122, 25-5123

═══════════════════════════════

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

───────────────────────────

CLIMATE UNITED FUND, *ET AL.*,

*Plaintiffs-Appellees,*

v.

CITIBANK, N.A., *ET AL.*,

*Defendants-Appellants.*

───────────────────────────

On Appeal from the United States District Court
for the District of Columbia

───────────────────────────

**BRIEF OF *AMICUS CURIAE***
**PROFESSOR TOBIAS BARRINGTON WOLFF**
**IN SUPPORT OF APPELLEES AND AFFIRMANCE**

───────────────────────────

ADRIANA S. KOSOVYCH
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
Tel: 212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com

PAUL DECAMP
  *Counsel of Record*
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel: 202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

═══════════════════════════════

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *Amicus Curiae* Professor Tobias Barrington Wolff certifies as follows:

### A.    Parties and *Amici*

All parties in this case are listed in the Government's En Banc Opening Brief.

Tarek Farag moved to intervene, but his motion was denied.

*Amici* include: Samuel R. Bagenstos; Michael Swack, Paul Yoo, Ellen Lurie Hoffman, and Eric Hangen; the Natural Resources Defense Council; Public Citizen; U.S. Senators Chris Van Hollen, Sheldon Whitehouse, Edward Markey, Brian Schatz, Richard Blumenthal, Bernie Sanders, Mazie K. Hirono, Jeff Merkley, and Tina Smith and U.S. Representatives Debbie Dingell, Paul Tonko, Shri Thanedar, Greg Landsman, Nanette Barragan, Lloyd Doggett, Julia Brownley, Bonnie Watson Coleman, Mike Quigley, Jared Huffman, Jan Schakowsky, Mary Gay Scanlon, Alexandria Ocasio-Cortez, Sarah Elfreth, Frank Pallone, Kevin Mullin, Jamie Raskin, Sean Casten, Suzanne Bonamici, Mike Levin, Troy Carter, Yvette Clarke, Jennifer McClellan, Darren Soto, Diana Degette, Robert Menendez, Kathy Castor, Mark Takano, Bobby Scott,

George Latimer, and Doris Matsui; the State of West Virginia, State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, Commonwealth of Kentucky, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of North Dakota, State of Ohio, State of Oklahoma, State of South Carolina, State of South Dakota, State of Texas, State of Utah, and State of Wyoming. Constitutional Accountability Center has filed a motion for leave to participate as *amicus curiae*.

## B.    Rulings Under Review

References to the rulings at issue appear in the Government's En Banc Opening Brief.

## C.    Related Cases

*Amicus* is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Paul DeCamp*
Paul DeCamp
*Counsel for* Amicus Curiae
*Tobias Barrington Wolff*

## DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, *Amicus Curiae* Professor Tobias Barrington Wolff certifies that *amicus* is a natural person and, as such, no further Rule 26.1 disclosure statement is required.

*/s/ Paul DeCamp*
Paul DeCamp
*Counsel for* Amicus Curiae
*Tobias Barrington Wolff*

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

All parties except Defendant-Appellant Citibank, N.A. have consented to the filing of this brief. Citibank, N.A. takes no position. This brief is accompanied by a Motion for Invitation to File Brief as *Amicus Curiae* in Support of Appellees.

Pursuant to D.C. Circuit Rule 29(d), *amicus* certifies that a separate brief is necessary to present the important issues covered by this brief. *Amicus* is not aware of any other *amicus* brief addressing these issues—which do not duplicate the legal arguments presented by the parties—and certifies, pursuant to D.C. Circuit Rule 29(d), that joinder in a single brief with other *amici* would be impracticable.

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS

No party's counsel authored any part of this brief, nor did any party or party's counsel contribute any money used or intended to fund the preparation or submission of this brief. No person other than *amicus curiae* and his counsel contributed any money that was used or intended to fund the preparation or submission of this brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES.....................................................................................i

DISCLOSURE STATEMENT ..................................................................iii

STATEMENT REGARDING CONSENT TO FILE AND
SEPARATE BRIEFING ..........................................................................iv

STATEMENT OF AUTHORSHIP AND FINANCIAL
CONTRIBUTIONS.................................................................................. v

TABLE OF CONTENTS ......................................................................... vi

TABLE OF AUTHORITIES....................................................................viii

GLOSSARY ............................................................................................ xi

STATUTES AND REGULATIONS .......................................................xii

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS
CURIAE*.................................................................................................. 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................... 6

I.  THE SUPREME COURT AND THIS COURT HAVE LONG HELD
    THAT CLAIMS OVER OWNERSHIP OF PROPERTY MUST BE HEARD
    IN A FEDERAL DISTRICT COURT. ........................................................ 6

II. THE SUPREME COURT DEFINES AN ACTION FOR "RELIEF
    OTHER THAN MONETARY DAMAGES" UNDER THE
    ADMINISTRATIVE PROCEDURE ACT AS ONE SEEKING SPECIFIC
    RATHER THAN SUBSTITUTE RELIEF. .................................................. 16

III. The Tucker Act Only Authorizes Jurisdiction Over Claims Against The United States For Money Damages And Would Prohibit Plaintiffs From Asserting Their Request For Specific Relief In The Court of Federal Claims................................................................22

IV. The Supreme Court's Recent Shadow-Docket Rulings Do Not Diminish the Force of its Precedents in This Case. .......................................................................27

CONCLUSION ........................................................30

CERTIFICATE OF COMPLIANCE........................................32

CERTIFICATE OF SERVICE..............................................33

ADDENDUM ...........................................................34

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*America's Community Bankers v. F.D.I.C.,*
  200 F.3d 822 (D.C. Cir. 2000) ....................................................... 20, 22

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)................................4, 16, 17, 18, 19, 20, 25, 26, 30

*Crowley Government Services, Inc. v. General Services Administration,*
  38 F.4th 1099 (D.C. Cir. 2022)............................................................. 14

*Department of Army v. Blue Fox,*
  525 U.S. 255 (1999)............................................................ 4, 19, 20, 30

*Department of Education v. California,*
  604 U.S.C 650 (2025) (per curiam)............................. 15, 16, 27, 29, 31

*Harger v. Department of Labor,*
  569 F.3d 898 (9th Cir. 2009)................................................................ 21

*Land v. Dollar,*
  330 U.S. 731 (1947)..........................4, 7, 8, 9, 10, 11, 12, 13, 14, 16, 30

*Lummi Tribe of the Lummi Reservation, Wash. v. United States,*
  870 F.3d 1313 (Fed. Cir. 2017) ..................................... 5, 23, 24, 25, 27

*Maryland Department of Human Resources v. Department of Health and Human Services,*
  763 F.2d 1441 (D.C. Cir. 1985) ........................................................... 17

*Megapulse v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982)...................4, 7, 9, 10, 11, 12, 13, 14, 16

*Modoc Lassen Indian Housing Authority v. U.S. Department of Housing and Urban Development,*
881 F.3d 1181 (10th Cir. 2017) .......................................................... 20

*National Center for Manufacturing Sciences v. United States,*
114 F.3d 196 (Fed. Cir. 1997) ............................................................ 25

*National Institutes of Health v. American Public Health Association,*
606 U.S. __, 145 S. Ct. 2658 (2025) ............................................ 27, 29

*Rodriguez de Quijas v. Shearson/American Express,*
490 U.S. 477 (1989) .............................................................................. 29

*Sustainability Institute v. Trump,*
__ F.4th __, 2026 WL 157120 (Jan. 21, 2026, 4th Cir.) ............... 28, 29

*United States v. King,*
395 U.S. 1 (1969) .................................................................................. 23

*United States v. Mitchell,*
463 U.S. 206 (1983) ................................................. 5, 22, 24, 27, 30

*United States v. Testan,*
424 U.S. 392 (1976) ................................................. 5, 22, 24, 27, 30

*Veluchamy v. F.D.I.C.,*
706 F.3d 810 (7th Cir. 2013) ............................................................ 20

*Zapara v. C.I.R.,*
652 F.3d 1042 (9th Cir. 2011) .......................................................... 21

**STATUTES**

5 U.S.C. § 702 ............................... 4, 5, 16, 17, 18, 19, 20, 21, 26

5 U.S.C. § 704 ......................................................... 25, 26, 27

## OTHER AUTHORITIES

EPA, About the Greenhouse Gas Reduction Fund,
https://www.epa.gov/greenhouse-gas-reduction-fund/about-greenhouse-gas-reduction-fund (website as visited on May 10, 2025, noted as "Last updated on February 13, 2025") (website as visited on February 5, 2026, noted as "Last updated on September 30, 2025") ........................................................................... 2

Grants.gov, Grants Notice—Solar For All,
https://www.grants.gov/search-results-detail/348957 (last visited on February 9, 2026) ........................................................ 2

# GLOSSARY

| APA  | Administrative Procedure Act    |
|------|---------------------------------|
| CFC  | Court of Federal Claims         |
| EPA  | Environmental Protection Agency |
| Fund | Greenhouse Gas Reduction Fund   |
| IRA  | Inflation Reduction Act         |

## STATUTES AND REGULATIONS

Except for the following, which are set forth in the accompanying addendum to this brief, all applicable statutes, etc. are contained in the Government's En Banc Opening Brief: 5 U.S.C. § 704.

## STATEMENT OF IDENTITY AND
## INTEREST OF *AMICUS CURIAE*

Tobias Barrington Wolff is the Jefferson Barnes Fordham Professor at the University of Pennsylvania Law School.[1]  Professor Wolff is a scholar in the fields of Civil Procedure, Complex Litigation, the Conflict of Laws and Constitutional Law.  His work has focused particular attention on the doctrines of federal subject-matter jurisdiction and federal jurisdictional policy.  Professor Wolff is committed to the correct application of the law of federal jurisdiction across all different types of disputes.  He respectfully submits this brief in hopes of assisting this Court with its review of these issues.

---

[1]  *Amicus* files this brief in his individual capacity.  Institutional affiliations are provided for identification purposes only.

## SUMMARY OF ARGUMENT

This is a case about property rights and the Government's threat to seize the contents of a bank account.  In 2022, Congress enacted the Inflation Reduction Act and authorized the Environmental Protection Agency to create the Greenhouse Gas Reduction Fund.  As EPA's website explained until mid 2025, the Fund establishes a "$27 billion investment to combat the climate crisis by mobilizing financing and private capital for greenhouse gas- and air pollution-reducing projects in communities around the country."[2]  In order to achieve the goal of mobilizing private capital, the Fund structures grant awards so that the full amount of funding is disbursed to recipients up front and deposited in their accounts at Citibank, which serves as the Government's agent in holding the funds for withdrawal by awardees.  This funding structure allows recipients to book the full amount of the disbursed funds as assets and thereby attract

---

[2]   https://www.grants.gov/search-results-detail/348957 (last visited on February 9, 2026).  This is the language that existed on the EPA website as of at least May 10, 2025, at which time it was marked "Last updated on February 13, 2025."  EPA has since changed the website, which now contains an extended presentation of the administration's litigation position in the current dispute (among other things) and is noted as "Last updated on September 30, 2025."  *See* https://www.epa.gov/greenhouse-gas-reduction-fund/about-greenhouse-gas-reduction-fund.

investment partners in the commercial market. Grant recipients must satisfy extensive ongoing contractual and regulatory obligations concerning the manner in which they use those funds and the Government retains a security interest that allows it to guard against misconduct and reclaim the funds in the event of malfeasance. Subject to those constraints, the money becomes the property of grant recipients as soon as the awards issue. *See* Memorandum of Law in Support of Plaintiffs' Consolidated Motion for Preliminary Injunction at 4–12 and sources cited therein; Memorandum Opinion at 11–12.

The Government is now threatening to seize and claw back Plaintiffs' property because the current administration disagrees with the policies underlying the IRA and the Fund. Plaintiffs brought this lawsuit to enjoin the Government from carrying out that seizure. It is not specific performance of the grant contracts that Plaintiffs seek; it is protection from the forcible appropriation of their property, which they allege would violate the Administrative Procedure Act, the Appropriations Clause of Article I of the Constitution, the Due Process Clause of the Fifth Amendment and other statutory and regulatory provisions. Long-established precedent holds that a property dispute of this kind must be heard in a

federal district court.  *Land v. Dollar*, 330 U.S. 731 (1947); *Megapulse v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982).

Long-established precedent also holds that any dispute over the final disposition of highly restricted funds must likewise be heard in a federal district court.  The question in all such cases is whether the plaintiff seeks relief "other than monetary damages" from the United States. 5 U.S.C. § 702 ("APA § 702").  The Supreme Court has framed a straightforward test for that determination: Is the claimant seeking *specific* relief, meaning an order requiring or prohibiting action by the United States in relation to restricted funds; or *substitute* relief, meaning free-and-clear damages for consequential harm resulting from the Government's violation of a duty?  Claims for specific relief as to the disposition of restricted funds may be brought in a federal district court under APA § 702.  Claims for the substitute relief of compensatory damages may not. *Bowen v. Mass.*, 487 U.S. 879, 894–895 (1988); *Dep't of Army v. Blue Fox*, 525 U.S. 255, 262 (1999).

The Supreme Court and the Federal Circuit have interpreted the Tucker Act *in pari materia* with the APA when framing a test to determine whether claims against the United States involve "monetary

damages" and can be heard in the Court of Federal Claims or instead fall outside the scope of the Tucker Act: Does the dispute concern the disposition of *encumbered funds*, meaning a disbursement with conditions attached that can only be used for specific purposes and may be subject to reduction or claw-back, or an *unencumbered award* that the claimant can use, spend or transfer for any purpose?  An action for encumbered funds falls outside the Tucker Act and cannot be heard in the Court of Federal Claims.  An action for an unencumbered award is covered by the Tucker Act and can be heard in the CFC, often exclusively so.  *United States v. Mitchell*, 463 U.S. 206 (1983); *United States v. Testan*, 424 U.S. 392, 398–402 (1976); *Lummi Tribe of the Lummi Reservation, Wash. v. United States*, 870 F.3d 1313, 1317–1319 (Fed. Cir. 2017).

These precedents, too, mandate a clear result in this case.  Plaintiffs seek specific relief within the meaning of the APA, not substitute relief.  They ask the Court to confirm ownership of the funds already deposited in their bank accounts and prohibit the Government from seizing their property, not consequential damages for harm resulting from the seizure.  APA § 702 is thus the appropriate vehicle for asserting those claims and a federal district court is the appropriate forum.  For the same reason,

the Court of Federal Claims would have no jurisdiction to hear these claims.  Plaintiffs seek to retain possession of encumbered funds that can only be used for narrowly defined purposes and are subject to monitoring for compliance and claw-back in case of malfeasance, not a free-and-clear award of damages they could use for any purpose.  Plaintiffs' claims thus fall outside the scope of the Tucker Act and the CFC would have no power to adjudicate them.

The APA and the Tucker Act work together to allocate jurisdiction over these claims to the federal district courts, not the Court of Federal Claims.  Nothing in the Supreme Court's recent shadow-docket rulings calls that result into question.

## ARGUMENT

### I.   THE SUPREME COURT AND THIS COURT HAVE LONG HELD THAT CLAIMS OVER OWNERSHIP OF PROPERTY MUST BE HEARD IN A FEDERAL DISTRICT COURT.

The Supreme Court and this Court have long made clear that a dispute over ownership and control of property like the one involved in this case must be heard in a federal district court and does not fall within the scope of the Tucker Act even when a contract was involved in the disbursement or transfer of the property.  The ruling of the Supreme Court

6

in *Land v. Dollar*, 330 U.S. 731 (1947), and the decision of this Court in *Megapulse v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), put that question to rest.

*Dollar* involved a dispute over ownership of shares of common stock. Dollar Steamship and its owners had transferred the stock to the U.S. Maritime Commission pursuant to a 1938 contract that addressed certain debts the company owed the Government and a loan the Government extended to the company for operating expenses. Within a few years of entering into the agreement Dollar satisfied all its debts and repaid the loan, leading it to request the return of the stock which it believed the Commission was holding as security. The members of the Commission refused, arguing that Dollar had transferred ownership of the stock outright and the Commissioners had a right to sell it on the market. Dollar sued in a federal district court to enjoin the sale and require the return of its property, claiming the Commissioners "were unlawfully in possession of respondents' stock and illegally withholding it." *Dollar*, 330 U.S. at 734.

The Commissioners argued in response that because the U.S. Government had come into possession of the stock pursuant to a contract

with Dollar the claim for alleged conversion of Dollar's property could only be heard in the Court of Claims.  The Supreme Court rejected that argument, holding that Dollar was asserting a claim for ownership of disputed property, not performance or breach of a contract, and hence could not be forced into the Court of Claims and deprived of access to injunctive relief.

> The allegations of the complaint, if proved, would establish that petitioners are unlawfully withholding respondents' property under the claim that it belongs to the United States.  That conclusion would follow if either of respondents' contentions was established: (1) that the Commission had no authority to purchase the shares or acquire them outright; or (2) that, even though such authority existed, the 1938 contract resulted not in an outright transfer, but in a pledge of the shares.  If respondents are right in these contentions, their claim rests on their right under general law to recover possession of specific property wrongfully withheld.  At common law, their suit as pledgors to recover the pledged property on payment of the debt would sound in tort.
>
> . . .
>
> [P]ublic officials may become tortfeasors by exceeding the limits of their authority.  And where they unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment.  The dominant interest of the sovereign is then on the side of

> the victim, who may bring his possessory action to reclaim that which is wrongfully withheld.

*Dollar*, 330 U.S. at 735–736; 738.

Dollar's argument that the Commission was illegally retaining and threatening to sell its property depended on its assertion that "the 1938 contract" under which the company had turned over its stock "resulted not in an outright transfer, but in a pledge of the shares." *Id*. at 735–736. The terms of the contract were a central element of the plaintiff's proof. That did not change the fact that plaintiff's claim was a "possessory action" for restoration of property rights that could not be recharacterized as an action on the contract and "relegated to the Court of Claims." *Id*. at 738.

In *Megapulse* this Court applied the holding in *Dollar* to another dispute over control and disposition of property, this time involving the Government's threatened release of trade secrets owned by Megapulse that had come into the Government's possession in conjunction with a series of contracts for the development of the company's long-range navigation technology. When Megapulse sued to enjoin the release of its secrets, the Government argued that only the Court of Claims could entertain such an action because the company's property was in the

9

Government's possession as the result of contracts between the parties, contracts the Government claimed gave it the right to reveal the technical data to commercial competitors. This Court disagreed, explaining that it was the nature of the rights plaintiff asserted in its complaint that determined the jurisdiction of the district court, not the likelihood that a court might have to address the terms of the contract in resolving the dispute.

> Megapulse has gone to great lengths to demonstrate that it is not relying on the contract at all. It does not claim a breach of contract, it has limited its request for relief to only [certain key] documents, it seeks no monetary damages against the United States, and its claim is not properly characterized as one for specific performance [of a contractual duty]. Appellant's position is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act. It is actually the Government, and not Megapulse, which is relying on the contract, attempting to show that the Coast Guard lawfully came into possession of the property and is empowered by the contract to put the entrusted information out for commercial use. As indicated above, we do not accept the Government's argument that the mere existence of such contract-related issues must convert this action to one based on the contract.

*Megapulse*, 672 F.2d at 969. Invoking *Dollar*, this Court rejected the Government's attempt to recharacterize a dispute over ownership of

10

property as a contract claim and reaffirmed that "the jurisdictional bar of sovereign immunity in property disputes arising from contractual relationships does not necessarily apply where the government defendants are charged with having acted beyond the scope of their statutory authority." *Id.* (quoting *Dollar*, 330 U.S. at 738).

In the present case, there appears to be no dispute that Plaintiffs own the funds currently deposited in their Citibank accounts. *See* Government En Banc Opening Brief at 7–8 (detailing the structure by which funds were awarded and deposited into Plaintiffs' accounts and describing the arrangement as "the first of its kind"). As the district court explained, the Government has conceded that its demand to claw back the funds already disbursed to Plaintiffs "had nothing to do with Plaintiffs' performance under the grant." Dist. Ct. Opinion at 17. As in *Megapulse*, Plaintiffs do "not claim breach of contract" in their possessory action. *Megapulse*, 672 F.2d at 969. This is a dispute over the Government's threat to seize property because of a policy disagreement with the statute that authorized the disbursements, not performance or non-performance of contractual duties. When agencies of the U.S. government "unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate

11

action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment," *Dollar*, 330 U.S. at 738; and when it "is actually the Government . . . which is relying on the contract, attempting to show that [it] is empowered by the contract to" seize the plaintiff's property, "the mere existence of such contract-related issues [does not] convert this action to one based on the contract." *Megapulse*, 672 F.2d at 969.

The Government's attempts to circumvent these principles rely on the very arguments *Dollar* and *Megapulse* rejected. Throughout their briefing the Government has insisted that the dispute between these parties would not exist were it not for the contracts authorized by the Inflation Reduction Act that awarded grants to the Plaintiffs and provided the funding the Government now wishes to seize. *See, e.g.*, Government En Banc Opening Brief at 35 ("Because plaintiffs would have no claim to the funds absent EPA's award, their claims arise solely from the agreements."); *id*. at 40 (arguing that plaintiffs' right of possession to the funds in their accounts "is defined solely by the grant agreements and related contracts"). The Government insists this fact alone is sufficient to

12

establish that Plaintiffs' claims "are readily recognizable as contract claims" and hence can only be heard in the Court of Federal Claims. *Id.* at 28.

The panel majority made a serious error when it accepted these arguments. Their conclusion that "the source of the grantees' right to the relief they seek is their agreements, which are contracts for Tucker Act purposes," Op. 11, is foreclosed by *Dollar* and *Megapulse*, both of which make clear that a property dispute does not transform into an action on a contract merely because a contract with the Government was involved in the original transfer of the disputed property. So too the panel's holding that "the remedy the grantees seek is contractual in nature" because "in substance, the grantees are seeking specific performance of their agreements with the government." Op. 14. *Dollar* and *Megapulse* both reject this proposition, holding that an action challenging the Government's unlawful seizure of property does not become "contractual in nature" when the Government is the one invoking a contract as the purported justification for its seizure. *Dollar*, 330 U.S. at 738; *Megapulse*, 672 F.2d at 969.

13

Judge Pillard, writing in dissent, correctly explained that nothing in the Tucker Act classifies Plaintiffs' request for an injunction to prevent the unlawful seizure of their property as "disguised contract claim[s]." Dissent 55. This Court has consistently rejected the proposition that a dispute sounds in contract merely because the plaintiff "would have no claims to assert" absent the existence of a government contract. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022). As Judge Pillard noted, the insistence that a plaintiff's request for injunctive relief would "require the same governmental restraint that specific performance might require in a contract setting" is an "insufficient basis to deny a district court the jurisdiction otherwise available and the remedial powers otherwise appropriate." Dissent 55 (quoting *Megapulse*, 672 F.2d at 971) (cleaned up).

This Court need only reaffirm *Dollar* and *Megapulse* to enforce these long-established principles. In *Dollar* the Government claimed an ownership right in common stock that it traced back to its contract with the company. In *Megapulse* the Government claimed that a contract gave it the right to retain and sell the company's trade secrets. In both cases the Supreme Court and this Court found that jurisdiction was proper in

14

the federal district courts because the plaintiffs' claims concerned their rights in the property itself.

There may be disputes in which it is difficult to draw the line between a possessory interest in property and a request for specific performance of a contract. This is not one of them. The Government does not have possession of the disputed funds in this case; the governing statutes and regulations make clear that Plaintiffs own the property in their bank accounts subject to certain obligations and security interests; and the Government has threatened to seize that property while disclaiming any argument that Plaintiffs stand in breach of their contractual obligations. No part of the district court's injunction requires the U.S. Treasury to "pay out past-due grant obligations" or "continue paying obligations as they accrue." *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam).

When Congress structured the IRA and the Fund with these upfront payments and EPA fully executed grants under that structure, they committed the Government to a deployment of funds that could not be contained within the narrow parameters of Court of Federal Claims jurisdiction if a subsequent administration abruptly sought to reverse

course. The dispute between these parties sits in the heartland of the Administrative Procedure Act and the Court of Federal Claims has no jurisdiction to hear the matter. *Dollar* and *Megapulse* reject the Government's attempt to turn this property seizure dispute into a contract action. This case belongs in federal district court.

## II. THE SUPREME COURT DEFINES AN ACTION FOR "RELIEF OTHER THAN MONETARY DAMAGES" UNDER THE ADMINISTRATIVE PROCEDURE ACT AS ONE SEEKING SPECIFIC RATHER THAN SUBSTITUTE RELIEF.

The nature of the funds under threat of seizure in this case demands the same jurisdictional outcome as the property rights that define Plaintiffs' claims. The APA waives sovereign immunity and authorizes a cause of action in federal district court for lawsuits "seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. In *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Supreme Court adopted a framework that remains the controlling standard for analyzing the scope of "relief other than monetary damages" under the APA. *See Dep't of Educ.*, 604 U.S. at 651 (recognizing *Bowen* as controlling authority). Adopting the approach previously set forth by Judge Bork for this Court, *Bowen* emphasized the

significance of the term "monetary *damages*" in the text of the APA, warned against conflating that statutory language with a broader concept of "monetary *relief*" and held that the key to determining whether a claim seeks "relief other than monetary damages" rests in the distinction between *specific* and *substitute* relief.

> We begin with the ordinary meaning of the words Congress employed.  The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief.  Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."

*Bowen*, 487 U.S. at 894–895 (quoting *Maryland Dep't of Hum. Res. v. Dep't of Health and Hum. Servs.*, 763 F.2d 1441, 1146 (D.C. Cir. 1985) (Bork, J.)).  In a case involving disputed grant funding, "[t]he fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief."  *Id.* at 900–901.  A claim under APA § 702 can result in a judgment concerning the disposition of money so long as the case seeks specific relief rather than an award of damages substituting for consequential harm.

*Bowen* involved a claim by Massachusetts over the refusal of the U.S. Department of Health and Human Services to reimburse the state for services it believed should be covered by Medicaid.  Massachusetts sought an order requiring payment of those funds and the Court allowed the claim to proceed under APA § 702.  While an order requiring a federal agency to disburse statutorily mandated funds would involve the issuance of a judgment for the payment of money, the Court explained, that fact was not controlling.  The relevant question was whether the relief sought was specific or substitute in nature.

> [E]ven if the District Court's orders are construed in part as orders for the payment of money by the Federal Government to the State, such payments are not "money damages" and the orders are not excepted from § 702's grant of power by § 704. That is, since the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity.

*Bowen*, 487 U.S. at 910 (cleaned up).

Eleven years later the Court reaffirmed the *Bowen* framework and held that access to suit in a district court under APA § 702 does not depend on the traditional distinction between equitable relief and an action

18

at law but on the statutory definition of "monetary damages" and the distinction between specific and substitute relief. In *Department of the Army v. Blue Fox*, 525 U.S. 255 (1999), the Court found APA § 702 unavailable to a claimant who sought to impose an equitable lien on funds held by the U.S. Army, relief the claimant requested as security for the payment of consequential damages in a dispute over unpaid work on a contract. Despite the equitable provenance of the lien, the Court found the claim foreclosed under the APA. Encumbering funds for the purpose of seeking a damages award under a contract qualified as a request for "monetary damages" despite the equitable clothes in which it was dressed because the sole purpose of the lien was to serve as a mechanism for securing consequential damages for the alleged breach. *Id*. at 262. The Court reiterated that APA § 702 depends on the distinction between "specific relief and substitute relief, not between equitable and nonequitable categories of remedies" and made clear that, where the two diverge, the specific/substitute principle governs. *Id*.

The panel majority did not engage with *Bowen* or *Blue Fox* at all, instead basing its holding on its improper recharacterization of Plaintiffs' property claims as a request for the "'typical contract remedy' [of] specific

performance." Op. 16 (citations omitted). This was clear error. Lower federal courts have long recognized *Bowen* and *Blue Fox* as controlling authorities and have used their distinction between specific and substitute relief as the touchstone for determining whether a claim may proceed in a federal district court under APA § 702. This Court has identified that distinction as the "pivotal analysis" in the availability of relief under the APA, *America's Community Bankers v. F.D.I.C.*, 200 F.3d 822, 829 (D.C. Cir. 2000), and federal courts have applied that analysis with care.

In *Modoc Lassen Indian Housing Auth. v. U.S. Dep't of Housing and Urban Dev.*, 881 F.3d 1181, 1197–1199 (10th Cir. 2017), for example, the Tenth Circuit held that a grant recipient could assert an APA § 702 claim against a federal agency for improperly withheld funds but only for an order directing payment from "funds from the relevant yearly appropriations" and not "from all available sources." Only the former was properly characterized as "specific relief" whereas the latter would be "substitute relief" that qualified as "monetary damages." *Id. Compare Veluchamy v. F.D.I.C.*, 706 F.3d 810, 812 (7th Cir. 2013) (holding plaintiffs' claim for compensation from FDIC-Corporate for its allegedly improper failure to

20

approve a note redemption is a "request for substitute monetary relief" and hence a claim for "money damages, which the APA does not author-ize"); *Harger v. Dep't of Labor*, 569 F.3d 898, 904–906 (9th Cir. 2009) (ap-plying *Blue Fox* to hold that equitable liens generally function as a sub-stitute for monetary damages and are unavailable under § 702); *see also Zapara v. C.I.R.*, 652 F.3d 1042, 1047–1048 (9th Cir. 2011) (construing tax code provision to follow APA § 702 and holding reduction of taxpayer's outstanding liabilities constitutes "specific relief" not the substitute relief of "damages").

These principles apply with even greater force in this property dis-pute. Plaintiffs do not seek an order for the payment of money at all. They seek an order to prevent the Government from seizing funds they already own and possess. While the order concerns the final disposition of disputed grant funds, a judgment for Plaintiffs will not involve the payment of any money from the U.S. Treasury and no part of the relief could be characterized as compensation substituting for other harm. Plaintiffs seek specific relief to protect their existing property rights. As this Court has correctly held, those facts are the "pivotal analysis" when

21

determining the jurisdiction of a federal district court under the APA.

*America's Community Bankers*, 200 F.3d at 829.

## III. THE TUCKER ACT ONLY AUTHORIZES JURISDICTION OVER CLAIMS AGAINST THE UNITED STATES FOR MONEY DAMAGES AND WOULD PROHIBIT PLAINTIFFS FROM ASSERTING THEIR REQUEST FOR SPECIFIC RELIEF IN THE COURT OF FEDERAL CLAIMS.

The Supreme Court has used this same approach to "monetary damages" when defining the scope of the Tucker Act, which operates in counterpoint with the APA. What the APA excludes from its waiver of sovereign immunity in the federal district courts the Tucker Act authorizes in the Court of Federal Claims, and vice versa.

In *United States v. Mitchell*, 463 U.S. 206 (1983), which first held that the Tucker Act's grant of subject-matter jurisdiction to the Court of Federal Claims includes a waiver of sovereign immunity for claims within the scope of that jurisdiction, the Supreme Court explained that a claim "must be one for money damages against the United States" in order to proceed in the CFC. *Id.* at 216–217. *See also id.* at 218 (Tucker Act reaches claims "mandating compensation by the Federal Government for the damages sustained"). *Mitchell* drew on a robust line of precedent when it used "money damages" as the defining criterion for Tucker Act jurisdiction. *See, e.g.*, *United States v. Testan*, 424 U.S. 392, 398–402

22

(1976) (reaffirming that the Tucker Act only reaches claims for "money damages" against the United States); *United States v. King*, 395 U.S. 1, 2–3 (1969) (Tucker Act only reaches claims for "actual, presently due money damages from the United States").

The Federal Circuit has explained that the term "money damages" in these precedents defines not only the affirmative scope of Tucker Act jurisdiction but also a principle of strict limitation.  In *Lummi Tribe of the Lummi Reservation, Washington v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), that Court was presented with a dispute over funds appropriated by statute that the U.S. Department of Housing and Urban Development disbursed through block grants to Indian tribes for the construction or acquisition of affordable housing.  At a certain point the agency concluded it had erroneously disbursed grants that were too large to the Lummi Tribe and recouped those overpayments through reductions in the grants it issued the Tribe in subsequent years.  The Lummi Tribe sued in the Court of Federal Claims to challenge those reductions.

The Federal Circuit concluded that the Tucker Act did not confer jurisdiction over the Lummi Tribe's claims in the CFC.  Even though the Tribe was seeking the payment of a money judgment, its claims were not

23

for "money damages" and thus fell outside the CFC's jurisdictional authority. Drawing on the passages quoted above from the Supreme Court's rulings in *Mitchell* and *Testan*, the Federal Circuit explained that "in order to come within the jurisdictional reach and the waiver of sovereign immunity in the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages" and in "the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* at 1317. This requirement is not satisfied in a suit over improperly withheld funds in a federal block-grant program because the disputed funds do not constitute "damages" to which a claimant has a right to unrestricted ownership and use. Rather, federal block-grant money is regulated in its permissible uses and conditional in its ownership, subject to reduction or claw-back if recipients violate the terms of the program. Those forms of encumbrance take the funds wholly outside the definition of "money damages" as the Supreme Court used that term in *Mitchell* and *Testan* and hence outside the scope of the Tucker Act.

> [T]he Tribes are not entitled to an actual payment of money damages, in the strictest terms; their only alleged harm is having been allocated too little in grant funding. Thus, at best, the Tribes seek a nominally greater strings-attached disbursement. But any monies so disbursed could still be

later reduced or clawed back.  And any property acquired with said monies would be "held in trust" by the Tribes, "as trustee for the beneficiaries" of [the statutory appropriations program]. . . .  To label the disbursement of funds so thoroughly scrutinized and cabined as a remedy for "damages" would strain the meaning of the term to its breaking point. . . .  Here, the underlying claim is not for presently due money damages.  It is for larger strings-attached [statutory] grants—including subsequent supervision and adjustment—and, hence, for equitable relief.  Indeed, *any* such claim for relief under [the statutory grant program] would necessarily be styled in the same fashion; the statute does not authorize a free and clear transfer of money.

*Lummi*, 870 F.3d at 1318–19 (citations omitted).

The Federal Circuit makes the connection to the APA explicit in *Lummi*, explaining that a "district court was not divested of the authority to conduct APA review" of an agency's improper withholding of block-grant funds "because the remedy provided by a Tucker Act suit in the [Court of Federal Claims would] not serve as the 'other adequate remedy in a court'" under APA § 704.  *Lummi*, 870 F.3d at 1317–1318 (citing *Bowen*, 487 U.S. 879, and quoting *Nat'l Ctr. for Manuf. Scis. v. United States*, 114 F.3d 196, 201–202 (Fed. Cir. 1997)) (cleaned up)).

*Lummi*'s jurisdictional analysis directly followed the Supreme Court in *Bowen*, where the Court made clear that the APA's distinction

25

between specific and substitute relief in a case involving disputed funds held by the U.S. Government must be read *in pari materia* with the text of the Tucker Act and the jurisdictional limits it imposes on the Court of Federal Claims. *Bowen*, 487 U.S. at 901–902; 5 U.S.C. § 704 (measuring availability of judicial review under the APA against the question whether "there is no other adequate remedy in a court" absent that review). *Bowen* detailed the insufficiency of the remedy that would be available to Medicaid recipients in the CFC as a key part of its holding that plaintiffs seeking specific performance of a U.S. agency's statutory duties to disburse funds could proceed under APA § 702. *Bowen*, 487 U.S. at 904–910.

This well-established relationship between the scope of the APA and the constraints of the Tucker Act has particular salience in the present case. The EPA Administrator has "publicly expressed his desire to take control of the funds disbursed under the" Inflation Reduction Act, "publicly announced EPA's intention to do so" and promised EPA was "not going to rest until it recovered the grant funds." Dist. Ct. Opinion at 8 (cleaned up). Plaintiffs seek an order preventing the Government from following through on its avowed plan to seize property out of their

accounts.  Such a claim could not be heard in the CFC because it does not seek to enforce any "money mandating" right to an unencumbered award and hence is not a claim for "money damages" under the Tucker Act. *Mitchell*, 463 U.S. at 216–217; *Testan*, 424 U.S. at 398–402; *Lummi*, 870 F.3d at 1318–1319.  This is a textbook instance of "agency action for which there is no other adequate remedy in a court" under APA § 704.  A federal district court is the only appropriate forum for Plaintiffs' claims.

## IV.  THE SUPREME COURT'S RECENT SHADOW-DOCKET RULINGS DO NOT DIMINISH THE FORCE OF ITS PRECEDENTS IN THIS CASE.

These long-established principles apply to this case with undiminished force following the Supreme Court's recent statements about the APA on its shadow docket.  In a pair of rulings involving the administration's refusal to disburse not-yet-paid federal grant money, the Court has issued stays of lower court rulings and questioned the basis for subject-matter jurisdiction under the APA in those disputes.  *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ___, 145 S. Ct. 2658, 2659 (2025) (stay pending appeal of district court order "to pay money pursuant to [research-related] grants"); *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam) (stay pending appeal of district court order requiring payment of past-due grant moneys and continued disbursement

27

going forward).  These rulings create tension with the Court's precedents on APA jurisdiction and lower federal courts confronted with claims identical in substance and posture to the ones at issue in those cases have felt constrained to follow the Court's instructions from its shadow docket rather than its fully reasoned opinions.  *See, e.g.*, *Sustainability Inst. v. Trump*, ___ F.4th ___, 2026 WL 157120, at *4 (Jan. 21, 2026, 4th Cir.) (because of shadow-docket rulings "we conclude the district court lacked jurisdiction to order [the requested] relief, which was designed to enforce obligations to pay money pursuant to Plaintiffs' grants").

This Court does not face the same dilemma for the simple reason that this is not a prospective disbursement case.  Whatever tension the Court's shadow-docket instructions have caused in the doctrine of APA jurisdiction, doctrinal tension is not a sufficient basis for disregarding squarely applicable precedent.  The Supreme Court has given lower federal courts clear instructions on how to proceed when the Court signals that it may overrule or limit controlling caselaw but has not yet addressed the issue squarely: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly

28

controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express*, 490 U.S. 477, 484 (1989). Lower federal courts are neither required nor permitted to speculate about how the Supreme Court might resolve the tensions it creates. Where existing precedent mandates a clear result that precedent controls until the Court itself says otherwise.

The present dispute involves no request that the Government "pay money pursuant to [a] grant," *NIH*, 145 S. Ct. at 2659, and no order "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue," *Dep't of Educ.*, 604 U.S. at 650. Those are the factors the Supreme Court identified to explain its shadow-docket rulings and those are the factors other federal courts have found controlling in substantively identical disputes. *See Sustainability Inst.*, 2026 WL 157120, at *4 (concluding that shadow-docket rulings control where plaintiffs seek the exact same relief at issue in those cases: an order requiring the government to "pay money pursuant to plaintiffs' grants"). Those factors are absent here.

Plaintiffs assert qualitatively different claims seeking qualitatively different relief: an order prohibiting the Government from unlawfully

29

seizing property already in their possession. *Land v. Dollar* holds that the Government cannot recharacterize that possessory action as a contract claim and hence a federal district court is the only appropriate forum for this dispute. *Bowen* and *Blue Fox* confirm the jurisdiction of federal district courts over the "specific" relief Plaintiffs seek in attempting to enforce their property rights. *Mitchell* and *Testan* confirm that Plaintiffs' request to vindicate ownership of the restricted, single-purpose funds in their bank accounts does not constitute a claim for "money damages" under the Tucker Act and could not be heard in the Court of Federal Claims. The Supreme Court has issued decades of precedents on these matters and those precedents remain controlling in this property dispute until and unless the Court says otherwise.

## CONCLUSION

Congress structured the Greenhouse Gas Reduction Fund differently from other grant programs. It required the full amount of the authorized funds to be disbursed to recipients and placed in their names in monitored accounts so recipients could book ownership of the full amount of those funds and leverage the government's investment with capital partners in the commercial market. That legislative decision has

30

jurisdictional consequences.  The Government has no further funding obligations to satisfy so no part of this dispute can be characterized as a demand to "pay out past-due grant obligations and to continue paying obligations as they accrue." *Dep't of Educ.*, 604 U.S. at 650.  The current administration may disagree with that legislative decision but Executive disagreement does not dictate the subject-matter jurisdiction of the federal courts.

This Court should affirm the jurisdiction of the district court to adjudicate Plaintiffs' claims.

Respectfully submitted,

*/s/ Paul DeCamp*

ADRIANA S. KOSOVYCH
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York  10022
Tel:  212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com
MStringer@ebglaw.com

PAUL DECAMP
  *Counsel of Record*
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

February 9, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 6,399 words, excluding the exempted portions under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).  This brief complies with the typeface and type style requirements of the Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Paul DeCamp*
Paul DeCamp

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing document was electronically filed in this matter with the Clerk of Court, using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Paul DeCamp*
Paul DeCamp

February 9, 2026

# ADDENDUM

5 U.S.C. § 704 ........................................................................ A1

**5 U.S.C. § 704**

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.