**ORAL ARGUMENT SET FOR FEBRUARY 24, 2026**

No. 25-5122

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

CLIMATE UNITED FUND, *et al.*,

*Plaintiffs-Appellees*,

v.

CITIBANK, N.A., *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**BRIEF OF *AMICUS CURIAE* CONTRACT LAW SCHOLAR GREGORY
KLASS IN SUPPORT OF PLAINTIFFS-APPELLEES**

_____

Justin B. Cox
Law Office of Justin B. Cox
PO Box 1106
Hood River, OR 97031
(541) 716-1818
Justin@jcoxconsulting.org

*Counsel for Amicus Curiae*

**ORAL ARGUMENT SET FOR FEBRUARY 24, 2026**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY OF ABBREVIATIONS ........................................................1

STATEMENT REGARDING CONSENT TO FILE AND SEPARATE
BRIEFING ...........................................................................................1

INTEREST OF AMICUS CURIAE AND RULE 29(a)(4)(E) STATEMENT.........2

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT .........................................................................................7

    I.    A Holding Requiring EPA to Reinstate Grants Would Not Be a
    Contractual Remedy ..................................................................8

    II.   The Differences Between Contract Remedies and Remedies for Statutory
    and Constitutional Violations Reflect Their Fundamentally Different
    Purposes ..................................................................................14

    III.   Cases on which the Government Relies Do Not Support Its Position .....17

CONCLUSION .....................................................................................24

CERTIFICATE OF COMPLIANCE ........................................................26

CERTIFICATE OF SERVICE ...............................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130 (2d Cir. 2005)........................11

*Baxley v. Jackson*, 634 S.E.2d 905 (N.C. 2006) ........................................13

*Climate United Fund v. Citibank, N.A.*, 154 F.4th 809 (D.C. Cir. 2025)
   *vacated and reh'g granted*, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025)........5, 6

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022) ...............................................................7

*Est. of Caruso v. Caruso*, 322 A.3d 885 (Pa. 2024) ...............................................11

*Evans v. Neumann*, 278 F. 1013 (D.C. Cir. 1922) ....................................................11

*Freund v. Washington Square Press, Inc.*,
   34 N.Y.2d 379 (1974) ...........................................................................10

*Indep. Mgmt. Co. v. Anderson & Summers, LLC*,
   874 A.2d 862 (D.C. 2005) .....................................................................11

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)............ 17, 21-24

*Kearsarge Computer, Inc. v. Acme Staple Co., Inc.*,
   118 N.H. 705 (1976) .............................................................................9

*Maryland Indoor Play, LLC v. Snowden Inv. LLC*,
   339 A.3d 838 (Md. 2025), *reconsideration denied* (Aug. 19, 2025)....................11

*Massie v. United States*, 226 F.3d 1318 (Fed. Cir. 2000)............................ 11, 15-16

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)...............5-8, 17-19, 22-25

*N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
   799 F.2d 265 (7th Cir. 1986) ...............................................................13

*New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025) ..................21

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ........................................................................ 17-24

*TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007) ..............11

*United States Conf. of Cath. Bishops v. U.S. Dep't of State*,
   770 F. Supp. 3d 155 (D.D.C. 2025), *dismissed sub nom.*
   *United States Conf. of Cath. Bishops v. United States Dep't of State*,
   No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) .................................21

*United States v. King*, 395 U.S. 1 (1969)...............................................................11

*Van Wagner Advertising Corp. v. S & M Enterprises*,
   67 N.Y.2d 186 (1986) .......................................................................................12

**Statutes and Rules**

Administrative Procedure Act (APA)................................................................*passim*

Federal Acquisition Regulation, 48 C.F.R. § 52.249-2 (1984)...............................21

Tucker Act, 28 U.S.C. §§ 1346, 1491................................................................*passim*

5 U.S.C. § 702 ..........................................................................................................7

28 U.S.C. § 1331 .......................................................................................................7

42 U.S.C. § 7434 .......................................................................................................8

Debt Collection Act, 31 U.S.C. §§ 3701 *et seq* .....................................................18

U.C.C. § 2-709 .........................................................................................................19

D.C. Cir. Rule 29 .......................................................................................................1

## Briefs

Defendants' Cross-Motion for Summary Judgment,
*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*,
No. 25-298, 2025 WL 1808068 (D.D.C. May 9, 2025) .......................................21

Brief for the United States, *Climate United Fund v. Citibank, N.A.*,
Nos. 25-5122, 25-5123 (D.C. Cir. Jan., 2026) (en banc).......................................6

Corrected Memorandum of Law in Support of Defendants' Motion to Dismiss,
*Green & Healthy Homes Initiative, Inc. v. Env't Prot. Agency*,
788 F. Supp. 3d 676 (D. Md. 2025) ........................................................................20

Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction,
*Harris Cnty., Texas v. Kennedy*, 786 F. Supp. 3d 194 (D.D.C. 2025) ...........20, 21

Defendants' Combined Opposition to Plaintiffs' Emergency Motions,
*Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*,
No. CV 25-30041-RGS, 2025 WL 1119868 (D. Mass. Mar. 21, 2025) ..............21

Motion to Dismiss*, Sustainability Inst. v. Trump*,
No. 2:25-cv-02152-RMG, 2025 WL 1787997 (D.S.C. May 27, 2025) ..............20

## Other Authorities

Ian Ayres, Gregory Klass & Rebecca Stone,
STUDIES IN CONTRACT LAW (10th ed. 2024).........................................................2

Bruce W. Frier & James J. White,
THE MODERN LAW OF CONTRACTS (4th ed. 2019)................................................10

Daniel Markovits & Alan Schwartz,
*The Myth of Efficient Breach: New Defenses of the Expectation Interest*,
97 VA. L. REV. 1939 (2011) ..................................................................................15

E. Allan Farnsworth, *Farnsworth on Contracts* (3d ed. 2004).........................12, 13

Gregory Klass, *To Perform or Pay Damages*, 98 VA. L. REV. 143 (2012)............15

J. Whaley & David Horton,
   CASES, PROBLEMS, AND MATERIALS ON CONTRACTS (9th ed. 2023) ...................10

John P. Dawson et al.,
   CONTRACTS: CASES AND COMMENTS (11th ed. 2019) ..........................................10

Oliver Wendell Holmes, Jr., *The Path of the Law,* 10 HARV. L. REV. 457
   (1897), *reprinted in* 110 HARV. L. REV. 991 (1996-1997) ..................................15

Restatement (Second) of Contracts § 344 (1981) .......................................................6

Restatement (Second) of Contracts § 347 (1981) .................................................9, 19

Restatement (Second) of Contracts § 350 (1981) .......................................................9

Restatement (Second) of Contracts § 358 (1981) .....................................................11

Restatement (Second) of Contracts § 359 (1981) ..........................................9, 11, 12

Restatement (Second) of Contracts § 364 (1981) ...............................................12, 20

Restatement (Second) of Contracts § 365 (1981) .....................................................20

Restatement (Second) of Contracts Ch. 16 Introductory Note (1981) ...................15

Robert S. Summers et al.,
   CONTRACT AND RELATED OBLIGATION:
   THEORY, DOCTRINE & PRACTICE (8th ed. 2021)..................................................10

Robin West, NORMATIVE JURISPRUDENCE: AN INTRODUCTION (2011) ....................2

Stephen A. Smith, *Duties, Liabilities, and Damages*,
   125 HARV. L. REV. 1727 (2012) .........................................................................14

**ORAL ARGUMENT SET FOR FEBRUARY 24, 2026**

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| EPA | Environmental Protection Agency |
| APA | Administrative Procedure Act |

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amicus curiae* Professor Gregory Klass represents that Plaintiffs-Appellees and the U.S. Government Defendants consent to the filing of this brief, and Defendant Citibank takes no position on the filing.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amicus* certifies that a separate brief is necessary to present *amicus*'s views in full for the benefit of the Court as it considers how to resolve the important questions of jurisdiction and contract law in this case. This brief presents a distinct basis for the Court to conclude that the District Court had jurisdiction to adjudicate Plaintiffs' claims and enter an injunction. As a contract law scholar, *amicus* provides an otherwise unrepresented perspective on Plaintiffs' claims and the reasons they do not sound in contract. That analysis will assist the Court in this case and in other cases seeking review of government action in a federal district court.

## INTEREST OF *AMICUS CURIAE* AND RULE 29(a)(4)(E) STATEMENT

*Amicus* is Professor Gregory Klass, Frederick J. Haas Chair in Law and Philosophy, Georgetown University Law Center.[1] Professor Klass is a leading contract law scholar who has published extensively on contract doctrine and theory and is an author on a leading contracts casebook, IAN AYRES, GREGORY KLASS & REBECCA STONE, STUDIES IN CONTRACT LAW (10th ed. 2024). As a legal scholar, Professor Klass has an interest in the correct understanding and application of the law of contract. *See generally* ROBIN WEST, NORMATIVE JURISPRUDENCE: AN INTRODUCTION (2011) (arguing that a distinctive feature of legal scholarship is that it seeks not only to understand law, but also to make it better).

No one other than *amicus* and *amicus*'s counsel authored the brief in whole or in part.[2] No money has been contributed to *amicus* or counsel by any party or other person to fund preparing or submitting the brief.

---

[1] *Amicus* Prof. Klass submits this brief as an individual. Institutional affiliation is noted for informational purposes only and does not indicate that institution's endorsement of the views expressed in this brief.

[2] This brief draws from a brief *amicus* co-authored in another grant cancellation case, Brief of *Amici Curiae* Contract Law Scholars Mark Gergen, Gregory Klass, And Daniel Markovits In Support Of Plaintiffs-Appellants And Reversal, in *Vera Institute of Justice v. Department of Justice*, No. 25-5248 (D.C. Cir. Aug. 18, 2025). Professors Gergen and Markovits, though not *amici* on this brief, have consented to the use of their work product in it.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this appeal, as in a raft of other cases involving constitutional, statutory, and regulatory challenges to the rapid mass cancellation of federal grants or grant programs, Government Defendants ("the Government") deploy jurisdictional arguments in an effort to limit the judiciary's ability to review the legality of executive actions. Specifically, the Government attempts to confine jurisdiction over Plaintiffs' claims to the Court of Federal Claims, a court that does not have the power to grant the appropriate remedy for Plaintiffs' claims should Plaintiffs prevail. The Government's assertion that Plaintiffs' claims are contractual in nature is incorrect. Plaintiffs seek declaratory and injunctive relief to establish and enforce their statutory and constitutional rights. Jurisdiction for such claims lies in federal district court.

That Plaintiffs' claims are not breach of contract claims should be obvious. A breach of contract claim perforce turns on the correct interpretation and construction of the parties' contractual agreement. None of Plaintiffs' claims against the EPA require examining the terms the parties agreed to or the substance of the grant agreements. The resolution of their claims depends solely on whether the EPA's actions comported with the APA, the U.S. Constitution, and other general laws. Moreover, as this brief discusses, the relief Plaintiffs seek and that is appropriate to their claims is entirely different from what would be available if this were a breach

of contract action. Whereas contract remedies provide substitutes for performance, typically in the form of money damages, Plaintiffs seek orders requiring the EPA to comply with the APA and Constitution.

The Government's argument to the contrary rests on a fundamental confusion. It treats facts that provide Plaintiffs standing to bring their claims as if they determined the substance of Plaintiffs' claims. It might well be that but for the EPA's attempts to halt the delivery of disbursed grant funds and its subsequent attempt to cancel the grants, Plaintiffs would have suffered no legally cognizable harm. The legal wrongs for which Plaintiffs seek remedies, however, are not breaches of contract. They are the EPA's failure to comply with the APA, the U.S. Constitution, and other generally applicable laws. And although it is true that, should Plaintiffs succeed in their claims, the appropriate relief would include reinstatement of the grants, that relief is not contractual in nature. If this were a contract case, the appropriate remedy would be money damages. Nor would an order requiring reinstatement of the grants be similar to, much less the equivalent of, a grant of specific performance.

The somewhat unusual facts of this case further distinguish Plaintiffs' claims against the EPA from contract claims. Unlike in most other grant cancellation cases, the grant funds at issue have already been disbursed and are sitting in Citibank accounts. Plaintiffs are, therefore, asking for neither damages nor that the federal

government perform its contractual obligations. The government has already performed, by transferring the funds to Citibank. As Judge Pillard observed, Plaintiffs ask the District Court to enjoin the government from using its enormous influence over Citibank as regulator and enforcer to prevent Plaintiffs from accessing their funds. "Plaintiffs do not seek money from the Treasury; they seek only to get the government's hands off their money." *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 858-59 (D.C. Cir. 2025) (Pillard, J., dissenting). Nor does the fact that Plaintiffs' title to that money stems from the Account Control Agreement entail that their claims against the EPA are somehow contractual in nature.[3] "[T]he mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on trespass or conversion into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Plaintiffs seek to prevent the federal government from interfering with their property. That claim does not sound in contract.

This basic fact, that Plaintiffs are simply asking that the government stop preventing them from accessing their own funds, suffices to resolve the jurisdictional

---

[3] Plaintiffs do, of course, have contractual claims against Citibank for violation of the Account Control Agreement. No one suggests that those claims bring this case within the exclusive jurisdiction of the Court of Federal Claims.

issue. *Amicus* submits this brief to address the Government's separate argument that "the relief [Plaintiffs] seek—reversal of the termination decisions and the resumption of payments under the grant agreements—amounts to the classic contractual remedy of specific performance." Brief for the United States at 24, *Climate United Fund v. Citibank, N.A.*, Nos. 25-5122, 25-5123 (D.C. Cir. Jan., 2026) (en banc); *see also Climate United*, 154 F.4th at 823 ("[T]he grantees seek to set aside their grant terminations, which means they seek specific performance."). That argument, which the United States has made in numerous other grant cancellation cases, reflects a basic misunderstanding of contract remedies. In the common law, the "classic contractual remedy" is not specific performance. It is money damages. Moreover, neither damages nor specific performance seek to undo the defendant's wrong or restore an earlier legal state of affairs, as reinstatement of the grants would. The goal of contract remedies is only to protect "the interest of a promisee . . . [in] being put in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 344 (1981) (emphasis added). Reinstatement of the grants, though it would result in the payment of money to the Plaintiffs, is the equivalent of neither a damage award nor specific performance.

This appeal provides an opportunity for this Court to reassert the basic logic of *Megapulse* and to explain how to distinguish artful pleadings of what are at bottom breach of contract claims, which belong in the Court of Federal Claims, from

claims for statutory or constitutional violations that happen to involve grants that might be characterized as contracts. The Court should reject the Panel's finding that the issue is "essentially contractual," and uphold the District Court's preliminary injunction, keeping this matter where it rightfully belongs, in federal district court.

## ARGUMENT

The United States enjoys sovereign immunity except where it has waived that immunity. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). The APA waives immunity for certain suits seeking relief other than money damages and authorizes district courts to hear those suits, 5 U.S.C. § 702; 28 U.S.C. § 1331, except where another statute grants consent to suit and forbids the relief available under the APA, 5 U.S.C. § 702. Courts have interpreted the Tucker Act, 28 U.S.C. §§ 1346, 1491, as giving the Court of Federal Claims exclusive jurisdiction over suits against the United States for breach of contract claims seeking more than $10,000 in damages, triggering the APA exception to district court jurisdiction. *Crowley*, 38 F.4th at 1106. The jurisdictional question in this case, therefore, turns on whether Plaintiffs' claims are contract claims for purposes of the Tucker Act.

This Court's decision in *Megapulse v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) established the governing test for whether a claim is a contract claim for purposes of the Tucker Act: "The classification of a particular action as one which is or is not at

its essence a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." 672 F.2d at 968. This brief addresses only the remedy side of the *Megapulse* test and, as noted above, the Government's assertion that an injunction requiring that the grants be reinstated would be the equivalent of a grant of specific performance.[4]

## I.    A Holding Requiring EPA to Reinstate Grants Would Not Be a Contractual Remedy.

If the grants at issue in this case are contracts, they are similar to contracts for services. The federal government has agreed to provide money to "green banks," which have agreed to use that money to fund "organizations that provide capital, leverage private capital, and provide other forms of financial assistance to the rapid deployment of low- and zero-emission products, technologies, and services." 42 U.S.C. § 7434(c)(1). If this were a contract case, Plaintiffs' claim would be that the EPA either repudiated or failed to perform its obligation to provide promised funds. In the normal case, the contractual remedy for a contract's repudiation or nonperformance is money damages as measured by the plaintiff's expectation interest. In the extraordinary case of an award of specific performance, the remedy

---

[4] *Amicus* has with co-*amici* explained why claims such as Plaintiffs' are noncontractual under the first part of the *Megapulse* test in a brief in a separate case in this circuit. Brief of *Amici Curiae* Contract Law Scholars Mark Gergen, Gregory Klass, And Daniel Markovits In Support Of Plaintiffs-Appellants And Reversal, in *Vera Institute of Justice v. Department of Justice*, No. 25-5248 (D.C. Cir. Aug. 18, 2025) (Point II).

would not be reinstatement of the contract, but an order to perform a specific act. Reinstatement of the original contract is not a remedy that is available for breach of contract.

The classic and most common remedy for breach is an award of money damages, typically in the amount of the plaintiff's expectation interest. Restatement (Second) of Contracts § 359(1) ("Specific performance or an injunction will not be ordered if damages would be adequate to protect the expectation interest of the injured party."). Damages are not recoverable for losses the nonbreaching party could have reasonably avoided. Restatement (Second) of Contracts § 350 ("Avoidability as a Limitation on Damages"). Accordingly, when a party paying for services wrongfully terminates a contract before the service provider fully performs, the provider is entitled to recover only damages equal to the contract price less costs that were or that reasonably could have been avoided after the breach. Restatement (Second) of Contracts § 347 ills. 5 and 6 (1981) (describing the deduction of costs avoided). A service provider that has not yet fully performed may recover the contract price only if it could have performed without incurring any additional costs. *See, e.g.*, *Kearsarge Computer, Inc. v. Acme Staple Co., Inc.*, 118 N.H. 705 (1976) (awarding contract price as damages because data processor would have incurred no additional costs in performing).

These limitations stem from the fundamental purpose of contract damages, which is to vindicate the nonbreaching party's expected net gain from the contract's joint performance. A service provider's net gain from the contract is different from—and typically much less than—either the price they charge for those services or the total value of the completed performance, something basic texts have long emphasized when introducing expectation damages. *See, e.g.*, *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379 (1974), *anthologized in, for example*, JOHN P. DAWSON ET AL., CONTRACTS: CASES AND COMMENTS 125 (11th ed. 2019); BRUCE W. FRIER & JAMES J. WHITE, THE MODERN LAW OF CONTRACTS 554 (4th ed. 2019); ROBERT S. SUMMERS ET AL., CONTRACT AND RELATED OBLIGATION: THEORY, DOCTRINE & PRACTICE 270 (8th ed. 2021); J. WHALEY & DAVID HORTON, CASES, PROBLEMS, AND MATERIALS ON CONTRACTS 246 (9th ed. 2023). In short, when a nonbreaching service provider has not yet completed (or even begun) performance, they are unlikely to recover the price. Consequently, although reinstatement of the grants would result in funds going to the Plaintiffs, the amount would be much greater than what they would recover in damages if this were a breach of contract action.

A nonbreaching service provider would also be unlikely to receive order for specific performance.[5] Numerous decisions have recognized that specific performance is an "extraordinary" remedy for breach, available only when a money award is inadequate. Restatement (Second) of Contracts § 359(1); *see, e.g.*, *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 135 (2d Cir. 2005); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007); *Evans v. Neumann*, 278 F. 1013, 1014 (D.C. Cir. 1922); *Maryland Indoor Play, LLC v. Snowden Inv. LLC*, 339 A.3d 838, 846 (Md. 2025), *reconsideration denied* (Aug. 19, 2025); *Est. of Caruso v. Caruso*, 322 A.3d 885, 895 (Pa. 2024); *Indep. Mgmt. Co. v. Anderson & Summers*, LLC, 874 A.2d 862, 867 (D.C. 2005). It is true that a court might under certain circumstances order specific performance *to provide* services when the party paying for services wrongfully terminates before the services have been fully performed. *See* Restatement (Second) of Contracts § 358, ill. 1 (1981) (city ordered to perform contract to exclusively purchase water from water company that had completed building water supply system). In practice, however, a court would be unlikely to

---

[5] The Court of Federal Claims is not generally authorized to provide specific performance in actions against the government. *United States v. King*, 395 U.S. 1, 4 (1969) ("[C]ases seeking relief other than money damages from the Court of Claims have never been within its jurisdiction." (internal punctuation removed)); *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("[T]here is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief.") The point is that the remedy Plaintiffs request is not the equivalent of such an order.

issue such an order if the services have not already been substantially performed. This is for two reasons: problems of supervision and the principle that "[a] court will not compel performance if a substantial part of the return performance has not been rendered." E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 12.7, at 182 (3d ed. 2004).

Nor would the test for specific performance be the same as the test for determining whether the law requires that the grants at issue in this case be reinstated. A plaintiff's claim for specific performance does not depend on the reasons for which the defendant breached and certainly not on the wrongfulness of the defendant's conduct; but it does require the plaintiff to show that money damages cannot adequately vindicate its interest in the contract and that an order of specific performance will not impose an inequitable or disproportionate burden on the breaching party. *See* Restatement (Second) of Contracts §§ 359, 364; *Van Wagner Advertising Corp. v. S & M Enterprises*, 67 N.Y.2d 186 (1986). The questions in this case are precisely the opposite. The arbitrary and capricious nature of the government's grant cancellations is an essential part of Plaintiffs' statutory claims, unrelated to the grant agreements; and the grant of such relief does not require Plaintiffs to show either that a court cannot compute their net gains from the grants or that reinstating the grants would not inequitably burden the government.

Finally and crucially, even if an order of specific performance were available, it would be fundamentally different from an order to reinstate the cancelled grants. An order of specific performance is an order that the defendant do or not do a specific act. It is not a general order to perform a contract, E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 12.5, at 170 (3d ed. 2004), much less an order that reinstates a contract that has been breached. Failure to comply with an order of specific performance is, accordingly, not a breach of contract but contempt of court. *See, e.g.*, *Baxley v. Jackson*, 634 S.E.2d 905, 908 (N.C. 2006) (affirming that trial court held plaintiffs in contempt for noncompliance with its order of specific performance, not for breach of the underlying contract). And a plaintiff who wins an order of specific performance in a contract dispute is free to sell its award back to the breaching defendant, terminating their arrangement for a negotiated sum. *N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co*., 799 F.2d 265, 279 (7th Cir. 1986) (Posner, J.) (after an award of specific performance parties might "negotiat[e] a cancellation of the contract and with it a dissolution of the order of specific performance"). If Plaintiffs in this case succeed, they may not negotiate a cash payout that would permit the government to persist in statutory and constitutional violations.

In short, there exists no remedy in contract similar to a requirement that the government reinstate the grants, the appropriate remedy should Plaintiffs prevail on their statutory or constitutional claims.

## II. The Differences Between Contract Remedies and Remedies for Statutory and Constitutional Violations Reflect Their Fundamentally Different Purposes

The differences between the remedies available for breach and the injunctive relief appropriate should Plaintiffs prevail are not mere doctrinal niceties a Realist court should ignore. They reflect fundamental differences between the function and structure of the remedies for breach and the function and structure of declaratory and injunctive relief in cases involving statutory or constitutional violations.

The purpose of contract remedies is not to require performance, but to vindicate the nonbreaching party's contractual rights, most often through an award of damages and occasionally through an order that the defendant perform a specified act. These remedies do not enforce the preexisting right to performance but identify its breach as a wrong and impose a new duty to compensate or otherwise make the nonbreaching party whole. *See* Stephen A. Smith, *Duties, Liabilities, and Damages*, 125 HARV. L. REV. 1727, 1756 (2012) ("By holding the defendant liable for the tangible consequences of his wrongdoing, the law makes clear that these consequences should not have happened. By shifting the cost of the rights infringement from the victim to the wrongdoer, the law holds the wrongdoer

14

responsible for his wrongdoing as wrongdoing."). Contract remedies do not require performance; they provide a substitute for performance when a party has breached its duty to perform.

This substitutionary character of contract remedies explains the Holmesian dictum, "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else." Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 HARV. L. REV. 457 (1897), *reprinted in* 110 HARV. L. REV. 991, 995 (1996-1997). Although contract theorists differ in their understanding of the law's preference for compensatory damage awards,[6] no one doubts its practical effect: the law does not compel performance of a party's primary contractual duty. "The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach." Restatement (Second) of Contracts Ch. 16 Introductory Note (1981).

The Federal Circuit recognized the substitutionary nature of contract remedies in *Massie v. United States*, 226 F.3d 1318 (Fed. Cir. 2000). The case concerned the government's breach of its obligation to ensure the plaintiff's son received a lifetime

---

[6] Compare Daniel Markovits & Alan Schwartz, *The Myth of Efficient Breach: New Defenses of the Expectation Interest*, 97 VA. L. REV. 1939 (2011), *with* Gregory Klass, *To Perform or Pay Damages*, 98 VA. L. REV. 143 (2012).

annuity when the company providing the annuity became bankrupt and the annuity was restructured to reduce the payment. Substitutionary contract damages with respect to future underpayments would be a lump sum payment, measured by the present value of future underpayments or by the price of purchasing another annuity to make up the difference. The Court of Federal Claims, however, had ordered the government to make payments "in accordance with the terms of the original settlement agreement."[7] 226 F.3d at 1321. On appeal, the Federal Circuit held this remedy was outside the Court of Federal Claims' jurisdiction because it was not a remedy available in contract:

> By resurrecting the terms of a contract, which had been materially breached and was no longer in force, allowing it to govern the amount of and the manner by which the monetary award was to be paid, and by compelling Massie to accept performance under those terms, the trial court fashioned a form of specific performance, equitable relief, which it had no authority to order. *Id.*

The contractual remedy was not resurrection of the original contract, but a lump sum that represented the value of performance to plaintiff and served as a substitute for performance.

The purpose of the declaratory and injunctive relief Plaintiffs seek in this case is entirely different from the substitutionary function of contract remedies. The law

---

[7] *Massie* is an unusual case because the plaintiff preferred the contractual damage remedy (a lump sum payment) to an order compelling the government to perform its obligation.

does not give EPA a choice between, on the one hand, following relevant statutes and the Constitution and, on the other, violating those laws and paying damages. The EPA is required to follow the law, full stop. This obvious fact explains why the appropriate remedy for Plaintiffs' claims is a declaration that the EPA's past acts were *ultra vires* and an order that henceforth the EPA comply with relevant statutes and the Constitution. That remedy does not provide a substitute for the EPA's performance of its statutory and constitutional duties but ensures such performance going forward. Such a remedy is not contractual. It is statutory and constitutional.

### III.   Cases on which the Government Relies Do Not Support Its Position.

The two decisions from this court that the Government cites most often in its en banc brief—more often even than *Megapulse*—are *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985), and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985). Each involved a government contractor's attempts to avoid the Court of Federal Claims' exclusive jurisdiction over an action for breach of a procurement contract by reframing its claim as a claim for violations of a contract-related statute or regulation. It is essential that courts prevent government contractors from performing such end-runs around the Tucker Act. Both *Spectrum* and *Ingersoll-Rand*, however, are easily distinguished from this and similar challenges to the executive branch's wholesale cancellation of grant programs. Whereas the plaintiffs in those cases argued that individualized decisions

17

regarding the performance or termination of their contracts violated federal contracting regulations or a statute governing the government's obligations to pay money, Plaintiffs here argue that the executive's wholesale cancellation of grants and interference with grant funds violated generally applicable provisions of the APA, the U.S. Constitution, and other general statutes.

*Spectrum*, the earlier of the two decisions, merits special attention, as *dictum* in it has caused confusion in this case and others. *Spectrum* addressed a situation in which government refused to pay certain invoices, citing alleged problems with the plaintiff's performance and a liquidated damages clause that covered such breaches. 764 F.2d at 892. Rather than suing for breach, the plaintiff argued that the withholding of those payments violated the Debt Collection Act, 31 U.S.C. §§ 3701 *et seq.*, and requested "an order compelling the government to pay money owed in exchange for goods procured." *Id.* at 894. *Spectrum* affirmed the district court's holding that the Court of Federal Claims had exclusive jurisdiction over the plaintiff's claims. With respect to the first part of the *Megapulse* test, the panel emphasized that "the [Debt Collection] Act in no way creates the substantive right to the remedy Spectrum seeks." *Id.* The source of the plaintiff's claim lay entirely in its contract with the government. This suffices to distinguish this case. Although the grants might be what gives Plaintiffs standing, Plaintiffs seek to vindicate rights guaranteed by the APA, the U.S. Constitution and other generally applicable laws.

Those rights exist independently of any contracts Plaintiffs might have with the government. With respect to the second part of the *Megapulse* test, the court correctly observed that "Spectrum's action against the government is equivalent to a seller's action for the price of goods against a private buyer." *Id.* An action for the price is a classic contract remedy. *See, e.g.*, U.C.C. § 2-709 ("Action for the Price"); Restatement (Second) of Contracts § 347 ills. 5-7 (1981) (describing actions for the price). This fact, together with the court's analysis of the source of the right, sufficed to decide the case.

The opinion went on, however, to suggest "Spectrum seeks the classic contractual remedy of specific performance." 764 F.2d at 894. That statement is *obiter dictum*. It was enough that the relief plaintiff sought was equivalent to an action for the price, which is unquestionably a contractual remedy. Unfortunately, the *dictum* also misstates the law. First, an action for the price is not an action for specific performance. Both the Restatement and the Uniform Commercial Code correctly describe payment of money owed as an award of damages. U.C.C. § 2-709(3) (a plaintiff succeeding in an action for the price is "awarded damages"); Restatement (Second) of Contracts § 347 ills. 5-7 (1981) (discussing actions for the price under the heading of "Measure of Damages in General"). Nor in an action for the price is the court required to take account of any of the equitable considerations courts must consider before awarding specific performance. In an action for the

price, the court need not ask whether the contract was induced by unfair practices, whether the award would cause unreasonable hardship or loss to the party in breach, whether the exchange was on fair terms, what the award's effects on third parties might be, or whether the award might be contrary to public policy, all of which are relevant when a plaintiff requests specific performance. Restatement (Second) of Contracts §§ 364 & 365. Second, as Points I and II of this brief have explained, the "classic contractual remedy" is not specific performance but damages. The *Spectrum dictum* regarding specific performance was, *amicus* submits, an unforced error.

Unfortunately, that *dictum* has generated confusion in subsequent Tucker Act cases. The Department of Justice regularly quotes the *Spectrum dictum*, and later decisions repeating or paraphrasing it, when it argues that courts should dismiss challenges to grant termination decisions for lack of subject matter jurisdiction.[8] And some courts, including the panel majority in this case, have relied on the *Spectrum*

---

[8] *See, e.g.*, Motion to Dismiss at *7, *Sustainability Inst. v. Trump*, No. 2:25-cv-02152-RMG, 2025 WL 1787997 (D.S.C. May 27, 2025); Corrected Memorandum of Law in Support of Defendants' Motion to Dismiss at 7, *Green & Healthy Homes Initiative, Inc. v. Env't Prot. Agency*, 788 F. Supp. 3d 676 (D. Md. 2025); Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction at 16, *Harris Cnty., Texas v. Kennedy*, 786 F. Supp. 3d 194, 210 (D.D.C. 2025); Defendants' Cross-Motion for Summary Judgment at *10, *12, *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, No. 25-298, 2025 WL 1808068 (D.D.C. May 9, 2025); Defendants' Combined Opposition to Plaintiffs' Emergency Motions at *5, *Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*, No. CV 25-30041-RGS, 2025 WL 1119868 (D. Mass. Mar. 21, 2025).

*dictum* for the same. *Climate United*, 154 F.4th at 823.[9] As should be obvious to anyone who has read the case, such appeals to the *Spectrum dictum* get things exactly backward. Whereas the *Spectrum dictum* suggests (erroneously) that an action for the price is the equivalent of specific performance, the Government has been using it in arguments that reinstatement of a grant is the equivalent of an order specific performance (not what *Spectrum* held and wrong as a matter of law). The Government has also been using *Spectrum* to argue that specific performance is "the classic contractual remedy," which is incorrect *dictum*. Whereas payment of the price for delivered goods (which is what the plaintiff sought in *Spectrum*) is a classic contract remedy, specific performance is an exceptional one. This appeal is an opportunity to set the record straight.

The second decision the Government leans into is *Ingersoll-Rand*. *Ingersoll-Rand* addressed a claim that the federal government's cancellation of a supply contract pursuant to a termination-for-convenience provision violated section 52.249-2(a) of the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 52.249-2(a) (1984), which the parties had incorporated in their contract. *Id.* at 75. As the court

---

[9] *See also, e.g., New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562, 590 (S.D.N.Y. 2025)(quoting *Spectrum* and holding that the Court of Federal Claims had exclusive jurisdiction over claims regarding grant cancellations); *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), dismissed sub nom. *United States Conf. of Cath. Bishops v. United States Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) (same).

observed, resolution of the plaintiff's claim called for detailed knowledge of the government contracting process, something "within the unique expertise of the Court of Claims." *Id.* at 78. This case is very different. The Court of Federal Claims has no special expertise in the statutory and constitutional claims Plaintiffs raise. The *Ingersoll-Rand* decision further emphasized when addressing the first part of the *Megapulse* test that "[t]he question presented by the complaint could be phrased as whether the contract forbids termination under these conditions." *Id.* at 78. This too distinguishes that case from this one. Plaintiffs' claims that the EPA's actions violated the APA and the U.S. Constitution do not turn on whether the EPA breached any contract it might have had with the Plaintiffs. Unlike the claims at issue in *Ingersoll-Rand*, the questions presented by Plaintiffs' claims cannot be phrased as whether the grant agreements forbid such termination.

The Government ignores these differences and focuses instead on the *Ingersoll-Rand*'s statements, first, that a plaintiff's request for an order reinstating the contract "may amount to a request for specific performance," and second, that prior cases have "indicated that a complaint involving a request for specific performance must be resolved by the Claims Court." *Id.* at 80. Points I and II of this brief have explained why the first proposition is wrong. Reinstatement of a contract is not equivalent to an order for specific performance. In support of the second proposition, *Ingersoll-Rand* cites only *Spectrum* and *Megapulse*. Neither of those

decisions provides support. *Megapulse* expressly rejects the proposition "that an agency action may not be enjoined, even if in clear violation of a specific statute, simply because that same action might also amount to a breach of contract . . . and any injunction would be equivalent to an award of specific performance." 672 F.2d at 971. The citation to *Spectrum* is a citation to *dictum*.

Although the Government's appeals to *Spectrum* and *Ingersoll-Rand* are misguided, both decisions reached correct outcomes. In each case the facts make it crystal clear that the plaintiff was using artful pleading to attempt to avoid the Court of Federal Claims' exclusive jurisdiction over what was obviously a breach of contract claim. Although prior decisions like these provide useful guidance, courts should not give excessive weight to statements selectively plucked from them and presented out of context. Because the art of artful pleading is to evade mechanical tests, the test for artful pleading is not and should not be a mechanical one. The court must take a "close[] look at the competing bases of jurisdiction . . . and . . . determine if the claim so clearly presents a disguised contract action that jurisdiction over the matter is properly limited to the Court of Claims." *Megapulse*, 672 F.2d at 968. *Megapulse* instructs courts to examine the type of wrong alleged ("the source of the rights") and correct legal response to it ("the type of relief sought (or appropriate)") not individually but together to determine the nature of a plaintiff's claims.

23

*Megapulse*'s own application of that test shows that it is a holistic one, that its two parts operate in concert.

> [S]o long as an action brought against the United States or an agency thereof is not one that should be classified from the outset as a "contract action" for Tucker Act purposes, its remedies are also not contract-related, and the mere fact that an injunction would require the same governmental restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available and the remedial powers otherwise appropriate.

*Id.* at 971. This Court should reject the Government's attempt to extract from *Spectrum* and *Ingersoll-Rand* individual statements that appear to support its position only when taken out of context. When read as a whole, *Spectrum* and *Ingersoll-Rand* do not support the Government's position but belie it. Plaintiffs' APA and Constitutional claims in this case could not be more different from the claims at issue in *Spectrum* and *Ingersoll-Rand*. Nor are the remedies appropriate to Plaintiffs' claims anything like the remedies requested in those cases.

## CONCLUSION

Plaintiffs' claims are clearly different from the artful pleading in *Spectrum* and *Ingersoll-Rand.* Nor are the remedies Plaintiffs seek—an order prohibiting the government from preventing access to disbursed funds and reinstatement of the grants—contractual in nature. Because Plaintiffs' claims and the remedies that would vindicate them are so obviously noncontractual under the standard this Court

set forth in *Megapulse v. Lewis*, the District Court has subject matter jurisdiction to hear them and this Court should affirm the District Court's injunction.


Dated: February 9, 2026                    Respectfully submitted,


                                            /s/ Justin B. Cox
                                            Justin B. Cox
                                            Law Office of Justin B. Cox
                                            PO Box 1106
                                            Hood River, OR 97031
                                            (541) 716-1818
                                            Justin@jcoxconsulting.org

                                            *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 5,909 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 9th day of February, 2026.

   /s/ Justin B. Cox
Justin B. Cox
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on February 9, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 9th day of February, 2026.

　　　/s/ Justin B. Cox　　　　　
Justin B. Cox
*Counsel for Amicus Curiae*

27