No. 25-5122

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLIMATE UNITED FUND, *et al*.,
*Petitioners-Appellees*,

v.

CITIBANK, N.A., *et al*.,
*Respondents-Appellants*.

**On Appeal from the United States District Court
for the District of Columbia**
Nos. 1:25-cv-00698-TSC, et al.

### STATE BANKS' SUPPLEMENTAL BRIEF

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN HONG
  *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
ANYA M. BINSACCA
  *Supervising Deputy
    Attorney General*

DIANA L. KIM*
  *Deputy Solicitor General*
MEGHAN H. STRONG
WILLIAM SETRAKIAN
  *Deputy Attorneys General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-4400
Fax: (415) 703-1107
Diana.Kim@doj.ca.gov
*Counsel of Record*

*Attorneys for California Infrastructure
and Economic Development Bank*
*(Additional counsel listed on signature page)*

March 19, 2026

# TABLE OF CONTENTS

**Page**

Glossary...........................................................................................................iv

Introduction........................................................................................................ 1

Argument........................................................................................................... 3

Conclusion ...................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

CASES

*Bradley v. United States*
  410 U.S. 605 (1973)......................................................................3

*Bronner v. Duggan*
  962 F.3d 596 (D.C. Cir. 2020)......................................................7

*Fischer v. United States*
  603 U.S. 480 (2024)......................................................................4

*Halverson v. Slater*
  129 F.3d 180 (D.C. Cir. 1997)...................................................3, 4

*Hubbard v. EPA Adm'r*
  809 F.2d 1 (D.C. Cir. 1986).........................................................9

*Judicial Watch v. Bureau of Land Mgmt.*
  610 F.3d 747 (D.C. Cir. 2010)......................................................5

*Kingsley v. United States*
  968 F.2d 109 (1st Cir. 1992).........................................................5

*Reporters Comm. For Freedom of Press v. FBI*
  3 F.4th 350 (D.C. Cir. 2021).........................................................2

*Sherley v. Sebelius*
  644 F.3d 388 (D.C. Cir. 2011)......................................................4

*Shoaee v. INS*
  704 F.2d 1079 (9th Cir. 1983) .....................................................5

*United States v. Larionoff*
  431 U.S. 864 (1977)......................................................................5

*United States v. Sineneng-Smith*
  590 U.S. 371 (2020)......................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Vartelas v. Holder*
566 U.S. 257 (2012)........................................................................4

STATUTES

Inflation Reduction Act, 42 U.S.C. § 7434.........................................1, 6

One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, 139 Stat.
72, § 60002 (July 4, 2025) .........................................................3, 4

Pub. L. No. 117-103, 136 Stat. 49 (Mar. 15, 2022)................................6

OTHER AUTHORITIES

171 Cong. Rec. S4281 (July 9, 2025) ................................................5, 6

EPA, *Fiscal Year 2025 Justification of Appropriation Estimates for the
Committee on Appropriations* (Mar. 2024),
https://www.epa.gov/system/files/documents/2024-04/fy25-cj-05-epm.pdf.......6

# GLOSSARY

| Term or Abbreviation | Definition |
| --- | --- |
| CCIA | Clean Communities Investor Accelerator |
| EPA | Environmental Protection Agency |
| GGRF | Greenhouse Gas Reduction Fund |
| NCIF | National Clean Investment Fund |
| OBBBA | One Big Beautiful Bill Act |
| State Banks | California Infrastructure and Economic Development Bank, Efficiency Maine Trust, Illinois Finance Authority, and Minnesota Climate Innovation Finance Authority, collectively |

**INTRODUCTION**

The Court asked for supplemental briefing on the question whether, assuming plaintiffs' statutory and constitutional claims properly supported the preliminary injunction when it was entered, those claims continue to provide a valid basis to affirm all or part of the injunction in light of the One Big Beautiful Bill Act (OBBBA). The answer is yes. This question is a matter of OBBBA's statutory construction, and properly interpreted, OBBBA had no effect on the claims here.

OBBBA prospectively repealed 42 U.S.C. § 7434, which established the Greenhouse Gas Reduction Fund (GGRF), and it rescinded any unobligated funds from that appropriation. But it left untouched funds that were already obligated— including the NCIF and CCIA grants here that were obligated and fully disbursed. Congress thus drew a line: it rescinded *unobligated* funds and prevented future appropriations of additional funds to the GGRF without a new authorizing statute, but it intended to preserve the existing programs for *obligated* grants.

Plaintiffs' statutory and constitutional claims therefore remain unchanged by OBBBA's passage. Plaintiffs alleged that EPA violated the Inflation Reduction Act and the separation of powers by dismantling the NCIF and CCIA programs without statutory or constitutional authorization. Nothing in OBBBA rescinded the grants at issue here or authorized EPA to dismantle these grant programs. EPA's

actions continue to defy Congress's intent that EPA maintain these grant programs, for which funds have already been obligated and disbursed.

Easier still, the Court does not even need to address this issue in order to affirm the injunction. EPA forfeited any contrary interpretation of the statute. After the panel concluded that OBBBA did not moot the appeal because plaintiffs' funds were not unobligated, Panel Op. 7-8, EPA's argument in its en banc briefs each contained a single conclusory paragraph about OBBBA. EPA Br. 48-49; EPA Reply 25. Neither paragraph meaningfully engaged with the statute's text or disputed the line Congress drew between obligated and unobligated funds.

Instead, EPA primarily argued that OBBBA precludes what EPA claimed was the only available remedy—re-obligation of funds to new grantees. Tr. 00:11:00-00:19:00; EPA Reply 25. But that is not the only way to remedy the statutory and constitutional violations. EPA can be ordered instead to halt its dismantling of the grant programs. Here, the district court's order properly issued a preliminary injunction that would redress the wrong and preserve the status quo by prohibiting EPA from effectuating the terminations until judgment is entered. EPA has not meaningfully explained how OBBBA alone would eliminate the claims that provide the basis for that preliminary injunction. *See Reporters Comm. For Freedom of Press v. FBI*, 3 F.4th 350, 364 (D.C. Cir. 2021) (argument is forfeited

if "not raised in the opening brief"); *also United States v. Sineneng-Smith*, 590 U.S. 371, 375-376 (2020) (courts generally follow parties' presentation of the issues).

**ARGUMENT**

1. OBBBA's plain text and the ordinary tools of statutory interpretation make clear that Congress did not intend to disturb grants that had already been obligated or to authorize EPA to dismantle those grant programs. OBBBA states: "Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this act) are rescinded." Pub. L. No. 119-21, 139 Stat. 72, § 60002 (July 4, 2025).

Congress was explicit that OBBBA rescinded only "*unobligated* balances" and thus did not touch funds that were already obligated. *Id.* § 60002 (emphasis added); *see Halverson v. Slater*, 129 F.3d 180, 185-186 (D.C. Cir. 1997) (statutory construction principle of *expressio unius* means that the "mention of one thing implies the exclusion of another thing"). The NCIF and CCIA grants at issue here had been obligated—and indeed, fully disbursed—in 2024. *See* JA968-969; State Banks' Br. 5-6. By its plain text, then, OBBBA did not rescind these grants.

The repeal of the GGRF statute likewise did not affect plaintiffs' grants. *See Bradley v. United States*, 410 U.S. 605, 608-609 (1973) (determining scope of statutory repeal by construing statutory language in a manner "consistent with

3

Congress' intent"). Laws are "prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012). In OBBBA, Congress did not "instruct[] retroactivity" at all, let alone unambiguously. To the contrary, Congress specified that the statute "*is* repealed," § 60002 (emphasis supplied), and this Court has held that "[t]he use of the present tense in a statute strongly suggests it does not extend to past actions." *Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011). The primary consequence of this prospective repeal is that Congress cannot appropriate new funds to the GGRF to provide for additional grants unless it passes a new authorizing statute, which would require it to define anew the goals and structure of the new grant programs.

That reading of the repeal provision is reinforced by statutory context: if the repeal rescinded all appropriations under the GGRF and dismantled the existing grant programs, there would have been no need for Congress to separately rescind only unobligated funds. Courts should reject an "unbounded interpretation" of one provision if it would "render superfluous the careful delineation" of another. *Fischer v. United States*, 603 U.S. 480, 493 (2024); *see Halverson*, 129 F.3d at 185 (rejecting interpretation that would render a provision meaningless).

Read together, the prospective repeal and limited rescission provisions reflect the careful balance that Congress struck in OBBBA: it prevented the commitment of additional funds to the GGRF, but it did not withdraw the funds that had already

been obligated through existing grants or otherwise retroactively eliminate the programs tied to those funds. *See Judicial Watch v. Bureau of Land Mgmt.*, 610 F.3d 747, 750 (D.C. Cir. 2010) (application of statute is deemed retroactive if it "'attaches new legal consequences to events completed before its enactment'").

Congress therefore intended that EPA continue to maintain the NCIF and CCIA grant programs, which OBBBA deliberately did not touch. *See, e.g.*, *United States v. Larionoff*, 431 U.S. 864, 878 (1977) (holding that prospective repeal of military bonus program did not convey any congressional intent to divest plaintiffs of their right to receive bonuses that they had earned before the repeal, and affirming district court's order to pay the bonuses, including payments that were due to be paid after the repeal); *Kingsley v. United States*, 968 F.2d 109, 114 n.4 (1st Cir. 1992) (repealed statute applied to offenses committed before repeal's effective date); *Shoaee v. INS*, 704 F.2d 1079, 1083 (9th Cir. 1983) (regulations that were prospectively repealed continued to govern proceedings arising from conduct before the repeal).

This straightforward reading of OBBBA's text is confirmed by its legislative history. Legislators who supported the bill expressly assured that OBBBA "does not close the grants on any obligated funds." 171 Cong. Rec. S4283 (July 9, 2025) (statement of Rep. Guthrie). They made clear that "if a grant was already given, as far as this bill is concerned, then that would still be going forward." *Id.* (statement

of Rep. Griffith); *see also id.* ("If the grant has already been granted and the money is obligated, . . . then our language does not affect that.").

Those assurances were consistent with the Congressional Budget Office's estimate of the savings from the bill:  of the GGRF's $27-billion appropriation, OBBBA would return a mere $19 million dollars to the Treasury.  171 Cong. Rec. S4281 (statement of Sen. Whitehouse).  That estimate reflected the amount of unobligated funds remaining, which had been allocated for use on EPA's administrative costs.  *Id.*  Only those funds are clawed back by OBBBA's rescission provision.  *Id.*[1]  If the repeal provision had additionally dismantled the NCIF and CCIA programs and authorized EPA to terminate all existing grants, the estimated savings should have been closer to the $20 billion in grants that had already been obligated and disbursed.  But instead, "the repeal of the program language did not create any additional savings" at all because it applied prospectively only and did not touch the existing grant programs.  *Id.*

---

[1] Even with that unobligated amount rescinded, EPA has other sources of funding to continue to administer obligated grants.  *See* 42 U.S.C. § 7434(a)(4) (GGRF funds appropriated for administrative costs were meant to supplement "amounts otherwise available").  For example, Congress has several times appropriated EPA roughly $3 billion for "Environmental Programs and Management," which EPA has tapped—and may continue to tap—to administer the GGRF.  *See* Pub. L. No. 117-103, 136 Stat. 49, 381 (Mar. 15, 2022); EPA, *Fiscal Year 2025 Justification of Appropriation Estimates for the Committee on Appropriations* 40 (Mar. 2024), https://www.epa.gov/system/files/documents/2024-04/fy25-cj-05-epm.pdf.

EPA has not made any meaningful attempt to present a contrary interpretation of the statute and has therefore forfeited any such argument. *See Bronner v. Duggan*, 962 F.3d 596, 611 (D.C. Cir. 2020) ("insufficiently developed argument" is forfeited). Even after plaintiffs explained that OBBBA's text and history make clear that the statute had no effect on the grant programs at issue here (State Banks' Br. 51-53; Primary Grantees' Br. 41-43), EPA's response in its reply brief on OBBBA failed to address the statute's text or respond to any of these arguments. EPA Reply 25. It is far too late for EPA to attempt to do so now.[2] EPA's forfeiture is understandable, as there is no plausible argument that OBBBA's text rescinds obligated grants or dismantles the programs tied to those funds.

2. OBBBA thus has no effect on plaintiffs' statutory and constitutional claims. As plaintiffs explained and the district court held, the NCIF and CCIA grant programs were created to implement Congress's mandate in the Inflation Reduction Act, and neither the statute nor any inherent constitutional authority gave EPA the power to dismantle those programs. *See* JA995-996; State Banks' Br. 40-43; Primary Grantees' Br. 34-36. EPA violated the statute and the

___

[2] Indeed, when EPA was asked at oral argument what would have happened if it had not tried to terminate the grant programs, EPA conceded that OBBBA would have done nothing at all to those grants: "The statute would not have automatically done anything to obligated funds. They would have remained obligated absent agency action." Tr. 00:19:00-00:20:30.

separation of powers by dismantling them without authorization.  The injunction preliminarily redressed that unlawful action by stopping EPA from dismantling the grant programs, that is, by enjoining it from effectuating the termination notices and clawing back plaintiffs' funds until a final judgment can be entered.

OBBBA does not alter the merits of plaintiffs' claims or the propriety of the district court's remedy.  As explained above, Congress did not rescind the grants at issue here, nor did it authorize EPA to dismantle those grant programs.  Although it repealed the statute prospectively, Congress expressed no intent to eliminate the programs tied to grants that had already been obligated; to the contrary, it intended to preserve those existing grants.  OBBBA therefore cannot have negated, or somehow rectified, EPA's statutory and constitutional violations.  EPA's dismantling of the NCIF and CCIA programs remained contrary to Congress's intent both before and after OBBBA.  This Court may affirm the district court's preliminary injunction that prohibits EPA from violating the constitutional separation of powers by defying Congress's intent.

Again, EPA has not meaningfully argued otherwise.  Tellingly, when EPA was asked at oral argument whether OBBBA somehow "changed the universe," EPA did not clearly or affirmatively argue that OBBBA negated its statutory or constitutional violations.  Tr. 00:11:00-00:19:00.  EPA argued instead that OBBBA restricted the possible remedies for the constitutional violation.  In EPA's view, a

remedy for that violation would be limited to restoring the grant programs through re-obligation of funds to new grantees selected by EPA—not through maintaining the grants with plaintiff grantees here. The passage of OBBBA, EPA argued, eliminated that re-obligation remedy, taking away what EPA viewed as the only available remedy for the constitutional and statutory claim. *Id*.

EPA's argument is incorrect. First, EPA is wrong that the only permissible remedy for the statutory and constitutional violations is an order directing re-obligation of grant funds to some new set of grantees. Courts have "power to enjoin unconstitutional acts by the government"—indeed, that power is "inherent in the Constitution itself." *Hubbard v. EPA Adm'r*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986). Where EPA unlawfully and unconstitutionally dismantled the NCIF and CCIA by terminating all of the grants in those programs, one appropriate remedy is an injunction that bars the dismantling of the programs by enjoining the effectuation of EPA's program-wide grant terminations.

Second, EPA's argument about OBBBA altering the available remedies by eliminating a re-obligation remedy is both wrong and irrelevant. Even before the passage of OBBBA, as plaintiffs explained, appropriations law already prohibited re-obligation after the appropriation expired. State Banks' Br. 49-51. OBBBA, even under EPA's arguments, does not alter that remedial landscape.

But even assuming that re-obligation were newly unavailable as a result of OBBBA, EPA offers no reason why retention of plaintiffs' grants would not be a permissible way to redress the constitutional and statutory violation. If EPA is statutorily and constitutionally prohibited from dismantling the grant programs, and it cannot restore them by re-obligating the funds to new grantees, it can nonetheless satisfy its statutory and constitutional obligations by continuing to administer the existing grants with plaintiffs. EPA's arguments only bolster plaintiffs' argument that the constitutional and statutory violations are properly addressed by the district court's preliminary injunction.

# CONCLUSION

The Court should affirm the preliminary injunction.

Dated: March 19, 2026

KEITH ELLISON
  *Attorney General of Minnesota*
PETER N. SURDO
  *Special Assistant Attorney General*
OLIVER LARSON
  *Manager, Environment and Natural*
  *Resources Division*
CATHERINE RIOS-KEATING
  *Special Assistant Attorney General*
Minnesota Attorney General's Office
445 Minnesota Street, Suite 600
(651) 757-1061
Peter.Surdo@ag.state.mn.us
*Counsel for Minnesota Climate*
*Innovation Finance Authority*


KWAME RAOUL
  *Attorney General of Illinois*
JANE ELINOR NOTZ
  *Solicitor General*
ALEX HEMMER
  *Deputy Solicitor General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
*Counsel for Illinois Finance Authority*

Respectfully submitted,
  *s/ Diana L. Kim*

ROB BONTA
  *Attorney General of California*
SAMUEL HARBOURT
  *Solicitor General*
HELEN HONG
  *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
DIANA L. KIM
  *Deputy Solicitor General*
ANYA M. BINSACCA
  *Supervising Deputy Attorney General*
MEGHAN H. STRONG
WILLIAM SETRAKIAN
  *Deputy Attorneys General*
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3369
Diana.Kim@doj.ca.gov
*Counsel for California Infrastructure and*
*Economic Development Bank*


AARON M. FREY
  *Attorney General of Maine*
EMMA AKRAWI
SCOTT W. BOAK
  *Assistant Attorneys General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Emma.Akrawi@maine.gov
*Counsel for Efficiency Maine Trust*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 2,086 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  The brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated:  March 19, 2026                           _s/ Diana L. Kim_

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing

document with the Clerk of the Court for the U.S. Court of Appeals for the District

of Columbia Circuit by using the CM/ECF system.  All participants are registered

CM/ECF users and will be served by the CM/ECF system.


Dated:  March 19, 2026                                 *s/ Diana L. Kim*