IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLIMATE UNITED FUND, *et al.*,

Plaintiffs-Appellees,

v.

CITIBANK, N.A., *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

SUPPLEMENTAL BRIEF FOR THE UNITED STATES

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant
  Attorney General*

DANIEL TENNY
SOPHIA SHAMS
  *Attorneys, Appellate Staff
  Civil Division, Room 7213
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-2495*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

GLOSSARY ..............................................................................................................v

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

CONCLUSION ........................................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**Cases:**                                                                          **Page(s)**

*Clean Fuels All. Am. v. EPA,*
   No. 20-1107, 2026 WL 706511 (D.C. Cir. Mar. 13, 2026)......................................3

*Corley v. United States,*
   556 U.S. 303 (2009) ............................................................................. 8-9

*Dep't of Educ. v. California,*
   604 U.S. 650 (2025) ...............................................................................11

*Dorsey v. United States,*
   567 U.S. 260 (2012) .................................................................................5

*Horne v. Flores,*
   557 U.S. 433 (2009) .................................................................................4

*Lackey v. Stinnie,*
   604 U.S. 192 (2025) ..............................................................................3, 4

*Megapulse, Inc. v. Lewis,*
   672 F.2d 959 (D.C. Cir. 1982) ...............................................................11

*Michigan v. EPA,*
   268 F.3d 1075 (D.C. Cir. 2001) ...............................................................7

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
   145 S. Ct. 2658 (2025) ...........................................................................11

*Petties ex rel. Martin v. District of Columbia,*
   662 F.3d 564 (D.C. Cir. 2011) .................................................................5

*Rufo v. Inmates of Suffolk Cnty. Jail,*
   502 U.S. 367 (1992) .................................................................................4

*Russello v. United States,*
   464 U.S. 16 (1983) ...................................................................................9

*Simone v. Sec'y of Homeland Sec.*,
  156 F.4th 1212 (11th Cir. 2025)......................................................................5

*United States v. Barrow*,
  109 F.4th 521 (D.C. Cir. 2024).......................................................................3

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002) ........................................................................................4

*Vermont v. Goldschmidt*,
  638 F.2d 482 (2d Cir. 1980).............................................................................3

**Statutes:**

One Big Beautiful Bill Act,
  Pub. L. No. 119-21, tit. VI, 139 Stat. 72 (2025):
    § 60001, 139 Stat. at 154 .............................................................................9
    § 60002, 139 Stat. at 154 .....................................................................2, 8, 9
    § 60003, 139 Stat. at 155 .............................................................................9

Pub. L. No. 104-204, tit. II, § 205, 110 Stat. 2874, 2894 (1996) .......................10

Pub. L. No. 108-422, tit. IV, § 411(c)-(d), 118 Stat. 2379, 2389 (2004)...............9

Pub. L. No. 110-161, div. D, tit. I, 121 Stat. 1844, 1974 (2007)..........................9

Pub. L. No. 112-240, § 642, 126 Stat. 2313, 2358 (2013)....................................9

1 U.S.C. § 109 ......................................................................................................7

42 U.S.C. § 7434 ...........................................................................1, 2, 3, 6, 8, 9, 13

**Legislative Materials:**

171 Cong. Rec. S4080 (2025)............................................................................8, 10

H.R. Rep. No. 119-106, pt. 1 (2025)..................................................................8, 10

**Other Authority:**

*Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*,
121 U. Pa. L. Rev. 120 (1972) ...........................................................................7

U.S. EPA, *Greenhouse Gas Reduction Fund*, https://perma.cc/RPD4-DAB2
(last updated Sep. 30, 2025)...........................................................................10

# GLOSSARY

Environmental Protection Agency            EPA

One Big Beautiful Bill Act              OBBBA

**INTRODUCTION**

One of plaintiffs' claims is that EPA's termination of their grants violated § 60103 of the Inflation Reduction Act (formerly codified at 42 U.S.C. § 7434), and thereby also offended the separation of powers. This Court has asked the parties to assume that "such a claim properly supported the preliminary injunction when it was entered,"[1] and to address whether it "continues to provide a valid basis to affirm" in light of "Section 60002 of the One Big Beautiful Bill Act" (OBBBA), which repealed § 60103.

The answer is no. Even if the preliminary injunction was proper on that basis when entered, Congress's repeal of the statute is grounds to vacate the injunction now. Plaintiffs no longer have a cognizable claim that EPA has "dismantled" a statutory program that Congress has itself dismantled, and injunctive relief on this theory is no longer equitable given that the statute is no longer in effect.

---

[1] As the Court knows, the government has disputed this premise for a host of reasons: (i) the statute never contained the mandate plaintiffs posit; (ii) EPA complied with any statutory mandates when it awarded grants by the September 30, 2024 deadline; (iii) in terminating the grants, EPA expressed its intent to re-obligate the funds, within the limits of federal appropriations law; and (iv) the proper remedy for a claim of this sort would be to order EPA to restore the program, not to enjoin termination of these particular grants to these particular grantees. As the Court directed, this supplemental brief assumes away these issues.

Plaintiffs have attempted to characterize the One Big Beautiful Bill Act as merely rescinding unobligated funds and therefore irrelevant here.  That ignores the Act's separate and express language repealing 42 U.S.C. § 7434, which Congress chose not to include when rescinding other funds in the same bill.  Rescission of any unobligated funds is the tail on the repeal dog, not the other way around.  And plaintiffs' other arguments mischaracterize either the implications of the repeal or the nature of the question before the Court.

To be sure, the Act did not unwind plaintiffs' grant agreements—but any contractual rights they have under those grants must be asserted in the Court of Federal Claims, where the only available relief would be monetary damages.  Insofar as the district court's preliminary injunction is premised on enforcing a now-repealed statute, it must be vacated.

### ARGUMENT

**1.**  Plaintiffs' statutory and purported constitutional claims are premised on 42 U.S.C. § 7434, which authorized EPA to make certain grants and appropriated funding for them.  On July 4, 2025, however, the President signed into law the OBBBA, which "repealed" 42 U.S.C. § 7434.  Pub. L. No. 119-21, tit. VI, § 60002, 139 Stat. 72, 154 (2025).  Congress thus eliminated the statute that serves as the entire predicate for these claims.

2

In light of that congressional action, there is no sound basis to affirm the district court's preliminary injunction insofar as it is premised on EPA's alleged violation of § 7434. The question at the preliminary-injunction stage is whether plaintiffs are likely to prevail on the merits at the end of the case. *See Lackey v. Stinnie*, 604 U.S. 192, 200-01 (2025). And courts must apply the law in force at the time of their decision, even if that law has changed since the time of the underlying events or the district court's order. *See United States v. Barrow*, 109 F.4th 521, 527 n.3 (D.C. Cir. 2024) ("[T]he Supreme Court and the D.C. Circuit have recognized the general rule that an appellate court must apply the law in effect at the time it renders its decision.").

Now that 42 U.S.C. § 7434 has been repealed and is no longer on the books, plaintiffs have no chance of prevailing on the merits on a claim that EPA's termination of their grants violates that statute. *Cf. Clean Fuels All. Am. v. EPA*, No. 20-1107, 2026 WL 706511, at *4 (D.C. Cir. Mar. 13, 2026) (finding that "the legal question petitioners present … no longer exists" in light of intervening statutory amendments); *see also Vermont v. Goldschmidt*, 638 F.2d 482, 485 (2d Cir. 1980) (vacating district court injunction where plaintiff's claim was "based upon legislation that the Act has

3

supplanted"). Nor do plaintiffs still have a hope of succeeding on a constitutional claim that EPA has effectively "dismantled" a statutory program, given that Congress has itself done away with these programs by repealing the statute.

Equitable principles compel the same result. An injunction is designed to provide prospective relief for an ongoing violation of law. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (describing claims for injunctive relief as those which "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective"). Even when an injunction is final and no longer subject to appeal, the Supreme Court has made clear that it should be reconsidered and vacated or dissolved if "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

This case presents, if anything, a stronger basis for vacatur. This case is on direct appeal of a preliminary injunction, not on review of a motion to vacate a permanent injunction. *Lackey*, 604 U.S. at 200-01 (noting the "transient nature" of preliminary injunctions as they "do not conclusively

resolve legal disputes."). Accordingly, rather than being compelled to make a showing of changed circumstances, the government can prevail if plaintiffs are unlikely to prevail at the end of the litigation, or if the balance of equities cuts against an injunction. *See Petties ex rel. Martin v. District of Columbia,* 662 F.3d 564, 571 (D.C. Cir. 2011) (recognizing, in context of preliminary injunction, that "continued enforcement of an order entered to remedy a violation of federal law is unnecessary and improper if there is no ongoing violation of federal law").

The government has plainly met that burden: this case should not end with an injunction to enforce a statute that has been repealed. That conclusion is even more self-evident when the alleged statutory violation is framed as a separation-of-powers violation. It cannot possibly be equitable to force EPA, in the name of vindicating the legislative power vested in Congress, to restore a program Congress has chosen to repeal. Doing so would violate the separation of powers by abrogating this Congress' legislative power based on the preferences of a prior Congress. "[C]ourts cannot tie the hands of Congress in such a manner." *Simone v. Sec'y of Homeland Sec.*, 156 F.4th 1212, 1219 n.16 (11th Cir. 2025) (citing *Dorsey v. United States*, 567 U.S. 260, 274 (2012)).

Another way to illustrate the problem is to imagine that this litigation were to end with a final judgment setting aside the March 2025 terminations of plaintiffs' grants on the ground that those terminations violated 42 U.S.C. § 7434. There is no reason why EPA could not immediately terminate those grants again (subject to any contract claims that plaintiffs might want to bring in the Court of Federal Claims). And in that event, plaintiffs would clearly not be entitled to ask a district court to block the new terminations as contrary to the statute; the statute no longer exists. While that is not the sequence in which events unfolded, it shows why sustaining the preliminary injunction is no longer equitable or sensible.

Thus, even assuming that the district court's preliminary injunction could have been justified at the time it was issued as an appropriate remedy for the alleged constitutional or statutory violation, the injunction cannot be affirmed on that basis now.

**2.** The contrary arguments that plaintiffs raised at the en banc oral argument are unavailing.

*First*, plaintiffs' assertion that EPA has "no affirmative statutory authority to undo" the program after the expiration of the original appropriation on September 30, 2024 (Oral Arg. Tr. 96-97), gets matters

6

backwards.  Because an agency needs congressional authorization to run a program, the repeal of that authority—and thus the absence of authority—has the effect of eliminating the program going forward.  *See Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) ("[I]f there is no statute conferring authority, a federal agency has none.").  It is plaintiffs who are seeking, by court order, to force EPA to take action here—namely, to restore their grants and continue to perform under them going forward.  That request can no longer plausibly be based on the now-repealed statute.

*Second*, plaintiffs responded that "[t]he prospective repeal of a statute doesn't retroactively render an illegal action legal."  Oral Arg. Tr. 108-09. Even if true (and the question is complicated), that is irrelevant.[2]  Regardless of whether the grant terminations were "legal" at the time, the question for this Court now is whether forward-looking injunctive relief based on an alleged ongoing statutory violation remains appropriate in light of Congress's repeal of the statute.  The answer is no.  There is no equitable

---

[2] At common law, repeal of a criminal statute without any express indication that pending prosecutions and past liability be unaffected was construed as abating all nonfinal prosecutions.  Congress eventually enacted a General Savings Statute (1 U.S.C. § 109) to shift the presumption to non-abatement unless otherwise specified.  *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa. L. Rev. 120, 122-30 (1972).

basis for injunctive relief based on a statutory violation where the statute no longer exists.

*Third*, plaintiffs characterize Section 60002 of the OBBBA as merely rescinding unobligated funds while leaving the statutory authority for the program untouched. Oral Arg. Tr. 110-11. That is plainly wrong. Section 60002 has two parts: it says that "[1] Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and [2] the unobligated balances of amounts made available to carry out that section ... are rescinded." Pub. L. No. 119-21, § 60002, 139 Stat. at 154. Both parts do work, as the legislative history confirms: the accompanying House Report of the Committee on the Budget states that the Act "repeals" the "authorizations *and* unobligated balances of funds made available to EPA" for the grant programs under the statute. H.R. Rep. No. 119-106, pt. 1, at 557 (2025) (emphasis added); *see also* 171 Cong. Rec. S4080 (2025) (statement of Sen. Capito) (explaining that the repeal and rescission reflect "not only Congress's deep concern with reducing the deficit, but EPA's administration of the [Greenhouse Gas Reduction Fund] under the Biden administration").

Plaintiffs' view that the repeal does no work beyond the rescission of funds defies basic statutory construction principles. *See Corley v. United*

*States*, 556 U.S. 303, 314 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (cleaned up)). Plaintiffs' view is even more unconvincing given that, in many of the surrounding provisions of the OBBBA, Congress only rescinded unobligated funds without repealing any particular statutory provision. *Compare*, Pub. L. No. 119-21, §§ 60001, 60003, 139 Stat. at 154-55, *with id.* § 60002, 139 Stat. at 154. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). Thus, had Congress intended only to rescind unobligated funds, there would have been no need to also repeal 42 U.S.C. § 7434. If anything, the central operative provision is the repeal; the rescission reflects a common follow-on step to address disposition of funds that would remain unobligated as a result of the repeal of the program. *See, e.g.*, Pub. L. No. 112-240, § 642, 126 Stat. 2313, 2358 (2013) (repealing statute and rescinding all unobligated balances); Pub. L. No. 110-161, div. D, tit. I, 121 Stat. 1844, 1974 (2007) (same); Pub. L. No. 108-422, tit. IV, § 411(c)-(d), 118 Stat. 2379, 2389 (2004) (repealing statute and

transferring unobligated balances); Pub. L. No. 104-204, tit. II, § 205, 110 Stat. 2874, 2894 (1996) (disposing of unobligated balances that became available from the repeal of a program).

Plaintiffs' suggestion that the repeal clause might operate to eliminate certain statutory requirements on the grantees' use of funds also defies common sense, as it would mean that EPA is statutorily obligated to continue these grants in the absence of funding while the grantees are released from their statutory duties. Congress's concern in repealing the statute was too *little* oversight over grantees, not too *much*. *See* H.R. Rep. No. 119-106, pt. 1, at 556 (noting concerns of "increased risks of waste, fraud, and abuse" associated with the Inflation Reduction Act); *see also* 171 Cong. Rec. S4080 (statement of Sen. Capito) (similar).[3] Moreover, plaintiffs' argument overlooks that the grant agreements required ongoing action by EPA, including approval for certain large-sum withdrawals by grantees and continuing oversight and monitoring responsibilities. *See* EPA Reply 10; JA1128 (requiring EPA to "oversee and monitor the grant agreement"

---

[3] EPA outlined its own serious concerns on this score in referring the matter to the Office of Inspector General (JA669-72), and on its public website, *see* U.S. EPA, *Greenhouse Gas Reduction Fund*, https://perma.cc/RPD4-DAB2 (last updated Sep. 30, 2025).

through various means).  There is no merit to plaintiffs' apparent view that EPA must continue those ongoing activities despite the repeal of the statutory program and the rescission of the dedicated funding for that purpose.

**3.**  Notwithstanding all of the above, it is true that neither the repeal nor the rescission directly affected plaintiffs' grant agreements.  But all that means is that plaintiffs are left with, at most, contractual claims based on those grant agreements.  Indeed, the repeal only serves to isolate the "source of the rights" for plaintiffs' claims.  *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).  At minimum, the statute cannot now be a source of their rights, since it no longer exists.  Nor can the Constitution confer rights sounding in the separation of powers, now that Congress has terminated the program.  The only potential remaining source of rights is the grant agreements themselves.  And that is why this dispute—whatever is left of it—belongs in the Court of Federal Claims, where plaintiffs can recover only money damages.  *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025).

11

                              *       *       *

Plaintiffs cannot continue to argue that the grant terminations violate

the statute now that the statute has been repealed.  And insofar as the

injunction is premised on that statutory theory (or a derivative constitutional

theory), it cannot stand.  All that remains are contractual claims that cannot

be pursued in federal district court and that cannot support injunctive relief

anywhere.

**CONCLUSION**

For the foregoing reasons, the Court should vacate the district court's preliminary injunction to the extent it is premised on EPA's violation of 42 U.S.C. § 7434 or any constitutional violation premised on that statute.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
  *Attorney General*

DANIEL TENNY

 */s/ Sophia Shams*
SOPHIA SHAMS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7264*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2495*

March 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit set by this Court's order of March 9, 2026, because it contains 2,526 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT-14 point font, a proportionally spaced typeface.

*/s/ Sophia Shams*
Sophia Shams

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Sophia Shams*
Sophia Shams