Nos. 25-5122, 25-5123

# United States Court of Appeals
## *for the*
## District of Columbia Circuit

_____

CLIMATE UNITED FUND,
COALITION FOR GREEN CAPITAL,
POWER FORWARD COMMUNITIES, INC.,
CALIFORNIA INFRASTRUCTURE AND
ECONOMIC DEVELOPMENT BANK, EFFICIENCY MAINE TRUST,
ILLINOIS FINANCE AUTHORITY, MINNESOTA CLIMATE INNOVATION
FINANCE AUTHORITY, JUSTICE CLIMATE FUND, and INCLUSIV, INC.
*Plaintiffs-Appellees*

v.

CITIBANK, N.A.,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and
LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
*Defendants-Appellants*

_____

From the United States District Court for the District of Columbia
Case Nos. 1:25-cv-00698-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00735-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00762-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00820-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00938-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00948-TSC (Hon. Tanya S. Chutkan)

_____

## PRIVATE APPELLEES' SUPPLEMENTAL BRIEF

_____

Vincent Levy
 *Counsel of Record*
Kevin D. Benish
Daniel Fahrenthold
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee Coalition for Green Capital*

Beth C. Neitzel
 *Counsel of Record*
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel.: (617) 832-1000
bneitzel@foleyhoag.com
mcasassa@foleyhoag.com

Noah C. Shaw
James M. Gross
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff-Appellee Power Forward Communities*

Adam G. Unikowsky
 *Counsel of Record*
Kathryn L. Wynbrandt
David B. Robbins
Tanner J. Lockhead
JENNER & BLOCK LLP
1099 New York Avenue, Suite 900
Washington, D.C. 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
aunikowsky@jenner.com

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com

Allison N. Douglis
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff-Appellee Climate United Fund*

Jay C. Johnson
 *Counsel of Record*
VENABLE LLP
600 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 344-4000
jcjohnson@venable.com

*Attorney for Plaintiff-Appellee Inclusiv, Inc.*

David J. Zimmer
  *Counsel of Record*
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, MA 02139
Tel.: (617) 676-9421
dzimmer@zimmercitronclarke.com

Eric F. Citron
Kathleen Foley
ZIMMER, CITRON & CLARKE LLP
1629 K. St. NW, Suite 300
Washington, D.C. 20006
Tel.: (202) 796-4540
ecitron@zimmercitronclarke.com
kfoley@zimmercitronclarke.com

*Attorneys for Plaintiff-Appellee Justice
Climate Fund*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

   I.   Section 60002 Is Prospective And Granted EPA No Authority To
      Terminate The Grant Programs Or Claw Back Funds. ...................................2

   II.  Plaintiffs' Statutory And Constitutional Claims Continue To Support
      The Preliminary Injunction. ...........................................................................8

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................. 10

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ................................................................................ 10

*Train v. City of New York*,
  420 U.S. 35 (1975) .................................................................................... 4

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ................................................................................... 5

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ................................................................................... 4

*Halverson v. Slater*,
  129 F.3d 180 (D.C. Cir. 1997) ................................................................... 8

*Koch v. SEC*,
  793 F.3d 147 (D.C. Cir. 2015) ................................................................... 3

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ......................................................................... 2, 3, 9

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2025) ............................................................................. 8, 9

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ................................................................................ 11

*Nevada v. DOE*,
  400 F.3d 9 (D.C. Cir. 2005) ....................................................................... 7

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ................................................................... 3

*Vartelas v. Holder*,
  566 U.S. 257 (2012) ......................................................................... 2, 3, 4

*W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*,
  734 F.2d 1570 (D.C. Cir. 1984) ................................................................. 3

**Statutes**

42 U.S.C. §7434 ...................................................................... 2, 5, 6, 7

Pub. L. 118-42, 138 Stat. 25 (2024) ............................................................ 8

Pub. L. 119-4, 139 Stat. 9 (2025)..............................................................................7

Pub. L. 119-37, 139 Stat. 495 (2025)........................................................................8

**Other Authorities**

House Committee on Energy and Commerce, Full Committee Markup
of Budget Reconciliation Text Part 1, available at
https://www.youtube.com/live/J4fGR1CiNGg?si=0kz8e0kADDcU
T35Q&t=20423 (last visited Mar. 19, 2026).........................................................6

EPA, Off. of Inspector Gen. Rep. No. 26-P-0008, *Audit of the EPA's
Greenhouse Gas Reduction Fund Solar for All Program* (Jan. 7,
2026) .....................................................................................................................7

Alex DeMarban, *EPA axes program that would have injected $125
million in Alaska for small-scale solar projects*, Anchorage Daily
News, Aug. 24, 2025 ..............................................................................................7

## GLOSSARY OF TERMS

| Term or Abbreviation | Definition |
|---|---|
| CAA | Clean Air Act |
| CCIA | Clean Communities Investment Accelerator |
| EPA | Environmental Protection Agency |
| GGRF | Greenhouse Gas Reduction Fund |
| IRA | Inflation Reduction Act |
| NCIF | National Clean Investment Fund |
| OBBBA | One Big Beautiful Bill Act |
| OGGRF | Office of Greenhouse Gas Reduction Fund |

# INTRODUCTION

After argument, the Court ordered supplemental briefing on the following question:

> Appellees have argued that one sufficient basis for the preliminary injunction is their claim that Federal Appellants' actions violated Section 60103 of the [IRA], and/or the U.S. Constitution. Assuming solely for purposes of the supplemental briefs that such a claim properly supported the preliminary injunction when it was entered, the parties are directed to submit supplemental briefs addressing whether, in light of Section 60002 of [OBBBA], that claim continues to provide a valid basis to affirm all or part of the preliminary injunction.

The statutory and constitutional claims of the NCIF and CCIA Appellees ("Plaintiffs") were based on EPA's lack of any authority to undo the GGRF programs. Plaintiffs argued that EPA violated the IRA and Constitution by attempting to dismantle congressionally mandated programs without authorization from Congress. Pls.' Br. 34-41. Those claims properly supported the preliminary injunction when it was entered; and they continue to do so, even after OBBBA's enactment. *Id.* at 41-43. Section 60002 neither retroactively validates EPA's illegal acts, nor affords the agency any more authority to shut down the grant programs and claw back Plaintiffs' funds than it had before. Instead, Congress carefully crafted §60002 to maintain the already-existing grant programs and already-obligated grant funds. Even after OBBBA's enactment, any attempt to dismantle the programs would claim statutory authority that does not exist, unlawfully transform a

1

prospective statute into a retrospective one, and impermissibly interfere with Congress's power over the purse.

## ARGUMENT

**I.** **Section 60002 Is Prospective And Granted EPA No Authority To Terminate The Grant Programs Or Claw Back Funds.**

Section 60002 provides:

> Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded.

The statute therefore did two things: (1) it prospectively repealed CAA §134, and (2) it rescinded funds appropriated to carry out CAA §134 that remained unobligated at the time of §60002's enactment. Neither clause validated EPA's conduct nor granted EPA any authority to dismantle the grant programs.

***The Repeal Clause.*** Through CAA §134, the prior Congress appropriated, and directed that EPA obligate, $26.97 billion to eligible recipients through competitive grants by September 30, 2024. CAA §134(a)(1)-(3). EPA met this mandate. Section 60002's repeal clause does not grant EPA authority to undo (or redo) this process. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994).

First, the repeal is not retroactive. As the Supreme Court has many times instructed, "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266

2

(2012). This presumption against retroactive legislation ensures that a new law will not "attach[] new legal consequences to events completed before its enactment" unless Congress has made clear that it intends that unusual result. *Landgraf*, 511 U.S. at 270; *accord Koch v. SEC*, 793 F.3d 147, 157 (D.C. Cir. 2015) ("[T]o lessen the inherent unfairness of retroactive application, courts do not enforce a statute retroactively unless the 'Congress first make[s] its intention clear.'" (second alteration in original) (quoting *Landgraf*, 511 U.S. at 268)).

Section 60002 is plainly prospective. Far from "unambiguously instruct[ing] retroactivity," *Vartelas*, 566 U.S. at 266, the provision declares in the present tense that "Section 134 of the Clean Air Act … *is* repealed," OBBBA §60002 (emphasis added). That is a clear instruction directing prospective application. *See Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011) ("The use of the present tense in a statute strongly suggests it does not extend to past actions.").

The conclusion that §60002's repeal clause is prospective is reinforced by the statute's rescission clause, which applies only to *unobligated* balances. A retroactive reading of the repeal clause would render the rescission clause superfluous: If a statute were to retroactively repeal the statutory authority on which an existing program is based, requiring the program's closure, unobligated funds appropriated for that program would revert to Treasury—there would be no need to separately rescind them. *See W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570,

1576 (D.C. Cir. 1984) (unobligated funds revert back to the general Treasury when agency's budget authority lapses). And, as discussed below, §60002's rescission of only unobligated funds demonstrates that Congress had no intention of "tak[ing] away or impai[ring] vested rights," *Vartelas*, 566 U.S. at 266 (citation omitted). When read in harmony—as a court must endeavor to do—the repeal and rescission clauses confirm that Congress did not disturb the already-established programs. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (courts must "fit, if possible, all parts [of a statute] into an harmonious whole" (citation omitted)).

Second, the repeal clause does not grant EPA authority to undo (or redo) the grant programs—even on a forward-looking basis. True, §134 "is repealed" going forward, so no future Congress can appropriate funds for GGRF grants without enacting new authorizing legislation. But just as §134 did not authorize EPA to undo the programs EPA adopted in compliance with §134's deadline and directives, nothing in §60002 purports to provide EPA with that dismantling authority. Courts do not read implied discretionary powers regarding appropriations into Congress's mandates. *Cf. Train v. City of New York*, 420 U.S. 35, 44-46 (1975). Again, rather than provide EPA with statutory authority to dismantle the grant programs, Congress went out of its way to specify that only *unobligated* balances would be rescinded.

Third, even if there were any ambiguity (and there is not), principles of constitutional avoidance would foreclose reading the repeal clause as authorizing

4

EPA to undo the programs and take back Plaintiffs' funds, as it would give rise to $19.97 billion in Takings claims. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) ("[A]mbiguous statutory language [should] be construed to avoid serious constitutional doubts."); *see also* Pls.' Br. 3-7, 23-24 (explaining that the grant funds belong to Plaintiffs). An oblique repeal would not suffice to authorize such a taking of private property, and §60002's explicit text forecloses it.

***The Rescission Clause.*** Section 60002 also rescinds "the unobligated balances of amounts made available to carry out [§134]." As Congress well understood, when OBBBA was enacted, the only remaining "unobligated balances" were roughly $19 million of the $30 million Congress appropriated to EPA to help cover GGRF administrative costs. *See* CAA §134(a)(4).

As explained, Congress set a deadline of September 30, 2024, for EPA to obligate all $26.97 billion appropriated for competitive grants. EPA did as instructed, and Plaintiffs' funds remained obligated at the time of OBBBA's enactment, Panel Op. 7-8. By contrast, the $30 million Congress appropriated to help cover GGRF administrative costs "remain[ed] available until September 30, 2031," CAA §134(a)(4), and of that $30 million, an estimated $19 million remained unobligated when §60002 was passed. That is why the non-partisan Congressional Budget Office estimated that §60002 would save the government just $19 million— that is, *less than one tenth of one percent*—of the total Congress appropriated to

5

implement the GGRF. By contrast, Congress expressly left the obligated grant funds—*99.89%* of GGRF funding—in place. *See* Pls.' Br. 42.

Contemporaneous statements by Republican lawmakers also recognized that OBBBA would not affect existing grants. In May 2025, Representative Morgan Griffith (R-VA), then-chair of the Environmental Subcommittee, said the following of the proposed legislation that would become §60002: "If a grant was already given, as far as this bill is concerned, then that would still be going forward."[1] Representative Brett Guthrie (R-KY), Chair of the House Energy and Commerce Committee, similarly stated that OBBBA "does not close the grants on any obligated funds." *Id.*; *see also* Alex DeMarban, *EPA axes program that would have injected $125 million in Alaska for small-scale solar projects*, Anchorage Daily News, Aug. 24, 2025 (Senator Lisa Murkowski (R-AK), Chair of the Senate Appropriations Committee's Subcommittee on Interior, Environment, and Related Agencies, stating: "We disagree with EPA's termination of all obligated funding under the Solar For All program [pursuant to OBBBA]. The reconciliation bill explicitly rescinded unobligated balances and we had assurances … that no Alaska [grant] recipients would be harmed.").

---

[1] House Committee on Energy and Commerce, Full Committee Markup of Budget Reconciliation Text Part 1, at 5:40:23-5:42:03 (YouTube, May 13, 2025), https://www.youtube.com/live/J4fGR1CiNGg?si=0kz8e0kADDcUT35Q&t=20423 (last visited Mar. 19, 2026).

Nor did §60002's rescission of unobligated administrative-expense funds leave EPA without funding for GGRF program management. The administrative appropriation in §134 was never meant to be EPA's sole source of funds for program expenses. Congress appropriated $30 million, "[*i*]*n addition to amounts otherwise available*," to help cover program costs, CAA §134(a)(4) (emphasis added), so there can be no argument that §134(a)(4)'s "specific purpose is exclusive of other appropriations in general terms which might be applicable in the absence of [CAA §134(a)(4)'s] appropriation," *Nevada v. DOE*, 400 F.3d 9, 16 (D.C. Cir. 2005) (citation omitted). And EPA acknowledged that "the entire $30 million in administrative funding was anticipated to be exhausted *during fiscal year 2026*."[2] EPA thus requested an additional $5 million in administrative funds for GGRF program costs in fiscal years 2024 and 2025, and "another EPA office provided the OGGRF with $1 million in surplus funds" for this purpose in fiscal year 2025. *Id.*

Then, in March 2025, Congress passed a continuing resolution appropriating to EPA $3.195 billion for "Environmental Programs and Management."[3] Congress directed EPA to use that substantial program-management funding for "necessary expenses not otherwise provided for," including "personnel and related costs"

---

[2] EPA, Off. of Inspector Gen., Rep. No. 26-P-0008, *Audit of the EPA's Greenhouse Gas Reduction Fund Solar for All Program*, at 5 (Jan. 7, 2026) (emphasis added).

[3] Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, 139 Stat. 9, 30 (2025).

necessary to administer any grant programs.[4] This funding was continued by way of Congress's November 2025 continuing resolution,[5] meaning that Congress appropriated ample funding for GGRF administrative costs.

*　　*　　*

In sum, OBBBA did not touch funds that EPA obligated, let alone disbursed, before §60002's enactment. To the contrary, by crafting an unambiguously prospective repeal and rescinding only *unobligated* balances, Congress made clear that EPA was not to interfere with existing grants. *See Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (where Congress has empowered an agency to do a specific thing, it "intended to exclude" the agency from acting otherwise).

## II.　Plaintiffs' Statutory And Constitutional Claims Continue To Support The Preliminary Injunction.

Given the plain meaning of OBBBA §60002, Plaintiffs' constitutional and statutory claims continue to support the District Court's injunction in full. Those claims ultimately rely on the foundational principle that agencies can do only as Congress directs, in accordance with the "best reading" of Congress's enactment, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2025). That "best reading"

---

[4] Consolidated Appropriations Act, 2024, Pub. L. 118-42, 138 Stat. 25, 252 (2024).

[5] *See* Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, Pub. L. 119-37, 139 Stat. 495, 496 (2025) (continuing funding "at a rate for operations as provided in the applicable appropriations Acts for fiscal year 2025").

cannot turn on the "views of those presently holding the reins of the Executive Branch." *Id.* at 433 (Gorsuch, J., concurring). Here, as the District Court put it, the statutory and constitutional problem is that "EPA has terminated programs established through lawfully enacted congressional appropriations without any basis in statutory authority." JA995. "EPA cannot shut down these programs completely," the District Court recognized, and it "cannot 'decline to spend previously appropriated funds'" without Congress's approval. *Id.* (quoting *In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013)). That remains a valid basis to affirm the injunction in full.

*First*, Plaintiffs' statutory and constitutional claims continue to support the injunction because, as explained, §60002 did not validate EPA's conduct retroactively, or otherwise operate retroactively to unwind the grant programs. It is true that a retroactive command would indeed affect this Court's review of the District Court's ruling (as well as create new claims under the Takings Clause). *See Landgraf*, 511 U.S. at 266, 268 (Congress's "unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration," and courts must honor that choice so long as Congress "first make[s] its intention clear"). As stated above, however, OBBBA suggests no retroactive effect, let alone contains the clear words needed to overcome the presumption against retroactivity. Thus, an injunction remains necessary to prevent statutory and constitutional violations.

9

Dismantling the programs would nullify the GGRF, in derogation of Congress's instruction to repeal §134 prospectively and preserve the actions Congress required EPA to carry out before OBBBA's enactment. The grant programs' termination would nullify OBBBA itself, transforming a prospective statute into a retroactive one. And it would violate the separation of powers by seizing authority that Congress did not give. *See Aiken Cnty.*, 725 F.3d at 260.

*Second*, even after OBBBA, EPA still lacks statutory authority to dismantle the grant programs or claw back Plaintiffs' grant funds. Not only would dismantling the programs *violate* multiple statutes, it would also be illegal because of the complete *absence* of authority to take this action. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (agencies lack authority to enact retroactive rules unless such authority is expressly conferred by Congress); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act, … unless and until Congress confers power upon it."). As noted, OBBBA prospectively repealed §134 and rescinded *unobligated* funds, explicitly leaving intact existing grants like Plaintiffs'. Because OBBBA did not give EPA the authority the District Court found missing in the IRA (to dismantle the programs), the circumstances that justified the preliminary injunction before OBBBA—EPA's decision to undo congressionally mandated grant programs due to policy disagreement, without congressional authority—remains unchanged. EPA lacked

"any basis in statutory authority" to undo the grant programs when the District Court entered its injunction, JA995, and that remains the situation today.

*Third*, EPA's termination of the grant programs still would violate the Appropriations Clause and the separation of powers by improperly invading Congress's exclusive power of the purse. Congress exercised that power in the IRA by appropriating funds for these grant programs and directing EPA to obligate those funds by September 30, 2024. Congress again exercised its constitutional prerogatives in OBBBA by prospectively repealing §134 and rescinding only unobligated funds. Thus, EPA still cannot take back funds obligated (and disbursed) pursuant to a mandatory appropriation without violating the Constitution.

## CONCLUSION

In sum, the District Court's injunction remains sound, and this Court should affirm that injunction in full on the basis that terminating the programs without statutory authority (then or now) violates Congress's directives and the Constitution.

Dated: March 19, 2026

Respectfully submitted,

/s/ *Vincent Levy*

Vincent Levy
  *Counsel of Record*
Kevin D. Benish
Daniel Fahrenthold
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Coalition for Green Capital*

/s/ *Beth C. Neitzel*

Beth C. Neitzel
  *Counsel of Record*
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com
mcasassa@foleyhoag.com

Noah C. Shaw
James M. Gross
FOLEY HOAG LLP
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
Tel.: (212) 812-0400
ncshaw@foleyhoag.com
jgross@foleyhoag.com

*Attorneys for Plaintiff-Appellee Power*
*Forward Communities*

/s/ *Adam G. Unikowsky*

Adam G. Unikowsky
  *Counsel of Record*
Kathryn L. Wynbrandt
David B. Robbins
Tanner J. Lockhead
JENNER & BLOCK LLP
1099 New York Avenue, Suite 900
Washington, D.C. 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
aunikowsky@jenner.com

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
ggillett@jenner.com

Allison N. Douglis
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
adouglis@jenner.com

*Attorneys for Plaintiff-Appellee Climate*
*United Fund*

/s/ *David J. Zimmer*
David J. Zimmer
  *Counsel of Record*
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, MA 02139
Tel.: (617) 676-9421
dzimmer@zimmercitronclarke.com

Eric F. Citron
Kathleen Foley
ZIMMER, CITRON & CLARKE LLP
1629 K. St. NW, Suite 300
Washington, D.C. 20006
Tel.: (202) 796-4540
ecitron@zimmercitronclarke.com
kfoley@zimmercitronclarke.com

*Attorneys for Plaintiff-Appellee*
*Justice Climate Fund*

/s/ *Jay C. Johnson*
Jay C. Johnson
  *Counsel of Record*
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Tel.: (202) 344-4000
jcjohnson@venable.com

*Attorney for Plaintiff-Appellee Inclusiv,*
*Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the preceding motion contains 2,348 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). I further certify that the document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Beth C. Neitzel*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Beth C. Neitzel*