No. 25-5122

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

CLIMATE UNITED FUND, *et al*.,
*Petitioners-Appellees*,

v.

CITIBANK, N.A., *et al*.,
*Respondents-Appellants*.

———————————

**On Appeal from the United States District Court
for the District of Columbia**
Nos. 1:25-cv-00698-TSC, et al.

———————————

## STATE BANKS' SUPPLEMENTAL REPLY BRIEF

———————————

ROB BONTA
 *Attorney General of California*
SAMUEL T. HARBOURT
 *Solicitor General*
HELEN HONG
 *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
 *Senior Assistant Attorney General*
ANYA M. BINSACCA
 *Supervising Deputy
  Attorney General*

DIANA L. KIM*
 *Deputy Solicitor General*
MEGHAN H. STRONG
WILLIAM SETRAKIAN
 *Deputy Attorneys General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-4400
Fax: (415) 703-1107
Diana.Kim@doj.ca.gov
*Counsel of Record*

*Attorneys for California Infrastructure
and Economic Development Bank*
*(Additional counsel listed on signature page)*

March 26, 2026

# TABLE OF CONTENTS

**Page**

Glossary..........................................................................................................iii

Introduction................................................................................................. 1

Argument...................................................................................................... 1

Conclusion ................................................................................................... 7

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Clean Fuels Alliance Am. v. EPA*
  2026 WL 706511 (D.C. Cir. Mar. 13, 2026) ........................................................3

*Estate of Keeter v. Internal Revenue Comm'r*
  75 F.4th 1268 (11th Cir. 2023) ...........................................................................3

*Judicial Watch v. Bureau of Land Mgmt.*
  610 F.3d 747 (D.C. Cir. 2010)............................................................................2

*Reporters Comm. for Freedom of Press v. FBI*
  3 F.4th 350 (D.C. Cir. 2021)...........................................................................2, 6

*United States v. Barrow*
  109 F.4th 521 (D.C. Cir. 2024)...........................................................................4

*Vartelas v. Holder*
  566 U.S. 257 (2012)............................................................................................3

*Vermont v. Goldschmidt*
  638 F.2d 482 (2d Cir. 1980) ...............................................................................4

# GLOSSARY

| Term or Abbreviation | Definition |
| --- | --- |
| CCIA | Clean Communities Investor Accelerator |
| EPA | Environmental Protection Agency |
| GGRF | Greenhouse Gas Reduction Fund |
| NCIF | National Clean Investment Fund |
| OBBBA | One Big Beautiful Bill Act |
| State Banks | California Infrastructure and Economic Development Bank, Efficiency Maine Trust, Illinois Finance Authority, and Minnesota Climate Innovation Finance Authority, collectively |

# INTRODUCTION

Contrary to EPA's characterization (at Supp. 2), plaintiffs do not ignore OBBBA's repeal language. Plaintiffs have consistently interpreted the repeal and rescission together to reflect the careful balance Congress struck: The repeal prospectively revokes the authorizing statute and prevents Congress from appropriating additional funds to the GGRF without new authorizing legislation. The rescission takes back $19 million remaining in unobligated funds. But neither provision dismantles existing statutory programs for obligated grants that Congress left untouched. EPA still has no authority to dismantle the NCIF and CCIA programs. Those programs continue to be governed by the statute in effect when the grants were obligated, and EPA violates that statute and the separation of powers by defying Congress's intent to maintain those grant programs.

# ARGUMENT

1. EPA's supplemental brief only highlights its forfeiture. *See* State Banks' Supp. 2-3. The State Banks presented their statutory construction arguments about OBBBA in their answer brief. State Banks' Br. 51-53. Yet, even in its supplemental brief, EPA has still not addressed those arguments, including the repeal's prospective nature, the need to read it in context with the rescission clause, and the express statements of legislative intent. EPA assumes a retroactive repeal of the statute governing these grants without explaining how that comports with

1

OBBBA's text or basic principles of statutory interpretation.  EPA cannot attempt in a supplemental reply what it has now thrice failed to do.  *See* EPA Br. 48-49; EPA Reply 25; EPA Supp. 8-11; *Reporters Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 364 (D.C. Cir. 2021) (argument in reply is forfeited).

2.  Regardless, EPA's assumption is wrong.  It relies on two erroneous premises:  that "Congress has itself done away with these programs" (EPA Supp. 4), and that "the statute is no longer in effect" at all (*id.* at 1).  Neither is supported by a proper construction of OBBBA.  As plaintiffs explained, OBBBA's repeal is prospective and must be interpreted with the accompanying rescission of only unobligated funds.  State Banks' Br. 51-53; State Banks' Supp. 3-7.  Read together, the provisions indicate that Congress revoked the statute for future appropriations, while maintaining the statutory program for grants that were already obligated.  Congress thus has not "done away with these programs" (it maintained the programs and the grants comprising them), and the statute remains "in effect" for grants that Congress retained.  *Contra* EPA Supp. 1, 4.

Despite EPA's conclusory statements that Congress dismantled the programs (*id.*), it never explains how that fits with OBBBA's text.  EPA's reading would make the repeal retroactive by changing the "legal consequences" of events before the repeal, *Judicial Watch v. Bureau of Land Mgmt.*, 610 F.3d 747, 750 (D.C. Cir. 2010), but EPA identifies nothing in OBBBA that "unambiguously instructed

2

retroactivity," *Vartelas v. Holder*, 566 U.S. 257, 266 (2012).  As EPA concedes, "neither the repeal nor the rescission directly affected plaintiffs' grant agreements," which comprise all the grants in the NCIF and CCIA programs.  EPA Supp. 11. EPA's position—that Congress preserved the NCIF and CCIA grants while dismantling the programs that administer them—makes no sense.

Likewise, properly interpreting the repeal and rescission together means the GGRF statute ceases to exist prospectively, but still applies to grants obligated before the repeal.  *See* State Banks' Supp. 5; *e.g.*, *Estate of Keeter v. Internal Revenue Comm'r*, 75 F.4th 1268, 1275 n.1 (11th Cir. 2023).  As State Banks explained (at Supp. 3-4), the repeal's reach is a matter of Congress's intent.  If OBBBA had expressly stated that the repeal is prospective and does not affect EPA's statutory duty toward obligated grants, there would be no dispute that the statute still governs those grant programs and that EPA violates the statute and Constitution by defying Congress's will.  But that is in effect what OBBBA did. There is no clear-statement rule requiring Congress to say so expressly if all the tools of statutory interpretation lead to that conclusion.  Indeed, it is EPA's retroactive reading that requires unambiguity.  *Vartelas*, 566 U.S. at 266.

The mootness cases EPA cites are irrelevant.  EPA Supp. 3; *see Clean Fuels Alliance Am. v. EPA*, 2026 WL 706511, at *3 (D.C. Cir. Mar. 13, 2026) (challenged agency action was superseded, so nothing was left to challenge);

*Vermont v. Goldschmidt*, 638 F.2d 482, 484 (2d Cir. 1980) (claim was governed by new statute because funds were *not* obligated before enactment).  As the panel recognized, OBBBA did not moot plaintiffs' claims here because the funds were obligated.  Panel Op. 7-8.  And EPA conceded at argument that OBBBA would have done nothing to plaintiffs' grants without EPA's terminations (Tr. 18), so plaintiffs' challenge remains against EPA's actions.  *United States v. Barrow* is also inapposite because it addresses retroactivity of judicial decisions.  109 F.4th 521, 527 n.3 (D.C. Cir. 2024).  Regardless, the proposition that courts apply the law at the time of decision does not help EPA because that law continues to require EPA to maintain the programs for obligated grants.

Contrary to EPA's unsupported assertion, then, EPA would still violate the Constitution if it dismantled the programs after OBBBA.  EPA Supp. 6.  It would still defy Congress's will that EPA maintain the existing grants and programs tied to them.  An injunction would not "enforce a statute that has been repealed" (*id.* at 5), but rather, a statute that still governs previously obligated grants.  Far from "abrogating" Congress's power (*id.*), the injunction respects Congress's intent.

3.  As noted above, EPA makes hardly any attempt to address State Banks' position.  The arguments EPA does make are non-responsive and incorrect.

a.  EPA does not dispute that it had—and still has—no statutory authorization to dismantle the NCIF and CCIA programs.  EPA Supp. 6-7.  It instead flips the

4

question, asking whether it retains "authorization to run a program" (*id.* at 7), but its framing is wrong. Congress directed EPA to create the programs, so EPA needs Congress's authorization to dismantle them. OBBBA gives it no such authority.

Even under its own framing, EPA is wrong that the repeal took away its authority to administer the grants. As State Banks explained above, EPA can continue to administer them pursuant to the grant agreements and the statute in effect when they were obligated. That is evident from a hypothetical presented at oral argument. If EPA had not tried to terminate the grants, OBBBA would have left them untouched. *See* Tr. 18. EPA speculated that "it's possible" EPA might have tried to terminate after OBBBA (which plaintiffs contend would still be unlawful), but EPA did not argue that OBBBA *required* it to terminate all the grants here. *Id.* Thus, EPA could have kept the grants and continued to administer them after OBBBA. That means OBBBA cannot have taken away its authority to administer these grants, as EPA now claims.

b. Finally, EPA's remaining arguments (at Supp. 8-11) are inapplicable to State Banks' interpretation of OBBBA. State Banks do not claim the repeal "does no work" (*id.* at 8) or releases grantees from their statutory obligations (*id.* at 10). State Banks' Br. 51-53; State Banks' Supp. 3-6. State Banks have consistently maintained that the prospective repeal prevents appropriation of additional funds to the GGRF without a new authorizing statute. State Banks' Br. 52; State Banks'

5

Supp. 4.  EPA never responded to that interpretation, let alone refuted it. *Reporters Comm.*, 3 F.4th at 364.  Indeed, State Banks' interpretation is reinforced by the legislative history EPA cites, which states OBBBA repealed "authorizations and unobligated balances"—that is, the authorizing statute needed for further appropriations.  EPA Supp. 8.  And State Banks' view that the grants are governed by the statute in effect when they were obligated applies to EPA and State Banks alike:  EPA must maintain the existing grant programs, and State Banks must use the funds for the GGRF's statutory purposes.

# CONCLUSION

The Court should affirm the preliminary injunction.

Dated: March 26, 2026

KEITH ELLISON
  *Attorney General of Minnesota*
PETER N. SURDO
  *Special Assistant Attorney General*
OLIVER LARSON
  *Manager, Environment and Natural*
    *Resources Division*
CATHERINE RIOS-KEATING
  *Special Assistant Attorney General*
Minnesota Attorney General's Office
445 Minnesota Street, Suite 600
(651) 757-1061
Peter.Surdo@ag.state.mn.us
*Counsel for Minnesota Climate*
*Innovation Finance Authority*


KWAME RAOUL
  *Attorney General of Illinois*
JANE ELINOR NOTZ
  *Solicitor General*
ALEX HEMMER
  *Deputy Solicitor General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
*Counsel for Illinois Finance Authority*

Respectfully submitted,
    *s/ Diana L. Kim*

ROB BONTA
  *Attorney General of California*
SAMUEL HARBOURT
  *Solicitor General*
HELEN HONG
  *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
DIANA L. KIM
  *Deputy Solicitor General*
ANYA M. BINSACCA
  *Supervising Deputy Attorney General*
MEGHAN H. STRONG
WILLIAM SETRAKIAN
  *Deputy Attorneys General*
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3369
Diana.Kim@doj.ca.gov
*Counsel for California Infrastructure and*
*Economic Development Bank*


AARON M. FREY
  *Attorney General of Maine*
EMMA AKRAWI
SCOTT W. BOAK
  *Assistant Attorneys General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Emma.Akrawi@maine.gov
*Counsel for Efficiency Maine Trust*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 1,299 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated:  March 26, 2026                                   *s/ Diana L. Kim*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, I electronically filed the foregoing

document with the Clerk of the Court for the U.S. Court of Appeals for the District

of Columbia Circuit by using the CM/ECF system.  All participants are registered

CM/ECF users and will be served by the CM/ECF system.


Dated:  March 26, 2026                              _s/ Diana L. Kim_