No. 25-5122

# United States Court of Appeals
## *for the*
## District of Columbia Circuit

---

CLIMATE UNITED FUND,
COALITION FOR GREEN CAPITAL,
POWER FORWARD COMMUNITIES, INC.,
CALIFORNIA INFRASTRUCTURE AND
ECONOMIC DEVELOPMENT BANK, EFFICIENCY MAINE TRUST,
ILLINOIS FINANCE AUTHORITY, and MINNESOTA CLIMATE
INNOVATION FINANCE AUTHORITY,
*Plaintiffs-Appellees*

v.

CITIBANK, N.A.,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, and WILLIAM CHARLES
MCINTOSH, in his official capacity as ACTING DEPUTY ADMINISTRATOR,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Defendants-Appellants*

---

From the United States District Court for the District of Columbia
Case Nos. 1:25-cv-00698-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00735-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00762-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00820-TSC (Hon. Tanya S. Chutkan)

---

**MOTION FOR CLARIFICATION**

---

Vincent Levy
Kevin D. Benish
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Coalition for Green Capital*

Appellee Coalition for Green Capital (CGC) respectfully requests that the en banc Court clarify the scope of the administrative stay that was (1) initially entered by a panel of this Court on April 16, 2025, (2) later extended by the full Court on December 17, 2025, and (3) further extended by consent of the parties, after the en banc Court's August 4, 2026 order affirming the preliminary injunction, to allow the appellants to seek Supreme Court review.

CGC has twice notified this Court and all parties of its interpretation of the administrative stay—first more than 16 months ago on April 30, 2025, and again more than 9 months ago on December 22, 2025. Both times, CGC stated its understanding that the order did not apply to grant funds disbursed from Citibank before this dispute arose, and invited the Court to clarify the administrative stay if CGC's understanding was incorrect; the Court never did, and the government never filed a response to CGC's notices or otherwise indicate in any manner that it disagreed with CGC. To the contrary, when the government recently moved the en banc court (with CGC's consent) to extend the stay pending the filing of a petition for certiorari, the government expressly adopted CGC's interpretation, arguing that the funds subject to the stay Order "have been effectively frozen in the Citibank accounts since April of last year." Unopposed Motion to Stay Mandate and to Extend Stay Pending Petition for Writ of Certiorari at 8, Document 2187046 (Aug. 6, 2026). The Court extended the stay on that basis.

Then, on August 24, 2026, the Department of Justice sent a letter to CGC newly declaring a different interpretation of the administrative stay and threatening to take future action against CGC for acts it has taken in accordance with its publicly declared understanding of the order. Subsequently, CGC learned that the government is seeking to interfere with funds that CGC invested prior to this dispute, doing so by (wrongly) claiming that the stay Order applies to these funds, which further threatens and interferes with CGC's legitimate activities.

Given these late-breaking threats, CGC respectfully requests that the Court clarify the meaning of its Order, and confirm that CGC's interpretation is correct. The government's position is not just wrong, it is inequitable: As the government well knows, CGC's interpretation has been guiding CGC's conduct for more than 16 months, and was both the basis on which CGC agreed to extend the stay after this Court's en banc ruling and the basis on which the government could represent to this Court that maintaining the stay pending its petition for certiorari would preserve a status quo that has persisted for 16 months.

These developments, described more fully herein, put at risk several transactions CGC and its partners are working on, many of which are in late-stage diligence and are expected to close either this month or in October. Because these transactions are at risk if the Court's Order is not clarified, CGC respectfully requests

that the Court render a decision on this matter as soon as possible, and by no later than the end of September.

**BACKGROUND**

1. As this Court is aware, this litigation involves the $26.97 billion Greenhouse Gas Reduction Fund (GGRF) that Congress created in 2022 as part of the Inflation Reduction Act. Pub. L. 117-169. In line with Congress's directives, EPA used the appropriation, *inter alia*, to create the National Clean Investment Fund (NCIF) to "deploy much-needed capital for clean technologies into communities across the country" by "creat[ing] centralized, long-term financing institutions with the scale required to transform financial markets." JA1735–36. CGC was one of the three NCIF grantees, receiving $5 billion to implement Congress's directives.

Consistent with Congress's intent that the grant be deployed without delay, CGC got to work. By the time of the events that gave rise to this lawsuit—including Citibank's freezing of grant recipients' accounts and EPA's purported termination of the grants—CGC had already invested a substantial portion of its grant in accordance with the statute and grant terms. That portion of CGC's grant was not affected by Citibank's freezing of grant recipients' accounts because CGC previously received and invested those funds from its Citibank accounts in accordance with Congress's directives. Those funds were therefore not part of the

funds in dispute in this case, which focuses on the funds that Citibank froze in accounts there.

At all times, both before and during this litigation, CGC has complied with the terms of its grant and the applicable statutory and regulatory requirements, by performing grant obligations and incurring and paying expenses consistent with applicable grant conditions, including by using funds not at Citibank.

2. In response to CGC and other grantees initiating litigation due to Citibank freezing accounts at that institution, EPA purported to terminate all of the NCIF grants. The district court swiftly enjoined that termination, and also ordered Citibank to comply with all requests to disburse money from their Citibank accounts. Defendants appealed the preliminary injunction and sought a stay pending appeal.

A panel of this Court entered an administrative stay that was later extended, as described above. The Court's administrative Order stayed the district court's preliminary injunction "insofar as [the district court's preliminary injunction] (1) enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds and (2) requires defendants to file a status report with the district court within 24 hours of the entry of the preliminary injunction." Order at 1, Document 2111459 (Apr. 16, 2025). The Court further ordered, however, "that no party take any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." *Id.* at 2.

Following entry of this Order, CGC twice filed Notices of Compliance with this Court—first when the case was pending before the panel, and again after the full Court granted rehearing en banc and maintained the stay—to notify this Court and the government of CGC's understanding of the Order. *See* Notice of Compliance, Document 2113780 (Apr. 30, 2025). In its first notice, CGC explained that it was required by the terms of its NCIF grant award to manage investments it had made before the litigation began and to comply with many other grant requirements, including to provide regular reports to EPA (one of which was due imminently after CGC's first notice was filed), which provided the EPA with the complete details of its investment activities. *Id.* at 2–3. CGC thus notified the Court that, in addition to submitting the required compliance report, it would "comply[] with its grant, including by performing grant obligations, incurring and paying expenses consistent with applicable grant conditions using funds outside of Citibank, and performing other grant-related activities using funds located outside of Citibank, as CGC did before the district court's preliminary injunction issued." *Id.*

In that regard, CGC explained that the second part of the Court's administrative stay cannot possibly be read to require all parties—including primary grantees and EPA itself—to halt all operations related to the grant program, which would include ongoing activities required to comply with EPA reporting requirements and activities to comply with investigative requests from other federal

actors. That (incorrect) reading would also require stoppage of the day-to-day administration of investments that grantees made before this case was filed, and grant funds that grantees disbursed from Citibank before this dispute began (*i.e.*, before Citibank stopped disbursing funds from recipients' accounts and before EPA purported to terminate the grants).

CGC explained in both Notices of Compliance that CGC does not believe that reading is what the Court intended when entering and then extending the administrative stay. *See id.* at 1 n.* ("If CGC's understanding is incorrect, CGC respectfully requests that the Court clarify its administrative stay."). In initially seeking an administrative stay, EPA focused only on that part of the district court's order mandating that Citibank provide grantees and subgrantees access to funds at Citibank, and the first part of the Court's Order administratively stayed only portions of the district court's injunction related to plaintiffs' ability to access funds at Citibank, without staying other portions of the district court's order preliminarily enjoining the grant program terminations. CGC explained in its notices that, consistent with that understanding of the administrative stay Order, while the stay was in effect and funds at Citibank remained frozen, CGC would continue complying with its grant by, among other things, performing grant obligations, incurring and paying expenses consistent with applicable grant conditions, and filing regular reports to EPA as to the status of its investment activities as required by grant

terms—just as CGC had done before the district court's preliminary injunction issued.

In addition to filing its notices of compliance on this Court's docket (and thereby sharing the notices with the government's lawyers in this litigation), CGC at various times shared copies of the notices with government employees at EPA and DOJ who are actively engaged in monitoring and otherwise inquiring into CGC's grant-related activities. CGC also filed its regular reports with EPA as mandated by the grant conditions reporting on the status of its pre-dispute investments and ongoing use of funds that were outside of Citibank when this dispute arose. At no time before August 24, 2026 did the government give any indication that it objected to CGC's efforts to comply with its grant obligations and oversee its pre-dispute investments, or that it disagreed with CGC's interpretation of the administrative stay.

3. On August 24, Brett Shumate, the Assistant Attorney General for the Civil Division at the U.S. Department of Justice, sent the letter attached as Exhibit A to the undersigned counsel. For the first time, the government asserted that the money CGC invested before the events giving rise to this litigation is subject to the Court's administrative stay order. Without even claiming that the invested funds are "disputed" funds within the meaning of the administrative stay Order, and without explaining how the government could have obtained an injunction regarding funds outside of Citibank when it never sought such relief, the government's letter asserted

for the first time that the funds already invested by CGC were effectively frozen because they are "'funds' disbursed under 'the disputed contracts, grants, [and] awards," and therefore that CGC supposedly should not take "any action, directly or indirectly, with regard to" those funds. Ex. A at 1 (quoting administrative stay order).

The government's letter acknowledged that CGC filed two notices of compliance with this Court explaining its understanding that these invested funds are not subject to the administrative stay. Now, however, the government for the first time asserted that it disagreed. While acknowledging that the purported termination of CGC's grant remains stayed, Mr. Shumate threatened that, if the termination ever becomes effective, "the government will seek to recover those funds" and also asserted that the administrative stay requires CGC to "preserve[]" those funds now.

Late on September 2, 2026, CGC learned that Mr. Shumate sent a copy of his letter to at least one third party with whom CGC had invested grant money in January 2025, under the terms of its grant and the applicable statutory and regulatory requirements.

**DISCUSSION**

In light of the government's newly asserted position about the meaning of the Court's administrative stay—and DOJ's indication that it may interfere with CGC's long-deployed grant funds—CGC respectfully requests that the Court confirm that the stay does not apply to funds that CGC invested outside of Citibank before the

events giving rise to this lawsuit, or to CGC activities related to implementing obligations under the still-operative grant without using funds at Citibank.

1. As explained in CGC's previous filings, the administrative stay Order is best understood not to apply to grant-implementation activities using or related to funds that were disbursed from Citibank before this dispute arose and that are not frozen there. Fundamentally, the district court entered a preliminary injunction against Citibank and the government, mandating that defendants comply with plaintiffs' instructions to disburse funds in their accounts at Citibank. On appeal, the government sought a *stay* of that preliminary injunction pending appeal, focusing entirely on preventing plaintiffs from withdrawing funds from their Citibank accounts. At no time did the government seek an *injunction* with respect to grant funds that plaintiffs already invested and were not at Citibank—whether in district court or before this Court. This Court issued a partial stay of the preliminary injunction pending appeal, a stay that limits the sweep of the preliminary injunction that the district court entered but does not purport to grant the government affirmative relief that it did not request. Thus, the portion of that Order that the government now purports to rely upon is a limitation on the stay of the preliminary injunction—it is *not* a grant of injunctive relief that the government never sought, still less would it authorize the government to claw back funds invested by grant recipients and disbursed by grantees. Indeed, the government itself has represented

to this Court multiple times that once grant funds left Citibank, it could not get them back. Brief for Appellants at 41, Document 2114428 (May 5, 2025); Federal Defendants' Reply Brief at 22, Document 2116099 (May 15, 2025); En Banc Brief for the United States at 56–58, Document 2153666 (Jan. 9, 2026); En Banc Reply Brief for the United States at 28–29, Document 2159411 (Feb. 17, 2026) ("EPA is unlikely to ever recover funds disbursed from the Citibank accounts.").

Moreover, by its plain terms, the Order reaches only grant funds held at Citibank—those are the "disputed" funds in this case—and does not reach funds that CGC disbursed from Citibank accounts to qualified projects before the present dispute even arose, funds that were not subject to any motions for injunctive relief in any court. Because CGC had legally obligated those funds to qualified projects in accordance with the terms of the grant before the government's purported termination—and providing notices and certifications to EPA and Citibank about those investments back in January 2025—pursuant to the grant and applicable regulations, those funds were not implicated by the termination and therefore are outside the scope of the litigation. Allowing the government to reinterpret the partial stay as it is trying to do would give the government injunctive relief it never sought by precluding all activities related to funds previously disbursed from the Citibank accounts. This erroneous interpretation is untethered to the text of the stay Order,

misapprehends its nature (it is just a partial stay of the preliminary injunction entered in plaintiffs' favor and against the government), and ignores all notions of procedure.

2. In addition, as a matter of equity, the government's late-breaking interpretation of the 16-month-old administrative stay Order cannot stand.

As noted, CGC filed its first notice of compliance on April 30, 2025. On May 15, 2025, CGC provided a copy of CGC's April 30 Notice to the EPA Program Officer responsible for administering CGC's NCIF grant award. Counsel for CGC subsequently provided copies of the April 30 Notice to the Justice Department attorneys responsible for overseeing the Department's investigations focused on the administration of the NCIF grant program. In each instance, the recipients confirmed receipt of the Notice without objection or further discussion. Likewise, in the five months this matter was pending before the merits panel, the government did not file a response or objection to CGC's April 30 Notice and did not otherwise communicate to CGC any disagreement with CGC's interpretation of the Court's April 16, 2025 Order imposing the partial administrative stay.

After the en banc court extended the administrative stay in December 2025, CGC filed a second Notice of Compliance with the full court, again indicating that it was continuing to comply with grant obligations not requiring funds at Citibank. Notice of Compliance, Document 2151688 (Dec. 22, 2025). Again, the government filed no response or objection to CGC's Notice and did not otherwise communicate

to CGC a different interpretation of the Court's April 16, 2025 Order imposing the partial administrative stay. And the full Court gave no indication that it disagreed with CGC's interpretation.

Throughout this time, CGC conducted itself in accordance with the grant terms as stated in its notices of compliance. This included filing regular reports with EPA reporting on CGC's investments and activities, providing full transparency to EPA as to what CGC was doing with regard to pre-dispute investments that were made using funds not in dispute in the lawsuit before suit was filed.

When, on August 4, 2026, the en banc Court issued an order substantially upholding the preliminary injunction, it ordered that the partial administrative stay issued by the merits panel be dissolved seven days later. In response, and following negotiation between the parties, the government—in a brief submitted under Mr. Shumate's name—asked the Court to extend the partial administrative stay pending the disposition of any forthcoming petition for a writ of certiorari filed in the U.S. Supreme Court. At no point during the parties' discussions about that motion, nor in the motion itself, did the government raise any objection to CGC's public understanding of the scope of the partial administrative stay as being limited to funds frozen in the Citibank accounts (and the termination notices themselves).

On the contrary, the government represented to the Court that plaintiffs, including CGC, would suffer no irreparable injury from any extension of the partial

administration stay, because the funds subject to the stay Order "have been effectively frozen in the Citibank accounts since April of last year." Motion to Stay Mandate, *supra*, at 8. Rather than contest CGC's interpretation, the government's own representation to this Court seeking an extension of the stay pending its cert petition thus adopted it.

3. Having taken that position in requesting an extension of the stay and having succeeded on its motion, the government is judicially estopped from taking a contrary position. *See generally New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

Three "key factors" guide when the doctrine of judicial estoppel applies: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Temple Univ. Hosp., Inc. v. Nat'l Lab. Rels. Bd.*, 929 F.3d 729, 733

(D.C. Cir. 2019) (cleaned up). Each of these factors weighs in favor of estopping the government from taking its new position, and CGC's transparency over the past 16-month period and the government's acquiescence in CGC's conduct do as well. *See id.* (noting decisions on whether to apply judicial estoppel may take into account additional considerations). First, and as discussed above, central to the government's request to extend the stay pending its certiorari petition was the government's position that CGC and other plaintiffs would *not* suffer irreparable harm if the stay were extended. That position is completely inconsistent with the government's interpretation of the stay order today. Second, because the government successfully obtained an extension of the stay, allowing the government to prevail on its interpretation of the stay order now would suggest that this Court was either misled when it granted the government's extension request, *or* that it is at risk of being misled now. Third, accepting the government's new interpretation now—at this late stage and after the government used the opposite position to successfully extend the administrative stay in this case—would "impose an unfair detriment," the sort which judicial estoppel is meant to prevent. *New Hampshire*, 530 U.S. at 715; *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4477 (3d ed.) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigating on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

4. CGC now respectfully requests that this Court confirm that CGC's interpretation of the stay Order is correct. There is no dispute between the parties that the Order prohibits the government from giving effect to the termination notices. There is similarly no dispute that the Order prevents any party to this action from taking any direct or indirect action with respect to the disputed funds in the Citibank accounts. But there is now an eleventh-hour dispute between CGC and the government about whether anything in the Order enjoins CGC from performing grant-related activities with respect to funds that were invested in accordance with applicable grant terms (and therefore are no longer held in Citibank accounts) before any of the events giving rise to this lawsuit began—related to funds that have not since been at Citibank accounts—even though the government has never sought any injunctive relief with respect to those invested funds.

For 16 months, CGC has been transparent with the Court and the government about its interpretation of the Order, including in notices of compliance, direct communications, and regular reports required by relevant grant terms. But in light of the government's recent posturing and threats, CGC now respectfully requests that the Court confirm that the Order does not apply to the invested funds outside of Citibank or to CGC's performance of grant-related activities with respect to those funds invested before the dispute arose and that are not at Citibank.

The need for clarification is heightened by DOJ's sending a copy of Mr. Shumate's letter to at least one of the funds in which CGC invested grant money before Citibank froze any accounts and before EPA purported to terminate the grants. To state the obvious, if a majority of this en banc Court viewed the "funds already disbursed into Plaintiffs' bank accounts" at Citibank as beyond the government's reach, Per Curiam Judgment at 2, Document 2186441 (Aug. 4, 2026), funds that were—as permitted by law—invested more than 19 months ago outside of Citibank are doubly so.

Dated: September 3, 2026 Respectfully submitted:

/s/ *Vincent Levy*
Vincent Levy
Kevin D. Benish
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Coalition for Green Capital*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d), I hereby certify that the preceding motion complies with the type-volume limitation of the rules, containing 4,038 words. I further certify that the document complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Vincent Levy*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Vincent Levy*