**[EN BANC ORAL ARGUMENT HELD ON FEBRUARY 24, 2026]**

No. 25-5122

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CLIMATE UNITED FUND, *et al.*,

Plaintiffs-Appellees,

v.

CITIBANK, N.A., *et al.*,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

# UNITED STATES' RESPONSE TO COALITION FOR GREEN CAPITAL'S MOTION FOR CLARIFICATION

---


BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

DANIEL TENNY
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*

**TABLE OF CONTENTS**

GLOSSARY ........ ii

INTRODUCTION ........ 1

STATEMENT ........ 2

ARGUMENT ........ 7

I. This Court's Stay Order Plainly Bars CGC From Taking Any Action With Respect To Grant Funds. ........ 8

II. Barring CGC From Taking Action With Respect To Grant Funds Is Consistent With The Purposes Of The Stay And Avoids Irreparable Harm To EPA ........ 10

III. CGC's Contrary Arguments Are Unavailing ........ 12

CONCLUSION ........ 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## GLOSSARY

| | |
|---|---|
| CGC | Coalition for Green Capital |
| EPA | Environmental Protection Agency |
| NCIF | National Clean Investment Fund |
| Op. | Panel Opinion |

## INTRODUCTION

After the district court issued a preliminary injunction barring the Environmental Protection Agency (EPA) from effectuating its grant terminations and ordering Citibank, N.A., to immediately disburse potentially billions in grant funds to plaintiffs, this Court issued an administrative stay that, in relevant part, (1) stayed the district court's preliminary injunction insofar as it "enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds," and (2) ordered that "no party take any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." Order 1-2 (Apr. 16, 2025) (Order). Pursuant to this Court's order issued August 7, 2026, that stay continues to remain in effect.

The government understands this Court's stay order to mean what it says: that *no* party may take *any* action with respect to the disputed grants. That includes funds withdrawn from the Citibank accounts pursuant to the disputed grants prior to EPA's termination of the grants, which continue to be governed by the disputed grants. Barring Plaintiff Coalition for Green Capital (CGC) from taking action with respect to withdrawn grant funds not only comports with the plain text of this Court's stay order but is also entirely consistent with the purposes of this Court's stay order, which serves to preserve the status quo and minimize harm to the parties as litigation proceeds.

CGC's asserted reasons for reading this Court's stay order to narrowly apply only to grant funds held in the Citibank accounts is unavailing. While CGC contends that withdrawn funds are not implicated by the disputed grants, it also acknowledges that it has continuing obligations under the grants, even with respect to withdrawn funds. Moreover, CGC's assertion that giving full effect to this Court's stay order would somehow amount to injunctive relief is misguided. The stay order's application to all parties—including CGC—as well as to all disputed grants, contracts, and funds—including withdrawn funds—comports with the Court's traditional power to minimize harm and maintain the status quo as litigation proceeds. And CGC's suggestion that equitable principles such as judicial estoppel bar the Court from giving full effect to its stay order is likewise wrong as the government has never taken the position or otherwise suggested that the Court's stay order should be construed so narrowly so as to exclude withdrawn grant funds.

## STATEMENT

**1.** In August 2022, Congress enacted Section 134 of the Clean Air Act, which appropriated $27 billion for the Greenhouse Gas Reduction Fund. Congress provided that these funds would be available to "make grants" to "eligible recipients" for purposes of investing in "qualified projects," which it defined as "any project, activity, or technology" aimed at "reduc[ing] or avoid[ing]

greenhouse gas emissions and other forms of air pollution." 42 U.S.C. § 7434(a)-(b), (c)(3). Congress vested EPA with broad discretion in operating and executing these programs, including selecting grant recipients "on a competitive basis" and ensuring that program activities are carried out "as determined appropriate by the Administrator in accordance" with the statute. *Id.* § 7434(a)(1).[1]

**2.** Pursuant to this statutory appropriation, EPA developed three grant programs and, under each of those programs, selected grant recipients. As relevant here, EPA selected Coalition for Green Capital (CGC) to receive grant funds under the National Clean Investment Fund (NCIF). As this Court is aware, the contracts memorializing the grant awards contain a "Termination" provision specifying the circumstances under which EPA may terminate the grants and stating that in the event of termination EPA "must" "de-obligate uncommitted funds and re-obligate them to another Eligible Recipient." JA552.

As this Court is also aware, the grant agreements adopted an unusual mechanism for moving the grant funds out of the government quickly, under which

[1] On July 4, 2025, while the present appeal was pending, Congress enacted and the President signed into law a bill repealing "Section 134 of the Clean Air Act (42 U.S.C. 7434)" and rescinding "the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act)." Pub. L. No. 119-21, tit. VI, § 60002, 139 Stat. 72, 154 (2025).

funds would be deposited with a private financial institution, Citibank, N.A. JA715.

Under new leadership after the presidential transition, EPA "reassessed and adopted agency policies and priorities that materially differ from the prior administration"—particularly with respect to oversight and transparency over grant funds. JA716. On March 11, 2025, EPA issued official notices to the NCIF grantees terminating their grant agreements. In the notices, EPA explained that the terminations were "based on substantial concerns regarding program integrity, the award process, programmatic fraud, waste, and abuse, and misalignment with the Agency's priorities, which collectively undermine the fundamental goals and statutory objectives of the award." JA701. EPA also explained that the contractual scheme lacked sufficient provisions to ensure that the government maintained adequate control over the program. JA702. Finally, EPA stated that it would work to re-obligate the funds expeditiously in a more responsible manner. JA702.

Several grantees, as well as subgrantees who have separately contracted with them, filed suit challenging EPA's termination of the grants.[2] Plaintiffs pursued Administrative Procedure Act and constitutional claims and sought declaratory and injunctive relief that would require EPA (through Citibank) to resume disbursing

[2] Plaintiffs originally brought independent suits, which were consolidated in district court.

grant funds to them. JA157-67. They also brought breach-of-contract claims against Citibank for following EPA's and Treasury's directives to stop disbursing funds. JA167-70.

The district court issued an order preliminarily enjoining EPA from effectuating its termination of plaintiffs' grant agreements and, on that basis, enjoining EPA and Treasury, a non-party, from causing Citibank to "deny, obstruct, delay, or otherwise limit access to funds in accounts established in connection with Plaintiffs' grants, including funds in accounts established by Plaintiffs' subgrantees." JA961-62.

The government immediately sought an administrative stay and stay pending appeal in this Court. This Court administratively stayed the district court's order in part on April 16, 2025. Specifically, the Court stayed the district court's order "insofar as it … enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds … ." Order 1-2. And the Court further ordered "that no party take any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." Order 2.

On April 30, 2025, CGC filed a Notice of Compliance in which it stated that the plain language of the Court's administrative stay "seem[s] to require all parties, including primary grantees and EPA, to halt all operations related to the grant program, including ongoing activities to comply with reporting requirements to

EPA (as well as activities to comply with investigative requests from other federal actors) and day-to-day administration of investments made using grant funds before this dispute began." Notice 2 (Apr. 30, 2025). Because CGC "d[id] not believe this is what the Court intended" in its order, it stated that it would continue using and expending "funds located outside of Citibank" to perform its grant obligations. Notice 2 (Apr. 30, 2025). CGC did not clarify for the Court whether these funds were the roughly $2.65 billion withdrawn by CGC in the weeks leading up to the change in administration and kept with private equity firms, nor did CGC seek any relief from the Court at the time it filed the notice.

On September 2, 2025, following full merits briefing and oral argument, a 2-1 panel of this Court vacated the district court's preliminary injunction, holding that the district court likely lacked jurisdiction over plaintiffs' Administrative Procedure Act and ultra vires claims, Op. 11, 21-22, and that plaintiffs' separation-of-powers claims lacked merit, Op. 22-26.[3] On December 17, 2025, this Court granted rehearing en banc, vacated the panel opinion, and reinstated the administrative stay previously entered on April 16, 2025. Following the Court's reinstatement of the administrative stay, CGC filed another Notice of Compliance

[3] The panel consolidated its consideration of the government's motion for a stay with its consideration of the merits. Order (Apr. 28, 2025).

on December 22, 2025, which reiterated the position taken in its April 30, 2025, notice, but again did not seek relief. Notice (Dec. 22, 2025).

On August 4, 2026, the en banc Court issued a per curiam order affirming the portion of the preliminary injunction barring EPA from effectuating its termination of the grants. Judgment 1 (Aug. 4, 2026). The Court was equally divided as to the remainder of the preliminary injunction. *Id.*

The government promptly filed an unopposed motion for a stay of the mandate and requested that the Court extend the April 16, 2025, administrative stay pending the disposition of the United States' forthcoming petition for a writ of certiorari, and, if that petition is granted, any further proceedings in the Supreme Court. The Court granted the government's motion on August 7, 2026, and directed the Clerk "to withhold issuance of the mandate and extend the administrative stay entered on April 16, 2025, through November 9, 2026," and, if a petition for writ of certiorari has been filed within that period, to further extend the administrative stay "pending the Supreme Court's final disposition." Order 1 (Aug. 7, 2026).

## ARGUMENT

The administrative stay as originally imposed by this Court's order on April 16, 2025, and most recently extended by this Court on August 7, 2026, plainly bars CGC from taking any action with respect to grant funds—regardless of whether

those funds have been withdrawn from the Citibank accounts. This understanding is clear from the plain text of the administrative stay and is reinforced by the purpose of the stay, which is to maintain the status quo pending litigation in this case. Thus, to the extent any clarification is necessary, this Court should clarify that the administrative stay bars all parties, including CGC, from taking any action with respect to any funds subject to the grants at issue in this litigation.

## I. This Court's Stay Order Plainly Bars CGC From Taking Any Action With Respect To Grant Funds

The plain text of this Court's administrative stay clearly bars CGC from taking any action with respect to any grant funds—regardless of whether those funds have already been withdrawn from the Citibank accounts. Specifically, the April 16, 2025, order includes two separate decretal paragraphs. The first, which provides that the "district court's order is stayed insofar as it … enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds," effectively freezes the funds held at Citibank. Order 1-2. The second more broadly commands "that no party take any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." Order 2. Unlike the first decretal paragraph, the second is not limited to the funds held at Citibank. It sweeps far more broadly, commanding compliance not just from Citibank but from every "party" to the case. And it prohibits any party from taking "any action,

directly or indirectly," with respect to "the disputed contracts, grants, awards or funds."

The grant funds withdrawn by CGC from the Citibank accounts fall squarely within the administrative stay's plain text barring any party from taking any action with respect to "the disputed contracts, grants, awards or funds." This case arose from plaintiffs' efforts to bar the government from terminating the grant agreements, which govern not only undisbursed funds but also funds withdrawn from the Citibank accounts. For example, the grant agreements require ongoing action by EPA with respect to withdrawn grant funds, including continuing oversight and monitoring responsibilities. *See* JA1128 (requiring EPA to "oversee and monitor the grant agreement" through various means). Indeed, as CGC acknowledges, *see* Mot. 12, (Sep. 3, 2026) (Mot.), the grant agreements require grantees to continue to submit reports regarding the use of the funds, which can only be expended in accordance with the grants and the EPA-approved workplan, JA651. And the grant agreements expressly provide that EPA "must" rescind the funds for any grants it terminates. JA552. Thus, withdrawn grant funds fall squarely within the dispute in this case and the stay order's language barring "any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds."

CGC's proposed narrow reading of this Court's stay order as applying only to funds in the Citibank accounts and excluding any withdrawn funds is belied by the plain text of the order and, if adopted, would render meaningless the second portion of the Court's stay order. The first portion of the Court's order, which stays the district court's preliminary injunction insofar as it "enables or requires Citibank to release, disburse, transfer, otherwise move, or allow access to funds," provides all the relief that CGC believes this Court awarded. Order 1-2. But the second portion of the order goes further, barring all parties from taking "any action, directly or indirectly, with regard to the disputed contracts, grants, awards or funds." Order 2. If this Court's administrative stay were intended to only encompass funds held in the Citibank accounts, there would have been no need for the second, separate portion of the order. That portion of the order thus must be understood as applying beyond the funds in the Citibank accounts and to *all* funds pursuant to the disputed grants, contracts, and awards.

## II. Barring CGC From Taking Action With Respect To Grant Funds Is Consistent With The Purposes Of The Stay And Avoids Irreparable Harm To EPA

Understanding this Court's administrative stay to bar CGC from taking action with respect to withdrawn funds is also consistent with the purposes of such stays. This Court's power to issue a stay is "inherent" in its authority under the All Writs Act to "'issue all writs necessary or appropriate in aid of'" the Court's

"'jurisdiction[] and agreeable to the usages and principles of law.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks omitted) (quoting 28 U.S.C. § 1651(a)). An administrative stay serves to "freeze legal proceedings until the court can rule on a party's request for expedited relief," thereby "minimiz[ing] harm while [a] court deliberates." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay) (quotation marks omitted). And a core purpose of a stay is to "preserv[e] rights during the pendency of an appeal." *Nken*, 556 U.S. at 427 (quotation marks omitted).

Given these principles, the Court's stay bars the parties from taking action with respect to any of the grant funds—regardless of whether those funds have been withdrawn from Citibank. As explained, *see supra* p. 9, the grant agreements require ongoing action by EPA and expressly contemplate the recission of funds following termination, *see* JA552. If the district court was wrong to invalidate EPA's termination of the grant agreements, then EPA would be in a position to recoup funds disbursed pursuant to the agreements. EPA's ability to recover funds, however, would be seriously hindered if CGC were permitted to continue to expend funds in accordance with the disputed grants. Specifically, should CGC be allowed to expend withdrawn grant funds, EPA would likely be unable to ever recover millions of taxpayer funds that it would have otherwise been able to recover had it never been barred from effectuating its termination of the grants in

the first place. That potential loss alone warrants reading this Court's stay order to bar CGC from taking any action with respect to withdrawn funds. *See National Insts. of Health v. American Pub. Health Ass'n*, 145 S. Ct. 2658, 2559 (2025) (noting that where grant funds may be "irrevocably expended," that constitutes irreparable harm warranting a stay (quotation marks omitted)).

## III. CGC's Contrary Arguments Are Unavailing

Although CGC acknowledges the second portion of this Court's stay order barring any party from taking any action with respect to the disputed grants, it contends that this Court should construe that provision narrowly for various reasons—none of which are convincing.

CGC first erroneously contends that funds withdrawn from the Citibank accounts prior to EPA's termination of the grants are "not implicated by the termination and therefore are outside the scope of the litigation." Mot. 10. But as explained, *see supra* p. 9, the grant agreements impose continuing obligations on withdrawn funds. Had EPA not been enjoined from effectuating its termination of the grants it could have then potentially sought to recoup disbursed funds consistent with applicable law and the contracts' closeout procedures. The withdrawn funds thus fall squarely within the "disputed" funds discussed by the administrative stay, and CGC is accordingly barred from taking "any action, directly or indirectly, with regard" to these funds.

CGC further argues that, if the second portion of the administrative stay were given its full meaning, it would amount to "a grant of injunctive relief that the government never sought." Mot. 9. That argument proves way too much. There is no dispute that this Court's order prohibits the parties from obtaining funds from Citibank that would otherwise have been available to them. The application of that prohibition on funds that reside somewhere other than Citibank does not change the order's fundamental character. And that character is fundamentally that of a stay, maintaining the status quo as litigation proceeds by barring the parties from taking any action with respect to the disputed grants and funds. As explained, *see supra* pp. 11-12, such a stay is necessary with respect to disbursed and undisbursed funds alike, as funds expended are more likely to be irrecoverable, or at least more difficult to recover, should the government ultimately prevail and seek recoupment. That the government may not have expressly requested such relief when initially seeking a stay is irrelevant—the power to issue a stay that preserves the positions of the parties pending resolution of the case is a "part of [a court's] traditional equipment for the administration of justice." *Nken*, 556 U.S. at 421 (quotation marks omitted). This Court has exercised that power here, and its stay order should be given full effect.

Finally, CGC erroneously contends that judicial estoppel prevents this Court from giving its stay order full effect. Mot. 13-14. According to CGC, the

government previously took the opposite position regarding the scope of the stay when it requested and obtained from this Court an extension of the April 16, 2025, stay pending disposition of its petition for certiorari or, if certiorari is granted, disposition of the case by the Supreme Court. But judicial estoppel applies only where a party has taken a position that is "clearly inconsistent" with an earlier position. *See Temple Univ. Hosp., Inc. v. National Lab. Rels. Bd.*, 929 F.3d 729, 733 (D.C. Cir. 2019). As relevant here, the government has not taken the position that this Court's stay is limited to only those funds in the Citibank accounts. To the contrary, the government has consistently maintained in briefing before this Court that grantees have continuing obligations under the agreements even with respect to withdrawn funds as those funds "remain governed by, and can only be expended pursuant to, the contracts." En Banc Reply 10; *see* Panel Reply 2, 8.

CGC's only basis for asserting that the government took an inconsistent position is the government's focus on the Citibank funds, which have been the central issue in this case, in its motion to stay the mandate. In that motion, the government pointed out that "plaintiffs "will suffer no irreparable injury from a stay of the mandate." Mot. 8 (Aug. 6, 2026). The thrust of that argument is clear even as applied to the Citibank funds themselves, and it applies with equal force with respect to withdrawn grant funds: the government does not regard prohibitions on the continuing expenditure of funds—the harm CGC asserts in its

motion now—to be irreparable harm. Although the government went on to emphasize that the Citibank funds have been frozen, a statement that is not true of the funds at issue in CGC's motion, that hardly amounts to taking a "clearly inconsistent" position with the one asserted by the government in this response, much less of obtaining judicial relief on a premise that the government now seeks to reject.

Nor does the fact that the government did not respond to either of CGC's notices warrant narrowing the scope of the stay. *See* Mot. 11-13. CGC's notices of compliance did not request any clarification or action by this Court regarding the scope of the stay, and thus did not require a response from the government. Nor did CGC specify which "funds outside of Citibank" it was referring to or intended to use to perform its grant obligations. *See* Notice 2 (Apr. 30, 2025). In any event, the government has now made CGC aware of the government's interpretation of the Court's administrative stay, which is plainly correct, and there is no basis for allowing CGC's erroneous interpretation of the order to persist now that any uncertainty about the government's position has been eliminated—especially given that CGC has acknowledged in its notices that these funds fall within the plain text of the Court's administrative stay, *see supra* p. 6.

## CONCLUSION

For the foregoing reasons, this Court should deny CGC's motion to adopt its reading of the administrative stay issued on April 16, 2025, and extended on August 7, 2026. To the extent the Court sees fit to clarify its order, it should make clear that the order bars CGC from taking any action with respect to funds withdrawn pursuant to the disputed grants.

Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

DANIEL TENNY

*/s/ Sophia Shams*
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*
*sophia.shams@usdoj.gov*


September 2026

**CERTIFICATE OF COMPLIANCE**

I certify that this response complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,933 words, excluding the parts exempted under Federal Rule of Appellate Procedure 32(f), according to the count of Microsoft Word.

*/s/ Sophia Shams*

Sophia Shams

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Sophia Shams*

Sophia Shams