No. 25-5122

# United States Court of Appeals
# *for the*
# District of Columbia Circuit

CLIMATE UNITED FUND,
COALITION FOR GREEN CAPITAL,
POWER FORWARD COMMUNITIES, INC.,
CALIFORNIA INFRASTRUCTURE AND
ECONOMIC DEVELOPMENT BANK, EFFICIENCY MAINE TRUST,
ILLINOIS FINANCE AUTHORITY, and MINNESOTA CLIMATE
INNOVATION FINANCE AUTHORITY,
*Plaintiffs-Appellees*

v.

CITIBANK, N.A.,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, and WILLIAM CHARLES
MCINTOSH, in his official capacity as ACTING DEPUTY ADMINISTRATOR,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Defendants-Appellants*

From the United States District Court for the District of Columbia
Case Nos. 1:25-cv-00698-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00735-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00762-TSC (Hon. Tanya S. Chutkan)
1:25-cv-00820-TSC (Hon. Tanya S. Chutkan)

**CGC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR CLARIFICATION**

Vincent Levy
Kevin D. Benish
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Coalition for Green Capital*

This motion centers on the meaning of the "disputed" funds that are the subject of this litigation and a part of the Court's stay order. The plain text, context, position of the parties, and their conduct over more than 16 months confirms the panel's characterization: "the funds at issue in this case remain at Citibank." *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 819 (D.C. Cir. 2025).

Accordingly, the reference to "disputed funds" in the stay order does not cover grant funds that CGC committed for financial-assistance transactions, disbursed from Citibank, and deployed to counterparties by February 2025, before this case began. CGC deployed these funds under its EPA-approved workplan, and with EPA's knowledge, to the custody and control of counterparties who are neither parties to this case nor in privity with EPA. In line with what EPA previously told this Court, those funds are not recoverable by EPA, nor are they "uncommitted funds" that EPA could recover post-termination. They have not been the subject of "dispute" in litigation, and they are not "disputed funds" under this Court's stay.

This case began when Citibank froze the Citibank accounts of CGC and other grantees, and as EPA tried to terminate the NCIF program and claw back from Citibank the grant funds of CGC and other grantees that remained there. CGC and the other grantees sought and obtained a preliminary injunction that barred EPA from effectuating its termination and compelled Citibank to abide by the instructions of account holders with respect to funds in Citibank accounts. The government then

sought a stay of that injunction pending appeal. On April 16, 2025, a motion panel of this Court issued a partial stay over Judge Rao's dissent. Stay Order, Document 2111459 (Apr. 16, 2025). The stay order contained two decretal paragraphs: one that suspended the preliminary injunction insofar as it "enable[d] or require[d] Citibank to release, disburse, transfer, otherwise move, or allow access to funds," and a second ordering "that no party take any action, directly or indirectly, with regard to the *disputed* contracts, grants, awards or funds." *Id.* 1-2 (emphasis added). This "partial administrative stay did not lift the portion of the district court's order enjoining the grant terminations[.]" *Climate United*, 154 F.4th at 819.

Given the sequence of events, the fact that the litigation and injunction concerned funds held at Citibank, and the partial stay order's focus on "disputed" funds, CGC advised the government multiple times that it did not understand the stay order to apply to funds CGC previously deployed from Citibank and invested with third-parties. EPA's grant termination remained enjoined, and CGC said it would continue to manage prior investments to preserve their value and file mandatory reports with EPA concerning their status. CGC thus notified this Court that it "continue[d] to perform its obligations under the grant agreement with respect to funds that were disbursed from the Citibank accounts at issue to CGC's financial intermediary subrecipients prior to EPA's notice of termination" and requested clarification if CGC's understanding was wrong. December 2025 Notice of

Compliance at 1-2, Document 2151688; *see also* April 2025 Notice of Compliance at 2-3, Document 2113780. For sixteen months, CGC also filed many grant-mandated reports advising EPA on the status of CGC's pre-suit investments, and provided copies of the filed notices to DOJ, thereby keeping EPA and DOJ fully apprised of CGC's understanding of the stay order and CGC's activities. Until late last month, the government never objected.

Not only is CGC's interpretation of the stay correct as a matter of plain text, but the government acquiesced to it through its silence over 16 months—including when it obtained CGC's consent to extend the stay pending its cert petition. CGC never would have consented to maintaining the stay had the government switched positions. Moreover, the government endorsed CGC's position when it moved to extend the stay, representing to this Court that extending it would maintain a status quo that has persisted for 16 months. The Court should not allow the government to rewrite the stay order that it successfully petitioned this Court to extend last month, nor allow it to interfere with CGC's pre-freeze investments on the basis of the stay.

## ARGUMENT

### I. The Government's New Reading Of The Stay Order Is Wrong

By its plain terms, the stay order does not apply to investments that CGC made before this suit. CGC disbursed grant funds to make those investments well before

the suit began, and the funds deployed for those investments are not part of this case. They are not "disputed funds" within the meaning of the stay order.

Contrary to the government's position, *see* U.S.' Response to Coalition for Green Capital's Motion for Clarification ("Resp.") at 10, Document 2192956 (Sep. 14, 2026), the word "disputed" here covers only the Citibank-held funds, and not funds deployed from those accounts before February 2025 for financial-assistance transactions. Consider the parties' filings. The government's stay motion to this Court, after the district court ordered Citibank to comply with account-holder instructions, claimed the potential "irreparable loss of potentially billions of dollars, which the district court wrongly ordered be released to plaintiffs" as "[u]nder the court's order, plaintiffs can draw down enormous sums of money" from their accounts at "Citibank." Amended Emergency Stay Motion ("April Stay Mot.") at 10-11, Document 2111843 (Apr. 18, 2025); *id.* 15-16 (same). The government sought no relief for funds previously drawn from Citibank, and the district court's order did not address them. But the government represented that a stay was necessary because "[i]f these massive sums are paid out to plaintiffs [from Citibank], EPA has limited ability to recover the funds," *id.* 11, and then later told the Court that "EPA has repeatedly stated that any funds disbursed [from Citibank] are unlikely to be recouped should the agency later prevail," Appellants' Br. 3,

Document 2114428 (May 5, 2025), a representation diametrically at odds with its present position.

Plaintiffs (including CGC) opposed the stay application, pointing out that unlike in the government's cited authority requiring Treasury to pay money, "[p]laintiffs 'seek to regain access to their already disbursed funds at Citibank,'" Plaintiffs' Joint Opposition to Government's Stay Motion at 8, Document 2112204 (Apr. 22, 2025) (quoting district court opinion). Plaintiffs alternatively argued that, if the Court granted a stay, "any stay should order that the funds at Citibank must not be sent to government accounts" as this would greatly unsettle the status quo. *Id.* 22.

The parties' submissions thus confirm that the stay order's reference to "disputed" funds means the money that sat at Citibank in February 2025 and which Citibank froze, leading to this lawsuit: the first decretal paragraph left much of the district court's injunction intact while suspending that court's directive that Citibank comply with Plaintiffs' instructions; the second paragraph limited the stay's sweep—just as Plaintiffs requested in the alternative—by ensuring the government would not try clawing back funds from Citibank.

Interpreting the reference to "disputed funds" as covering the funds at Citibank is also consistent with how the case was litigated in district court, and before this Court. In that regard, the Court need look no further than the panel's

decision on the merits (since vacated): it says, "the funds at issue in this case remain at Citibank." 154 F.4th at 819. There was no reference to any grantee's pre-dispute investment in any of the merits papers, nor in any court decision. *Accord* Appellants' Br. 41. Even now, the government admits "the Citibank funds" are "the central issue in this case." Resp. 14.

The government is wrong to argue that the stay order must apply to "withdrawn grant funds" that CGC deployed pre-suit through financial-assistance transactions because "the grant agreements expressly provide that EPA 'must' rescind the funds for any grants it terminates." Resp. 9 (citing JA552). Again, that is directly at odds with what the government told the Court when it sought the original stay—in its words, "[i]f these massive sums are paid out to plaintiffs, EPA has limited ability to recover the funds," April Stay Mot. 11—only confirming that the government never sought relief covering deployed funds and the Court never granted it. And, in fact, the part of the grant agreement that EPA now cites to support its about-face applies only to EPA's treatment of "*uncommitted* funds" upon termination; the agreement states that upon termination of a given grant, EPA must "de-obligate *uncommitted* funds and re-obligate" them to another grantee. See JA552 (emphasis added).

Again, the funds at issue here were not just *committed* by CGC but, as EPA is aware, actually disbursed from Citibank. The funds were deployed through

financial-assistance transactions and are now invested with third-parties who are not even subject to the second part of the Court's order—given that it applies only to "parties." It makes no sense to read the Court's order directing "parties" not to take action with regard to "disputed funds" as applying to *non*-parties holding funds deployed to and invested with them before the case began—funds long disbursed from Citibank—particularly when they were not part of the case, and as EPA has no claim to committed and deployed funds.

Nor, contrary to the government's argument, does CGC's interpretation render the order's second decretal paragraph "meaningless." Resp. 10. Consistent with Plaintiffs' alternate requests, the second paragraph prohibits all parties, including notably the government and not just Citibank, from interfering with the Citibank funds as well as the grants themselves. This preserves the pre-suit status quo and ensures that the government neither pulls the funds from Citibank nor takes steps to undo the grants, directly or indirectly, including by attempting to issue new termination notices. As regards the Citibank funds, without the second paragraph, Citibank would be free to send funds back to the government—so it addresses Plaintiffs' concern on the stay. There is no surplusage.

Not only is CGC's reading consistent with the plain text of the order construed against the background of the parties' submissions on the stay and the litigation itself, but the government's sudden re-write raises serious problems. The

government does not dispute that the district court enjoined only the government and Citibank, *not* Plaintiffs, and that the government sought only a stay of the injunction against it pending appeal. The government indeed is forced to concede that it never "expressly requested" the sort of injunctive relief running against CGC and the other Plaintiffs that it now claims it obtained. Resp. 13. Given the lack of request, it is wrong to read the order as applying to funds that CGC already disbursed from its Citibank accounts and invested with non-parties before the litigation, and that are now in the hands of non-parties. And the government cannot sidestep its own failure to seek such injunctive relief in district court or at any time before by citing this Court's inherent authority or the All Writs Act. Resp. 10-11.

Finally, the government's newfound misreading of the order as barring "*any party* from taking *any action*" regarding the grants is absurd. Resp. 8-9 (emphasis added). Although the Court's order plainly froze grant funds at Citibank that formed the basis for the government's stay motion (in line with Plaintiffs' alternative request to freeze the Citibank funds) and prohibited EPA from attempting to re-terminate the grants through some other inventive means, the district court did not enjoin plaintiffs, and the Court's stay order does not excuse CGC from complying with statutory or grant obligations that do not require use of those funds—including supervising financial-assistance counterparties with whom it invested grant-sourced capital, and submitting the mandatory EPA compliance reports that led CGC to file

its first notice of compliance and that the government continues to emphasize are required. Resp. 9.

## II. The Government's New Reading Is Inequitable

Principles of equity also support CGC's position. The government again concedes what it must: that it has understood CGC's reading of the stay order for 16 months, yet expressed no concern until August 24, 2026—*after* it obtained an extension of that stay with CGC's consent. Resp. 15 (conceding it never objected but is "now" trying to "ma[ke] CGC aware of the government's interpretation"); *see also* Mot. 6-7 (discussing timeline). The government should be held to CGC's interpretation as a matter of equity, including judicial estoppel, waiver, and acquiescence. *Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) (finding waiver and forfeiture); *see also Forte v. Rosenfeld*, 980 F.2d 721 (1st Cir. 1992) (per curiam) (failure to challenge order can constitute "voluntar[y] acquiesce[nce]").

On the facts, the government says that CGC's notices to this Court did not "specify" which "'funds outside of Citibank' [CGC] was referring to." Resp. 15. But CGC clearly stated that it "continues to perform its obligations under the grant agreement with respect to funds that were disbursed from the Citibank accounts at issue to CGC's financial intermediary subrecipients prior to EPA's notice of termination." *See* December 2025 Notice of Compliance at 1-2. And CGC described all its investments to EPA in detail in the regular reports that CGC provided to EPA,

as well as in CGC's annual reporting that CGC issued to EPA and publicly—the very reports that it told this Court and the government it felt compelled to provide.[1]

The government also urges that principles of judicial estoppel do not apply because it has supposedly not taken inconsistent positions. The record shows otherwise. As noted above, in originally obtaining a stay, it represented that it cannot recover funds once disbursed from Citibank and invested, Mot. 9-10 (citing government briefs), a representation that the Court plainly accepted in staying the injunction mandating Citibank's compliance with disbursement requests. But again, it now takes the opposite: Per EPA, not only does the order apply to committed and disbursed grant funds that it previously said were beyond its control, but EPA also now urges that it "would be in a position to recoup funds disbursed to third parties pursuant to the agreements" if CGC was restrained. Resp. 11. This new position is not just contrary to the terms of the grants that EPA cites (given that the provision applies only to "*uncommitted*" funds, *see supra*), but reflects just the sort of about-face that the doctrine of judicial estoppel is meant to prevent.

Worse, the stay order is still in effect only because the government successfully moved to extend it after this Court's en banc ruling, based on representations clearly inconsistent with the government's current position. Again,

[1] *E.g.*, Press Release (June 29, 2026), https://cgc.org/news/cgc-submitted-its-first-annual-report-to-the-epa; Press Release (Mar. 16, 2026), https://cgc.org/news/cgc-submitted-third-semi-annual-report-to-the-epa.

the government obtained CGC's consent and then a court order extending the stay order in the face of clear notices stating that CGC understood the stay order as not applying to pre-dispute investments, and in line with CGC's notices, the government represented to this Court that extending the stay would cause Plaintiffs—including CGC—"no irreparable injury" because "the grant funds [covered by the stay] have been effectively frozen in the Citibank accounts since April of last year," and keeping these funds frozen at Citibank "thus maintains the status quo." Document 2187046 (Aug. 6, 2026) at 8. So judicial estoppel applies, if not principles of waiver or forfeiture, to interpreting the extended stay order. *See* Mot. 13-14.

## CONCLUSION

The Court should confirm that its stay order does not apply to funds that CGC disbursed from Citibank by February 2025 and deployed as detailed in regular reports submitted to EPA over the past 16 months—and that the government cannot now use the stay order to interfere with those executed investments and CGC's related efforts to comply with grant conditions.

Dated: September 18, 2026 Respectfully submitted:

/s/ *Vincent Levy*
Vincent Levy
Kevin D. Benish
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017

Tel.: (646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff-Appellee Coalition for Green Capital*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d), I hereby certify that the preceding motion complies with the type-volume limitation of the rules, containing 2,600 words. I further certify that the document complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Vincent Levy*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Vincent Levy*